s:\appeal\lindsayi.brief

GENOVA & MALIN
Attorneys for Appellant
Hampton Business Center
1136 Route 9
Wappingers Falls NY 12590
(845) 298-1600
Thomas Genova (TG4706)
Andrea B. Malin (AM4424)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
In Re:

                                                                        Bankruptcy Court
        SHELTON LINDSAY,                            Case No. 06-36352 (CGM)
                                                                        (Chapter 7)


                                Debtor.
-----------------------------------------------------x
SHELTON LINDSAY,                            **HON. GEORGE A. YANTHIS**

                        Appellant,                          District Court
                                                                        Civil Docket
        - against -                                          Case No. 7:08-cv-01326

LEE S. KALISH,

                                Appellee.
-----------------------------------------------------x


## ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK


-----------------------------------------------------------------------------------------------------------------

### BRIEF FOR DEBTOR-APPELLANT

-----------------------------------------------------------------------------------------------------------------

                                                        GENOVA & MALIN
                                                        Attorneys for Debtor-Appellant

                                        By:      /s/ Thomas Genova
                                                        THOMAS GENOVA, ESQ. (TG4424)
                                                        Hampton Business Center
                                                        1136 Route 9
                                                        Wappingers Falls NY 12590
                                                        (845) 298-1600

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................... I

TABLE OF STATUTES ...................................................................... ii

PRELIMINARY STATEMENT ............................................................. 1

JURISDICTION STATEMENT ............................................................. 1

ISSUE PRESENTED .......................................................................... 1,2

STANDARD OF REVIEW ................................................................. 2

STATEMENT OF THE CASE ............................................................. 2,3

STATEMENT OF FACTS ................................................................... 3-8

SUMMARY ...................................................................................... 8

ARGUMENT:

      THE BANKRUPTCY COURT ERRED IN ITS LEGAL INTERPRETATION
THAT THE ELEMENTS REQUIRED FOR A FINDING THAT A DEBTOR
VIOLATED 11 U.S.C. §523(a)(6) ARE IDENTICAL TO THE ELEMENTS
UNDER NEW YORK JUDICIARY LAW FOR A FINDING OF
CONTEMPT.......................................................................... 9-16

CONCLUSION ............................................................................... 16

## TABLE OF AUTHORITIES

In re Akhtar, 368 B.R. 120 (B.Ct.E.D.N.Y. 2007)...................................... 14

In re Blankfort, 217 B.R. 138 (B.Ct.S.D.N.Y. 1998)................................. 14

In re Bulter, 297 B.R. 741 (B.Ct.Ill. 2003)................................................. 9, 10, 14

In re Carlson, 224 B.R. 659 (B.Ct.N.d.Ill 1998)

    aff'd, 2001 WL 1313652 (7th Cir. 2001)........................................ 9

In re Cox, 243 B.R. 713 (B.Ct.N.D.Ill 2000)............................................. 9

In re Geiger,  118 S.Ct. 974 (1998)........................................................... 9, 10

Grogan v. Garner, 498 U.S. 279 (1991)..................................................... 9, 10

In re Hyman, 2007 WL 2492789 (2d Cir.)................................................. 9, 11-15

In re Ker, 365 B.R. 807 (B.Ct. S.D.Ohio 2007)......................................... 14

In re Kidd, 219 B.R. 278 (B.Ct.Montana 1998)......................................... 9, 10

In re Markowitz, 190 F.3d 455 (6th Cir. 1999).......................................... 9

Meyer v. Rigdom, 36 F.3d 1375 (7th Cir. 1994)......................................... 11

In re Miller, 156 F.3d 598 (5th Cir. 1998)................................................. 9,10

In re Slosberg, 225 B.R. 9 (B.Ct.D.Me. 1998).......................................... 9, 10

In re Strauss, 2006 WL 2583645 (B.Ct.S.D.N.Y.).................................... 14

In re Thirtyacre, 36 F.3d 697 (7th Cir. 1994)............................................ 10

## <u>TABLE OF STATUTES</u>

28 U.S.C. §§158(a) and 157 ....................................................................  1

11 U.S.C. §523(a)(6).................................................................. 1, 6-11, 13-15

NY Judiciary Law §753(A)(3)................................................................ 2, 7, 13

GENOVA & MALIN
Attorneys for Appellant
Hampton Business Center
1136 Route 9
Wappingers Falls NY 12590
(845) 298-1600
Thomas Genova (TG4706)
Andrea B. Malin (AM4424)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
IN RE:                                        **CHAPTER 7**

SHELTON C. LINDSAY,                           **CASE NO.: 06-36352(CGM)**

                        Debtor.
-----------------------------------------------------x
SHELTON C. LINDSAY,
                                              **HON. GEORGE A. YANTHIS**
                        Appellant,
                                              District Court
                                              Civil Docket
           - against -                        Case No. 7:08-cv-01326

LEE S. KALISH,

                        Appellee.
-----------------------------------------------------x

## APPELLANT'S BRIEF

## PRELIMINARY STATEMENT

        This brief is submitted on behalf of the Debtor-Appellant, SHELTON C. LINDSAY,

in appeal from the holding of the United States Bankruptcy Court, Southern District of New York,

Poughkeepsie, New York, entered on January 2, 2008 and the Court's Decision entered on January

7, 2008, granting to the Appellee, LEE S. KALISH summary judgment on the issue of the non-

dischargeability of a debt under 11 U.S.C. §523(a)(6).

## JURISDICTION STATEMENT

        This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §§ 158(a) and 157.

## ISSUE PRESENTED

        Did the United States Bankruptcy Court err in its holding that the elements necessary

to find that a debt is non-dischargeable under 11 U.S.C. §523(a)(6) are identical to the elements

necessary to find a party in contempt under New York Judiciary Law §753(A)(3)?

## STANDARD OF REVIEW

In reviewing ruling of the United States Bankruptcy Court, Southern District of New York, Poughkeepsie Division's ruling the standard for this Court is de novo review.

## STATEMENT OF THE CASE

The Appellant, SHELTON C. LINDSAY (the "debtor"), is appealing from the Decision and Order of the United States Bankruptcy Court of the Southern District of New York (the "Bankruptcy Court"), rendered by the United States Bankruptcy Court on January 7, 2008, holding that a state court judgment for contempt collaterally estopped the debtor from litigating whether the debt due and owing to the appellee was non-dischargeable under 11 U.S.C. §523(a)(6).

Prior to the filing of the debtor's petition under Chapter 7 of the United States Bankruptcy Code, the Dutchess County Supreme Court entered an Order finding debtor in contempt under New York Judiciary Law §753(A)(3) of a previously entered order and awarding to the appellee damages.

On December 8, 2006, the debtor filed a petition under Chapter 7 of the United States Bankruptcy Code. On May 7, 2007, the appellee filed a complaint against the debtor alleging, among other things, that the debt represented by the Contempt Judgment was non-dischargeable under 11 U.S.C. §523(a)(6) and that the debtor was collaterally estopped by the Supreme Court's finding of contempt from litigating same.

On June 22, 2007, the debtor filed an answer to the complaint.

On August 17, 2007, the appellee filed a Motion for Summary Judgment, regarding the issues of non-dischargeability arising under 11 U.S.C. §523(a)(6).

On October 2, 2007, the debtor filed opposition thereto.

On January 2, 2008, the United States Bankruptcy Court entered an Order Granting to the appellee Summary Judgment finding that the debtor was collaterally estopped from litigating the elements of 11 U.S.C. §523(a)(6), as same had already been fully litigated by the parties in the

2

Dutchess County Supreme Court action, as the elements set forth in New York Judiciary Law §753(A)(3) regarding contempt are identical to the elements under 11 U.S.C. §523(a)(6). The Bankruptcy Court filed its Decision supporting the Order of January 2, 2008 on January 7, 2008.

On January 7, 2008, the debtor filed his Notice of Appeal. On January 16, 2008, the Designation of Content and Issues on Appeal was filed. On January 24, 2008, the appellee filed his Counter-Designation of Content and Issues on Appeal.

## STATEMENT OF FACTS

Prior to said filing Lindsay had operated, as a fifty (50%) shareholder, a company known as Rock City Sound, Inc.(RCS). The remaining partner of the RCS stock was owned by the appellee herein Lee Kalish ("Kalish").

### KALISH'S RESIGNATION

Kalish submitted his withdrawal notice of his officership and directorship of Rock City Sound, Inc. ("RCS") on February 20, 2004 leaving Shelton Lindsay ("Lindsay") thereafter to operate the company. Pursuant to the Corporate Governance Agreements of the Company, Kalish sought a buy out shares of his stock. The purchase price of the stock tendered by RCS, according to its calculations based upon the corporate by-laws and shareholder agreement, was $897,275.00. Kalish claims the correct value of his shares was $1,145,580.00.[1] This dispute led directly to the impasse between the shareholders, the resulting state court litigation between them and ultimately the bankruptcy filing.

Subsequent to the withdrawal from RCS by Kalish, Lindsay was its sole officer and director. Kalish sought certain restrictions on the business operations of the company in state court litigation and was unsuccessful in obtaining same. The Shareholder Agreement and by-laws of the

---

[1] The parties were in dispute with regard to which three (3) year fiscal period should be employed to calculate the buy-out amount. The dispute arose as the appellee's resignation was tendered in February, 2003, but not effective until August, 2003, which was the ending fiscal year for the corporation. RCS determined its figure ($897,275.00) using the three (3) fiscal years prior to the tender of the appellee's resignation. Appellee calculated his figure ($1,145,000.00) using the three (3) fiscal years prior to his retirement date. The by-laws are silent on this issue.

3

company granted to the remaining shareholder the authority to conduct business and same was confirmed by the Court in said state court litigation. Furthermore, special meetings of the shareholders could be and were called by the Board after the withdrawal from the company by Kalish. After Kalish's departure, the company continued to exist and operate, maintained employees and conducted its business.

<u>STOCK VALUATION ISSUES</u>

The value established by RCS for the Kalish shares was fixed based upon the calculations of Robert Cranston, CPA and long time accountant to the corporation, in accordance with the corporate agreements. Robert Cranston, as controller and accountant to the company, issued a letter on August 13, 2004, in a manner in accordance with the Shareholder Agreement, which set forth the value of the Kalish shares using the three (3) year averaging method as set forth in the Shareholder Agreement. It was and is the position of Lindsay that this is in accordance with the Shareholder Agreement was the correct methodology for calculation of value. Lindsay appeared at the closing tendered the down payment, an amount in excess of $224,000.00, plus an additional promissory note in the amount of $672,956.25 and related documents, all in accordance with the Shareholder Agreement. Kalish, who paid no consideration or investment for his shares, refused to attend and accept said funds or close the transaction. Specifically, the Shareholder Agreement, at paragraph 12, sets forth as follows:

> **12. Failure to Comply With Six-Month Notice Requirement.** In the event a Shareholder shall desire to withdraw from his active participation in the Corporation and such Shareholder shall either (I) fail to give the six (6) months' advance written notice required by Section 2(a) of this Agreement, or (ii) withdraw from his participation in the Corporation's business prior to the Withdrawal Date, then upon the occurrence of either of such events (A) the Withdrawing Shareholder shall automatically be deemed to have (x) tendered his resignation from his positions as an officer and a director of the Corporation, and (y) given a proxy to the Remaining Shareholder authorizing the Remaining Shareholder to vote all of the Withdrawing Shareholder's Shares in such manner as the Remaining Shareholder shall in his sole and absolute discretion deem advisable with respect to all matters as to which the Corporation's shareholders are entitled or required to act, and (B) neither the Corporation nor the Remaining Shareholder shall be under any obligation to purchase the Withdrawing Shareholder's Shares as provided in Section 2 hereof (it being understood, however, that the Corporation and the Remaining Shareholder shall retain the right to elect to purchase such shares in accordance with the terms

4

and procedures set forth in Section 2 hereof). In addition, upon the occurrence of either of the foregoing events, the Withdrawing Shareholder shall not be permitted to dispose of any of his Shares prior to the Withdrawal date, nor may the Withdrawing Shareholder sell his Shares to any third parties subsequent to the Withdrawal date unless he shall first give the Corporation and the Remaining Shareholders an opportunity to purchase such Shares in compliance with the terms and procedures set forth in Section 5 hereof. Anything to the foregoing notwithstanding, the parties agree that the Withdrawing Shareholder shall have the right to request that the six (6) month notice period be waived or shortened. Should the Remaining Shareholder agree to waive or shorten such notice period, he shall deliver a written consent (the "Consent") to his waiver or shortening of the six (6) month notice period to the Withdrawing Shareholder, which Consent shall recite the date (the "Early Withdrawal Date") on which the Remaining Shareholder agrees to permit the Withdrawing Shareholder to withdraw from the Corporation without triggering the provisions of this Section 12. In the event the Remaining Shareholder agrees to so waive or shorten the six (6) month notice period, the provisions of Section 2 hereof shall remain in full force and effect, except that all references therein to the "Withdrawal Date" shall be deemed to be references to the Early Withdrawal Date as set forth in the Remaining Shareholder's Consent."

## POST RESIGNATION ACTIONS

The State Court order in no way enjoined the company from the acquisition or sale of inventory, machinery, or equipment. Additionally, as Kalish had resigned effective August 20, 2004, Lindsay was left as the sole remaining shareholder. In or about July of 2005, RCS sold, to a used equipment broker of impeccable reputation, certain of its sound equipment, office equipment and other goods. Said purchaser, H.T.I.C.S., was introduced to the company by Kalish himself. The sales price was carefully considered by RCS taking into consideration the age, condition and functionality of the equipment sold. The company contacted other potential purchasers and was satisfied that the transaction with H.T.I.C.S. was the best available. Subsequent to the asset sale to H.T.I.C.S., the company retained assets valued in excess of $1,600,000.00.

The actions of Lindsay during the wind down of the RCS corporate affairs was undertaken in a fiduciary capacity by Lindsay. All actions of Lindsay were undertaken to protect the company its remaining employees and its creditors. It must be noted that the proceeds of the H.T.I.C.S. equipment sale were used to satisfy corporate obligations of RCS where Kalish maintained a personal guarantee and the use of the proceeds to satisfy these obligations discharged

Kalish's guarantee thereon. In addition, the issue of the remaining unsold equipment, valued in excess of $1,600,000, must not be disregarded in a litigation where Kalish is alleging a breach of a fiduciary duty by Lindsay. In more than twenty-five (25) separate contacts, both telephonic and by correspondence, to Kalish and counsel, RCS unsuccessfully sought to sell the remaining inventory for the benefit of the company and its shareholders, as it was Kalish who had withdrawn from the company and Kalish who refused to attend the closing and be paid a sum in excess of $897,000 for shares of stock for which he neither paid consideration nor made an investment. RCS determined that Kalish was in violation of the Shareholder Agreement, specifically at Paragraph 12 thereof, for his failure to close in compliance with the six month notice requirement set forth therein. Given the appellant's medical condition of active Hep C, a liver transplant, a liver rejection and his desire not to abandon this business he had founded some thirty (30) years earlier, appellant was put in a difficult position of a winding down a previously profitable business.

        The proceeds from the sales of the assets which were liquidated were used to satisfy corporate liabilities including the satisfaction in full of a substantial corporate liability to Rhinebeck Savings Bank upon which both plaintiff and defendant were personally liable. It is clear from this single act that plaintiff's burden pursuant to 11 U.S.C. §523(a)(6), can not be met.

<u>STATE COURT ACTION</u>

        Prior to the filing of the debtor's petition in bankruptcy, the appellee herein commenced a cause of action against the debtor in the Dutchess County Supreme Court entitled: *LEE S. KALISH v. SHELTON C. LINDSAY and ROCK CITY SOUND, INC., Index No. 4088/04.* The basis of the action was that plaintiff sought an Order for Specific Performance of the parties' shareholder agreement.

        On or about December 10, 2004, the Dutchess County Supreme Court entered an Order granting certain Injunctive Relief with regard to the exercise of dominion and control over the corporate assets at issue. Thereafter , a dispute with regard to the interpretation of the court's restraining order arose between the parties which resulted in the plaintiff, therein, filing a Motion

for Contempt against the debtor.

On August 11, 2006, the Dutchess County Supreme Court entered an Order finding that the debtor was in Contempt of the Court's December 10, 2004 Order pursuant to New York Judiciary Law §753(A)(3) awarded to the appellee damages.

<u>FILING UNDER CHAPTER 7 OF THE UNITED STATES BANKRUPTCY CODE</u>

On December 8, 2006, the debtor filed a voluntary petition for Bankruptcy under Chapter 7 of the Bankruptcy Code. The debtor listed the debt owed to the appellee on Schedule F filed with his petition.

On May 7, 2007, the appellee commenced an adversary proceeding against the debtor, alleging, amongst other things, that the debt owed to the appellee arising from the damages awarded by the DUtchess County Supreme Court in its Contempt Order entered against the debtor on August 11, 2006 was non-dischargeable pursuant to 11 U.S.C. § 523(a)(6). On June 22, 2007, the debtor filed an answer to the complaint.

On August 17, 2007 , the appellee filed a Motion for Summary Judgment seeking to have the debtor collaterally estopped form litigating the claim under 11 U.S.C. §523(a)(60 as same had already been decided by the Dutchess County Supreme Court and embodied in its Contempt Order. On October 2, 2007, the debtor filed opposiotn thereto.

On January 2, 2008, the United States Bankruptcy Court entered an Order granting Summary Judgment in favor of appellee. On January 7, 2008, the United States Bankruptcy Court entered its decision in favor of the appellee finding that the debtor was estopped from litigating the issues under 11 U.S.C. §523(a)(6) as the elements required to demonstrate contempt under New York Judiciary Law §753 were identical to the elements that are required for a finding under 11 U.S.C. §523(a)(6).

On January 7, 2008, the debtor filed a Notice of Appeal. On January 16, 2008, the debtor filed a Designation fo Contents and Issues on Appeal. On January 24, 2008, the appellee filed a Counter Designation of Contents and Issues on Appeal.

7

On February 11, 2008, the appeal was docketed with this Court and the debtor's Appeal Brief is to be filed and served on or before February 29, 2008. The appellee's Appeal Brief must be filed and served within fifteen (15) days thereof.

## SUMMARY

The Appellant is appealing from the Order of the United States Bankruptcy Court of the Southern District of New York, entered after a decision on the appellee's Motion for Summary Judgment rendered by the United States Bankruptcy Court on January 2, 2008, finding that the debtor was collaterally estopped from litigating the issues under 11 U.S.C. §523(a)(6). The crux of the debtor's argument is that the Bankruptcy Court erred in finding that the elements necessary to find that a party is in contempt under New York Judiciary Law §523(A)(3) were identical to the elements that must be necessarily proven to find that a debt is non-dischargeable under 11 U.S.C. §523(a)(6).

The debtor will set forth its argument for reversal of the decision of the United States Bankruptcy Court, Southern District of New York, Poughkeepsie Division, as set forth herein under Argument portion of the debtor/Appellant's Brief:

**The debtor is not collaterally estopped by the State Court's Contempt finding entered against the debtor by the Supreme Court, State of New York, Dutchess County entitled LEE S. KALISH v. SHELTON LINDSAY and ROCK CITY SOUND, INC., bearing Index No. 4088/2004 (the "state court litigation") entitling the appellee to summary judgment on the issue of the dischargeability of the debt under 11 U.S.C. §523(a)(6), as the elements required for findings under the two (2) statutes are not identical and thus were not fully litigated in the State Court Action. Therefore, same should not be given collateral estoppel effect.**

8

## ARGUMENT

### THE BANKRUPTCY COURT ERRED IN ITS DETERMINATION THAT THE DEBTOR WAS COLLATERALLY ESTOPPED FROM LITIGATING THE ISSUES UNDER 11 U.S.C. §523(a)(6)

It is clear from the facts as set forth herein that the Contempt Order entered in the state court litigation does not collaterally estopp the debtor on the issue of nondischargability pursuant to 11 U.S.C. §523(a)(6).  11 U.S.C. §523(a)(6).  In re Geiger,  118 S.Ct. 974 (1998); In In re Carlson, 224 B.R. 659 (B.Ct.N.d.Ill 1998), aff'd, 2001 WL 1313652 (7th Cir. 2001);  In re Hyman, 2007 WL 2492789 (2d Cir.); In re Bulter, 297 B.R. 741 (B.Ct.Ill. 2003);  In re Markowitz, 190 F.3d 455 (6th Cir. 1999);  In re Cox, 243 B.R. 713 (B.Ct.N.D.Ill 2000); In re Kidd, 219 B.R. 278 (B.Ct.Montana 1998); In re Slosberg, 225 B.R. 9 (B.Ct.D.Me. 1998); In re Thirtyacre, 36 F.3d 697 (7th Cir. 1994);  In re Miller, 156 F.3d 598 (5th Cir. 1998); and Grogan v. Garner, 498 U.S. 279 (1991).

Section 11 U.S.C. §523(a) enumerates a list of debts from which the debtor will not receive a discharge pursuant to 11 U.S.C. §727.  11 U.S.C. §523(a)(6) states:

> (a)     A discharge under Section 727 ... of this title
>
> does not discharge an individual debtor from any debt –
>
> (6)     for willful and malicious injury by the debtor to another entity or to the property of another entity.

In order for the plaintiff to be entitled to a determination of nondischargability under 11 U.S.C. §523(a)(6), the plaintiff must demonstrate to this court by a preponderance of the evidence, the following elements:  "(1)   That the defendant caused an injury; (2)   That the defendant's actions were willful, and (3) that the defendant's actions were malicious." In re Butler, supra. at 746.  (See also, In re Carlson, 224 B.R. 659 (B.Ct.N.d.Ill 1998), aff'd, 2001 WL 1313652 (7th Cir. 2001)).   The standard to be employed when making a determination as to the dischargeability of a debt under 11 U.S.C. §523(a)(6) is set forth in the case of In re Geiger, supra. In Geiger, the Supreme Court of the United States addressed the issue as to what acts fall within the

purview of 11 U.S.C. 523(a)(6). In considering this pivotal issue, the Supreme Court found that in order for an act to be exempted from discharge as "willful" under 11 U.S.C. §523(a)(6) the actor must have acted with the actual intent to cause harm, not merely engage in an intentional act that leads to an injury.  Id.  Thus, in order for the plaintiff to satisfy the element of "willful," plaintiff must show  that the debtor **actually intended to harm the plaintiff by his actions which were classified as contempt by the state court; and not merely that the defendant acted intentionally resulting in harm to the plaintiff. [emphasis added].**  Id.

However, the Supreme Court did not wholly define the scope of the term "intent" which it employed to describe willful conduct.  In re Butler, supra.  "Subsequent decisions, however, have required either showing of subjective intent to injure the creditor or a showing of a debtor's subjective knowledge that injury is substantially certain to result from his acts to establish the intent required in Geiger, supra."  Id. at 747. (See also: In re Markowitz, 190 F.3d 455 (6th Cir. 1999); In re Cox, 243 B.R. 713 (B.Ct.N.D.Ill 2000); In re Kidd, 219 B.R. 278 (B.Ct.Montana 1998)).

Secondly, in order to establish the element of "malice," "a creditor must show that the debtor's willful, injurious conduct was undertaken without just cause or excuse.'  Id. at 747 (See also: In re Slosberg, 225 B.R. 9 (B.Ct.D.Me. 1998); In re Thirtyacre, 36 F.3d 697 (7th Cir. 1994)).

The standard as set forth in In re Geiger, supra., has been further considered in the case of In re Miller, 156 F.3d 598 (5th Cir. 1998).  In the case of In re Miller, supra., the Court considered the issue of whether under the guidelines set by the Supreme Court in Geiger malice could be implied under 11 U.S.C. §523(a)(6).  The Court answered this question in the affirmative holding that under 11 U.S.C. §523(a)(6) an injury is "'willful and malicious' where there is either an objective substantial certainty of harm or a subjective motive to cause harm."  Id. at 9.

It is clear that the doctrine of collateral estoppel (issue preclusion) applies to adversary proceedings brought before the Bankruptcy Court under 11 U.S.C. §523(a).  Grogan v. Garner, 498 U.S. 279 (1991).  Pursuant to this doctrine, a party may not re-litigate issues in the bankruptcy court

10

that have bee determined in a prior state court proceeding.  Id..  However, **the bankruptcy court has exclusive jurisdiction to determine the dischargeability of the debts under 11 U.S.C. §523(a)(6). [emphasis added].**  In re Butler, supra.  In order for the plaintiff to collaterally estopp the debtor from litigating the claim under 11 U.S.C. §523(a)(6), plaintiff must demonstrate the following elements:

> 1.  The issue sought to be precluded must be the same as that involved in the prior litigation;
>
> 2.  The issue must have been actually litigated;
>
> 3.   The determination of the issue must have been essential to the final judgment; and
>
> 4.   The party against whom estoppel is invoked must be fully represented in the prior action.

Meyer v. Rigdom, 36 F.3d 1375, 1379 (7th Cir. 1994).

The Second Circuit has been clear in its mandate that the doctrine of collateral estoppel is not to be mechanically applied by bankruptcy courts in cases involving determinations to be made as to whether a state court judgment should be given preclusive effect in actions under 11 U.S.C. §523(a) that are withing the sole jurisdiction of the bankruptcy court.  In re Hyman, 2007 WL 2492789 (2d Cir.).  In so finding, that Court held :  "'Collateral estoppel, is a flexible doctrine, should not be mechanically applied just because some of its formal prerequisites, like identity of the parties, identity of issues, a final and valid prior judgment and a full and fair opportunity to litigate the prior determination, may be present."  Id. at 7.

The state court order at issue in this case is the "Order of Civil Contempt" entered against the debtor by the Dutchess County Supreme Court in state court litigation between the parties.  Said Order found the debtor liable for civil contempt and awarded damages to the plaintiff.  A judgment was thereupon entered which the plaintiff now seeks to have this Court find that the Civil Contempt Order upon which said judgment was based collaterally estopps the debtor from litigating the issues under 11 U.S.C. §523(a)(6).

The underlying state court litigation was instituted by the plaintiff who sought to

11

obtain specific performance from the debtor of a shareholder's agreement for the disposition of the plaintiff's shares of ROCK CITY SOUND, INC., based upon plaintiff's withdrawal as a shareholder. State Court Order is Annexed as Exhibit "A" to the Motion for Summary Judgment).   During the pendency of the litigation the plaintiff moved for the entry of an Order granting to him, amongst other things, partial summary judgment awarding to the plaintiff a security interest in his stock and possession of same by the plaintiff's agent until such time as the state court could determine the amount of the purchase price of the stock and the sale of same was completed.  (State Court Decision, p. 2).  On April 20, 2005, the state court granted plaintiff's motion and an Order to that effect was entered by the state court on May 25, 2005. Id. at pp. 2-3.

> The May 25, 2005 Order of the state court specifically provided, in pertinent part:
>
> > Applying these principals to the submission of the parties herein, this Court first notes defendants agree that an injunction restraining the disposition of the corporate shares owned by plaintiff is proper. Therefore, based upon this consent, plaintiff is granted preliminary injunction enjoining defendant, their principals, agent and assigns, and any person acting in concert with them from exercising any dominion or control over, committing any act upon and or effectuating any dominion or control over, committing any act upon and/or effectuating any conveyance transfer, assignment or encumbrance, sale or disposing of plaintiff's sixty shares in ROCK CITY SOUND, INC. Pending the resolution of this action.

> As is the norm, prior to the commencement of the state court litigation, the corporation had incurred and continued to incur debt for which both the plaintiff and the debtor were personally responsible . The fact that plaintiff desired to have the corporation purchase his share interest did not effect a stay on daily corporate realities.  Instead, the debtor was left with the task of continuing to operate the corporation and pay its debts.  Given the defendant's severe medical condition, to wit: his diagnoses of active Hep C, liver rejection, diabetic episodes, dangerously low white blood cell counts, and the fact that he was required to undergo Pegylated Interferon and Ribavirin treatment due to the fibrosis in his liver and requires a liver transplant, his desire not to abandon the business he had founded some thirty (30) years earlier put defendant  in this difficult position of winding down a previously profitable business enterprise.  Thus, after the entry of the Order on May 25, 2005, the

debtor continued operating same. As the plaintiff failed or refused to participate in the daily operation of the business, the debtor, upon the advice of counsel, held a regular business meeting and decided at that meeting to vote the plaintiff's shares to enable the corporation to liquidate certain assets to satisfy certain corporate liabilities. The proceeds from the sales of the assets which were liquidated were used to satisfy corporate liabilities including the satisfaction in full of a corporate liability to Rhinebeck Savings Bank upon which both plaintiff and defendant were personally liable. It is clear from this single act that plaintiff's burden pursuant to 11 U.S.C. §523(a)(6), can not be met.

Thereafter, the plaintiff filed with the state court a Motion to hold the debtor and his attorneys in contempt of the preliminary restraining order.

Pursuant to New York Judiciary Law §753(A)(3),

a court is authorized to punish a person for civil contempt when it finds that person to be in disobedience of a lawful mandate of the Court as the result of the following four requirements having been met.

1. A clear and unequivocal order must exist;

2. The party to be held in contempt must have knowledge of the order;

3. With reasonable certainty, it must appear that the order was violated; and

4. The violation must have defeated, impaired, impeded or prejudiced a right or remedy of a party to the action.

(See also pp.4-5 of the State Court Order). Considering these factors, the state court found each of the factors to exist and entered a contempt order with damages against the debtor, but refused to find same against debtor's counsel based upon the advice same had given to the debtor. As is clear from even a preliminary review of the factors set forth in the Judiciary Law, a finding of civil contempt does not require the state court to consider or make a finding as to the debtor's intent with regard to the conduct found to have violated the order. The court need only find that the debtor knew the order existed and that the action in which the debtor engaged, violated the order.

Several courts have addressed the issue of when to apply the doctrine of collateral

13

estoppel with regard to issues decided by a state court and set forth in an order in adversary proceedings commenced under 11 U.S.C. §523(a).  In re Hyman, supra. (State court order that plaintiff sought to employ to preclude the debtor on the elements under 11 U.S.C. §523(a)(4) akin to the intentional and malicious requirements of 523(a)(6) was insufficient to base a motion for summary judgment as the lower court did not "specifically" address the issue of "intent" and "bad conduct."); In re Butler, supra. (state court order which found that the debtor's continued violation of a "not to compete clause," after repeated warning, supported a finding of "intentional" and "malicious" under 11 U.S.C. §523(a)(6)) ; In re Strauss, 2006 WL 2583645 (B.Ct.S.D.N.Y.) (court precluded husband who continually violated state court's orders restraining the disposition of marital property in the parties' divorce action supported the application of issue preclusion as to debtor's "intent."); In re Akhtar, 368 B.R. 120 (B.Ct.E.D.N.Y. 2007) (court found applied issue preclusion on the issue of intent due to the debtor's repeated violations of the restraining order entered by the district court as the Order entered by the district court made it clear that the district court gave "careful consideration to whether the Debtor's conduct was 'wrongful' and 'without just cause or excuse." Id. at 132); In re Ker, 365 B.R. 807 (B.Ct. S.D.Ohio 2007) (the court applied the doctrine of collateral estoppel of the matrimonial court's findings that specifically considered the bad conduct of the debtor); In re Blankfort, 217 B.R. 138 (B.Ct.S.D.N.Y. 1998) (the court found that the debtor was precluded on the issues regarding 11 U.S.C. §523(a) arising from the debtor's continued trade mark violation despite specific warnings to discontinue said conduct.)

A review of the cases of In re Strauss, In re Ker, and In re Blankfort, quickly demonstrates that the findings in these case are clearly inapposite to the case at bar.  In each one of the cases, the lower courts addressed the issue of the debtor's intentional and malicious conduct based upon their continued violations of the orders set forth therein.

Of the cases cited, the findings that are most on point, are the cases of In re Hyman, supra. and In re Akhtar, supra.  In the case of In re Hyman, supra., the Second Circuit Court of Appeals addressed the issue of whether a Surrogate Court's finding that the debtor had breached his

fiduciary duty was sufficient to preclude the debtor from litigating the issue of defalcation in the bankruptcy court under 11 U.S.C. §523(a)(4).  In considering the issue, the Court refused to give the Surrogate Court's finding preclusive effect by mechanically applying the doctrine of collateral estoppel, as the Surrogate Court's Order did not specifically address all of the elements necessary for the Court to base a finding against the debtor that he violated 11 U.S.C. §523(a)(4).  Id.  Most importantly, the Surrogate Court **"made no express findings with regard to Hyman's state of mind.  We assume that the Surrogate concluded that under New York Law such findings were not necessary, since misappropriation and breach of fiduciary duties apparently do not, under New York law, consistently require proof of a culpable mental state."** [emphasis added].  Id. at 6.  **By requiring the courts to make appropriate findings of conscious misbehavior or recklessness in the course of dischargeability litigation, the stand we adopt today insures that the harsh sanction of non-dischargeability is reserved for those who exhibit 'some portion of misconduct."** [emphasis added].  Id. at 6-7.    The case of Akhtar, supra., although decided prior to Hyman, supra., obviously adheres to the same principle as it allowed the application of the doctrine of collateral estoppel only because the district court's order was clear that it had specifically addressed all of the elements necessary to find that the debt to be non-dischargeable under 11 U.S.C. §523(a)(6).            Furthermore, the Court in Hyman encourages, if not requires, the bankruptcy courts  to review the underlying state court record to determine if the state court appropriately considered the debtor's "state of mind." Id. at 7

          In applying these principles to the present case, it is easy to conclude that the elements necessary for a finding of contempt under state law do not include the necessity to make specific findings as to the party's "bad conduct" or "intentional conduct" as does a finding under 11 U.S.C. §523(a)(6).  The New York Judiciary law merely requires the state court to make a finding that the debtor "knew" the order existed, not that he intentionally engaged in conduct for the specific purpose of violation the order and injuring the debtor.   As in Hyman, the mere fact that the debtor's conduct may have been determined to be "self serving" by the state court, this is insufficient to base a finding

15

that the requisite intent was present to find the debt non-dischargeable under 11 U.S.C. §523(a). Id.

Lastly, the state court contempt order does not address of injury caused by the debtors' "intentional and malicious " conduct. The Order simply concludes, without any justification or evidence, that the debtor acted :"knowingly," the debtor's acts "violated" the order and thus the plaintiff was injured in the amount that one of the parties asserted was the entire value of the stock.

Accordingly, as the state court contempt order does not specifically address the debtor's "state of mind" or the issue of "injury," the plaintiff should not be granted summary judgment based upon the doctrine of collateral estoppel. Id.

## CONCLUSION

For all of the foregoing reasons, this Court should reverse the Decision entered on            by the United States Bankruptcy Court, Southern District of New York, Poughkeepsie Division; and grant to the debtor such other and further relief as this Court deems proper.

Dated:  Wappingers Falls, New York
        February 29, 2008

                                        GENOVA & MALIN
                                        Attorneys for the Debtor/Appellant

                            By:    /s/ Thomas Genova
                                   THOMAS GENOVA (TG4706)
                                   Hampton Business Center
                                   1136 Route 9
                                   Wappingers Falls, New York 12590
                                   (845) 298-1600

16

REPORTER IMAGE    QUICK PRINT    PRINT    EMAIL    DOWNLOAD    OTHER

**In re Akhtar**

368 B.R. 120

Bkrtcy.E.D.N.Y.,2007.

May 17, 2007 (Approx. 20 pages)

West Reporter Image (PDF)

368 B.R. 120

United States Bankruptcy Court,
E.D. New York.
In re Naseem AKHTAR, Debtor.
Yash Raj Films (USA), Inc., Plaintiff,
v.
Naseem Akhtar, Defendant.
Bankruptcy No. 04-21354-ess.
Adversary No. 04-1524-ess.
May 17, 2007.

**Background:** Copyright holder that had been awarded damages in prior infringement action against Chapter 7 debtor brought adversary proceeding to except judgment debt from discharge as one for debtor's "willful and malicious injury." Copyright holder moved for entry of summary judgment in its favor based on issue preclusive effect of prior contempt order and judgment in infringement action, and debtor cross-moved for summary judgment in his favor.

**Holding:** The Bankruptcy Court, Elizabeth S. Stong, J., held that prior contempt order and judgment collaterally estopped debtor from disputing either the willful or malicious nature of injury that his infringement inflicted on copyright holder.

Copyright holder's motion granted; debtor's motion denied.

West Headnotes

[1] KeyCite Notes 

⇐51 Bankruptcy
  ⇐51X Discharge
    ⇐51X(C) Debts and Liabilities Discharged
      ⇐51X(C)1 In General
        ⇐51k3341 k. In General. Most Cited Cases

Dischargeability exceptions are construed narrowly, and in favor of debtor. 11 U.S.C.A. § 523(a).

[2] KeyCite Notes 

⇐51 Bankruptcy
  ⇐51X Discharge
    ⇐51X(D) Determination of Dischargeability
      ⇐51k3401 Evidence
        ⇐51k3403 Presumptions and Burden of Proof
          ⇐51k3403(1) k. In General. Most Cited Cases

⇐51 Bankruptcy KeyCite Notes 
  ⇐51X Discharge
    ⇐51X(D) Determination of Dischargeability
      ⇐51k3401 Evidence

⟸51k3405 Weight and Sufficiency
 ⟸51k3405(12) Degree of Proof Required
  ⟸51k3405(13) k. In General. Most Cited Cases

Burden of proof is on creditor seeking to except debt from discharge, and creditor must satisfy that burden by preponderance of evidence. 11 U.S.C.A. § 523(a).

[3] KeyCite Notes 

⟸51 Bankruptcy
 ⟸51X Discharge
  ⟸51X(C) Debts and Liabilities Discharged
   ⟸51X(C)5 Torts and Crimes
    ⟸51k3374 Willful or Malicious Injury
     ⟸51k3374(1) k. In General. Most Cited Cases

To prevail on complaint to except debt from discharge as one for debtor's "willful and malicious injury," creditor must establish two elements: that debtor acted willfully in committing injury, and that debtor acted maliciously in committing injury. 11 U.S.C.A. § 523(a)(6).

[4] KeyCite Notes 

⟸51 Bankruptcy
 ⟸51X Discharge
  ⟸51X(C) Debts and Liabilities Discharged
   ⟸51X(C)5 Torts and Crimes
    ⟸51k3374 Willful or Malicious Injury
     ⟸51k3374(1) k. In General. Most Cited Cases

"Willfulness" and "malice," of kind required by dischargeability exception, are distinct elements, that cannot be lumped together to create some amorphous standard to prevent discharge of debt for any conduct that bankruptcy judge may consider to be deplorable. 11 U.S.C.A. § 523(a)(6).

[5] KeyCite Notes 

⟸51 Bankruptcy
 ⟸51X Discharge
  ⟸51X(C) Debts and Liabilities Discharged
   ⟸51X(C)5 Torts and Crimes
    ⟸51k3374 Willful or Malicious Injury
     ⟸51k3374(2) k. Willful, Deliberate, or Intentional Injury. Most Cited Cases

"Willful" injury, of kind required by dischargeability exception, is one which is deliberate or intentional. 11 U.S.C.A. § 523(a)(6).

[6] KeyCite Notes 

⟸51 Bankruptcy
 ⟸51X Discharge
  ⟸51X(C) Debts and Liabilities Discharged

⇐51X(C)5 Torts and Crimes
⇐51k3374 Willful or Malicious Injury
⇐51k3374(2) k. Willful, Deliberate, or Intentional Injury. Most Cited Cases

To demonstrate a "willful injury," of kind required by dischargeability exception, creditor must present evidence of a deliberate or intentional injury, not merely of a deliberate or intentional act that leads to injury. 11 U.S.C.A. § 523(a)(6).

[7] KeyCite Notes 

⇐51 Bankruptcy
⇐51X Discharge
⇐51X(C) Debts and Liabilities Discharged
⇐51X(C)5 Torts and Crimes
⇐51k3374 Willful or Malicious Injury
⇐51k3374(2) k. Willful, Deliberate, or Intentional Injury. Most Cited Cases

⇐51 Bankruptcy KeyCite Notes 
⇐51X Discharge
⇐51X(C) Debts and Liabilities Discharged
⇐51X(C)5 Torts and Crimes
⇐51k3374 Willful or Malicious Injury
⇐51k3374(4) k. Knowledge; Knowing Disregard. Most Cited Cases

"Willfulness," of kind required by dischargeability exception, may be established by showing that debtor had actual knowledge that he or she was violating the law and an intent to bring about injury. 11 U.S.C.A. § 523(a)(6).

[8] KeyCite Notes 

⇐228 Judgment
⇐228XIV Conclusiveness of Adjudication
⇐228XIV(A) Judgments Conclusive in General
⇐228k635 Courts or Other Tribunals Rendering Judgment
⇐228k636 k. In General. Most Cited Cases

⇐228 Judgment KeyCite Notes 
⇐228XIV Conclusiveness of Adjudication
⇐228XIV(C) Matters Concluded
⇐228k713 Scope and Extent of Estoppel in General
⇐228k713(1) k. In General. Most Cited Cases

Collateral estoppel prevents relitigation of issues already decided by courts of competent jurisdiction.

[9] KeyCite Notes

⇐228 Judgment
⇐228XIV Conclusiveness of Adjudication
⇐228XIV(C) Matters Concluded

⟸228k713 Scope and Extent of Estoppel in General
  ⟸228k713(1) k. In General. Most Cited Cases

Requirements for collateral estoppel are: (1) that identical issue was raised in previous proceeding; (2) that issue was actually litigated and decided in previous proceeding; (3) that party had full and fair opportunity to litigate issue; and (4) that resolution of issue was necessary to support valid and final judgment on merits.



[10] KeyCite Notes

⟸228 Judgment
  ⟸228XIV Conclusiveness of Adjudication
    ⟸228XIV(A) Judgments Conclusive in General
      ⟸228k635 Courts or Other Tribunals Rendering Judgment
        ⟸228k636 k. In General. Most Cited Cases



⟸228 Judgment KeyCite Notes
  ⟸228XIV Conclusiveness of Adjudication
    ⟸228XIV(A) Judgments Conclusive in General
      ⟸228k643 Nature of Action or Other Proceeding
        ⟸228k644 k. In General. Most Cited Cases

Collateral estoppel applies in nondischargeability proceedings and may be invoked to preclude relitigation of elements of nondischargeability claim. 11 U.S.C.A. § 523(a).

[11] KeyCite Notes

⟸228 Judgment
  ⟸228XIV Conclusiveness of Adjudication
    ⟸228XIV(C) Matters Concluded
      ⟸228k713 Scope and Extent of Estoppel in General
        ⟸228k713(1) k. In General. Most Cited Cases

⟸228 Judgment KeyCite Notes
  ⟸228XIV Conclusiveness of Adjudication
    ⟸228XIV(C) Matters Concluded
      ⟸228k715 Identity of Issues, in General
        ⟸228k715(1) k. In General. Most Cited Cases

⟸228 Judgment KeyCite Notes
  ⟸228XIV Conclusiveness of Adjudication
    ⟸228XIV(C) Matters Concluded
      ⟸228k739 k. Matters Which Could Not Have Been Adjudicated. Most Cited Cases

To determine whether contempt order and judgment previously entered against Chapter 7 debtor in copyright infringement action could be given issue preclusive effect in subsequent proceeding to except resulting debt from discharge as one for debtor's "willful and malicious injury," court had to determine whether the issues presented by dischargeability litigation were in substance the same as those resolved in prior copyright action, whether controlling facts or legal principles had changed

368 B.R. 120

significantly since prior litigation, and finally, whether special circumstances warranted exception to normal rules of preclusion. 11 U.S.C.A. § 523(a)(6).



[12] KeyCite Notes

228 Judgment
228XIV Conclusiveness of Adjudication
228XIV(C) Matters Concluded
228k713 Scope and Extent of Estoppel in General
228k713(1) k. In General. Most Cited Cases



228 Judgment KeyCite Notes
228XIV Conclusiveness of Adjudication
228XIV(C) Matters Concluded
228k715 Identity of Issues, in General
228k715(2) k. What Constitutes Identity of Issues. Most Cited Cases



228 Judgment KeyCite Notes
228XIV Conclusiveness of Adjudication
228XIV(C) Matters Concluded
228k723 Essentials of Adjudication
228k724 k. In General. Most Cited Cases

Contempt order and judgment previously entered in copyright infringement action brought against Chapter 7 debtor in his capacity as owner of store that engaged in retail distribution of movies, which assessed damages in maximum amount permitted under the Copyright Act upon finding that debtor had acted willfully by continuing to distribute unauthorized copies of copyrighted works nearly one year after having been preliminarily enjoined from doing so, collaterally estopped debtor from disputing willful nature of injury that his acts inflicted on creditor; issues presented in earlier copyright action and subsequent nondischargeability proceeding were the same, issue of willfulness was actually litigated in earlier action, district court's decision thereon was necessary to damages award that it had made, and debtor had full and fair opportunity to litigate issue in earlier action. 11 U.S.C.A. § 523(a)(6); 17 U.S.C.A. § 504(c)(2).



[13] KeyCite Notes

51 Bankruptcy
51X Discharge
51X(C) Debts and Liabilities Discharged
51X(C)5 Torts and Crimes
51k3374 Willful or Malicious Injury
51k3374(5) k. Malice; Malicious Injury. Most Cited Cases



51 Bankruptcy KeyCite Notes
51X Discharge
51X(C) Debts and Liabilities Discharged
51X(C)5 Torts and Crimes
51k3374 Willful or Malicious Injury
51k3374(6) k. Spite, Hatred, or Ill Will. Most Cited Cases



⇐51 Bankruptcy KeyCite Notes
 ⇐51X Discharge
  ⇐51X(C) Debts and Liabilities Discharged
   ⇐51X(C)5 Torts and Crimes
    ⇐51k3374 Willful or Malicious Injury
     ⇐51k3374(7) k. Just Cause or Excuse. Most Cited Cases

"Malicious" injury, of kind required by dischargeability exception, is injury that is wrongful and without just cause or excuse, even in absence of personal hatred, spite or ill-will. 11 U.S.C.A. § 523(a)(6).

[14] KeyCite Notes 

⇐51 Bankruptcy
 ⇐51X Discharge
  ⇐51X(C) Debts and Liabilities Discharged
   ⇐51X(C)5 Torts and Crimes
    ⇐51k3374 Willful or Malicious Injury
     ⇐51k3374(2) k. Willful, Deliberate, or Intentional Injury. Most Cited Cases

⇐51 Bankruptcy KeyCite Notes
 ⇐51X Discharge
  ⇐51X(C) Debts and Liabilities Discharged
   ⇐51X(C)5 Torts and Crimes
    ⇐51k3374 Willful or Malicious Injury
     ⇐51k3374(5) k. Malice; Malicious Injury. Most Cited Cases

"Malice," of kind required by dischargeability exception, may be actual or constructive, and may be found where debtor breaches a statutory duty willfully, in sense of acting with deliberate intent, in circumstances where it is evident that debtor's conduct will cause injury to creditor and under some aggravating circumstance. 11 U.S.C.A. § 523(a)(6).

[15] KeyCite Notes 

⇐51 Bankruptcy
 ⇐51X Discharge
  ⇐51X(C) Debts and Liabilities Discharged
   ⇐51X(C)5 Torts and Crimes
    ⇐51k3374 Willful or Malicious Injury
     ⇐51k3374(2) k. Willful, Deliberate, or Intentional Injury. Most Cited Cases

⇐51 Bankruptcy KeyCite Notes
 ⇐51X Discharge
  ⇐51X(C) Debts and Liabilities Discharged
   ⇐51X(C)5 Torts and Crimes
    ⇐51k3374 Willful or Malicious Injury
     ⇐51k3374(5) k. Malice; Malicious Injury. Most Cited Cases

Malice, of kind required by dischargeability exception, does not require a manifestation of personal

animus or intent to do harm. 11 U.S.C.A. § 523(a)(6).



[16] KeyCite Notes

⇐51 Bankruptcy
   ⇐51X Discharge
      ⇐51X(C) Debts and Liabilities Discharged
         ⇐51X(C)5 Torts and Crimes
            ⇐51k3374 Willful or Malicious Injury
               ⇐51k3374(2) k. Willful, Deliberate, or Intentional Injury. Most Cited Cases



⇐51 Bankruptcy KeyCite Notes
   ⇐51X Discharge
      ⇐51X(C) Debts and Liabilities Discharged
         ⇐51X(C)5 Torts and Crimes
            ⇐51k3374 Willful or Malicious Injury
               ⇐51k3374(5) k. Malice; Malicious Injury. Most Cited Cases

"Malice" element of "willful and malicious injury" dischargeability exception may be satisfied by proof that debtor willfully violated court order, even if the cause of action giving rise to court order did not itself require a showing of malice. 11 U.S.C.A. § 523(a)(6).



[17] KeyCite Notes

⇐51 Bankruptcy
   ⇐51X Discharge
      ⇐51X(D) Determination of Dischargeability
         ⇐51k3401 Evidence
            ⇐51k3403 Presumptions and Burden of Proof
               ⇐51k3403(12) k. Willful or Malicious Injury. Most Cited Cases

"Malice," of kind required by dischargeability exception, may be implied from debtor's acts and conduct in context of surrounding circumstances. 11 U.S.C.A. § 523(a)(6).



[18] KeyCite Notes

⇐51 Bankruptcy
   ⇐51X Discharge
      ⇐51X(C) Debts and Liabilities Discharged
         ⇐51X(C)5 Torts and Crimes
            ⇐51k3374 Willful or Malicious Injury
               ⇐51k3374(5) k. Malice; Malicious Injury. Most Cited Cases

Court may find "malice," of kind required by dischargeability exception, when anyone of reasonable intelligence would know that act in question was contrary to commonly accepted duties in ordinary relationships among people and was injurious to another. 11 U.S.C.A. § 523(a)(6).



[19] KeyCite Notes

☞228 Judgment
   ☞228XIV Conclusiveness of Adjudication
      ☞228XIV(C) Matters Concluded
         ☞228k723 Essentials of Adjudication
            ☞228k725 Facts Necessary to Sustain Judgment
               ☞228k725(5) k. Indebtedness or Liability in General. Most Cited Cases

Contempt order and judgment previously entered in copyright infringement action brought against Chapter 7 debtor in his capacity as owner of store that engaged in retail distribution of movies, which assessed damages in maximum amount permitted under the Copyright Act upon finding that debtor had continued to distribute unauthorized copies of copyrighted works nearly one year after having been preliminarily enjoined from doing so, collaterally estopped debtor from disputing malicious nature of injury that he inflicted on creditor, notwithstanding assertion by debtor that damages were assessed for acts committed by store employees, for which he was only vicariously liable; in assessing damages in maximum amount, district court found many of the offending videocassettes and DVD recordings were easily recognizable as counterfeit, and gave careful consideration to whether debtor's conduct was wrongful and without just cause or excuse. 11 U.S.C.A. § 523(a)(6).

[20] KeyCite Notes 

☞51 Bankruptcy
   ☞51X Discharge
      ☞51X(C) Debts and Liabilities Discharged
         ☞51X(C)5 Torts and Crimes
            ☞51k3374 Willful or Malicious Injury
               ☞51k3374(8) Particular Injuries
                  ☞51k3374(9) k. In General; Fraud. Most Cited Cases

While, as general rule, "willful and malicious injury" dischargeability exception does not apply to debts arising from debtor's vicarious liability for acts of another, doctrine of vicarious liability cannot shield debtor from finding of "malice" if debtor had notice of injury being inflicted by its agents or employees and could have, but did not, prevent it. 11 U.S.C.A. § 523(a)(6).

***122** Asim R. Shaikh, Poppe & Bhouraskar, LLP, New York, NY, for Yash Raj Films (USA), Inc.,

John W. Reeves, Law Office of Shakeel H. Kazmi, Jackson Heights, NY, for Naseem Akhtar.

MEMORANDUM DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

ELIZABETH S. STONG, Bankruptcy Judge.
Yash Raj Films (USA), Inc. ("Yash Raj"), the plaintiff in this adversary proceeding (the "Adversary Proceeding"), moves for summary judgment (the "Summary Judgment Motion") on its complaint (the "Complaint") against Naseem Akhtar, the debtor in this Chapter 7 case (the "Debtor"). Yash Raj seeks a determination that the debt arising out of a judgment entered in a federal copyright infringement action against the Debtor, *Yash Raj Films (USA) Inc. v. Bobby Music Co. & Sporting Goods Inc.,* No. 01-CV-8378 (JFB)(CLP) (the "Copyright Action"), is nondischargeable under ***123** Section 523(a)(6) of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor opposes the Motion for Summary Judgment and moves for summary judgment in his favor (the "Cross Motion for Summary Judgment").

The matter came before the Court at hearings on January 23, 2007, and February 6, 2007, at which counsel for Yash Raj and counsel for the Debtor appeared and were heard. After consideration of the submissions, the arguments of counsel, and the record before the Court, for the reasons set forth below, Yash Raj's Summary Judgment Motion is granted and the Debtor's Cross Motion for Summary

Judgment is denied.

## Jurisdiction

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(I). The following constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## Background

Yash Raj is a New York corporation that is engaged in the manufacturing, reproduction, importing, marketing, and sale of Indian films for viewing in theaters and on VHS cassette and DVD. Declaration of Asim Shaikh in Support of Plaintiff's Motion for Summary Judgment dated December 18, 2006 ("Shaikh Decl.") ¶ 4. Yash Raj owns the copyrights and exclusive distribution rights to its motion pictures in the United States and Canada. Shaikh Decl. ¶ 5. The Debtor was the sole owner of Bobby Music Co. & Sporting Goods, Inc. ("Bobby Music"), a New York corporation that was engaged in the retail distribution of, among other items, VHS cassettes and DVDs from January 2001 until April 2004. Cross Motion for Summary Judgment at 1. *See also* Copyright Summary Judgment Order at *1.

On December 17, 2001, Yash Raj filed a copyright infringement action in the United States District Court for the Eastern District of New York against Bobby Music and the Debtor under Sections 106 and 501 of Title 17 of the United States Code (the "Copyright Act"). *Yash Raj Films (USA), Inc. v. Bobby Music Co. & Sporting Goods, Inc.*, No. 01-CV-8378.[FN1] That same day, the District Court issued an order of seizure (the "Order of Seizure") authorizing Yash Raj to enter Bobby Music with the assistance of the United States Marshals to seize unauthorized copies of Yash Raj films. Copyright Action Docket, Entry 2. The District Court also issued an Order to Show Cause directing the Debtor to appear at a hearing on January 7, 2002, to show cause why the court should not enter a preliminary injunction enjoining the Debtor and Bobby Music from distributing unauthorized copies of Yash Raj films. Copyright Action Docket, Entry 2.

> FN1. The procedural history of the Copyright Action is set forth in *Yash Raj Films (USA), Inc. v. Bobby Music Co. & Sporting Goods, Inc.*, 2006 WL 2792756, at *3-*5 (E.D.N.Y. Sept. 27, 2006) (the "Contempt Order").

On December 19, 2001, Yash Raj executed the Order of Seizure at Bobby Music and recovered sixty-four VHS cassettes and twenty-nine DVDs containing unauthorized copies of Yash Raj films (the "December 2001 Raid"). Contempt Order at *3. On January 7, 2002, the Debtor did not appear at the Order to Show Cause Hearing, and the District Court issued a preliminary injunction (the "Preliminary Injunction") enjoining the Debtor from:

reproducing, displaying, copying, compiling, and distributing unauthorized copies of motion pictures in which Plaintiff holds the copyrights and exclusive rights *124 under copyright or otherwise infringing Plaintiff's copyrights in any manner whatsoever and in any form, and from assisting, conspiring or authorizing any third person or party to reproduce, display, copy, compile and distribute unauthorized copies of motion pictures in which Plaintiff holds the copyrights or exclusive rights under the copyright, or otherwise infringe Plaintiff's copyrights in any manner whatsoever and in any form....

Copyright Action Docket, Entry 4. On January 24, 2002, Yash Raj served the Debtor with the Preliminary Injunction. Shaikh Decl. ¶ 10(f).

On November 16, 2002, the New York City Police Department seized numerous VHS cassettes and DVDs during a raid at Bobby Music (the "November 2002 Raid"), including unauthorized copies of eleven Yash Raj titles. Contempt Order at *3, *5.

On March 31, 2004, Yash Raj moved for an order of contempt under 18 U.S.C. § 401 (the "Contempt Motion"). Copyright Action Docket, Entry 93. Section 401 provides:

A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as-... (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

18 U.S.C. § 401. Yash Raj sought the equivalent of the statutory damages available under Sections 504(c)(1) and (2) of the Copyright Act and attorneys' fees for violations of the Preliminary Injunction in lieu of actual damages. Contempt Order at *11. Yash Raj argued that it was entitled to an award equal to the maximum amount of statutory damages available under the Copyright Act because the Debtor had willfully violated the District Court's order. *Id.*

On August 5, 2004, the Debtor filed a Chapter 7 petition commencing this bankruptcy case. Bankruptcy Case Docket, Entry 1. On November 12, 2004, Yash Raj commenced this Adversary Proceeding, in which it seeks an order under Section 523(a)(6) determining "that Plaintiff's claims by virtue of [the Debtor's] willful, intentional and malicious infringements of Plaintiff's copyrights are nondischargeable." Complaint ¶ A. On April 1, 2005, Yash Raj filed a Motion for Relief from the Automatic Stay, which was granted by this Court by order entered on July 8, 2005, allowing the Copyright Action to proceed. Bankruptcy Case Docket, Entries 12, 19, 24.

On April 28, 2006, Magistrate Judge Cheryl Pollak held a hearing on the Contempt Motion, at which counsel for Yash Raj and counsel for the Copyright Action defendants, including the Debtor, appeared and were heard. Contempt Order at *2. Jawahar Sharma, Yash Raj's Head of Operations for North America, testified that many of the unauthorized copies of Yash Raj films seized in the November 2002 Raid were the same titles and bore similar characteristics to those seized from Bobby Music in the December 2001 Raid. Contempt Order at *4, *8.

On July 5, 2006, Judge Pollak issued a report and recommendation (the "Report and Recommendation") recommending that the Contempt Motion be granted. Contempt Order at *1. Judge Pollak found that the Debtor's violation of the Preliminary Injunction warranted a finding of contempt because the Preliminary Injunction was " 'clear and unambiguous,' " the proof of non-compliance was " 'clear and convincing,' " and the Debtor was "not 'reasonably diligent and energetic in attempting to accomplish what was ordered.'*125 " Contempt Order at *6, *11 (internal citations omitted).

As to damages, Judge Pollak found that the Debtor was "fully aware of the Preliminary Injunction against, *inter alia,* 'displaying ... and distributing unauthorized copies of motion pictures in which the Plaintiff holds the copyrights and exclusive rights under copyright or otherwise infringing Plaintiff's copyrights in any manner whatsoever and in any form....' " Contempt Order at *14. Judge Pollak also found that since the police seized copies of eleven different films that were "easily recognizable" as unauthorized during the November 2002 Raid, the Debtor had "willfully violated the Preliminary Injunction issued by the district court on January 7, 2002." *Id.* Judge Pollak recommended that the Yash Raj be awarded an amount equal to the maximum available statutory damages in the amount of $330,000, comprised of $30,000 for each of the eleven counterfeit Yash Raj titles seized at the November 2002 Raid. *Id.* Judge Pollak also found that Yash Raj should be awarded reasonable attorneys' fees and costs. Contempt Order at *15.

The Debtor objected to the Report and Recommendation. Contempt Order at *1. On September 5, 2006, District Judge Joseph Bianco held a hearing on those objections, at which counsel for Yash Raj and counsel for the Debtor appeared and were heard. *Id.* On September 27, 2006, Judge Bianco entered an order finding the Debtor's objections to be without merit and adopting the Report and Recommendation in full. Contempt Order at *2.

On April 21, 2006, Yash Raj made a motion for summary judgment in the Copyright Action. *Yash Raj Films (USA), Inc. v. Bobby Music Co. & Sporting Goods, Inc.,* No. 01-CV-8378, 2006 WL 2853874, at *2 (E.D.N.Y. Sept. 29, 2006) (the "Copyright Summary Judgment Order"). On May 26, 2006, the

Debtor made a cross motion for summary judgment. *Id.* On September 29, 2006, Judge Bianco granted summary judgment in favor of Yash Raj and denied the Debtor's cross motion for summary judgment. Copyright Summary Judgment Order at *5. The District Court also permanently enjoined the Debtor from infringing Yash Raj's copyrights in any manner or form. *Id.*

On December 22, 2006, Yash Raj filed this Summary Judgment Motion along with a Declaration of Yash Raj's counsel and a Memorandum of Law in support. Adversary Docket, Entry 20. Yash Raj argues that the issue of whether its claim arises out of a "willful and malicious injury by the [D]ebtor" was fully litigated before the District Court in the Copyright Action. Shaikh Decl. ¶ 21. Yash Raj also argues that collateral estoppel applies and that there are no material facts at issue. Shaikh Decl. ¶¶ 22, 23. For these reasons, Yash Raj argues that it is entitled to summary judgment as a matter of law on its nondischargeability claim under Section 523(a)(6). Shaikh Decl. ¶ 23.

On January 16, 2007, the Debtor responded and made a Cross Motion for Summary Judgment. Cross Motion for Summary Judgment at 4. The Debtor argues that the Contempt Order and the Summary Judgment Order do not establish that he acted willfully and maliciously for purposes of Section 523(a)(6). *Id.* The Debtor requests that this Court issue summary judgment in his favor. *Id.*

## Discussion

### A. *The Standard for Summary Judgment*
Under Federal Rule of Civil Procedure 56(c), made applicable to this Adversary Proceeding by Bankruptcy Rule 7056, summary judgment is appropriate when " 'the pleadings, depositions, answers to *126 interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting FED. R. CIV. P. 56(c)). *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "A fact is material only if it affects the result of the proceeding and a fact is in dispute only when the opposing party submits evidence such that a trial would be required to resolve the differences." *Hassett v. Altai, Inc. (In re CIS Corp.),* 214 B.R. 108, 118 (Bankr.S.D.N.Y.1997).

The moving party has the burden of demonstrating the absence of any genuine issue of material fact, and all of the inferences to be drawn from the underlying facts must be viewed by the Court in the light most favorable to the party opposing the motion. *See Anderson,* 477 U.S. at 249, 255, 106 S.Ct. 2505; *Hayut v. State Univ. of N.Y.,* 352 F.3d 733, 743 (2d Cir.2003). To defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Rather, it must present "significant probative evidence" that a genuine issue of fact exists. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of fact for trial and summary judgment is appropriate. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. *See McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir.2006).

### B. *The Summary Judgment Motions*
Yash Raj seeks summary judgment on its claim that the debt arising out of the Copyright Action should be excepted from discharge under Section 523(a)(6) of the Bankruptcy Code. Under this section, a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is nondischargeable. 11 U.S.C. § 523(a)(6). Yash Raj argues that the District Court has already determined in the Copyright Action that the Debtor's "continuing violations of [the] Plaintiff's copyrights were executed with the requisite willfulness and malice necessary to have this Court declare the resultant debts nondischargeable in Bankruptcy." Shaikh Decl. ¶ 7. Yash Raj asserts that collateral estoppel applies and that because there is no genuine issue of material fact, it is entitled to a judgment as a matter of law that the damages awarded against the Debtor in the

Contempt Order are nondischargeable. Shaikh Decl. ¶ 23.

The Debtor opposes the Summary Judgment Motion and seeks summary judgment in his favor. Cross Motion for Summary Judgment at 4. The Debtor argues that although the District Court found that he willfully violated the Preliminary Injunction, the Contempt Order and the Copyright Summary Judgment Order do not establish that he acted willfully and maliciously toward Yash Raj. *Id.* The Debtor states that the District Court did not "suggest that the Debtor had manufactured or was the person causing and directing the infringing acts," but rather found that he failed "adequately [to] supervise his workers and inspect the inventory for pirated products." *Id.*

C. *Establishing Nondischargeability Under Section 523(a)(6)*

[1]  Section 523 of the Bankruptcy Code provides:

*127 (a) A discharge under section 727 … of this title does not discharge an individual debtor from any debt-

…

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

11 U.S.C. § 523(a)(6). Courts construe exceptions to discharge narrowly, and in favor of the debtor. *Cazenovia College v. Renshaw (In re Renshaw),* 222 F.3d 82, 86 (2d Cir.2000). *See* 4 COLLIER ON BANKRUPTCY ¶ 523.05 (15th ed. rev.2006) ("the statute should be strictly construed against the objecting creditor and liberally in favor of the debtor"). This rule of construction gives effect to the bankruptcy goal of providing honest debtors with a "new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *In re Renshaw,* 222 F.3d at 86. *See Empire Bonding Agency v. Lopes (In re Lopes),* 339 B.R. 82, 86 (Bankr.S.D.N.Y.2006) (discharge exceptions "are to be narrowly construed in favor of a debtor, …, to effectuate the fresh start purposes of the bankruptcy laws, because '[p]ublic policy favors the discharge of the honest debtor …' ") (internal citations omitted).

[2] [3] In seeking an exception to discharge, the creditor bears the burden of proof by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). To succeed on a nondischargeability claim under Section 523(a)(6), a creditor must satisfy two elements. First, the creditor must establish that the debtor acted willfully in committing the injury. Second, the creditor must establish that the debtor acted maliciously in committing the injury. *See generally* 4 COLLIER ON BANKRUPTCY ¶ 523.12[2] (15th ed. rev.2006) (in order for a debt "[t]o fall within the exception of section 523(a)(6), the injury to an entity or property must have been willful and malicious").

[4] "Willfulness" and "malice" are distinct elements of Section 523(a)(6). *Collora v. Leahy (In re Leahy),* 170 B.R. 10, 15 (Bankr.D.Me.1994). "Willfulness" and "malice" cannot be "lumped together to create an amorphous standard to prevent discharge for any conduct that may be judicially considered to be deplorable." *Barclays American/Business Credit v. Long (In re Long),* 774 F.2d 875, 881 (8th Cir.1985). *See also Rupert v. Krautheimer (In re Krautheimer),* 210 B.R. 37, 48 (Bankr.S.D.N.Y.1997). Accordingly, this Court shall analyze these elements in turn.

*Whether Yash Raj Has Established Willfulness*

[5]   [6]    The first element that the Court must address is whether the Debtor's injurious actions were "willful." The term "willful" as used in Section 523(a)(6) means "deliberate or intentional." S. REP. NO. 95-989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5865; H.R. REP. NO. 95-595 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6320. *See* BLACK'S LAW DICTIONARY 1630 (8th ed.2004) (defining "willful" as "voluntary and intentional, but not necessarily malicious"). *See also Kawaauhau v. Geiger,* 523 U.S. 57, 61 n. 3, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). A willful injury requires "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau,* 523 U.S. at 61, 118 S.Ct. 974 (holding that injuries arising from negligent or reckless conduct do not meet the Section 523(a)(6) standard of "willful and malicious injury").

[7]    The willfulness element may be satisfied if the debtor had actual knowledge ***128** that he or she was violating the law and the intent to bring about injury. For example, in *Yash Raj Films (USA) v. Ahmed (In re Ahmed),* 359 B.R. 34 (Bankr.E.D.N.Y.2005), the plaintiffs argued that an award of enhanced statutory damages for copyright infringement was nondischargeable under Section 523(a)(6). The bankruptcy court found:

[Section 523(a)(6)'s "willfulness" requirement is satisfied] because the debtor had actual knowledge that he was violating the Copyright Act, and continued to do so despite the warnings, demonstrating not only an intent to commit the intentional act of selling the DVDs, but also an intent to inflict injury. The debtor knew that the injury was avoidable or substantially certain to occur because of his conduct.

*In re Ahmed,* 359 B.R. at 41.

The bankruptcy court noted that in awarding enhanced statutory damages, the district court found that the defendant engaged in willful copyright infringement by selling DVDs on an internet auction site with actual or constructive knowledge that they were unauthorized copies of the plaintiff's copyrighted material, and held that the issue of willfulness in the dischargeability action was identical to the issues resolved by the district court in the copyright action. *In re Ahmed,* 359 B.R. at 41-42. The bankruptcy court concluded that the debtor was collaterally estopped from relitigating those issues. *Id.*

[8]    Yash Raj argues that the willfulness element of its Section 523(a)(6) claim is established by operation of collateral estoppel because the district court necessarily addressed and resolved the same issue in the Copyright Action. Shaikh Decl. ¶ 23. Collateral estoppel establishes the preclusive effect of a prior judgment and prevents the relitigation of issues already decided by courts of competent jurisdiction. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326-27, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Ball v. A.O. Smith Corp.,* 451 F.3d 66, 69 (2d Cir.2006).

The Debtor responds by arguing that the District Court did not find that the Debtor "actually meant any deliberate or intentional harm to the Plaintiff or even had substantial certainty that his business would harm the Plaintiff" and that even if he did "possess items for sale protected under the Copyright Law, such possession for sale does not give rise to willfulness...." Cross Motion for Summary Judgment at 3.

[9]   [10]   [11]    The requirements for collateral estoppel, as stated by the Second Circuit Court of Appeals, are:

"(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."

*Ball*, 451 F.3d at 69 (quoting *Purdy v. Zeldes*, 337 F.3d 253, 258 (2d Cir.2003)). Collateral estoppel applies in dischargeability actions and may be invoked "to preclude relitigation of the elements necessary to meet a § 523 exception." *Ball*, 451 F.3d at 69 (citing *Grogan*, 498 U.S. at 285 n. 11, 111 S.Ct. 654). The court must determine whether "the issues presented by this litigation are in substance the same as those resolved in [prior litigation]; whether controlling facts or legal principles have changed significantly since the [prior litigation]; and finally, whether special circumstances warrant exception to the normal rules of preclusion." *Montana v. United States*, 440 U.S. 147, 155, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). *See also *129 ITT Corp. v. United States*, 963 F.2d 561, 564 (2d Cir.1992); *Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Group*, 937 F.Supp. 276, 284 (S.D.N.Y.1996).

[12]    Here, three "essential elements" were necessary to the District Court's finding of civil contempt for violation of the Preliminary Injunction. Contempt Order at *6. These were that the order that the Debtor violated was "clear and unambiguous"; that the proof of non-compliance was "clear and convincing"; and that the Debtor was not "reasonably diligent and energetic in attempting to accomplish what was ordered." *Id.* The District Court found that each of these elements was satisfied, and held the Debtor in civil contempt. Contempt Order at *2, *11.

The District Court also considered the nature and extent of the damages. The court observed that "[c]ourts in the Second Circuit have determined awards for compensatory damages in the context of an order for civil contempt using proxies for actual damages, where the actual damages were difficult to determine." Contempt Order at *11. Yash Raj argued, and the District Court agreed, that statutory damages for copyright violations provided "the relevant measure of damages in the context of this motion for contempt." Contempt Order at *12.

A plaintiff in a copyright infringement action may seek compensatory damages including actual damages, attorneys' fees, and costs. *See Chere Amie, Inc. v. Windstar Apparel, Corp.*, 175 F.Supp.2d 562, 565 (S.D.N.Y.2001) ( "[t]he purpose of civil contempt is coercive and compensatory rather than punitive"; contempt damages should "compensate the injured party for losses resulting from the contemptuous conduct").

Alternatively, a plaintiff may seek statutory damages under Section 504(c)(1) of the Copyright Act. This section provides:

... the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which one infringer is liable individually or for which any two or more infringers are liable jointly and severally, in the sum of not less than $750 or more than $30,000 as the court considers just.

17 U.S.C. § 504(c)(1). *See Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1380 (2d Cir.1993). That is, a plaintiff may seek up to $30,000 in statutory damages in respect of each infringed work.

If statutory damages are inadequate, a plaintiff may also seek enhanced statutory damages under Section 504(c)(2) of the Copyright Act. This section provides:

In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200.

17 U.S.C. § 504(c)(2). *See Island Software and Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d

257, 262-63 (2d Cir.2005).

Yash Raj asked the District Court to award $330,000 in contempt damages, on grounds that the Debtor's violation of the Preliminary Injunction was willful. Contempt Order at *11. Yash Raj noted that the Debtor and Bobby Music were also **\*130** defendants in *Archlightz and Films Pvt. Ltd. v. Vijay,* No. 01 CV 7643(DEW)(SMG) (the "Archlightz Action"), a similar copyright infringement action brought by a different film company. Contempt Order at *13. In the Archlightz Action, on December 3, 2001, the District Court entered a preliminary injunction enjoining Bobby Music from infringing Archlightz's copyrights (the "Archlightz Preliminary Injunction"). *Id.*

The District Court found that the Debtor was aware of both the Preliminary Injunction in the Yash Raj matter and the Archlightz Preliminary Injunction and willfully violated the court's orders. Contempt Order at *13-*14. As the court stated, "the plaintiff has established that defendants willfully violated the Preliminary Injunction...." Contempt Order at *14. The District Court found:

many of the seized videocassettes and DVDs [were] easily recognizable as counterfeit, even in the absence of any specialized knowledge or training in film marketing. These titles would have been readily noticeable by the employees conducting Bobby Music's day-to-day operations; their continued possession evidences the willfulness of [the Debtor's and Bobby Music's] violation.

*Id.*

The District Court awarded contempt damages corresponding to the maximum Section 504(c)(1) statutory damages of $30,000 for each of the eleven titles seized in the November 2002 Raid, for a total damages award of $330,000. *Id.* The District Court observed:

the baseline statutory damage award of $30,000 per violation, when multiplied by the defendant's eleven violations, results in a greater amount ($330,000) than that to which the Court may discretionarily increase the total award in the case of a willful violation ($150,000).

*Id.*

Based on the entire record, the Court concludes that Yash Raj has demonstrated that each of the elements of collateral estoppel is satisfied with respect to the element of willfulness under Section 523 (a)(6). First, the identical issue of willfulness was raised in a previous proceeding, the Copyright Action. Second, the issue of willfulness was actually litigated and decided in the Copyright Action. Third, the parties had a full and fair opportunity to litigate the issue of willfulness in the Copyright Action. And finally, the District Court's finding of willfulness was necessary to support its valid and final judgment that the Debtor was in contempt of the Preliminary Injunction and that contempt damages corresponding to the maximum statutory damages under the Copyright Act should be awarded. *See Ball,* 451 F.3d at 69. For these reasons, Yash Raj has established the willfulness element of its Section 523(a)(6) claim.

*Whether Yash Raj Has Established Malice*

[13]    The next element that the Court must address is whether the Debtor acted with "malice." As used in Section 523(a)(6), a malicious injury is an injury that is " 'wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will.' " *Ball,* 451 F.3d at 69 (quoting *Navistar Fin. Corp. v. Stelluti (In re Stelluti),* 94 F.3d 84, 87 (2d Cir.1996)). *See* BLACK'S LAW DICTIONARY 976 (8th ed.2004) (defining "malice" as "the intent, without justification or excuse, to commit a wrongful act").

[14]    Malice may be actual or constructive, and may be found where a debtor breaches a statutory duty " 'willfully in the sense of acting with deliberate intent, in circumstances where it is evident that the conduct will cause injury to the plaintiff **\*131** and under some aggravating

circumstance to warrant the denial of discharge.' " *Voyatzoglou v. Hambley (In re Hambley),* 329 B.R. 382, 402 (Bankr.E.D.N.Y.2005) (quoting *Bundy American Corp. v. Blankfort (In re Blankfort),* 217 B.R. 138, 144 (Bankr.S.D.N.Y.1998)).

[15]  Malice does not require a manifestation of personal animus or intent to do harm. For example, in *Bundy American Corp. v. Blankfort (In re Blankfort),* 217 B.R. 138 (Bankr.S.D.N.Y.1998), the debtor's franchise agreement to operate a "RENT-A-WRECK" motor vehicle rental franchise was terminated, but she continued to operate the business. *In re Blankfort,* 217 B.R. at 140. Bundy American Corp. ("Bundy") brought a trademark action in district court and obtained an injunction against the debtor's use of its trade and service marks and logo, but the debtor did not desist. *Id.* The district court awarded contempt damages against the debtor for her "blatant and willful violation" of its orders. *In re Blankfort,* 217 B.R. at 141. Bundy then sought a determination that the contempt damages were nondischargeable under Section 523(a)(6) in the debtor's bankruptcy case. *In re Blankfort,* 217 B.R. at 140.

The bankruptcy court surveyed the law in the Second Circuit and elsewhere, and observed:

The issue ... is whether conduct can be found to be "malicious" within the meaning of [Section 523(a)(6) ] in the absence of proof that the debtor acted with genuine malevolence demonstrating an actual intent to inflict harm on the party injured, sometimes referred to as "Biblical malice." The majority of the reported decisions, and the cases in the Second Circuit, hold that the party seeking to avoid discharge under section 523(a)(6) need not establish actual malevolence in the sense of an intent to inflict injury.

*In re Blankfort,* 217 B.R. at 143.

[16]  The bankruptcy court further found that the malice element of Section 523(a)(6) may be satisfied by proof that the debtor willfully violated a court order. The court stated:

*The District Court finding of "blatant and willful" contempt of court orders by the ... Debtor, which is binding upon this Court under the doctrine of collateral estoppel, constitutes the type of aggravated misconduct which warrants an imputation of malice within the meaning of section 523(a)(6).* A person who persists unabated in unlawful conduct, after the entry of a court order specifically and unambiguously enjoining such conduct ... cannot be characterized as the "honest but unfortunate" debtor whom Congress intended to favor with the extraordinary relief of a discharge in bankruptcy.

*In re Blankfort,* 217 B.R. at 146 (emphasis added).

This is so even if the claim giving rise to the court order does not itself require a showing of malice. As the bankruptcy court found in *In re Ahmed,* if a "finding that the debtor deliberately disregarded warnings was necessary to the District Court's judgment [awarding enhanced statutory damages], the subsumed finding of malice may be given preclusive effect." *In re Ahmed,* 359 B.R. at 43. *Cf.* Contempt Order at *13 ("In determining whether a defendant has acted willfully for purposes of [Section 504(c)(2) ], courts have held that there is no need to find that the infringer acted maliciously.").

[17]  [18]  Malice may also be implied from " 'the acts and conduct of the debtor in the context of [the] surrounding circumstances.' " *In re Ahmed,* 359 B.R. at 42 *132 (quoting *In re Stelluti,* 94 F.3d at 88). That is, a court may find malice " 'when anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another.' " *In re Hambley,* 329 B.R. at 402 (quoting *United Orient Bank v. Green,* 215 B.R. 916, 928 (S.D.N.Y.1997)).

[19] Yash Raj argues that the malice element of its Section 523(a)(6) claim, like the willfulness element, is established by operation of collateral estoppel because the District Court necessarily decided the same issue in the Copyright Action. Shaikh Decl. ¶ 23. Yash Raj asserts that the District Court determined that the Debtor acted wrongfully and without just cause or excuse when it concluded that he willfully violated the Preliminary Injunction and awarded contempt damages for those violations. *Id.*

The Debtor responds that collateral estoppel does not apply to the malice element because the District Court determined only that he "should have known or should have been more diligent in the supervision of his store manager to avoid distributing Yash Raj's copyrighted materials." Cross Motion for Summary Judgment at 3. The Debtor asserts that he delegated the management of Bobby Music to an employee, and did not cause or direct the infringing acts. *Id.* As a result, the Debtor argues that he is vicariously liable for Bobby Music's copyright infringement, but is not accountable for a malicious injury. *Id.*

As described above, the requirements for collateral estoppel are:

"(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."

*Ball,* 451 F.3d at 69 (quoting *Purdy v. Zeldes,* 337 F.3d 253, 258 (2d Cir.2003)). *See* p. 128, *supra.*

The Contempt Order makes plain that the District Court gave careful consideration to whether the Debtor's conduct was " 'wrongful' " and " 'without just cause or excuse.' " *Ball,* 451 F.3d at 69 (quoting *In re Stelluti,* 94 F.3d at 87). As the District Court observed, "[s]ince a contempt order is a 'potent weapon,' courts should be cautious in imposing this sanction if 'there is a fair ground of doubt as to the wrongfulness of the defendant's conduct.' " Contempt Order at *7 (quoting *King v. Allied Vision, Ltd.,* 65 F.3d 1051, 1058 (2d Cir.1995)).

The District Court reviewed the ways in which the Debtor's conduct warranted an award of contempt damages corresponding to the greatest amount of enhanced statutory damages available under the Copyright Act. Contempt Order at *14. The District Court found that "the uncontradicted evidence presented by plaintiff indicates that Bobby Music was on notice of the Order of Preliminary Injunction" and that "[n]evertheless, the copies of eleven films obtained during the November 2002 police seizure indicate that Bobby Music continued to stock and display concededly counterfeit titles." *Id.* The District Court also found "many of the seized videocassettes and DVDs to be easily recognizable as counterfeit, even in the absence of any specialized knowledge or training in film marketing." *Id.*

And the District Court awarded damages of $330,000, corresponding to the maximum statutory damages available under Section 504(c)(1). Contempt Order at *14. The imposition of the maximum statutory damages necessarily required the *133 determination that the Debtor's copyright infringements in violation of the Preliminary Injunction were "wrongful and without just cause or excuse." *Ball,* 451 F.3d at 69. *See In re Ahmed,* 359 B.R. at 42 (malice element satisfied because "the debtor continued to infringe the plaintiff's copyrights in spite of, and indeed in defiance of numerous warnings").

The Debtor's argument that Section 523(a)(6) does not apply to debts arising from injuries for which the debtor bears only vicarious liability is based on a general principle that has been recognized by many courts. *See Davis v. Tomasek (In re Tomasek),* 175 Fed.Appx. 662, 668 n. 4 (5th Cir.2006); *River View Land Co. v. Bucak (In re Bucak),* 278 B.R. 488, 496 n. 7 (Bankr.W.D.Tenn.2002); *Deroche v. Miller (In re Miller),* 196 B.R. 334, 336 (Bankr.E.D.La.1996); *Giuliano v. Albano (In re Albano),* 143 B.R. 323, 325 (Bankr.D.Conn.1992). As the court stated in *In re Albano:*

There is nothing in the language or legislative history of § 523(a)(6) to suggest that common law

notions of vicarious or imputed liability are appended to the statutory exceptions to a discharge in bankruptcy. Quite the contrary, application of vicarious liability would effectively vitiate the § 523(a)(6) requirement that only debts arising from *willful* acts committed by *the debtor* be nondischargeable.

*In re Albano,* 143 B.R. at 325 (emphasis in original).

[20]    But the doctrine of vicarious liability cannot shield a debtor from a finding of malice for purposes of Section 523(a)(6) if the debtor had notice of an injury being inflicted by its agents or employees and could have, but did not, prevent it. For example, in *Atlantic Recording Corp. v. Chan (In re Chan),* 325 B.R. 432 (Bankr.N.D.Cal.2005), the court found that a copyright infringement damages judgment against the chief executive officer of a media company was nondischargeable under Section 523(a)(6) because the debtor controlled the company's operations and, despite being advised of the company's prior infringing acts, did not take steps to prevent the violations. *In re Chan,* 325 B.R. at 448-49.

As the bankruptcy court observed, "[i]t was wrongful to replicate the discs containing sound recordings protected by copyrights owned by others," and "[a]s the person in a position to control [the company's] activities and who actually exercised control, the Debtor was responsible for [the company's] conduct." *In re Chan,* 325 B.R. at 449. *See also Bairstow v. Sullivan (In re Sullivan),* 198 B.R. 417, 424 (Bankr.D.Mass.1996) (debtor's failure to prevent his employees from trespassing and cutting down plaintiff's trees was a nondischargeable willful and malicious injury under Section 523(a)(6)).

Here, the District Court found the Debtor "vicariously liable for copyright infringements which occurred at Bobby Music because he had both a direct financial interest in the sale of the copyrighted materials, and a right and ability to supervise the employee responsible for the sales...." Copyright Summary Judgment Order at *5. But the District Court also held the Debtor in contempt of the Preliminary Injunction, and awarded $330,000, in damages arising out of that contempt. Contempt Order at *14. *See* Copyright Summary Judgment Order at *5. That contempt damages award, not an award of damages arising out of vicarious liability, is the subject of Yash Raj's Section 523(a)(6) claim. *See* Yash Raj's Supplemental Memorandum in Support of the Summary Judgment Motion at 7, Adversary Proceeding Docket, Entry 25. As in *In re Blankfort,* the District Court's "finding of *134 'blatant and willful' contempt of court orders by the ... Debtor, which is binding upon this Court under the doctrine of collateral estoppel, constitutes the type of aggravated misconduct which warrants an imputation of malice within the meaning of section 523(a)(6)." *In re Blankfort,* 217 B.R. at 146.

Based on the entire record, the Court concludes that Yash Raj has demonstrated that each of the elements of collateral estoppel is satisfied with respect to the element of malice under Section 523(a)(6). First, the identical issue of malice, or whether the Debtor's conduct in violating the Preliminary Injunction was wrongful and without just cause or excuse, was raised in a previous proceeding, the Copyright Action. Second, the issue of whether the Debtor's actions were wrongful and without just cause or excuse was actually litigated in the Copyright Action and decided in the Contempt Order. Third, the parties had a full and fair opportunity to litigate the issue in the Copyright Action. Finally, the District Court's finding in the Contempt Order that the Debtor's actions were wrongful and without just cause or excuse was necessary to support its valid and final judgment that the Debtor was in contempt of the Preliminary Injunction and its award of contempt damages corresponding to the maximum statutory damages available under the Copyright Act.

## Conclusion

For all of these reasons and based on the entire record, the Court concludes that there is no genuine issue of material fact that the contempt damages in the amount of $330,000, plus attorneys' fees and costs, awarded against the Debtor by the District Court in the Contempt Order are nondischargeable under Section 523(a)(6), and that Yash Raj is entitled to a judgment as a matter of law. Accordingly,

Yash Raj's Summary Judgment Motion is granted and the Debtor's Cross Motion for Summary Judgment is denied. A separate order in conformity with this Memorandum Decision shall be entered simultaneously herewith.

Bkrtcy.E.D.N.Y.,2007.
In re Akhtar
368 B.R. 120

END OF DOCUMENT

🗎 West Reporter Image (PDF)

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Tools

Copyright © 2008, Thomson/West. | Privacy |  Customer Service: 1-800-REF-ATTY (1-800-733-2889) | Help





**In re Blankfort**
217 B.R. 138
Bkrtcy.S.D.N.Y.,1998.
January 29, 1998 (Approx. 10 pages)

West Reporter Image (PDF)

217 B.R. 138

United States Bankruptcy Court,
S.D. New York.
In re Deborah L. BLANKFORT, Debtor.
BUNDY AMERICAN CORPORATION, Plaintiff,
v.
Deborah L. BLANKFORT, Defendant.
Bankruptcy No. 96 B 20855(ASH).
Adversary No. 96-5133A.
Jan. 29, 1998.

Franchisor which had obtained judgment against Chapter 7 debtor in trademark infringement and contempt proceedings brought adversary proceeding for determination as to dischargeability of judgment debts. On franchisor's motion for summary judgment, the Bankruptcy Court, Adlai S. Hardin, Jr., J., held that: (1) prior district court determination of Chapter 7 debtor's liability for breach of contract and trademark infringement, for continuing to do business under franchisor's logo after debtor's franchise was terminated, did not collaterally estop debtor, in subsequent nondischargeability proceeding, from disputing the "malicious" nature of her conduct; but (2) contempt judgment that was entered against debtor, for repeatedly ignoring injunctive orders that clearly and unambiguously required her to refrain from such infringing conduct, conclusively established the "willful and malicious" nature of debtor's acts.
Partial summary judgment granted.

West Headnotes

[1] KeyCite Notes 

⇐228 Judgment
  ⇐228XIV Conclusiveness of Adjudication
    ⇐228XIV(A) Judgments Conclusive in General
      ⇐228k635 Courts or Other Tribunals Rendering Judgment
        ⇐228k636 k. In General. Most Cited Cases

Collateral estoppel is applicable in dischargeability proceedings. Bankr.Code, 11 U.S.C.A. § 523(a).

[2] KeyCite Notes 

⇐51 Bankruptcy
  ⇐51I In General
    ⇐51I(A) In General
      ⇐51k2002 k. Application of State or Federal Law in General. Most Cited Cases

When issues sought to be precluded were decided by federal court, bankruptcy court must apply the theoretically uniform federal common law of collateral estoppel.

[3] KeyCite Notes  

⇐228 Judgment

228XIV Conclusiveness of Adjudication
  228XIV(A) Judgments Conclusive in General
    228k634 k. Nature and Requisites of Former Adjudication as Ground of Estoppel in General. Most Cited Cases

For prior judgment to be given collateral estoppel effect under the federal common law of collateral estoppel: 1) issues sought to be precluded must be identical to those involved in prior action; 2) issues' determination in prior action must have been essential to prior judgment; 3) issues must have been determined by valid and final judgment; and 4) issues must have been actually litigated in prior action.

[4] KeyCite Notes 

51 Bankruptcy
  51X Discharge
    51X(C) Debts and Liabilities Discharged
      51X(C)5 Torts and Crimes
        51k3374 Willful or Malicious Injury
          51k3374(2) k. Willful, Deliberate, or Intentional Injury. Most Cited Cases
            (Formerly 51k3355(1.10))

"Willful" act, for debt dischargeability purposes, is act which is done deliberately or intentionally. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

[5] KeyCite Notes 

51 Bankruptcy
  51X Discharge
    51X(C) Debts and Liabilities Discharged
      51X(C)5 Torts and Crimes
        51k3374 Willful or Malicious Injury
          51k3374(3) k. Recklessness or Negligence. Most Cited Cases
            (Formerly 51k3355(1.15))

Term "willful," as used in debt dischargeability exception, excludes any form of negligent conduct. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

[6] KeyCite Notes 

51 Bankruptcy
  51X Discharge
    51X(C) Debts and Liabilities Discharged
      51X(C)5 Torts and Crimes
        51k3374 Willful or Malicious Injury
          51k3374(1) k. In General. Most Cited Cases
            (Formerly 51k3355(1))

"Willful and malicious injury" exception to debt dischargeability applies to a wide variety of commercial and financial conduct and is not limited only to noncommercial conduct. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

[7] KeyCite Notes 

⇐51 Bankruptcy
 ⇐51X Discharge
  ⇐51X(C) Debts and Liabilities Discharged
   ⇐51X(C)5 Torts and Crimes
    ⇐51k3374 Willful or Malicious Injury
     ⇐51k3374(5) k. Malice; Malicious Injury. Most Cited Cases
      (Formerly 51k3355(1.25))

⇐51 Bankruptcy KeyCite Notes 
 ⇐51X Discharge
  ⇐51X(D) Determination of Dischargeability
   ⇐51k3401 Evidence
    ⇐51k3403 Presumptions and Burden of Proof
     ⇐51k3403(12) k. Willful or Malicious Injury. Most Cited Cases
      (Formerly 51k3420(10))

Statutory element of "maliciousness" will be found by imputation, in proceeding to except debt from discharge based on debtor's "willful and malicious" conduct, where debtor has breached duty to the plaintiff that is founded in contract, statute or tort law, willfully in the sense of acting with deliberate intent, in circumstances where it is evident that conduct will cause injury to plaintiff and, most important, and under some aggravating circumstance such as will warrant denial of discharge. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

[8] KeyCite Notes 

⇐51 Bankruptcy
 ⇐51X Discharge
  ⇐51X(C) Debts and Liabilities Discharged
   ⇐51X(C)5 Torts and Crimes
    ⇐51k3374 Willful or Malicious Injury
     ⇐51k3374(5) k. Malice; Malicious Injury. Most Cited Cases
      (Formerly 51k3355(1.25))

Absent a finding of "Biblical malice," ordinary tort or breach of contractual or statutory duty generally is not sufficient basis to refuse to discharge debt, as one for debtor's "willful and malicious injury" to person or property of another, without some aggravating circumstance evidencing conduct so reprehensible as to warrant denial of the "fresh start" to which debtor would normally be entitled. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

[9] KeyCite Notes 

⇐228 Judgment
 ⇐228XIV Conclusiveness of Adjudication
  ⇐228XIV(C) Matters Concluded
   ⇐228k734 Matters Not in Issue
    ⇐228k735 k. In General. Most Cited Cases

Prior district court determination of Chapter 7 debtor's liability for breach of contract and trademark

infringement, for continuing to do business under franchisor's logo after debtor's franchise was terminated, did not collaterally estop debtor, in subsequent nondischargeability proceeding, from disputing the "malicious" nature of her conduct, particularly where district court had refused to award punitive damages against debtor. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

[10] KeyCite Notes 

　⇐228 Judgment
　　⇐228XIV Conclusiveness of Adjudication
　　　⇐228XIV(A) Judgments Conclusive in General
　　　　⇐228k643 Nature of Action or Other Proceeding
　　　　　⇐228k646 k. Special Proceedings Other Than Actions. Most Cited Cases

While prior judicial determination of Chapter 7 debtor's liability for breach of contract and trademark infringement, for continuing to do business under franchisor's logo after debtor's franchise was terminated, did not collaterally estop debtor from disputing the "malicious" nature of her conduct, contempt judgment that was entered against debtor, for repeatedly ignoring injunctive orders that clearly and unambiguously required her to refrain from such infringing conduct, conclusively established the "willful and malicious" nature of debtor's acts, and would be given collateral estoppel effect on question of nondischargeability of debtor's obligation for judgment entered in contempt proceeding. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

[11] KeyCite Notes 

　⇐228 Judgment
　　⇐228XIV Conclusiveness of Adjudication
　　　⇐228XIV(B) Persons Concluded
　　　　⇐228k667 Parties of Record
　　　　　⇐228k671 k. Unknown Owners and Others Not Named. Most Cited Cases

Judgment that was entered in contempt proceeding which had been brought against both Chapter 7 debtor and her husband did not have to specifically refer to debtor by name in order to be given collateral estoppel effect in nondischargeability proceeding; rather, references to "defendants" in the contempt report and contempt judgment had to be interpreted as referring to debtor. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

**\*140** Eva H. Posman, New York City, for Plaintiff.

Barr & Rosenbaum, L.L.P., by Elizabeth A. Haas, Spring Valley, NY, for Debtor/Defendant.

### DECISION GRANTING PARTIAL SUMMARY JUDGMENT

ADLAI S. HARDIN, Jr., Bankruptcy Judge.
This is an adversary proceeding to determine the dischargeability under 11 U.S.C. § 523(a)(6) of certain judgment debts owed by debtor/defendant ("Debtor") to plaintiff Bundy American Corporation ("Bundy") based upon judgments rendered in an action in the United States District Court for the Southern District of New York (the "District Court Action"). The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(1).

Bundy has moved for summary judgment based upon the doctrine of collateral estoppel. For the reasons set forth below, summary judgment is granted as to the so-called Contempt Judgment and

denied as to the Damages Judgment.

### Background

Bundy is the franchiser of "RENT-A-WRECK" franchises for leasing automobiles, vans and trucks throughout the United States. It owns the rights to and interests in the proprietary trade name and service mark "RENT-A-WRECK" and related logo. In February 1982 Bundy and Motorcar Exchange, Inc. ("MEI"), a corporation jointly owned by Debtor and her husband, Gary Blankfort, entered into a franchise agreement (the "Franchise Agreement") which provided for MEI to operate a RENT-A-WRECK franchise in Rockland County for a ten-year term. By agreement dated January 7, 1992 the Franchise Agreement was extended for an additional term. Because of MEI's continuing defaults under the Franchise Agreement, on August 3, 1994 Bundy sent MEI a notice of default, and on August 19, 1994, after MEI advised Bundy that MEI would not cure its defaults, Bundy sent MEI a notice terminating the Franchise Agreement.

Under paragraph 16 of the Franchise Agreement, upon termination MEI was required to immediately terminate its business as a RENT-A-WRECK franchisee and desist from using any RENT-A-WRECK trademarks, trade names or logos. Notwithstanding paragraph 16, MEI continued to carry on the business of a RENT-A-WRECK franchisee.

On November 21, 1994 Bundy commenced the District Court Action against MEI and Gary Blankfort.[FN1] The next day, November 22, 1994, the District Court signed an Order on Consent (the "Injunction Order"), signed on behalf of defendants and Bundy, under which MEI and "its officers, agents, employees, servants, privies, successors and assigns, and all persons and organizations acting in concert, participation and combination with it" were permanently enjoined and restrained from any continued operation of a RENT-A-WRECK franchise or use of the RENT-A-WRECK trade and service marks and logo.

> FN1. On March 20, 1995 the complaint in the District Court Action was amended and the Debtor was made a party to the Action.

In violation of the Injunction Order the Debtor, Gary Blankfort and MEI continued to operate a RENT-A-WRECK franchise and to use the trade and service marks and logo of Bundy. A hearing was held on January 13, 1995 at which Debtor, MEI and Gary Blankfort were found in contempt of the Injunction Order, and further orders were entered by the District Court on January 13 and January 17, 1995. On March 14, 1995 the District Court again found the Debtor, *141* MEI and Gary Blankfort to be in contempt of Court for having violated the Injunction Order and the further orders entered by the District Court on January 13 and 17. On March 17, 1995, because the Debtor violated a direct order of the Court made to her on March 14, 1995, the District Court issued a warrant for the Debtor's arrest. Debtor was arrested and brought to the Court for a further hearing on March 17, 1995. Following the March 17 hearing, Debtor was released on her own recognizance pending a hearing on damages for contempt to he held by Magistrate Judge Mark D. Fox.

On May 31, 1995, following a hearing on damages for contempt, Magistrate Judge Fox issued a Report and Recommendation (the "Contempt Report") finding that Debtor and the other defendants in the District Court Action had acted "in blatant and willful violation of the" District Court's several orders. The Magistrate Judge found that Bundy had suffered damages during the period from November 22, 1994 through March 31, 1995. On August 8, 1995 District Judge Barrington D. Parker, Jr. confirmed the Contempt Report and entered judgment in the total amount of $71,877.07, including double damages in the sum of $49.881.20, legal fees and costs in the amount of $20,995.87 and sanctions in the amount of $1,000 (the "Contempt Judgment").

The defendants in the District Court Action defaulted, and by order dated December 7, 1995 the District Court granted Bundy's motion for a default judgment and referred the case to Magistrate Judge Fox to conduct an inquest with respect to damages. An inquest was held by Magistrate Judge Fox on January 16, 1996, at which the defendants in the District Court Action appeared. Following

additional submissions by both sides, Magistrate Judge Fox issued his Report and Recommendation (the "Default Judgment Report") on February 21, 1996 finding that Bundy had suffered damages as a result of Debtor's willful trademark infringement from August 19, 1994 through November 21, 1994 and recommending an award of damages and attorneys' fees. The District Court approved the Default Judgment Report with minor modification and, by order dated April 3, 1996 entered judgment in the total amount of $86,276.33 (the "Damages Judgment") as damages for willful trademark infringement from August 19 through November 21, 1994 plus costs and attorneys' fees.

### Discussion

#### Summary Judgment

Federal Rule of Civil Procedure 56(c), made applicable to the bankruptcy proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223 (2d Cir.1994). Summary judgment is favored to dispute of meritless claims. *See Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. On a summary judgment motion, the moving party has the burden of demonstrating the absence of any genuine issue of material fact, and all inferences to be drawn forth the underlying facts must be viewed in the light most favorable to the party opposing the motion. *See United States v. Certain Funds on Deposit in Scudder Tax Free Inv. Account No. 2505103,* 998 F.2d 129, 131 (2d Cir.1993); *Thomson McKinnon Sec. Inc. v. Leasure (In re Thomson McKinnon Sec. Inc.),* 132 B.R. 9, 11 (Bankr.S.D.N.Y.1991); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the movant has made its showing, the burden of production shifts to the non-movant who must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' ", establish that there is a specific and genuine issue of material fact warranting a trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. The non-movant cannot cast some metaphysical doubt on the moving party's assertions. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986); *142 Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991) (a summary judgment motion will not be defeated on the basis of conjecture or surmise). The non-movant must present specific significant probative evidence supporting its case sufficient "to require a ... judge to resolve the parties' differing versions of the truth at trial." *Moratzka v. Visa U.S.A.* ( *In re Calstar, Inc.*), 159 B.R. 247, 251 (Bankr.D.Minn.) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986)). There is no genuine issue for trial if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *See Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. Further, the existence of disputed issues of fact will not result in denial of a motion for summary judgment unless the disputed issues are material to the determination of the legal claims and defenses. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510 ("Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment"); *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.,* 67 F.3d 1063, 1066 (2d Cir.1995). The moving party may obtain summary judgment by showing that little or no evidence may be found in support of the non-moving party's case. *See Gallo,* 22 F.3d at 1223-24.

#### Collateral Estoppel

[1]    It has been firmly established that collateral estoppel in the bankruptcy court is applicable in dischargeability actions. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The premise underlying collateral estoppel is that once a specific issue has been determined in a prior proceeding by a court of competent jurisdiction, the parties and the court need not relitigate the issue in another suit. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 4, 99 S.Ct. 645, 649 n. 4, 58 L.Ed.2d 552, 559 n. 4 (1979).

[2]    "[When] the issues sought to be precluded were decided by a federal court, as in the case at bar, the Bankruptcy Court must apply the theoretically uniform federal common law of collateral estoppel." *In re Wright,* 187 B.R. 826, 832 (Bankr.D.Conn.1995) citing *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 324 n. 12, 91 S.Ct. 1434, 1440 n. 12, 28 L.Ed.2d 788 (1971).

[3]    In *Grogan v. Garner,* the Supreme Court endorsed the formulation of the doctrine of collateral estoppel as expressed by the Second Restatement of Judgments. *Grogan v. Garner,* 498 U.S. at 284, 111 S.Ct. at 657-58. "The Restatement (Second) of Judgments articulates the general rule at collateral estoppel as follows: 'When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.' " *In re Wright,* 187 B.R. at 832. This general statement has been reduced to a four-pronged test by various courts. *E.g., Graham v. Billings,* 94 B.R. 803, 808 (Bankr.E.D.N.Y.1989). A typical formulation of this test states that collateral estoppel will be triggered when:

1. the issues sought to be precluded are identical to those involved in the prior action;

2. the issues' determination in the prior action was essential to the prior judgment;

3. the issues were determined by a valid and final judgment; and

4. the issues were actually litigated in the prior action;

*Id.; see also Davidcraft Corp. v. Baer (In re Baer),* 161 B.R 334, 337 (Bankr.N.D.N.Y.1993); *In re Wright,* 187 B.R. at 832.

### Section 523(a)(6)

[4]    [5]    Section 523(a)(6) of the Bankruptcy Code declares that a discharge under section 727 "does not discharge an individual from any debt- ... (6) for willful and malicious injury by the debtor to another entity or to the property of another entity." Many decisions have construed the terms "willful" and "malicious" as used in this subsection. The term "willful" is not controversial generally, or as applied to the facts in this case. It refers to acts done deliberately or intentionally. *In re Cohen,* 121 B.R. 267, 270 (Bankr.E.D.N.Y.1990) (Citing *In re Ikner,* 883 F.2d 986 (11th Cir.1989)); *143 In re Bossard,* 74 B.R. 730 (Bankr.N.D.N.Y.1987): *In re DeRosa,* 20 B.R. 307, 313 (Bankr.S.D.N.Y.1982); *In re Pommerer,* 10 B.R. 935, 940 (Bankr.D.Minn.1981); 3 Collier on Bankruptcy § 523.16, p. 523 (15th ed.1989). The term excludes any form of negligent conduct. *See Wells v. Jennings (In re Jennings),* 188 B.R. 110, 113 (Bankr.E.D.N.Y.1995) ("Mere negligence, even if gross or reckless, will not support an exception under 11 U.S.C. § 523(a)(6)").

More difficult is the term "malicious." In the present case there was no specific finding in either the Contempt Report or the Default Judgment Report with respect to the element of "malice," and the Debtor and her co-defendants in the District Court Action may be presumed for purposes of this motion to have acted in their own economic self-interest, since there was no actual finding of fact by the Magistrate Judge that the District Court defendants acted as they did solely for the purpose of inflicting injury on Bundy. The issue, then, is whether conduct can be found to be "malicious" within the meaning of subsection (6) in the absence of proof that the debtor acted with genuine malevolence demonstrating an actual intent to inflict harm on the party injured, sometimes referred to as "Biblical malice." The majority of the reported decisions, and the cases in the Second Circuit, hold that the party seeking to avoid discharge under section 523(a)(6) need not establish actual malevolence in the sense of an intent to inflict injury.

The meaning of the term malicious has been the subject of much debate. *In re Krautheimer,* 210 B.R. at 47. A number of courts follow an "actual malice" standard. *See In re Contella,* 166 B.R. 26, 28 (Bankr.W.D.N.Y.1994) (citing 3 Collier on Bankruptcy § 523.16[1] 523-129) (15th ed.1979); *In re Gallaudet,* 46 B.R. 918, 927 (Bankr.D.Vt.1985); *In re Capozziello,* 55 B.R. 951, 955 (Bankr.D.Conn.1985); cf. *In re Jennings,* 188 B.R. 110, 113 (Bankr.E.D.N.Y.1995). The Second Circuit has adopted the concept of "implied malice". *In re Stelluti,* 94 F.3d 84, 88 (2d Cir.1996) ("Constructive or implied malice can be found if the nature of the act itself implies a sufficient degree of malice.") quoting *In re Ikner,* 883 F.2d 986, 991 (11th Cir.1989); *see In re Overmyer,* 52 B.R. 111, 120 (Bankr.S.D.N.Y.1985); *In re Chapin,* 155 B.R. 323, 326-27 (Bankr.W.D.N.Y.1993); *In re Kaperonis,* 156 B.R. 736, 740 (Bankr.S.D.N.Y.1993). Several other circuit courts have followed the Eighth Circuit formulation in *In re Long,* 774 F.2d 875, 880-81 (8th Cir.1985), which said that the word malice "must apply only to conduct more culpable than that which is in reckless disregard of creditors' economic interest," and that "knowledge that legal rights are being violated is insufficient to establish malice, absent some additional 'aggravated circumstances,' under *Davis* [ *v. Aetna Acceptance Co.* 293 U.S. 328, 328, 333, 55 S.Ct. 151, 151, 153-54, 79 L.Ed. 393 (1934)] and its recent progeny." *See In re Pasek,* 983 F.2d 1524, 1527 (10th Cir.1993); *Matter of Hartley,* 869 F.2d 394, 395 (8th Cir.1989); *Reynolds-Marshall v. Hallum,* 162 B.R. 51, 55 (D.Me.1993); *In re Whitner,* 179 B.R. 699, 702 (Bankr.E.D.Okl.1995); *cf. In re Held,* 734 F.2d 628, 630 (11th Cir.1984).

[6]   Courts have applied Section 523(a)(6) to a wide variety of commercial and financial conduct and have not limited the statute to non-commercial conduct. *Printy v. Dean Witter Reynolds,* 110 F.3d 853, 855-56 (1st Cir.1997) (using credit the plaintiffs computer mistakenly approved for margin borrowing); *First National Bank of Maryland v. Stanley (In re Stanley),* 66 F.3d 664, 665-66 (4th Cir.1995) (using credit mistakenly approved); *Piccicuto v. Dwyer,* 39 F.3d 37, 40-42 (1st Cir.1994) (intentional interference with an advantageous business relationship and unfair trade practices in a commercial context); *Vulcan Coals, Inc. v. Howard,* 946 F.2d 1226, 1227-1228 (6th Cir.1991) (conveyance of property subject to a mortgage without mortgagee's consent or knowledge); *Impulsora Del Territorio Sur v. Cecchini (In re Cecchini),* 780 F.2d 1440, 1441-42 (9th Cir.1986) (debtor directed promotional agent to deliver prepayments to debtor's partnership in violation of agreement).

Despite differences in wording, decisions within the Second Circuit have been consistent about the type of behavior that will lead to section 523(a)(6) non-dischargeability. Behavior that the court cannot justify on any level will lead to non-dischargeability. *Martin*144 v. Key Bank of New York ( In re Martin),* 208 B.R. 799, 801-803 (N.D.N.Y.1997) (the debtor sold collateral subject to a security agreement and attempted to conceal assets); *Wright v. Bujnowski (In re Wright),* 209 B.R. 276, 278-79 (E.D.N.Y.1997) (the debtor failed to pay employees' health insurance policies timely despite warnings from the insurer that termination would result); *Moog Employees Fed. Credit Union v. Kibler (In re Kibler),* 172 B.R. 740, 741-42 (Bankr.W.D.N.Y.1994) (a debtor who owned an antique car pledged as security disassembled the car and sold the parts); *Community Mut. Sav. Bank v. Landrin (In re Landrin),* 173 B.R. 307, 309 (Bankr.S.D.N.Y.1994) (a bank employee was convicted of larceny for taking money from employer); *Marine Midland Bank v. Huber (In re Huber),* 171 B.R. 740, 743-46 (Bankr.W.D.N.Y.1994) (the debtor tiled frivolous and harassing lawsuits against a bank to force it to forego its claims on the debtor's student loans). *Davidcraft Corp. v. Baer (In re Baer),* 161 B.R. at 335-37 (conversion of plaintiff's dice equipment and files); *Metromedia Co. v. Fugazy (In re Fugazy),* 157 B.R. 761, 762-64 (Bankr.S.D.N.Y.1993) (RICO, mail fraud, wire fraud and bankruptcy fraud); *In re Kaperonis,* 156 B.R. at 737-739 (drag racing); *Berman v. Berman (In re Berman),* 125 B.R. 74. 75-76 (Bankr.E.D .N .Y.1991) (husband withdrew money held jointly in anticipation of entry of the Final Judgment Dissolution of. Marriage); *Cablevision Sys. Corp. v. Cohen (In re Cohen),* 121 B.R. 267.268-270 (Bankr.E.D.N.Y.1990) (debtor enabled people to receive cable television illegally).

The cases in which courts denied requests for non-dischargeability under § 523(a)(6) have as a common theme that persons of honest character could have committed the acts or mistakes which led to legal liability. *Peerless Ins. Co. v. Casey (In re Casey),* 181 B.R. 763, 765 (Bkrtcy.S.D.N.Y.1995) (failure to account and remit funds to the Lottery Division); *Deere & Co. v.*

*Contella (In re Contella),* 166 B.R. 26, 28 (Bankr.W.D.N.Y.1994) (summary judgment denied where debtor sold the security interest but made good faith attempt to pay creditor); *Glenn v. Hrim (In re Hrim),* 196 B.R. 237, 239-41 (Bankr.N.D.N.Y.1993) (logger fell upon financial difficulties and failed to pay tree owner for removal of trees and damage to tree owner's road); *Ford Motor Credit Co. v. Gallaudet (In re Gallaudet),* 46 B.R. 918, 920-23 (Bankr.D.Vt.1985) (failure to make payment for eleven cars sold out of trust in breach of a floor planning agreement).

[7] [8]    To summarize, the statutory element of maliciousness will be found by imputation where the debtor has breached a duty to the plaintiff founded in contract, statute or tort law, willfully in the sense of acting with deliberate intent, in circumstances where it is evident that the conduct will cause injury to the plaintiff and, most important, and under some aggravating circumstance such as to warrant denial of discharge. In the absence of a finding of "Biblical malice," an ordinary tort or breach of contractual or statutory duty generally is not sufficient to deny discharge under subsection (6) without some aggravating circumstance evidencing conduct so reprehensible as to warrant denial of the "fresh start" to which the "honest but unfortunate" debtor would normally be entitled under the Bankruptcy Code.

### The law applied to the facts

[9]    Applying the foregoing principles to the facts in this case, I conclude that summary judgment cannot be granted with respect to the Damages Judgment, which related to the District Court Action defendants' conduct during the period from termination of the franchise on August 19, 1994 through commencement of the Action on November 21, 1994. The Damages Judgment represented a judicial determination of liability and damages for breach of contract and trademark infringement. There is nothing in either the Default Judgment Report or the District Court's order and judgment modifying and confirming that Report constituting a tending of either "Biblical malice," or other aggravating circumstance sufficient to warrant a finding of imputed malice under the case law. Breach of contract and copyright and trademark infringement constitute legal wrongdoing giving rise to damages under State and Federal law. But such conduct, without more, is not the type of aggravated socially reprehensible conduct as to warrant **\*145** the grave consequence of denial of discharge. Indeed, while not determinative, the Magistrate Judge in this case denied an award of punitive damages in his Report regarding the defendants conduct prior to the November 22, 1994 Injunction Order.

[10]    The situation is different with regard to the Contempt Judgment, covering the period from November 22, 1994 through March 1995. During this time frame the defendants were constrained not only by Federal statutory and common law prohibitions against copyright and trademark infringement, in addition to the contractual restraints of the Franchise Agreement, but by an explicit and unambiguous order of the District Court. The defendants had full knowledge of the Franchise Agreement, the Federal copyright and trademark laws and, most particularly, the Injunction Order to which they had appended their written consent. The existence of the Injunction Order and the defendants' defiance of it removes the Contempt Judgment from the category of ordinary judgments for violation of common law or statutory duties. It is this Court's conclusion that the Debtor's persistent violations of the Injunction Order and the District Court orders dated January 13, January 17 and March 14, 1995, which the Magistrate Judge found as a fact to be "blatant and willful," constitute the type of aggravating circumstances which the courts in the Second Circuit and elsewhere have found to he sufficient to satisfy the "malicious" requirement of subsection (6). The Debtor's persistent violation of Bundy's rights under the Franchise Agreement and under Federal statute, coupled with the District Court's explicit finding of "blatant and willful" violation of not one but four orders of the District Court, constitutes "willful and malicious injury" as a matter of law.

[11]    Contrary to the Debtor's arguments, there are no "ambiguities or inferences to be drawn in the Debtor's favor" (Debtor's Memorandum in Law at 4). The fact that the Debtor "was neither called,

nor did she appear, to testify" at the Magistrate Judge's hearing on contempt damages ( *id.* at 6), and the fact that "M.J. Fox refers generally to all the defendants in the Federal Action and makes no specific ruling regarding the Debtor, who was not present to testify" ( *id.* at 6-7), are both misleading and irrelevant. There is no dispute that the Debtor was an officer, indeed the President, of defendant MEI. There can be no dispute that the Debtor was enjoined by the Injunction Order (which applied to defendant MEI and its officers, employees and agents) and the District Court orders of January 13, January 17 and March 14. The fact that only the Debtor's husband gave testimony at the contempt damages hearing does not exonerate the Debtor or indicate that the Magistrate Judge's findings did not apply to the Debtor. Indeed, the District Court specifically summoned the Debtor, as well as her husband, to appear in Court on January 13, January 17 and March 14, at which times both the Debtor and her husband were admonished by the Court; and because of her failure to comply with the District Court's Order on March 14 the Court issued a bench warrant pursuant to which the Debtor was arrested on March 17, 1995. The Contempt Report refers specifically to the Debtor at page 2 (three times), page 3, page 4 (twice), page 5, page 9, and page 10. At the time of the contempt damages hearing and the Contempt Report the Debtor was a named defendant in the District Court Action. There is no basis to suggest that the references to "defendants" in the Contempt Report or in the Contempt Judgment were not intended to refer to the Debtor, whose name appeared in the caption. Finally, the Debtor cites no authority for the proposition that references to "defendants" in a decision or judgment issued by a court does title include all named defendants, or that it is necessary to refer to individual defendants by name in order for the doctrine of collateral estoppel to apply.

To summarize, the Debtor is simply wrong in arguing that "There was no specific finding as to the activities of Deborah Blankfort that is capable of being used in the case at bar in support of the motion for summary judgment" (Debtor's Memorandum in Law at 7). There can be no doubt that the Magistrate Judge's finding that "Defendants have been in blatant and willful violation of the consent order issued on November 22, 1994" ***146** and his subsequent findings, as well as the Contempt Judgment signed by the District Court, intended to and did refer to all of the named defendants in the District Court Action, including the Debtor. Indeed, this Court is bound to construe all references to "defendants" to refer to *all* of the defendants in the District Court Action in the absence of any indication by the Magistrate Judge or the District Judge that either the Report or the Contempt Judgment, was not intended to refer to the Debtor. Debtor's contention in her "Statement Pursuant to Bankruptcy Rule 7056-1" that "Deborah Blankfort's own activities with respect to the determination of Magistrate Judge Fox were not an issue material to Magistrate Judge Fox' conclusions" is untenable. First, it is perfectly clear from the transcripts of the District Court proceedings submitted in support of the motion for summary judgment, as well as the Contempt Report, that both Magistrate Judge Fox and District Judge Parker did, in tact, base their findings, conclusions and judgment on the individual conduct of both the Debtor and her husband. Second, unless and until a judgment issued by a court of competent jurisdiction is reversed on appeal or modified by the court issuing the judgment, it must be presumed that each defendant hits been held liable based upon his or her own conduct. This Court is obligated to give effect to the Contempt Judgment of the District Court, and it is impermissible for this Court to deny collateral estoppel based upon a supposition or inference at variance with the unambiguous findings, conclusions and judgment of the District Court.

The Debtor has shown no ambiguity in the Magistrate's Contempt Report or in the Default Judgment. She has submitted no evidence, either by affidavit or document, demonstrating either generally or with the required particularity that there is any dispute as to any issue of fact requiring a trial, and she has suggested no inference that might be drawn in her favor from the undisputed facts that would defeat summary judgment.

### Conclusion

To summarize this Court's rulings, Bundy's motion for summary judgment is based entirely on the collateral estoppel effect of the District Court's Damages Judgment and Contempt Judgment. Accordingly, the elements of a claim for non-dischargeability under section 523(a)(6) must be established clearly and unambiguously in the District Court Judgments and the Reports of the Magistrate Judge on which the Judgements were based. The element of "willful" injury is clearly and unambiguously established with respect to each Judgment. The element of "malicious" injury is not.

Under the law in this Circuit, the element of malice may be found either upon a finding of actual malevolence or ill will, or upon a finding of aggravated, socially reprehensible conduct sufficient to justify an imputation of malice to the debtor. The Damages Judgment was based solely upon conduct of the defendants constituting breach of contract and copyright and trademark infringement, with no evidence of actual malice and no aggravating factor sufficient to deny the discharge normally granted to the "honest but unfortunate" debtor. Accordingly, the motion for summary judgment is denied as to the Damages Judgment, without prejudice to Bundy's right to prove malice or aggravating circumstance at a trial.

The Contempt Judgment was based not only upon the defendants' violations of contract and Federal copyright and trademark law, but also upon defendants' "blatant and willful violation" of the District Court's Injunction Order and subsequent orders. The District Court finding of "blatant and willful" contempt of court orders by the defendants, including the Debtor, which is binding upon this Court under the doctrine of collateral estoppel, constitutes the type of aggravated misconduct which warrants an imputation of malice within the meaning of section 523(a)(6). A person who persists unabated in unlawful conduct, after the entry of a court order specifically and unambiguously enjoining such conduct, and who continues her unlawful conduct in violation of further orders of the court, cannot be characterized as the "honest but unfortunate" debtor whom Congress intended to favor with the extraordinary relief of a discharge in bankruptcy. Contempt of court strikes at the fabric of the *147 judicial system. This Court will not grant its blessing to such conduct by granting a discharge to this Debtor in the face of the Contempt Judgment and the findings of the Magistrate Judge on which that Judgment was based. Accordingly, the motion for summary judgment is granted with respect to the Contempt Judgment.

Bundy's counsel is directed to prepare, and counsel for both parties are directed to agree upon, an order determining the motion for summary judgment in accordance with the foregoing decision, without prejudice to the right either side to appeal from the order.

Bkrtcy.S.D.N.Y.,1998.
In re Blankfort
217 B.R. 138

END OF DOCUMENT

West Reporter Image (PDF)

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.



c

**In re Butler**
297 B.R. 741
Bkrtcy.C.D.Ill.,2003.
September 03, 2003 (Approx. 11 pages)

 West Reporter Image (PDF)

297 B.R. 741, Bankr. L. Rep. P 78,913

United States Bankruptcy Court,
C.D. Illinois.
In re Patrick J. BUTLER, Debtor.
Prairie Eye Center, Plaintiff,
v.
Patrick J. Butler, Defendant.
Bankruptcy No. 01-70978.
Adversary No. 01-7105.
Sept. 3, 2003.

Chapter 11 debtor's ex-employer brought adversary proceeding to except from discharge, as one for debtor's "willful and malicious injury," state court judgment debt arising out of debtor's violation of covenant not to compete and state court order enforcing it. On parties' cross-motions for summary judgment, the Bankruptcy Court, Larry L. Lessen, J., held that: (1) prior state court judgment was entitled to issue preclusive effect; and (2) without regard to preclusive effect of prior state court judgment, debtor's conduct in intentionally soliciting patients of his former employer and otherwise violating covenant not to compete, when he knew that his actions were substantially certain to harm his ex-employer's business, precluded discharge of resulting debt as one for debtor's "willful and malicious injury."

Plaintiff's motion granted; debtor's motion denied.

West Headnotes

[1] KeyCite Notes

⟸51 Bankruptcy
   ⟸51X Discharge
      ⟸51X(C) Debts and Liabilities Discharged
         ⟸51X(C)5 Torts and Crimes
            ⟸51k3374 Willful or Malicious Injury
               ⟸51k3374(1) k. In General. Most Cited Cases
               (Formerly 51k3355(1))

⟸51 Bankruptcy KeyCite Notes
   ⟸51X Discharge
      ⟸51X(D) Determination of Dischargeability
         ⟸51k3401 Evidence
            ⟸51k3403 Presumptions and Burden of Proof
               ⟸51k3403(12) k. Willful or Malicious Injury. Most Cited Cases
               (Formerly 51k3420(10))

To prevail on complaint to except debt from discharge as one for debtor's "willful and malicious injury," creditor must prove three elements: (1) that debtor caused an injury; (2) that debtor's actions were willful; and (3) that debtor's actions were malicious. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

[2] KeyCite Notes

⇐51 Bankruptcy
   ⇐51X Discharge
      ⇐51X(D) Determination of Dischargeability
         ⇐51k3401 Evidence
            ⇐51k3403 Presumptions and Burden of Proof
               ⇐51k3403(12) k. Willful or Malicious Injury. Most Cited Cases
                  (Formerly 51k3420(10))



⇐51 Bankruptcy KeyCite Notes
   ⇐51X Discharge
      ⇐51X(D) Determination of Dischargeability
         ⇐51k3401 Evidence
            ⇐51k3405 Weight and Sufficiency
               ⇐51k3405(12) Degree of Proof Required
                  ⇐51k3405(14) k. Particular Cases. Most Cited Cases
                    (Formerly 51k3422(11))

To prevail on complaint to except debt from discharge as one for debtor's "willful and malicious injury," creditor must prove each of the elements of this dischargeability exception by a preponderance of evidence. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

[3] KeyCite Notes

⇐51 Bankruptcy
   ⇐51X Discharge
      ⇐51X(C) Debts and Liabilities Discharged
         ⇐51X(C)5 Torts and Crimes
            ⇐51k3374 Willful or Malicious Injury
               ⇐51k3374(2) k. Willful, Deliberate, or Intentional Injury. Most Cited Cases
                  (Formerly 51k3355(1.10))

For injury to be "willful," within meaning of dischargeability exception, debtor must have intended to cause injury, and not merely to commit the act leading to injury; in other words, debtor must have intended the consequences of his acts. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

[4] KeyCite Notes

⇐51 Bankruptcy
   ⇐51X Discharge
      ⇐51X(C) Debts and Liabilities Discharged
         ⇐51X(C)5 Torts and Crimes
            ⇐51k3374 Willful or Malicious Injury
               ⇐51k3374(3) k. Recklessness or Negligence. Most Cited Cases
                  (Formerly 51k3355(1.15))

Injuries either negligently or recklessly inflicted do not come within scope of "willful and malicious injury" dischargeability exception. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

[5] KeyCite Notes

⇐51 Bankruptcy
   ⇐51X Discharge
      ⇐51X(C) Debts and Liabilities Discharged
         ⇐51X(C)5 Torts and Crimes
            ⇐51k3374 Willful or Malicious Injury
               ⇐51k3374(8) Particular Injuries
                  ⇐51k3374(9) k. In General; Fraud. Most Cited Cases
                    (Formerly 51k3355(2.1))

Intentional breach of contract by debtor which is substantially certain to cause injury may give rise to finding of nondischargeability under "willful and malicious injury" dischargeability exception. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

[6] KeyCite Notes 

⇐51 Bankruptcy
   ⇐51X Discharge
      ⇐51X(C) Debts and Liabilities Discharged
         ⇐51X(C)5 Torts and Crimes
            ⇐51k3374 Willful or Malicious Injury
               ⇐51k3374(2) k. Willful, Deliberate, or Intentional Injury. Most Cited Cases
                 (Formerly 51k3355(1.10))



⇐51 Bankruptcy KeyCite Notes
   ⇐51X Discharge
      ⇐51X(C) Debts and Liabilities Discharged
         ⇐51X(C)5 Torts and Crimes
            ⇐51k3374 Willful or Malicious Injury
               ⇐51k3374(4) k. Knowledge; Knowing Disregard. Most Cited Cases
                 (Formerly 51k3355(1.20))

To prevail on complaint to except debt from discharge as debt for debtor's "willful and malicious injury," creditor must demonstrate either a subjective intent on debtor's part to injure creditor or debtor's subjective knowledge that injury is substantially certain to result from his acts. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

[7] KeyCite Notes

⇐228 Judgment
   ⇐228XVII Foreign Judgments
      ⇐228k828 Effect of Judgments of State Courts in United States Courts
         ⇐228k828.21 Particular Federal Proceedings
            ⇐228k828.21(2) k. Bankruptcy. Most Cited Cases

Doctrine of collateral estoppel applies in dischargeability proceedings to prevent issues that were determined in prior state court proceeding from being relitigated in bankruptcy court. Bankr.Code, 11 U.S.C.A. § 523(a).

[8] KeyCite Notes

51 Bankruptcy
    51I In General
        51I(C) Jurisdiction
            51k2060 Exclusive, Conflicting, or Concurrent Jurisdiction
                51k2060.1 k. In General. Most Cited Cases

Bankruptcy court had exclusive jurisdiction to determine dischargeability of debt as one for debtor's "willful and malicious injury." Bankr.Code, 11 U.S.C.A. § 523(c)(1).

[9] KeyCite Notes 

228 Judgment
    228XIV Conclusiveness of Adjudication
        228XIV(C) Matters Concluded
            228k713 Scope and Extent of Estoppel in General
                228k713(1) k. In General. Most Cited Cases

Four requirements must be met in order for collateral estoppel to apply: (1) the issue sought to be precluded must be the same as that involved in prior litigation; (2) issue must have been actually litigated in prior proceeding; (3) determination of issue must have been essential to final judgment in prior action; and (4) party against whom estoppel is invoked must have been fully represented in prior action.

[10] KeyCite Notes 

51 Bankruptcy
    51I In General
        51I(A) In General
            51k2002 k. Application of State or Federal Law in General. Most Cited Cases



228 Judgment KeyCite Notes
    228XVII Foreign Judgments
        228k828 Effect of Judgments of State Courts in United States Courts
            228k828.21 Particular Federal Proceedings
                228k828.21(2) k. Bankruptcy. Most Cited Cases

Bankruptcy court is required to give Illinois state court judgments the same full faith and credit as they have by law or usage in Illinois courts. 28 U.S.C.A. § 1738.

[11] KeyCite Notes 

228 Judgment
    228XVII Foreign Judgments
        228k828 Effect of Judgments of State Courts in United States Courts
            228k828.21 Particular Federal Proceedings
                228k828.21(2) k. Bankruptcy. Most Cited Cases

Prior state court judgment, finding that Chapter 11 debtor intentionally violated covenant not to compete in his employment agreement with medical clinic by soliciting his patients at clinic to follow

him to new office where he would begin practicing roughly two miles from his ex-employer's place of business, and that debtor was in willful contempt of order entered by state court by continuing to engage in such misconduct even after court had granted injunctive relief to his ex-employer, collaterally estopped debtor from denying the "willful and malicious" nature of his acts in subsequent proceeding to except state court judgment debt from discharge. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

[12] KeyCite Notes

⇐228 Judgment
   ⇐228XVII Foreign Judgments
      ⇐228k828 Effect of Judgments of State Courts in United States Courts
         ⇐228k828.21 Particular Federal Proceedings
            ⇐228k828.21(2) k. Bankruptcy. Most Cited Cases

When state court has previously found that debtor intentionally injured creditor, bankruptcy court is required under doctrine of collateral estoppel to hold the debt nondischargeable. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

[13] KeyCite Notes

⇐51 Bankruptcy
   ⇐51X Discharge
      ⇐51X(C) Debts and Liabilities Discharged
         ⇐51X(C)5 Torts and Crimes
            ⇐51k3374 Willful or Malicious Injury
               ⇐51k3374(8) Particular Injuries
                  ⇐51k3374(9) k. In General; Fraud. Most Cited Cases
                   (Formerly 51k3355(2.1))

Without regard to preclusive effect of previous state court judgment holding debtor-physician in willful contempt of state court order enforcing covenant not to compete in employment agreement, debtor's conduct in intentionally soliciting patients of his former employer and otherwise violating covenant not to compete, when he knew that his actions were substantially certain to harm his ex-employer's business, precluded discharge of resulting debt as one for debtor's "willful and malicious injury," though debtor, in violating covenant not to compete, was not motivated by desire to injure his ex-employer but only to earn livelihood for his families and to provide care to patients. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

**\*743** James R. Enlow, Edward R. Green, Springfield, IL, Kristin K. Going, Cleveland, OH, Jeffrey L. Goodman, BalaCynwyd, PA, Thomas J. Holthus, San Diego, CA, Arnold G. Kaplan, Chicago, IL, Wesley T. Kozeny, St. Louis, MO, Steven L. Nelson, Rock Island, IL, for creditor.

John P. Leahy, Springfield, IL, for debtor.

## OPINION

LARRY L. LESSEN, Bankruptcy Judge.
This matter is before the Court on the parties' cross-motions for summary judgment. The issue is whether a debt-a civil judgment in favor of Plaintiff and against the Debtor in the amount of $1,819,132.34-arose as a result of a willful and malicious injury, thereby rendering the debt nondischargeable under 11 U.S.C. § 523(a)(6).

Patrick J. Butler ("Debtor") is an ophthalmologist with a specialty in the treatment of glaucoma. In 1994, Debtor came to Springfield, Illinois and started a clinical practice at the Southern Illinois University School of Medicine ("SIU"). Debtor practiced with optometrist Larry Williams, ophthalmologist Robert Posegate, and others.

In February, 1997, Debtor entered into an Employment Agreement with Centrum Eye Center, Ltd., which was owned by Dr. Sandra Yeh. Later that year, Centrum Eye Center, Ltd. changed its name to Prairie Eye Center. The parties executed a second agreement identical to the February, 1997, contract except for one modification reflecting changes to Debtor's health care benefits. In July, 1997, Debtor began his employment with Plaintiff.

The Employment Agreement contains the following covenant not to compete provision:

11, *COVENANT NOT TO COMPETE:* Upon the expiration or termination of this Agreement, Employee covenants that he will not for a period of two (2) years after expiration or termination, engage in, be associated with or have a financial interest in any medical practice or optometric practice, either directly or indirectly, as employer, employee, principal, agent, independent contractor, consultant, partner, stockholder, creditor in any other capacity, at any location(s) within Sangamon County, Illinois and within ten (10) miles of Hillsboro, Illinois and ten (10) miles of any branch office of Employer. Employee agrees that upon his breach or violation of the foregoing provisions of this paragraph, Employer shall be entitled, as a matter of right, to obtain relief in any court of competent jurisdiction enjoining such breach or violation, and recover from Employee all its attorneys' fees, in addition to all other remedies provided at law, in equity or under this Agreement. Employee acknowledges that Employer has a valid, protectable *\*744* interest in its medical and optometric practice, and that the duration and geographic scope *\*744* of this covenant are reasonable to protect that interest. Provided, however, if the period of time or area herein specified should be adjudged unreasonable in any court proceeding, then the period of time shall be reduced by such number of months and/or the area shall be reduced by such number of miles (or fraction thereof) as is deemed necessary to allow this Covenant to be enforced in such area and during such period of time as determined to be reasonable. In the event any violation hereunder is determined, the period of noncompetition shall be extended by a period of time equal to that period beginning when such violation commenced and ending when the activities constituting such violation shall have terminated. This Covenant not to Compete shall be construed as an agreement independent of any other promise herein, and the existence of any claims or cause of action of Employee against Employer, whether predicated upon this Agreement or otherwise, shall not constitute a defense to its enforcement.

On December 9, 1998, Debtor's attorney hand-delivered a letter to Dr. Yeh informing her that Debtor was terminating his employment with Plaintiff effective February 12, 1999.

On January 6, 1999, Dr. Robert Posegate and Dr. Larry Williams opened an optometric office in Springfield called Sangamon Eye Associates. Said office was approximately two miles from Plaintiff. On January 12, 1999, Debtor began telling his patients that he would be leaving Plaintiff and they should call him to make follow-up appointments. Debtor also distributed business cards to these patients indicating that he would be practicing at the same address and telephone number as Sangamon Eye Associates.

On January 12, 1999, Plaintiff filed a complaint in the Circuit Court of Sangamon County, Illinois seeking declaratory relief, preliminary injunctive relief, and permanent injunctive relief. Two days later, the trial court entered an order granting a preliminary injunction in favor of Plaintiff except as to those patients who had a pre-existing relationship with Dr. Butler, i.e. patients of his previous practice at SIU.

Plaintiff appealed the initial preliminary injunction order, contending that it should apply to all patients. While the appeal was pending, Plaintiff purportedly discovered that Debtor had been violating the preliminary injunction.

On February 10, 1999, Plaintiff filed a Motion to Show Cause, contending that Debtor had violated the

preliminary injunction by continuing to solicit patients of Plaintiff with whom he had no prior relationship.

On February 17, 1999, Plaintiff filed a Motion for Clarification of the trial court's preliminary injunction order. On February 29, 1999, the trial court clarified the order.

On March 29, 1999, the trial court held a hearing on Plaintiff's Motion for Rule to Show Cause. The trial court found Debtor guilty of indirect civil contempt.

On June 11, 1999, the Appellate Court of Illinois, Fourth District, reversed with directions to modify the preliminary injunction to enforce the covenant in its entirety, i.e. to include those patients with whom Debtor had a prior relationship at SIU. *See Prairie Eye Center, Ltd. v. Butler,* 305 Ill.App.3d 442, 713 N.E.2d 610 (4th Dist.1999). Accordingly, on July 14, 1999, the trial court entered its Modified Order for *745 Preliminary Injunction, which states in part as follows:

IT IS HEREBY ORDERED:

A preliminary injunction is hereby granted in this cause enjoining [Debtor] from engaging in:

1) the practice of medicine and/or ophthalmology at any location within Springfield, Hillsboro, Girard, Rushville, Beardstown, Lincoln and Decatur, Illinois;

2) engaging in, associating with, or having a financial interest in any medical practice or ophthalmological practice, either directly or indirectly, as employer, employee, principal, agent, independent contractor, consultant, partner, stockholder, creditor, or in any other capacity at any location within Sangamon County, Illinois or within 10 miles of Plaintiff's branch offices in Springfield, Hillsboro, Girard, Rushville, Beardstown, Lincoln and Decatur, Illinois;

3) this preliminary injunction shall be in effect until further order of this Court.

On March 16, 2000, Plaintiff filed a second Motion to Show Cause and Request for Sanctions. The Motion alleged that, despite the modified preliminary injunction, Debtor continued to hold himself out as a physician in Springfield at Sangamon Eye Associates and actively solicited and treated patients not permitted by the trial court's revised Order.

On October 10, 2000, the trial court commenced a trial and a hearing on the second Motion to Show Cause and Request for Sanctions. The bench trial lasted approximately three weeks and included over 40 witnesses.

On November 30, 2000, the trial judge, Honorable Dennis Schwartz, issued a docket entry wherein he found that the "Plaintiff was damaged by the Defendant's intentional and repeated violations of the covenant not to compete". Judge Schwartz entered judgment against Debtor in the amount of $1,654,700 plus attorneys fees of $164,432.35, for a total of $1,819,132.34. Judge Schwartz also found that the "Defendant violated the modified preliminary injunction intentionally and repeatedly and that he is found to be in willful Contempt of said Order of this Court(.)" As to the contempt, Judge Schwartz fined Debtor the sum of $10,000.

On the same date, Judge Schwartz entered a seven-page Judgment Order. Among other things, Judge Schwartz found:

Subsequent to this court's order of July 14, 1999, [Debtor] has actively solicited patients in Sangamon County and has helped to provide transportation to those patients to areas outside of Sangamon County. Through his association with Sangamon Eye Associates, [Debtor] has repeatedly violated this court's preliminary injunction and continues to do so.

During the period March 1999 through the present time, [Debtor] has violated the covenant not to compete by practicing ophthalmology in association with Family Eye Care, an optometry practice with its principal place of business in Hillsboro, Illinois(.)...

In violation of the terms of the covenant not to compete, [Debtor] actively practiced and saw patients in Sangamon County from February of 1999 until August of 1999.

Since January 14, 1999, [Debtor] has violated the terms of Judge Appleton's Order of January 14, 1999, by seeing patients in Sangamon County, Illinois, which he was not permitted to see by the terms of that Order.

*746 On April 16, 2002, the Appellate Court of Illinois, Fourth District, affirmed the trial court's judgment in its entirety. *See Prairie Eye Center, Ltd. v. Butler,* 329 Ill.App.3d 293, 768 N.E.2d 414, 263 Ill.Dec. 654 (2002). On December 5, 2002, the Illinois Supreme Court denied Debtor's Petition for Leave to Appeal. On December 31, 2002, the Illinois Supreme Court denied Debtor's Motion for Leave to File a Motion for Reconsideration of the Order denying Petition for Leave to Appeal. Mandate was then issued and the judgment became final.

Debtor filed his Chapter 11 petition in bankruptcy on March 15, 2001-after the trial court's judgment had been entered and while the appeal was pending. Plaintiff filed its adversary complaint on June 14, 2001. This Court lifted the automatic stay to permit the parties to proceed with the appeal. Following the conclusion of the appellate process, Plaintiff and the Debtor have filed cross-motions for summary judgment.

In order to prevail on a motion for summary judgment, Plaintiff must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) states in part as follows:

[T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). *See also Dugan v. Smerwick Sewerage Co.,* 142 F.3d 398, 402 (7th Cir.1998). The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Trautvetter v. Quick,* 916 F.2d 1140, 1147 (7th Cir.1990). The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All reasonable inference drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Parkins v. Civil Constructors of Illinois, Inc.,* 163 F.3d 1027, 1032 (7th Cir.1998). "Summary judgment is not an appropriate occasion for weighing the evidence; rather the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn v. Michal,* 913 F.2d 327, 331 (7th Cir.1990).

Section 523(a)(6) of the Bankruptcy Code provides:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt-

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6).

[1] [2] [3] [4] [5] In order to be entitled to a determination of nondischargeability under § 523(a)(6), a plaintiff must prove three elements by a preponderance of the evidence: (1) that the defendant caused an injury; (2) that the defendant's actions were willful, and (3) that the defendant's actions were malicious. *In re Carlson,* 224 B.R. 659, 662

(Bankr.N.D.Ill.1998) (citation omitted), *aff'd* 2000 WL 226706 (N.D.Ill.2000), *aff'd* 2001 WL 1313652 (7th Cir.2001). "Willful" means intent to cause injury, not merely the commission of an intentional act that leads to injury. *\*747 Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Under *Geiger,* to prove nondischargeability of a debt under § 523(a)(6), a plaintiff must show that the defendant actually intended to harm him and not merely that the defendant acted intentionally and he was thus harmed. *Id. at* 61-62, 118 S.Ct. 974. The defendant must have intended the consequences of his act. *Id.* Injuries either negligently or recklessly inflicted to not come within the scope of § 523(a)(6). *Id. at* 64, 118 S.Ct. 974. An intentional breach of contract which is substantially certain to cause injury may give rise to a finding of nondischargeability under § 523(a)(6). *In re Williams,* 337 F.3d 504, 510 (5th Cir.2003).

[6]    The Supreme Court did not define the scope of the term "intent" utilized to describe willful conduct. Subsequent decisions, however, have required either a showing of subjective intent to injure the creditor or a showing of a debtor's subjective knowledge that injury is substantially certain to result from his acts to establish the intent required in *Geiger. See In re Markowitz,* 190 F.3d 455 (6th Cir.1999); *In re Cox,* 243 B.R. 713, 719 (Bankr.N.D.Mont.2000); *In re Budig,* 240 B.R. 397 (D.Kan.1999); *In re Kidd,* 219 B.R. 278 (Bankr.D.Mont.1998).

To prove malice, a creditor must show that the debtor's willful, injurious conduct was undertaken without just cause or excuse. *In re Slosberg,* 225 B.R. 9, 21 (Bankr.D.Me.1998). *See also In re Thirtyacre,* 36 F.3d 697, 700 (7th Cir.1994) ("Malicious" means "in conscious disregard of one's duties or without just cause or excuse".)

[7]    [8]    The doctrine of collateral estoppel (issue preclusion) applies to adversary proceedings brought pursuant to 11 U.S.C. § 523(a). *Grogan v. Garner,* 498 U.S. 279, 284, n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Under this doctrine, issues determined in a prior state court proceeding may not be re-litigated in the bankruptcy court. *Stephan v. Rocky Mountain Chocolate Factory, Inc.,* 136 F.3d 1134, 1136 (7th Cir.1998); *Meyer v. Rigdon,* 36 F.3d 1375, 1378 (7th Cir.1994). However, the bankruptcy court has exclusive jurisdiction to determine the dischargeability of the debts. *See* 11 U.S.C. § 523(c)(1).

[9]    In the Seventh Circuit, four requirements must be met in order for collateral estoppel to apply:

1. the issue sought to be precluded must be the same as that involved in the prior litigation;

2. the issue must have been actually litigated;

3. the determination of the issue must have been essential to the final judgment; and

4. the party against whom estoppel is invoked must be fully represented in the prior action.

*Meyer v. Rigdon, supra,* 36 F.3d at 1379; *Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir.1987).

[10]    A bankruptcy court is required to give an Illinois state court judgments the same full faith and credit as they have by law or usage in the Illinois courts. 28 U.S.C. § 1738. Accordingly, this Court is required to give preclusive effect to Illinois state court judgments whenever the Illinois courts would do so. *In re Winston,* 114 B.R. 566, 571 (Bankr.N.D.Ill.1990).

[11]    [12]    In this case, the first requirement-that the issue was decided in prior litigation-has

been met. Judge Schwartz found that the "Plaintiff was damaged by the [Debtor's] intentional and repeated violations of the covenant not to compete". Judge Schwartz also found the Debtor in "willful contempt" for failing to comply with the state court's injunction. If a state *748 court finds that a debtor intentionally injured a creditor, the bankruptcy court is required under the doctrine of collateral estoppel to hold the debt nondischargeable. *In re Sarff,* 242 B.R. 620, 624 (6th Cir. BAP 2000), *citing In re Abbo,* 168 F.3d 930, 932 (6th Cir.1999). Thus, the state court's factual findings sustain a finding of nondischargeability under 11 U.S.C. § 523(a)(6).

The second requirement-that the issue was actually litigated-has also been satisfied. The state court held a lengthy trial at which over 40 witnesses testified. The judgment of the trial court was affirmed on appeal. Debtor has certainly had his day in court.

The third requirement-that the issue must have been essential to the final judgment-has similarly been met. The factual findings which were decided and necessary for Judge Schwartz to find that Debtor had breached the Employment Agreement and that he was in willful contempt are the same predicate facts which are necessary to support a finding by this Court that the debt arose as a result of a willful and malicious injury.

Among many, many other things, Judge Schwartz found that the Debtor repeatedly solicited and treated patients in violation of the covenant not to compete and the injunctions issued by the state court. Debtor freely admitted that, while still employed by Plaintiff, he handed out business cards to patients with the address of Sangamon Eye Associates. Debtor admitted that he kept his name on a sign located in front of Sangamon Eye Associates for almost eighteen months after the trial court issued its modified preliminary injunction and that he continued to advertise in and around the city of Springfield.

The willfulness and malice required by 11 U.S.C. § 523(a)(6) is demonstrated by Judge Schwartz' finding that Debtor repeatedly and purposefully engaged in acts which he knew to be in violation of the covenant not to compete and the trial court's preliminary injunction orders. The trial court specifically found that Debtor, "in violation of the covenant not to compete, used a variety of methods to persuade and insure (sic) that these patients would not stay with his former employer(.)"

Finally, the last element of collateral estoppel-that the party against whom the doctrine is asserted was fully represented in the prior proceeding-has been satisfied. Debtor was represented throughout the state court proceedings by attorney James P. Baker, a qualified and experienced attorney licensed to practice in the state of Illinois. The judgment was entered following a trial at which the Debtor was represented by counsel and had a full and fair opportunity to litigate. He had his day in court and he lost on the issues. He took an appeal and lost, and the Illinois Supreme Court declined to hear the case. The case should not be re-litigated in this Court.

Inasmuch as all of the elements mandating collateral estoppel are present, Plaintiff's Motion for Summary Judgment should be granted, and the debt owed by Debtor to Plaintiff pursuant to the state court judgment is nondischargeable under 11 U.S.C. § 523(a)(6).

[13]    Even if the Court were to have concluded that the state court judgment is not entitled to collateral estoppel effect, the Plaintiff's Motion for Summary Judgment should nonetheless be granted for reasons set forth in the record before this Court and articulated throughout this Opinion. In reaching this conclusion, the Court has examined the underlying facts in a light most favorable to the Debtor and has failed to find any material fact in *749 dispute or any valid defense for Debtor's conduct.

In his proffer that the judgment should be deemed dischargeable as a matter of law, Debtor explains his rationale why his actions were neither willful nor malicious in the following manner:

There is no evidence that Dr. Butler engaged in conduct that was deliberate and intended to harm (Plaintiff). In fact, the evidence is to the contrary. Dr. Butler's intent was twofold. First, he intended

to provide quality healthcare to his patients....

Second, Dr. Butler had to provide for the welfare of two (2) families....

Dr. Butler's motivations in maintaining a meaningful medical practice were clearly his need to provide for the welfare of two (2) families, in addition to adequately protecting his patients' health....

Defendant's Memorandum of Law, pp. 21-22.

Debtor may dispute that he subjectively intended to injure Plaintiff by intentionally violating the covenant not to compete, thereby breaching the Employment Contract. However, Debtor does not (and could not) seriously dispute the fact that he had subjective knowledge that injury to Plaintiff was substantially certain to result from his intentional acts. He clearly knew that violating the covenant not to compete would cause financial harm to Plaintiff, yet he knowingly violated the covenant anyway. As indicated above and as established by precedent, that is all that is required to meet the standard of nondischargeability set forth in *Geiger. See In re Markowitz, supra; In re Cox, supra; In re Budig, supra; In re Kidd, supra. See also In re Long,* 774 F.2d 875, 881 (8th Cir.1985) (conduct which is targeted at a creditor at least in the sense that the conduct is certain or almost certain to cause financial harm is "malicious" as required by 11 U.S.C. § 523(a)(6)).

Debtor evidently (and mistakenly) deems his professed altruism toward his patients and toward his families as a satisfactory legal defense. Irrespective of his motivation for intentionally and repeatedly breaching the Employment Agreement, Debtor was fully cognizant of and intended the harm he caused Plaintiff, and he had no just cause or excuse-despite his protestations to the contrary-for causing injury to Plaintiff. Accordingly, it is clear from the record and from the Debtor's admissions that the subject debt arose from a willful and malicious injury and that the debt is, therefore, nondischargeable under 11 U.S.C. § 523(a)(6).

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

## ORDER

For the reasons set forth in an Opinion entered this day,

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment be and is hereby allowed, and the debt in the amount of $1,819,132.34 plus interest be and is hereby declared nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

IT IS FURTHER ORDERED that Debtor's Motion for Summary Judgment be and is hereby denied.

Bkrtcy.C.D.Ill.,2003.
In re Butler
297 B.R. 741, Bankr. L. Rep. P 78,913

END OF DOCUMENT

West Reporter Image (PDF)

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.

REPORTER IMAGE     QUICK PRINT     PRINT     EMAIL     DOWNLOAD     OTHER

**In re Carlson**
224 B.R. 659
Bkrtcy.N.D.Ill.,1998.
September 23, 1998 (Approx. 8 pages)

West Reporter Image (PDF)

224 B.R. 659

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.
In re Dennis E. CARLSON, Debtor.
FRENCH, KEZELIS & KOMINIAREK, P.C., Plaintiff,
v.
Dennis E. CARLSON, Defendant.
Bankruptcy No. 96 B 09606.
Adversary No. 97 A 0008.
Sept. 23, 1998.

Judgment creditor brought adversary proceeding for determination as to nondischargeability of judgment debt, as one for Chapter 7 debtor's "willful and malicious injury" to person or property of another. On creditor's motion for summary judgment, the Bankruptcy Court, Jack B. Schmetterer, J., held that debtor was collaterally estopped from disputing nondischargeability of his obligation to judgment creditor for sanctions assessed by state court trial judge, as obligation for debtor's "willful and malicious injury" to person or property of another.
Motion granted.

West Headnotes

[1] KeyCite Notes

⟸51 Bankruptcy
   ⟸51X Discharge
      ⟸51X(C) Debts and Liabilities Discharged
         ⟸51X(C)5 Torts and Crimes
            ⟸51k3374 Willful or Malicious Injury
               ⟸51k3374(1) k. In General. Most Cited Cases
               (Formerly 51k3355(1))

⟸51 Bankruptcy KeyCite Notes
   ⟸51X Discharge
      ⟸51X(D) Determination of Dischargeability
         ⟸51k3401 Evidence
            ⟸51k3403 Presumptions and Burden of Proof
               ⟸51k3403(12) k. Willful or Malicious Injury. Most Cited Cases
               (Formerly 51k3420(10))

⟸51 Bankruptcy KeyCite Notes
   ⟸51X Discharge
      ⟸51X(D) Determination of Dischargeability
         ⟸51k3401 Evidence
            ⟸51k3405 Weight and Sufficiency
               ⟸51k3405(12) Degree of Proof Required
                  ⟸51k3405(14) k. Particular Cases. Most Cited Cases

(Formerly 51k3422(11))

To be entitled to determination of nondischargeability of debt, as one for debtor's willful and malicious injury to person or property of another, creditor must prove three elements by a preponderance of evidence: (1) that debtor caused injury; (2) that debtor's actions were willful; and (3) that debtor's actions were malicious. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

[2] KeyCite Notes

⇐51 Bankruptcy
 ⇐51X Discharge
  ⇐51X(C) Debts and Liabilities Discharged
   ⇐51X(C)5 Torts and Crimes
    ⇐51k3374 Willful or Malicious Injury
     ⇐51k3374(2) k. Willful, Deliberate, or Intentional Injury. Most Cited Cases
      (Formerly 51k3355(1.10))

"Willful" injury, for dischargeability purposes, is one which is deliberate or intentional. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

[3] KeyCite Notes

⇐51 Bankruptcy
 ⇐51X Discharge
  ⇐51X(C) Debts and Liabilities Discharged
   ⇐51X(C)5 Torts and Crimes
    ⇐51k3374 Willful or Malicious Injury
     ⇐51k3374(2) k. Willful, Deliberate, or Intentional Injury. Most Cited Cases
      (Formerly 51k3355(1.10))

⇐51 Bankruptcy KeyCite Notes
 ⇐51X Discharge
  ⇐51X(D) Determination of Dischargeability
   ⇐51k3401 Evidence
    ⇐51k3403 Presumptions and Burden of Proof
     ⇐51k3403(12) k. Willful or Malicious Injury. Most Cited Cases
      (Formerly 51k3420(10))

To establish that debt should be excepted from discharge, as one for debtor's "willful and malicious injury" to person or property of another, creditor must prove a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

[4] KeyCite Notes

⇐51 Bankruptcy
 ⇐51X Discharge
  ⇐51X(C) Debts and Liabilities Discharged
   ⇐51X(C)5 Torts and Crimes
    ⇐51k3374 Willful or Malicious Injury
     ⇐51k3374(5) k. Malice; Malicious Injury. Most Cited Cases

(Formerly 51k3355(1.25))



⇐51 Bankruptcy KeyCite Notes
  ⇐51X Discharge
    ⇐51X(C) Debts and Liabilities Discharged
      ⇐51X(C)5 Torts and Crimes
        ⇐51k3374 Willful or Malicious Injury
          ⇐51k3374(7) k. Just Cause or Excuse. Most Cited Cases
            (Formerly 51k3355(1.35))

Behavior is "malicious," for dischargeability purposes, if it is wrongful and without just cause or excuse. Bankr.Code, 11 U.S.C.A. § 523(a)(6).



[5] KeyCite Notes

⇐51 Bankruptcy
  ⇐51X Discharge
    ⇐51X(C) Debts and Liabilities Discharged
      ⇐51X(C)5 Torts and Crimes
        ⇐51k3374 Willful or Malicious Injury
          ⇐51k3374(5) k. Malice; Malicious Injury. Most Cited Cases
            (Formerly 51k3355(1.25))



⇐51 Bankruptcy KeyCite Notes
  ⇐51X Discharge
    ⇐51X(C) Debts and Liabilities Discharged
      ⇐51X(C)5 Torts and Crimes
        ⇐51k3374 Willful or Malicious Injury
          ⇐51k3374(6) k. Spite, Hatred, or Ill Will. Most Cited Cases
            (Formerly 51k3355(1.30))

"Maliciousness," of kind required in order to except debt from discharge as one for debtor's willful and malicious injury to person or property of another, does not require ill will or specific intent to do harm. Bankr.Code, 11 U.S.C.A. § 523(a)(6).



[6] KeyCite Notes

⇐228 Judgment
  ⇐228XVII Foreign Judgments
    ⇐228k828 Effect of Judgments of State Courts in United States Courts
      ⇐228k828.21 Particular Federal Proceedings
        ⇐228k828.21(2) k. Bankruptcy. Most Cited Cases

Chapter 7 debtor was collaterally estopped from disputing nondischargeability of his obligation to judgment creditor for sanctions assessed by state court trial judge, as obligation for debtor's "willful and malicious injury" to person or property of another, where state trial judge found, in awarding sanctions, that debtor acted for improper purpose in commencing lawsuit against creditor, in order to harass creditor and retaliate against him for creditor's success in defending prior lawsuit. Bankr.Code, 11 U.S.C.A. § 523(a)(6).



[7] KeyCite Notes

⇐228 Judgment
   ⇐228XIV Conclusiveness of Adjudication
      ⇐228XIV(C) Matters Concluded
         ⇐228k716 Matters in Issue
            ⇐228k720 k. Matters Actually Litigated and Determined. Most Cited Cases

In making determination as to what was litigated in prior proceeding, for purpose of deciding whether, and to what extent, prior judgment may be given collateral estoppel effect, court can look to pertinent sources of information which may help in determining whether issue was raised and considered.



[8] KeyCite Notes

⇐228 Judgment
   ⇐228XIV Conclusiveness of Adjudication
      ⇐228XIV(C) Matters Concluded
         ⇐228k716 Matters in Issue
            ⇐228k720 k. Matters Actually Litigated and Determined. Most Cited Cases

Oral findings of trial court judge regarding the rationale and reasoning behind his or her orders are pertinent information which court may consider in deciding what was litigated in prior proceeding, for purpose of determining whether, and to what extent, prior judgment may be given collateral estoppel effect.

***660** Michael R. Webber of French Kezelis & Kominiarek, Chicago, IL, for Plaintiff.

Dennis E. Carlson, Chicago, IL, for Defendant.

### MEMORANDUM OPINION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

JACK B. SCHMETTERER, Bankruptcy Judge.
This Adversary case relates to the bankruptcy proceeding of debtor Dennis E. Carlson ("Debtor" or "Carlson") filed originally under Chapter 11 of the Bankruptcy Code, but later converted to one under Chapter 7. Carlson is sued here to bar dischargeability of his debt owed to the plaintiff law firm.

This matter comes before the Court on the motion of French Kezelis & Kominiarek, P.C. ("French") for summary judgment on its Second Amended Complaint at law against Debtor to determine dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(6). For reasons set forth herein, the motion is granted.

Jurisdiction lies under 28 U.S.C. § 1334 and core jurisdiction exists under 28 U.S.C. § 157(b)(2)(I).

### Uncontested Facts

The following pertinent uncontested facts emerge from the filings by the parties under Local Bankruptcy Rule 402(M) and (N):

The Plaintiff and Debtor previously represented opposing parties in a litigation styled *Lorentzen v. Anderson Pest Control, et al.,* No. 88 C 7142 in the United States District Court, Northern District of

Illinois, Eastern Division. Dennis Carlson represented the plaintiffs the *Lorentzen* case.

Following dismissal of the Federal Court *Lorentzen* case, Dennis Carlson filed a state court action in the Circuit Court of Cook County, Illinois County Department, Law Division, styled *Lorentzen v. Dow Chemical, et al.,* No. 91 L 20277. The state court action named as a defendant, *inter alia,* French Kezelis & Kominiarek, P.C. It alleged that the plaintiff, Kristiana Kruse Lorentzen, had been injured as a result of her participation in discovery authorized and ordered by the District Court Judge during the pendency of the Federal Court litigation, in that she allegedly had been exposed to certain chemicals to which she had developed an allergic and toxic sensitivity.

On April 20, 1993, the state court litigation was dismissed pursuant to motion of defendants for plaintiff's failure to state a cause of action.

On October 7, 1993, the Circuit Court Judge in the state court *Lorentzen* case entered an order for sanctions under Illinois Supreme Court Rule 137 against Debtor and in favor of French Kezelis & Kominiarek, P.C. In awarding sanctions, the Judge stated the following from the bench:

I think that this lawsuit was interposed for an improper purpose, that is, to harass or in some way get even with the attorneys or some of the attorneys which had been part of the earlier federal suit.

To bring suit against attorneys for their role in protecting their client's rights, I think is an unwarranted and improper use of this lawsuit.

I believe that this complaint in this case against the law firms in question was not well founded in fact or warranted by existing *661 law. There is not, to my knowledge, a good faith argument for the extension, modification, or reversal of any existing law.

However, when the written order for sanctions was entered that same day, the wording was somewhat more limited in setting forth reasons:

... The court specifically finds that this notice was not brought after reasonable inquiry that it be well grounded in fact, nor that it was warranted by existing law, nor a good faith argument for the extension, modification, or reversal of existing law.

The court further finds that this action was brought for an improper purpose ... [but the written order did not specify what that improper purpose was or use the word "harass"].

The matter was then continued to a further date to fix the amount of sanctions to be awarded.

On January 7, 1994, the Circuit Court judge denied Debtor's motion to reconsider the imposition of sanctions and awarded French a sanction of $20,689.41. On March 29, 1996, the Illinois Appellate Court, First Judicial District, affirmed the judgment of the trial court awarding sanctions against Debtor. In affirming the trial court, the Appellate Court opinion appears to have relied on all findings of facts of the Circuit Court, including not only what was set forth in the written order, but also the statements made from the bench by the Circuit Judge: "... The trial court's written order states the court's specific findings that Mr. Carlson filed a baseless lawsuit for an improper purpose ... The trial court specifically found that Mr. Carlson filed a baseless harassing lawsuit...." *French Kezelis and Kominiarek, P.C. v. Dennis Carlson,* No. 1-93-1844 and 94-0234 (consolidated), Illinois Appellate Court, First District (3d Div. 3/29/96).

On April 16, 1996, the Debtor filed for bankruptcy relief under Chapter 11 of the United States Bankruptcy Code and listed French as a creditor in his schedule of assets and liabilities. On June 24, 1996, Debtor converted his Chapter 11 case to one under Chapter 7. The Debtor seeks to discharge the debt owed to French.

French's Motion for Summary Judgment makes two points: First, that the award for sanction is nondischargeable because it is a debt resulting from a willful and malicious action under 11 U.S.C. § 523(a)(6); and, second, that Debtor is collaterally estopped from arguing his behavior was not willful

and malicious because it was so determined by the Illinois courts in awarding and affirming the sanction. The Motion rests entirely on the record made in the state court case.

Debtor's Response to the Motion for Summary Judgment includes many arguments not germane to the issues presented by Plaintiff's Motion wherein he seeks to go behind the state court record and relitigate issues resolved by the state court. He correctly points out that there must be a specific finding of willful and malicious action upon which a judgment is entered for such judgment to stand alone on a collateral estoppel theory in a dischargeable action under § 523(a)(6). But he further argues that this Court should only consider the written order of sanction in its application of collateral estoppel, not comments made by the trial judge from the bench that were not expressly included in the sanction order even though the Illinois Appellate Court opinion treated those additional remarks as part of the findings made by the Circuit Judge and record on which the sanction was affirmed.

### APPLICABLE STANDARDS FOR SUMMARY JUDGMENT

Fed.R.Civ.P. 56, made applicable to adversary proceedings under Fed. R. Bankr.P. 7056, provides when summary judgment is appropriate. Summary judgment should be granted if the entire record, including pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c); Fed. R. Bankr.P. 7056; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The burden is on the moving party to show that no genuine issue of material fact is in dispute. **\*662** *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. All inferences from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a rational trier of fact could not find for the non-moving party based on the record taken as a whole, then there is no genuine issue for trial and summary judgment will be granted. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### ANALYSIS

### A. Debtor's actions were found to be willful and malicious and to cause injury.

[1]    In order to be entitled to a determination of nondischargeability under 11 U.S.C. § 523(a)(6), the creditor must prove three elements by a preponderance of the evidence: (1) that the Debtor caused an injury; (2) that the Debtor's actions were willful; and (3) that the Debtor's actions were malicious. *Golant v. Care Comm., Inc.,* 216 B.R. 248 (N.D.Ill.1997).

With respect to the first element, the District Court found injury to French which had been incurred in defending Debtor's unfounded suit. That injury was determined to be in the form of expenses incurred, including attorney's fees. *See Matter of Lutz,* 169 B.R. 473, 477 (Bankr.S.D.Ga.1994). Had Debtor's lawsuit not been filed, French would not have incurred any of these expenses. Thus, Debtor's actions in bringing suit that was held to be unfounded inflicted injury upon French, which injury the State Court valued at $20,689.71.

[2]    [3]    Willfulness was found by the State Court's order. Willful is defined as deliberate or intentional. *In re Arlington,* 192 B.R. 494, 500 (Bankr.N.D.Ill.1996). Moreover, the United States Supreme Court recently held that "willful" in (a)(6) modifies the word "injury," thereby indicating that nondischargeability under that provision requires proof of a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). French relies on *Arlington* to support its assertion that the Debtor's

behavior was willful and malicious. The facts in Arlington were as follows: The Debtor was struck in the face by her husband. A divorce action followed. The couple entered into a Marital Settlement Agreement in which the Debtor agreed to release her claims against her husband for battery once he had complied with all the terms of the Agreement. After the husband had complied with all the terms of the agreement, the Debtor nonetheless filed a personal injury suit against him. The court found that the Debtor's behavior was willful and malicious because she filed suit without having any factual basis for the claim in light of the Settlement Agreement. This caused the husband to incur substantial attorney's fees and costs to defend himself. In addition, the court found that the wife knew he would incur such costs when she filed the suit.

Similarly in the instant case, the Circuit Court Judge found that Debtor as an attorney filed a lawsuit which was unwarranted, improper, and not supported by fact or existing law. The court further found that the purpose of that lawsuit was to harass or get even with the plaintiff law firm which had defeated an earlier suit filed by Defendant, thus causing French to incur expenses exceeding $20,000 in defending itself. In filing a lawsuit to harass or get even with French, as in *Arlington,* the Debtor attorney necessarily knew and intended that French would incur expenses in defending the lawsuit, particularly in light of the finding that the suit was filed to get back at the French firm for defeating Defendant in an earlier case.

[4] [5]    The third element requires a finding of maliciousness. Behavior is malicious if it is wrongful and without just cause or excuse. Maliciousness does not require ill will or specific intent to do harm. *Arlington,* 192 B.R. at 500. The findings of the judge that the Debtor filed the lawsuit with intent to harass or get even and that the lawsuit was unwarranted and improper fits the definition of malice as an act that was wrongful and without just cause or excuse. *In re Bast,* 212 B.R. 499, 504 (Bankr.D.Md.1997).

### B. *Collateral Estoppel*

[6]    The foregoing discussion assumes that the Debtor-Defendant is bound by the *663 state court findings under the doctrine of collateral estoppel, and indeed he is.

Collateral estoppel is an equitable doctrine. It applies when the following four threshold requirements are met: (1) the issue sought to be precluded has been decided in a prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue was essential to the final judgment in the prior proceeding; and (4) the party against whom the doctrine is asserted was fully represented in the prior proceeding. *Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir.1987).

It is well known in the Seventh Circuit that that doctrine of collateral estoppel applies to dischargeability proceedings. *Meyer v. Rigdon,* 36 F.3d 1375, 1378-79 (7th Cir.1994) (citing *Klingman,* 831 F.2d at 1294-95; *Grogan v. Garner,* 498 U.S. 279, 285 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991) ("[C]ollateral estoppel principles do indeed apply in discharge exception proceedings pursuant § 523(a).")). As a result, where a court of competent jurisdiction has previously ruled against a debtor upon specific issues of fact that independently comprise elements of a creditor's nondischargeability claim, the debtor may not seek to relitigate those underlying facts in bankruptcy court, provided that the issues involved had been "actually litigated." *Klingman v. Levinson,* 831 F.2d 1292 (7th Cir.1987).

Debtor argues that the oral findings of the judge from the bench made part of the record cannot be used in applying the doctrine of collateral estoppel, only the written order. French argues that all findings of the Circuit Court as found in the record by the Illinois Appellate Court should be used in this Court's application of the doctrine of collateral estoppel. French outlines three reasons why the oral findings should be used: (1) Illinois courts possess authority to issue oral orders that are fully binding. *Urso v. Reynolds Metals Co.,* 95 Ill.App.2d 251 256, 238 N.E.2d 271, 273 (1st Dist.1968); (2) for a judgment or decree to operate as an estoppel, the estoppel may be shown on the face of the

record or may be shown by extrinsic evidence. *Svalina v. Saravana,* 341 Ill. 236, 173 N.E. 281 (1930) (citing *Gouwens v. Gouwens,* 222 Ill. 223, 78 N.E. 597; *Sawyer v. Nelson,* 160 Ill. 629, 43 N.E. 728); and (3) reference may be made to pleadings, testimony, jury instruction, findings, verdicts, and any other pertinent sources of information sensibly helpful to the inquiry in determining whether an issue has been raised and considered in a prior proceeding. *Claiborne v. Hutchinson,* 67 Ill.App.3d 374, 378, 24 Ill.Dec. 262, 385 N.E.2d 29, 32 (1st Dist.1978).

[7]  [8]   There does not appear to be authority specifically resolving the issue of whether an Illinois judge's statements from the bench that are not included in the written order can be used for purposes of collateral estoppel. However, the French arguments are well reasoned. In making a determination as to what has been litigated, the court can look to pertinent sources of information that can help in the determination of whether a issue has been raised and considered. *Id.* Oral findings of a trial court judge regarding the rationale and reasoning behind the orders of that judge would constitute pertinent information in determination of collateral estoppel issues. In addition, the Illinois Appellate Court found the oral findings from the bench as articulated by the Circuit Judge to be part of findings made below, and referred to them in determining whether to affirm the sanction. The giving of full faith and credit to the state court ruling appears to require an assumption that the Illinois Appellate Court was the arbiter of what the record it reviewed included.

Moreover, that record as reviewed here meets requirements of collateral estoppel in determining nondischargeability. Defendant's actions and his intentions were litigated pursuant to the motion for sanctions against him in the state court case. Carlson, a licensed attorney, fully and knowingly represented himself in that sanctions proceeding. Whether Carlson had improper motivations for bringing the litigation against French were a necessary determination in that proceeding. Finally, the issue was determined in the prior proceeding. The one-page, handwritten Circuit Court order states that Carlson brought the litigation against French for an "improper purpose." Plaintiff's Motion for Summary Judgment, Ex. B. The transcript of the hearing expands on ***664** this. The court found that the "improper purpose" was "to harass or in some way get even with the attorneys or some of the attorneys which had been part of the earlier federal suit." Plaintiff's Motion, Ex. C, p. 32, ll. 2-6. Moreover, the judge's intention when he asked the movant to draw up the order was that the order be read to comport with the oral findings. Indeed, that is how the record by the Illinois Appellate Court was read.

Based on the foregoing, all four elements of collateral estoppel have been met, and Defendant is collaterally estopped from contesting findings of the Illinois trial court that are sufficient to establish elements for a judgment of nondischargeability under 11 U.S.C. § 523(c)(6).

## CONCLUSION

For the reasons set forth herein, French's motion for summary judgment is allowed, and judgment will be entered by separate order.

Bkrtcy.N.D.Ill.,1998.
In re Carlson
224 B.R. 659

END OF DOCUMENT

West Reporter Image (PDF)

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.



**In re Cox**
243 B.R. 713
Bkrtcy.N.D.Ill.,2000.
January 28, 2000 (Approx. 10 pages)

West Reporter Image (PDF)

243 B.R. 713

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.
In re Victor COX, Debtor.
Fidelity Financial Services, Plaintiff,
v.
Victor Cox, Defendant.
Bankruptcy No. 99 B 2291.
Adversary No. 99 A 0628.
Jan. 28, 2000.

Company which had financed Chapter 7 debtor's purchase of automobile brought adversary proceeding to except purchase-money obligation from discharge, as one for debtor's "willful and malicious injury" to person or property of another. The Bankruptcy Court, Jack B. Schmetterer, J., held that: (1) to satisfy "willfulness" prong of dischargeability exception, creditor did not need to show that debtor had subjective intent to injure creditor, but only that debtor had subjective knowledge that his acts were substantially certain to cause injury; (2) debtor's conversion of used car securing creditor's claim, in selling it for parts, was in nature of "willful and malicious injury"; but (3) debtor's "willful and malicious injury" to creditor's collateral did not provide basis for excepting entire amount of creditor's claim from discharge, but only that portion of debt corresponding to retail fair cash market value of car at time of conversion, together with reasonable and necessary attorney fees. Judgment for creditor.

West Headnotes

[1] KeyCite Notes 

⟸51 Bankruptcy
  ⟸51X Discharge
    ⟸51X(D) Determination of Dischargeability
      ⟸51k3401 Evidence
        ⟸51k3403 Presumptions and Burden of Proof
          ⟸51k3403(1) k. In General. Most Cited Cases
            (Formerly 51k3420(1))

Burden of proof is on creditor to establish that debt is nondischargeable. Bankr.Code, 11 U.S.C.A. § 523(a).

[2] KeyCite Notes

⟸51 Bankruptcy
  ⟸51X Discharge
    ⟸51X(D) Determination of Dischargeability
      ⟸51k3401 Evidence
        ⟸51k3405 Weight and Sufficiency
          ⟸51k3405(12) Degree of Proof Required
            ⟸51k3405(13) k. In General. Most Cited Cases
              (Formerly 51k3422(10.1))

Creditor seeking to except debt from discharge must establish elements of dischargeability exception by a preponderance of evidence. Bankr.Code, 11 U.S.C.A. § 523(a).

[3] KeyCite Notes 

⇐51 Bankruptcy
   ⇐51X Discharge
      ⇐51X(C) Debts and Liabilities Discharged
         ⇐51X(C)5 Torts and Crimes
            ⇐51k3374 Willful or Malicious Injury
               ⇐51k3374(2) k. Willful, Deliberate, or Intentional Injury. Most Cited Cases
                  (Formerly 51k3355(1.10))



⇐51 Bankruptcy KeyCite Notes
   ⇐51X Discharge
      ⇐51X(C) Debts and Liabilities Discharged
         ⇐51X(C)5 Torts and Crimes
            ⇐51k3374 Willful or Malicious Injury
               ⇐51k3374(4) k. Knowledge; Knowing Disregard. Most Cited Cases
                  (Formerly 51k3355(1.20))

To establish a "willful" injury, of kind required in order to except debt from discharge as one for debtor's willful and malicious injury, creditor need not necessarily show that debtor had a subjective intent to injure creditor; it is enough that debtor had subjective knowledge that his/her acts were substantially certain to cause injury. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

[4] KeyCite Notes 

⇐51 Bankruptcy
   ⇐51X Discharge
      ⇐51X(C) Debts and Liabilities Discharged
         ⇐51X(C)5 Torts and Crimes
            ⇐51k3374 Willful or Malicious Injury
               ⇐51k3374(2) k. Willful, Deliberate, or Intentional Injury. Most Cited Cases
                  (Formerly 51k3355(1.10))



⇐51 Bankruptcy KeyCite Notes
   ⇐51X Discharge
      ⇐51X(C) Debts and Liabilities Discharged
         ⇐51X(C)5 Torts and Crimes
            ⇐51k3374 Willful or Malicious Injury
               ⇐51k3374(4) k. Knowledge; Knowing Disregard. Most Cited Cases
                  (Formerly 51k3355(1.20))

⇐51 Bankruptcy KeyCite Notes
   ⇐51X Discharge
      ⇐51X(D) Determination of Dischargeability

&#8656;51k3401 Evidence
  &#8656;51k3403 Presumptions and Burden of Proof
    &#8656;51k3403(12) k. Willful or Malicious Injury. Most Cited Cases
      (Formerly 51k3420(10))



&#8656;51 Bankruptcy KeyCite Notes
  &#8656;51X Discharge
    &#8656;51X(D) Determination of Dischargeability
      &#8656;51k3401 Evidence
        &#8656;51k3405 Weight and Sufficiency
          &#8656;51k3405(12) Degree of Proof Required
            &#8656;51k3405(14) k. Particular Cases. Most Cited Cases
              (Formerly 51k3422(11))

To prevail on complaint to except debt from discharge as one for debtor's "willful and malicious injury" to person or property of another, creditor must demonstrate, by preponderance of evidence, either that debtor desired to cause the injury complained of, or that debtor believed that harmful consequences were substantially certain to result from debtor's acts. Bankr.Code, 11 U.S.C.A. § 523 (a)(6).



[5] KeyCite Notes

&#8656;51 Bankruptcy
  &#8656;51X Discharge
    &#8656;51X(C) Debts and Liabilities Discharged
      &#8656;51X(C)5 Torts and Crimes
        &#8656;51k3374 Willful or Malicious Injury
          &#8656;51k3374(2) k. Willful, Deliberate, or Intentional Injury. Most Cited Cases
            (Formerly 51k3355(1.10))

"Willful" injury, of kind required in order to except debt from discharge as one for debtor's willful and malicious injury, may be established by direct evidence of specific intent. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

[6] KeyCite Notes

&#8656;51 Bankruptcy
  &#8656;51X Discharge
    &#8656;51X(C) Debts and Liabilities Discharged
      &#8656;51X(C)5 Torts and Crimes
        &#8656;51k3374 Willful or Malicious Injury
          &#8656;51k3374(4) k. Knowledge; Knowing Disregard. Most Cited Cases
            (Formerly 51k3355(1.20))

"Willful" injury, of kind required in order to except debt from discharge as one for debtor's willful and malicious injury, may be established indirectly by evidence of debtor's knowledge of creditor's rights and of fact that his/her conduct will cause particularized injury. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

[7] KeyCite Notes

☜51 Bankruptcy
   ☜51X Discharge
      ☜51X(C) Debts and Liabilities Discharged
         ☜51X(C)5 Torts and Crimes
            ☜51k3374 Willful or Malicious Injury
               ☜51k3374(8) Particular Injuries
                  ☜51k3374(11) k. Disposition of or Injury to Collateral. Most Cited Cases
                    (Formerly 51k3355(4))

Chapter 7 debtor's conversion of used automobile securing financing company's claim, in selling vehicle for parts after it broke down and ceased to function, was in nature of "willful" injury, within meaning of dischargeability exception, even though debtor may not have had any desire to injure; debtor knew that, as result of his conduct in selling automobile for parts, finance company's ability to protect itself by repossessing vehicle would be made impossible. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

[8] KeyCite Notes

☜51 Bankruptcy
   ☜51X Discharge
      ☜51X(C) Debts and Liabilities Discharged
         ☜51X(C)5 Torts and Crimes
            ☜51k3374 Willful or Malicious Injury
               ☜51k3374(4) k. Knowledge; Knowing Disregard. Most Cited Cases
                 (Formerly 51k3355(1.20))

☜51 Bankruptcy KeyCite Notes
   ☜51X Discharge
      ☜51X(C) Debts and Liabilities Discharged
         ☜51X(C)5 Torts and Crimes
            ☜51k3374 Willful or Malicious Injury
               ☜51k3374(5) k. Malice; Malicious Injury. Most Cited Cases
                 (Formerly 51k3355(1.25))

☜51 Bankruptcy KeyCite Notes
   ☜51X Discharge
      ☜51X(C) Debts and Liabilities Discharged
         ☜51X(C)5 Torts and Crimes
            ☜51k3374 Willful or Malicious Injury
               ☜51k3374(7) k. Just Cause or Excuse. Most Cited Cases
                 (Formerly 51k3355(1.35))

"Malicious" injury, within meaning of dischargeability exception, is one that is in conscious disregard of one's duties or without just cause or excuse. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

[9] KeyCite Notes

☜51 Bankruptcy
   ☜51X Discharge
      ☜51X(C) Debts and Liabilities Discharged

⇐51X(C)5 Torts and Crimes
⇐51k3374 Willful or Malicious Injury
⇐51k3374(6) k. Spite, Hatred, or Ill Will. Most Cited Cases
(Formerly 51k3355(1.30))

"Malicious" injury, of kind required in order to except debt from discharge as one for debtor's willful and malicious injury, does not require ill will or specific intent to do harm. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

[10] KeyCite Notes 

⇐51 Bankruptcy
⇐51X Discharge
⇐51X(C) Debts and Liabilities Discharged
⇐51X(C)5 Torts and Crimes
⇐51k3374 Willful or Malicious Injury
⇐51k3374(8) Particular Injuries
⇐51k3374(11) k. Disposition of or Injury to Collateral. Most Cited Cases
(Formerly 51k3355(4))

Chapter 7 debtor's conversion of used automobile securing financing company's claim, in selling vehicle for parts after it broke down and ceased to function, was in nature of "malicious" injury, within meaning of dischargeability exception, where debtor, as result of his previous financial difficulties, was well aware of finance company's right to repossess car for nonpayment, yet acted in conscious disregard of finance company's rights and of his duties under loan agreement in selling car for parts at time when he was delinquent in his payments. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

[11] KeyCite Notes 

⇐51 Bankruptcy
⇐51X Discharge
⇐51X(D) Determination of Dischargeability
⇐51k3407 Hearing and Determination; Default
⇐51k3409 k. Award on Determination of Nondischargeability. Most Cited Cases
(Formerly 51k3388)

Chapter 7 debtor's "willful and malicious injury" to collateral securing finance company's claim, in converting the non-functioning car which secured finance company's claim and selling it for parts, did not provide basis for excepting entire amount of finance company's claim from discharge, as one "for" debtor's willful and malicious injury; rather, only that portion of debt corresponding to retail fair cash market value of car at time of conversion, together with reasonable and necessary attorney fees as provided by contract, would be declared nondischargeable. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

**\*715** Steven J. Fink, Steven J. Fink & Associates, Ltd., Chicago, IL, for Plaintiff.

Frank G. Cortese, Law Offices of Frank G. Cortese, Chicago, IL, for Defendant.

### *FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING TRIAL*

JACK B. SCHMETTERER, Bankruptcy Judge.
Following trial held on Fidelity Financial Service's ("Fidelity") Complaint Objecting to the Discharge of Creditor's Debt (the "Complaint"), the Court now makes and enters Findings of Fact and Conclusions

of Law. Pursuant thereto, a portion of the debt owed to Fidelity by the debtor Victor Cox will by separate judgment order be held nondischargeable under 11 U.S.C. § 523(a)(6) because that debt was incurred due to a willful and malicious injury by the debtor to Fidelity or its property.

### FINDINGS OF FACT

Victor Cox ("Cox") has worked in the collection department at Household Retail Services in Wooddale, Illinois for over three years. He bought a 1990 Nissan (the "Car") in January 1995 pursuant to Retail Sales and Security Agreement under which Fidelity was the first lienholder on the car. Its lien secured a promissory note. The car was pre-used and had been driven approximately 56,000 miles. Cox testified that he added a stereo and chrome rims to the car, spending about $2,000 for the rims and $1,800 for the stereo, but offered no documentation to substantiate these purchases. He made about two years of monthly payments to Fidelity on the promissory note, at $419 per month totaling payments of about $10,000.

Cox began experiencing difficulty with the car about six to eight months after buying it. A mechanic informed Cox that his engine was damaged and needed to be replaced. At that time the car had been driven a total of 100,000 miles because Cox lives in Richton Park and works in Wooddale, requiring frequent round trips each about 100 miles. Cox did complain to Fidelity about problems with the engine.

Cox testified that when he was driving the vehicle on an expressway en route to his sister's house in the spring or summer of 1997 (but changed his testimony on cross examination, to say that the event transpired in 1998) his car began making a loud, banging noise close to 99th and Halsted in Chicago, Illinois. The car began smoking and eventually the motor stopped and so did the vehicle. Cox left the car and walked to his sister's home which was located a few blocks away from the stopped vehicle. Cox testifies that he later returned to the car in another vehicle with his sister and a friend and saw an orange sticker on it. He then left the auto once again and returned to his sister's house. (Neither the sister nor the friend was called to testify though both are available.)

Cox said that he returned to the car a second time and found it sitting on crates, the wheels having been removed. The car could not be pushed off the expressway. He testified that the vehicle windows were broken and someone had rummaged through the glove compartment. Cox said that he then removed the stereo equipment that he had installed in the car, and left the scene.

He testified that when he returned a third time the car was gone and he never again saw it. He did not file a police report because due to the orange sticker he thought the car had been towed by some city agency or tow service and not stolen. However, Cox did not immediately check to verify if the car had in fact been towed. He called the responsible city office a few months after the car disappeared to see if his car had in fact been towed. The city informed him that towed cars were only held for a certain period of time but advised him that because the car *716 was last seen by him on Interstate 57, someone working for the State of Illinois could have towed it.

Prior to that incident with the car, Cox had a history of nonpayment of his monthly car note. In fact, in July of 1997 the same car was repossessed by Fidelity. Cox later redeemed the car and entered into a new loan on July 22, 1997.

Fidelity called as its sole witness a Ms. Lieb who has worked since March 1999 as a branch manager for the Tinley Park, Illinois office of Fidelity. Lieb's current responsibilities include overseeing collections, loan applications and funding. She testified that she is aware of the collection policy of Fidelity through training and a branch manual.

Lieb previously worked at Fidelity from 1983 to 1993, serving as a customer service representative. Lieb has never met Cox but she reviewed his file folder, which contains documents that have been filed therein with account records, copies of the contracts, and related papers. One of these documents admitted into evidence as a business record was Fidelity's record of comments between Debtor and Fidelity employees.

The promissory note and security agreement indicated the amount financed, the interest rate and the vehicle as security on the loan. Title documents issued by the State of Illinois were also contained in the file.

Documents pertaining to the second loan made July 22, 1997, were also admitted. The second loan went into default for lack of payments and insurance. When a customer goes into default, Fidelity contacts that customer to find out reasons for the default, and attempts to get customers back into compliance. If that does not happen, Fidelity repossesses the collateral.

Cox was frequently behind on his payment obligations. He repeatedly promised payments that were not made. In July or August 1998, Fidelity again attempted to repossess the vehicle, but it has been unable to find the vehicle.

The Fidelity record of communications between its representatives and Cox indicates that on August 6, 1998, a Mr. Gachino was the Fidelity collection agent on the Cox account. Gachino's duty was to review all collections account. He had authority to request repossession of collateral on non-performing loans subject to a superior's approval. Cox cailed and spoke to Gachino at 10:30 that day. Cox told Gachino that he could not afford the car. At 4:37 the same day Cox called Gachino again and said he would come into Fidelity's office. Cox then admitted to Gachino that he did not have the collateral vehicle. The record indicates Cox told Gachino that when the car broke down he "sold parted it." The parties dispute what the term "sold parted" meant. Cox testified that he spoke with Gachino and told him that he removed his own belongings, most particularly his stereo. Cox argues that the term "sold parted it" simply meant that he took items from the car that belonged to him and were not collateral, such as the stereo equipment. Fidelity argues that Cox meant that he sold the car for parts or for its pieces. Cox also promised Gachino that he would keep up with his obligations but Gachino told him "I'll see you in court".

Fidelity's witness Lieb testified that when a collateral vehicle is stolen, the customer usually files a police report. If a police report had been filed, Fidelity would have received the market value of the vehicle even though Cox did not maintain the required insurance, because when as here a customer does not get insurance, Fidelity obtains coverage with Balboa Insurance Company. However, under its policy, Fidelity could not file claim with Balboa because no police report was ever filed by Cox of a car theft.

On October 9, 1998, Mr. Tony Ross a Fidelity employee reviewed the record of prior calls with Cox and spoke with one Mike Greenhagen. Greenhagen is used by *717 Fidelity to file detinue actions when all else has failed to get a car from a customer, and that was evidently planned.

Cox filed his bankruptcy case under Chapter 7 in January 1999. Cox then owed $19,102.73 on the account.

Gachino worked for Fidelity until February of 1999 which is before Lieb resumed her employment with Fidelity, so she cannot personally verify the accuracy of Gachino's note of his conversation with Cox, though it was admitted without objection as a business record. Lieb testified, however, that the log indicates that Gachino's records were reviewed by more than one person after he left, and that Gachino could not have ordered the repossession without permission of a superior.

Cox was not a credible witness. There were several inconsistencies in his testimony. His testimony on what occurred the day the car disappeared was somewhat convoluted. It is not believable that Cox would simply assume that the sticker was a tow sticker without reading it, and his sister and friend were not called to corroborate his testimony. It is also unbelievable that he would wait several months before attempting to determine what actually happened to his car as he testified. At no time did he file a police report of theft. He did not contradict the report that he told Gachino as to the car that he had "sold parted it," but only disputed what that phrase meant. Moreover, initially Cox was sure that the events surrounding loss of the car occurred in the Spring or Summer of 1997, but when presented with the log containing conversations that transpired between himself and a Fidelity officer, he changed his testimony about that loss to the year 1998. It is not credible that he could not recall

whether his car disappeared one year or two years before the trial. Finally, there was evidence from the record of his many discussions with Fidelity representatives that Cox told Fidelity's representative in August of 1998 that he wanted to keep the car, that being two months after he now says that it disappeared.

From all the evidence, it must be found that Mr. Cox sold parts from the auto and disposed of it after it had major engine trouble, all without Fidelity's permission.

Facts set forth in the Conclusions of Law will stand as additional Findings of Fact.

## JURISDICTION

This matter is before the Court pursuant to 28 U.S.C. § 157 and referred here by Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Subject matter jurisdiction lies under 28 U.S.C. § 1334(b). Venue lies properly under 28 U.S.C. § 1409. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## CONCLUSIONS OF LAW

[1] [2]    The Bankruptcy Code excepts from discharge debts arising from a "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523 (a)(6). The burden of proof is upon the creditor to establish that the debt is non-dischargeable by a preponderance of evidence. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

The Supreme Court recently addressed a split in circuit precedents regarding the proper interpretation of the term "willful" under the discharge exception. *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The Court affirmed the Eighth Circuit decision that interpreted the willful element of § 523(a)(6) to render nondischargeable, debts arising from willful acts done with the actual intent to cause injury. The opinion compared willful injury to intentional torts which generally require that the actor intend "the consequence of an act" not just the "act itself". *Id.,* 523 U.S. at 61-62, 118 S.Ct. at 977, (quoting *\*718* Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964)). Injuries either negligently or recklessly inflicted do not come within the scope of § 523(a) (6). *Id.* The Court rejected the argument that all intentional acts that cause injury were willful injuries. *Id.* Applying that interpretation, the Court reasoned, very few debts would be discharged, and almost every traffic accident or knowing breach of contract would be nondischargeable. *Id.*

[3]    Although *Kawaauhau* resolved divided authorities regarding the proper interpretation of willfulness under § 523(a)(6), the decision did not clearly define the scope of the term "intent" as used by the Court to describe willful conduct. Specifically, the Court opinion did not indicate whether willfulness must be established by a showing that the debtor had a subjective intent to injure the creditor or whether willfulness may be established by showing that the debtor had subjective knowledge that his acts were substantially certain to cause injury.

A number of bankruptcy court opinions have held that substantial certainty of injury is insufficient to satisfy § 523(a)(6) willfulness under *Kawaauhau. See In re Buck,* 220 B.R. 999, 1004 (10th Cir. BAP 1998) (holding that the willful standard requires evidence that the debtor had "motive to harm" the creditor); *In re Tomlinson,* 220 B.R. 134, 137-38 (Bankr.M.D.Fla.1998)(stating that the Eleventh Circuit's substantially certain standard is inconsistent with *Kawaauhau* and applying a strict "intent to cause injury" standard). However, two circuit courts of appeals and several bankruptcy courts have interpreted the term "intent" under 11 U.S.C. § 523(a)(6) as enabling proof of intent to injure through proof of subjective or objective knowledge that injury is substantially certain to result. *See In re Markowitz,* 190 F.3d 455 (6th Cir.1999); *In re Miller,* 156 F.3d 598, 603 (5th Cir.1998); *In re*

*Budig,* 240 B.R. 397 (D.Kan.1999); *In re Kidd,* 219 B.R. 278 (Bankr.D.Mont.1998).

Although it is possible to argue from *Kawaauhau* that an injury is intentional only if the actor consciously desired to cause the injury, "under the common law the word 'intent ... denote[s] that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.' " *Conte v. Gautam,* 33 F.3d 303, 308 (3d Cir.1994). The Restatement (Second) of Torts § 8A (1964) provides the following discussion of the term intent:

All consequences which the actor desires to bring about are intended, as the word is used in this Restatement. Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. As the probability that the consequences will follow decreases, and becomes less than substantial certainty, the actor's conduct loses the character of intent and becomes mere recklessness ... As the probability decreases further, and amounts only to a risk that the result will follow, it becomes ordinary negligence.

*Id.* at § 8A, Comment b. The Restatement thus equates substantial certainty that a result will occur with intent to produce the result.

While the Supreme Court in *Kawaauhau,* only refers to the "desiring the consequences" portion of the Restatement, the Eighth Circuit decision in *In re Geiger* which *Kawaauhau* affirmed, quoted the substantial certainty language:

We ... think that the correct rule is that a judgment debt cannot be exempt from discharge in bankruptcy unless it is based on what the law has for generations called an intentional tort, a legal category that is based on "the consequences of an act rather than the act itself." Restatement (Second) of Torts § 8A, comment a, at 15 (1965). Unless *\*719* the actor "desires to cause consequences of his act, or ... believes that the consequences are substantially certain to result from it," he or she has not committed an intentional tort. *Id.*

*In re Geiger,* 113 F.3d 848, 852 (8th Cir.1997).

A Montana bankruptcy court opinion expressed the need to use the substantial certainty standard particularly in conversion cases. The opinion pointed out that in a typical scenario, debtor converts creditor's collateral to debtor's own use in an attempt to avoid personal financial ruin. *In re Kidd,* 219 B.R. 278, 284 (Bankr.D.Mont.1998). Rarely is the debtor acting out of a irrelevant desire to injure the creditor, even though the injury to the creditor is almost always substantially certain to result from a debtor's actions to hide or sell the creditor's property that serves as collateral. *Id.*

The fresh start provided in bankruptcy is to protect the honest but unfortunate debtor. *In re Scott,* 172 F.3d 959, 969 (7th Cir.1999). The "substantial certainty" test is consistent with that goal in that it "focuses on whether the injury was in fact anticipated by the debtor and thus insulates the innocent collateral conversions from non-dischargeability under § 523(a)(6)". *Kidd,* 219 B.R. at 285.

[4]     The substantial certainty standard is also consistent with *Kawaauhau* which requires a showing that debtor intend the consequences of some harmful act. Following that reasoning, in order to prevail under § 523(a)(6), a creditor must demonstrate by preponderance of the evidence either that the debtor desired to cause the injury complained of, or that the debtor believed that harmful consequences were substantially certain to result from the debtor's acts. *Markowitz,* 190 F.3d 455, 464 (6th Cir.1999).

[5]     [6]     Willful injury may be established by direct evidence of specific intent. *In re Longley,* 235 B.R. 651, 657 (10th Cir. BAP 1999). In the instant case, Cox stripped the collateral vehicle of valuable parts. Though there is no evidence that he had specific intent to harm the Fidelity company when converting parts of the collateral, the act of conversion itself had the direct and necessary

consequence of taking value away from the car and therefore was done with intent to impair Fidelity's property interest in the collateral. Willful injury may be established indirectly by evidence of debtor's knowledge of the creditor's rights and knowledge that the conduct will cause particularized injury. *Id.*

[7]    Cox clearly had knowledge that Fidelity retained a type of interest in the car after he purchased it originally. Fidelity had repossessed Cox's car once in the past due to his habitual lack of payment. After the car was repossessed, he signed the second contract and knew that he had again given a collateral interest to Fidelity. When the car ultimately disappeared, Cox had again fallen behind on payments, and was aware that lack of payment on his part would entitle Fidelity to the car once again. Lieb testified that in fact Fidelity was in the process of repossessing the car before it disappeared, but was unable to locate it. By selling parts from the car, and hiding or selling the auto body, Cox knew that Fidelity's ability to protect itself by repossessing the car would be made impossible. Thus Cox intentionally destroyed Fidelity's security interest in the wholesale market value of that car that existed in mid 1998.

[8]    [9]    [10]    In addition to being found willful, Cox's actions must also be found malicious for a determination of nondischargeability under § 523(a)(6). "Malicious" under that provision means in conscious disregard of one's duties or without just cause or excuse. *In re Thirtyacre,* 36 F.3d 697, 700 (7th Cir.1994). Maliciousness does not require ill will or specific intent to do harm. *In re Arlington,* 192 B.R. 494, 500 (Bankr.N.D.Ill.1996). Cox was already aware from previous personal experience that *720 the continual failure on his part to make monthly car note payments could result in Fidelity exercising its rights as a first lienholder and repossessing the car, yet Cox proceeded to sell its valuable parts. His actions were done in conscious disregard of his duties and therefore were malicious.

Cox cites in his trial brief to the following three cases in support his argument that disposition of the car was not willful and malicious: *Williams v. Petersen,* 175 B.R. 375 (Bankr.D.Idaho 1994), *American Family Services v. Johnson,* 166 B.R. 365 (Bankr.D.Minn.1994) and *Deere Credit Services, Inc. v. Thomas,* 116 B.R. 287 (Bankr.M.D.Fla.1990).

All three cases were decided prior to *Kawaauhau* and thus are of limited value. Moreover, these cases do not support Cox, but rather support Fidelity under the facts found here because, in all three opinions cited, the debtor was found to have caused a willful and malicious injury under § 523(a)(6) after engaging in behavior similar to Cox: selling collateral without the permission of the secured party.

[11]    However, under 11 U.S.C. § 523(a)(6), the debt is barred from discharge only for a debt " *for* willful and malicious injury" (emphasis supplied), meaning debt incurred by the intentional harm. In this case the debt caused by intentional harm and therefore barred from discharge is only the fair cash market value of the car when Cox "sold parted it," based on the retail value that Fidelity could have realized on it if repossessed. *See In re Iaquinta,* 98 B.R. 919, 925 (Bankr.N.D.Ill.1989) (the appropriate measure of damages for conversion under § 523(a)(6) is the fair market value of the converted collateral). However, the car value was not offered into evidence. Therefore, the judgment to be entered here will declare that the retail fair cash market value of the subject car in the summer of 1998 taking into account its age and condition which included a non-functioning engine, and only that value, comprises the debt of Cox that is nondischargeable, along with reasonable and necessary attorney's fees as provided by contract. The bankruptcy stay will be modified to permit Fidelity to seek declaration and collection of that value in a non-bankruptcy proceeding. Fidelity's request for nondischargeability of the entire debt due must therefore be denied.

### CONCLUSION

Cox intentionally converted valuable parts of the car by selling them. There is sufficient evidence to prove that Cox thereby intended to injure Fidelity's security interest because he was aware of Fidelity's interest and knew that selling of the car parts was substantially certain to cause an injury to that interest. Cox actions were willful and malicious. Therefore, to the extent Cox destroyed the car's retail value through his actions, his debt to Fidelity will be declared non-dischargeable.

Bkrtcy.N.D.Ill.,2000.
In re Cox
243 B.R. 713

END OF DOCUMENT

📄 West Reporter Image (PDF)

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.



**Kawaauhau v. Geiger**
523 U.S. 57, 118 S.Ct. 974
U.S.Mo.,1998.
March 03, 1998 (Approx. 6 pages)

West Reporter Image (PDF)

523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90, 38 Collier Bankr.Cas.2d 1629, 32 Bankr.Ct.Dec. 240, Bankr. L. Rep. P 77,643, 12 Tex.Bankr.Ct.Rep. 68, 98 Cal. Daily Op. Serv. 1476, 98 Daily Journal D.A.R. 2039, 10 Fourth Cir. & D.C. Bankr. 260, 98 CJ C.A.R. 937, 11 Fla. L. Weekly Fed. S 367, 15 Colo. Bankr. Ct. Rep. 115, 2 Cal. Bankr. Ct. Rep. 26

Briefs and Other Related Documents

Supreme Court of the United States
Margaret KAWAAUHAU, et vir., Petitioners,
v.
Paul W. GEIGER.
No. 97-115.
Argued Jan. 21, 1998.
Decided March 3, 1998.

Judgment creditors filed complaint seeking to deny discharge of debts owed by Chapter 7 debtor-physician resulting from malpractice action. The Bankruptcy Court, David P. McDonald, J., 172 B.R. 916, found for creditors, and debtor appealed. The United States District Court for the Eastern District of Missouri, Jean C. Hamilton, Chief Judge, affirmed, and debtor appealed. A panel of the United States Court of Appeals for the Eight Circuit reversed, 93 F.3d 443, and rehearing en banc was granted. The Court of Appeals, 113 F.3d 848, adhered to panel's decision. Certiorari was granted. The Supreme Court, Justice Ginsburg, held that debts arising from recklessly or negligently inflicted injuries do not fall within the willful and malicious injury exception to discharge.
Affirmed.

West Headnotes

[1] KeyCite Notes 

⇐ 272 Negligence
   ⇐ 272I In General
      ⇐ 272k201 k. Distinction Between Negligence and Intentional Conduct. Most Cited Cases
      (Formerly 379k4)

⇐ 272 Negligence KeyCite Notes
   ⇐ 272V Heightened Degrees of Negligence
      ⇐ 272k274 k. Reckless Conduct. Most Cited Cases
      (Formerly 379k4)

⇐ 379 Torts KeyCite Notes
   ⇐ 379I In General
      ⇐ 379k115 k. Intent or Malice. Most Cited Cases
      (Formerly 379k4)

"Intentional" torts, as distinguished from negligent or reckless torts, generally require that actor intended consequences of act, not simply act itself. Restatement (Second) of Torts § 8A comment.

[2] KeyCite Notes 

⇐51 Bankruptcy
  ⇐51X Discharge
    ⇐51X(C) Debts and Liabilities Discharged
      ⇐51X(C)1 In General
        ⇐51k3341 k. In General. Most Cited Cases

Exceptions to discharge should be confined to those plainly expressed. Bankr.Code, 11 U.S.C.A. § 523 (a).

[3] KeyCite Notes 

⇐361 Statutes
  ⇐361VI Construction and Operation
    ⇐361VI(A) General Rules of Construction
      ⇐361k204 Statute as a Whole, and Intrinsic Aids to Construction
        ⇐361k206 k. Giving Effect to Entire Statute. Most Cited Cases

Supreme Court is hesitant to adopt interpretation of congressional enactment which renders superfluous another portion of that same law.

[4] KeyCite Notes

⇐51 Bankruptcy
  ⇐51X Discharge
    ⇐51X(C) Debts and Liabilities Discharged
      ⇐51X(C)5 Torts and Crimes
        ⇐51k3374 Willful or Malicious Injury
          ⇐51k3374(8) Particular Injuries
            ⇐51k3374(9) k. In General; Fraud. Most Cited Cases
            (Formerly 51k3355(2.1))

Debt arising from medical malpractice judgment, attributable to physician's negligent or reckless conduct, did not fall within willful and malicious injury exception to discharge. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

[5] KeyCite Notes

⇐51 Bankruptcy
  ⇐51X Discharge
    ⇐51X(C) Debts and Liabilities Discharged
      ⇐51X(C)5 Torts and Crimes
        ⇐51k3374 Willful or Malicious Injury
          ⇐51k3374(3) k. Recklessness or Negligence. Most Cited Cases
          (Formerly 51k3355(1.15))

Debts arising from recklessly or negligently inflicted injuries do not fall within compass of willful and malicious injury exception to discharge. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

**974 *57 Syllabus [FN*]



FN* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.,* 200 U.S. 321, 337, 26 S.Ct. 282, 287, 50 L.Ed. 499.

When petitioner Kawaauhau sought treatment for her injured foot, respondent Dr. Geiger examined and hospitalized her to attend to the risk of infection. Although Geiger knew that intravenous penicillin would have been more effective, he prescribed oral penicillin, explaining in his testimony that he understood his patient wished to minimize treatment costs. Geiger then departed on a business trip, leaving Kawaauhau in the care of other physicians, who decided she should be transferred to an infectious disease specialist. When Geiger returned, he canceled the transfer and discontinued all antibiotics because he believed the infection had subsided. Kawaauhau's condition deteriorated, requiring amputation of her leg below the knee. After trial in the malpractice suit brought by Kawaauhau and her husband, the jury found Geiger liable and awarded the Kawaauhaus approximately $355,000 in damages. Geiger, who carried no malpractice insurance, moved to Missouri, where his wages were garnished by the Kawaauhaus. Geiger then petitioned for bankruptcy. The Kawaauhaus requested the Bankruptcy Court to hold the malpractice judgment nondischargeable under **975 11 U.S.C. § 523(a)(6), which provides that a "discharge [in bankruptcy] ... does not discharge an individual debtor from any debt ... for willful and malicious injury ... to another." Concluding that Geiger's treatment fell far below the appropriate standard of care and therefore ranked as "willful and malicious," that court held the debt nondischargeable. The District Court affirmed, but the Eighth Circuit reversed, holding that § 523(a)(6)'s exemption from discharge is confined to debts for an intentional tort, so that a debt for malpractice remains dischargeable because it is based on negligent or reckless conduct.

*Held:* Because a debt arising from a medical malpractice judgment attributable to negligent or reckless conduct does not fall within the § 523(a)(6) exception, the debt is dischargeable in bankruptcy. Section 523(a)(6)'s words strongly support the Eighth Circuit's reading that only acts done with the actual intent to cause injury fall within the exception's scope. The section's word "willful" modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury,* not merely, as the Kawaauhaus urge, a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts *58 resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury" or selected an additional word or words, *i.e.,* "reckless" or "negligent," to modify "injury." Moreover, § 523(a)(6)'s formulation triggers in the lawyer's mind the category "intentional torts," which generally require that the actor intend the *consequences* of an act, not simply the act itself. The Kawaauhaus' more encompassing interpretation could place within the excepted category a wide range of situations in which an act is intentional, but injury is unintended, *i.e.,* neither desired nor in fact anticipated by the debtor. A construction so broad would be incompatible with the well-known guide that exceptions to discharge should be confined to those plainly expressed, and would render superfluous the exemptions from discharge set forth in §§ 523(a)(9) and 523(a)(12). The Kawaauhaus rely on *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754, which held that a damages award for the tort of "criminal conversation" survived bankruptcy under the 1898 Bankruptcy Act's exception from discharge for judgments in civil actions for " 'willful and malicious injuries.' " The *Tinker* opinion repeatedly recognized that at common law the tort in question ranked as trespass *vi et armis,* akin to a master's " 'action of trespass and assault ... for the battery of his servant.' " *Tinker* placed criminal conversation solidly within the traditional intentional tort category, and this Court so confines its holding; that decision provides no warrant for departure from the current statutory instruction that, to be nondischargeable, the judgment debt must be "for willful and malicious *injury.*" See, *e.g., Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 332, 55 S.Ct. 151, 153, 79 L.Ed. 393. The Kawaauhaus' argument that, as a policy matter, malpractice judgments should be excepted from discharge, at least when the debtor acted recklessly or carried no malpractice insurance, should be addressed to Congress. Debts arising from reckless or negligently inflicted injuries do not fall within § 523(a)(6)'s compass. Pp. 976-978. 113 F.3d 848 (C.A.8 1997), affirmed.

GINSBURG, J., delivered the opinion for a unanimous Court.

Norman W. Pressman, St. Louis, MO, for petitioners.

Laura K. Grandy, Belleville, IL, for respondent.

*59 Justice GINSBURG delivered the opinion of the Court.

Section 523(a)(6) of the Bankruptcy Code provides that a debt "for willful and malicious injury by the debtor to another" is not dischargeable. 11 U.S.C. § 523(a)(6). The question before us is whether a debt arising from a medical malpractice judgment, attributable to negligent or reckless conduct, falls within this statutory exception. We hold **976 that it does not and that the debt is dischargeable.

I

In January 1983, petitioner Margaret Kawaauhau sought treatment from respondent Dr. Paul Geiger for a foot injury. Geiger examined Kawaauhau and admitted her to the hospital to attend to the risk of infection resulting from the injury. Although Geiger knew that intravenous penicillin would have been more effective, he prescribed oral penicillin, explaining in his testimony that he understood his patient wished to minimize the cost of her treatment.

Geiger then departed on a business trip, leaving Kawaauhau in the care of other physicians, who decided she should be transferred to an infectious disease specialist. When Geiger returned, he canceled the transfer and discontinued all antibiotics because he believed the infection had subsided. Kawaauhau's condition deteriorated over the next few days, requiring the amputation of her right leg below the knee.

Kawaauhau, joined by her husband Solomon, sued Geiger for malpractice. After a trial, the jury found Geiger liable and awarded the Kawaauhaus approximately $355,000 in damages.FN1 Geiger, who carried no malpractice insurance, FN2 *60 moved to Missouri, where his wages were garnished by the Kawaauhaus. Geiger then petitioned for bankruptcy. The Kawaauhaus requested the Bankruptcy Court to hold the malpractice judgment nondischargeable on the ground that it was a debt "for willful and malicious injury" excepted from discharge by 11 U.S.C. § 523(a)(6). The Bankruptcy Court concluded that Geiger's treatment fell far below the appropriate standard of care and therefore ranked as "willful and malicious." Accordingly, the Bankruptcy Court held the debt nondischargeable. In re Geiger, 172 B.R. 916, 922-923 (Bkrtcy.Ct.E.D.Mo.1994). In an unpublished order, the District Court affirmed. App. to Pet. for Cert. A-18 to A-22.

> FN1. The jury awarded Margaret Kawaauhau $203,040 in special damages and $99,000 in general damages. In re Geiger, 172 B.R. 916, 919 (Bkrtcy.Ct.E.D. Mo.1994). In addition, the jury awarded Solomon Kawaauhau $18,000 in general damages for loss of consortium and $35,000 for emotional distress. Ibid.

> FN2. Although the record is not clear on this point, it appears that Dr. Geiger was not required by state law to carry medical malpractice insurance. See Tr. of Oral Arg. 19.

A three-judge panel of the Court of Appeals for the Eighth Circuit reversed, 93 F.3d 443 (1996), and a divided en banc court adhered to the panel's position, 113 F.3d 848 (1997) (en banc). Section 523 (a)(6)'s exemption from discharge, the en banc court held, is confined to debts "based on what the law has for generations called an intentional tort." Id., at 852. On this view, a debt for malpractice, because it is based on conduct that is negligent or reckless, rather than intentional, remains dischargeable.

The Eighth Circuit acknowledged that its interpretation of § 523(a)(6) diverged from previous holdings of the Sixth and Tenth Circuits. See id., at 853 (citing Perkins v. Scharffe, 817 F.2d 392, 394 (CA6), cert. denied, 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 112 (1987), and In re Franklin, 726 F.2d 606, 610 (C.A.10 1984)). We granted certiorari to resolve this conflict, 521 U.S. 1153, 118 S.Ct. 31, 138 L.Ed.2d 1061 (1997), and now affirm the Eighth Circuit's judgment.

II

Section 523(a)(6) of the Bankruptcy Code provides:

"(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-

**\*61** . . . . .

"(6) for willful and malicious injury by the debtor to another entity or to the property of another entity."

The Kawaauhaus urge that the malpractice award fits within this exception because Dr. Geiger intentionally rendered inadequate medical care to Margaret Kawaauhau that necessarily led to her injury. According to the Kawaauhaus, Geiger deliberately chose **\*\*977** less effective treatment because he wanted to cut costs, all the while knowing that he was providing substandard care. Such conduct, the Kawaauhaus assert, meets the "willful and malicious" specification of § 523(a)(6).

We confront this pivotal question concerning the scope of the "willful and malicious injury" exception: Does § 523(a)(6)'s compass cover acts, done intentionally,[FN3] that cause injury (as the Kawaauhaus urge), or only acts done with the actual intent to cause injury (as the Eighth Circuit ruled)? The words of the statute strongly support the Eighth Circuit's reading.

> FN3. The word "willful" is defined in Black's Law Dictionary as "voluntary" or "intentional." Black's Law Dictionary 1434 (5th ed.1979). Consistently, legislative reports note that the word "willful" in § 523(a)(6) means "deliberate or intentional." See S.Rep. No. 95-989, p. 79 (1978) U.S.Code Cong. & Admin.News pp. 5787, 5864; H.R.Rep. No. 95-595, p. 365 (1977) U.S.Code Cong. & Admin.News pp. 5963, 6320.

[1] [2] [3] [4] [5]    The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, *i.e.,* "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *conse quences\*62* of an act," not simply "the act itself." Restatement (Second) of Torts § 8A, Comment *a,* p. 15 (1964) (emphasis added).

The Kawaauhaus' more encompassing interpretation could place within the excepted category a wide range of situations in which an act is intentional, but injury is unintended, *i.e.,* neither desired nor in fact anticipated by the debtor. Every traffic accident stemming from an initial intentional act-for example, intentionally rotating the wheel of an automobile to make a left-hand turn without first checking oncoming traffic-could fit the description. See 113 F.3d, at 852. A "knowing breach of contract" could also qualify. See *ibid.* A construction so broad would be incompatible with the "well-known" guide that exceptions to discharge "should be confined to those plainly expressed." *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915).

Furthermore, "we are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law." *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 837, 108 S.Ct. 2182, 2189, 100 L.Ed.2d 836 (1988). Reading § 523(a)(6) as the Kawaauhaus urge would obviate the need for § 523(a)(9), which specifically exempts debts "for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance." 11 U.S.C. § 523(a)(9); see also § 523(a)(12) (exempting debts for "malicious or reckless failure" to fulfill certain commitments owed to a federal depository institutions regulatory agency).[FN4]

FN4. Sections 523(a)(9) and (12) were added to the Bankruptcy Code in 1984 and 1990 respectively. See Pub.L. 98-353, 98 Stat. 364 (1984), and Pub.L. 101-647, 104 Stat. 4865 (1990).

The Kawaauhaus heavily rely on *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904), which presented this question: Does an award of damages for "criminal conversation" survive bankruptcy under the 1898 Bankruptcy Act's exception from *\*63* discharge for judgments in civil actions for " 'willful and malicious injuries to the person or property of another' "? *Id.,* at 481, 24 S.Ct., at 506. The *Tinker* Court held such an award a nondischargeable debt. The Kawaauhaus feature certain statements in the *Tinker* opinion, in particular: "[An] act is willful ... in the sense that it is intentional and voluntary" even if performed "without any particular malice," *id.,* at 485, 24 S.Ct., at 508; an act that "necessarily causes injury and is done intentionally, may be said to be done willfully and maliciously, so as to come within the [bankruptcy discharge] exception," *\*\*978 id.,* at 487, 24 S.Ct., at 509. See also *id.,* at 487, 24 S.Ct., at 509 (the statute exempts from discharge liability for " 'a wrongful act, done intentionally, without just cause or excuse' ") (quoting from definition of malice in *Bromage v. Prosser,* 4 Barn. & Cress. 247, 107 Eng. Rep. 1051 (K.B.1825)).

The exposition in the *Tinker* opinion is less than crystalline. Counterbalancing the portions the Kawaauhaus emphasize, the *Tinker* Court repeatedly observed that the tort in question qualified in the common law as trespassory. Indeed, it ranked as "trespass *vi et armis.*" 193 U.S., at 482, 483, 24 S.Ct., at 507. Criminal conversation, the Court noted, was an action akin to a master's "action of trespass and assault ... for the battery of his servant," *id.,* at 482, 24 S.Ct., at 507. *Tinker* thus placed criminal conversation solidly within the traditional intentional tort category, and we so confine its holding. That decision, we clarify, provides no warrant for departure from the current statutory instruction that, to be nondischargeable, the judgment debt must be "for willful and malicious *injury.*"

Subsequent decisions of this Court are in accord with our construction. In *McIntyre v. Kavanaugh,* 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916), a broker "deprive[d] another of his property forever by deliberately disposing of it without semblance of authority." *Id.,* at 141, 37 S.Ct., at 39. The Court held that this act constituted an intentional injury to property of another, bringing it within the discharge exception. But in *\*64 Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934), the Court explained that not every tort judgment for conversion is exempt from discharge. Negligent or reckless acts, the Court held, do not suffice to establish that a resulting injury is "wilful and malicious." See *id.,* at 332, 55 S.Ct., at 153.

Finally, the Kawaauhaus maintain that, as a policy matter, malpractice judgments should be excepted from discharge, at least when the debtor acted recklessly or carried no malpractice insurance. Congress, of course, may so decide. But unless and until Congress makes such a decision, we must follow the current direction § 523(a)(6) provides.

* * *

We hold that debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6). For the reasons stated, the judgment of the Court of Appeals for the Eighth Circuit is

Affirmed.

U.S.Mo.,1998.
Kawaauhau v. Geiger
523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90, 38 Collier Bankr.Cas.2d 1629, 32 Bankr.Ct.Dec. 240, Bankr. L. Rep. P 77,643, 12 Tex.Bankr.Ct.Rep. 68, 98 Cal. Daily Op. Serv. 1476, 98 Daily Journal D.A.R. 2039, 10 Fourth Cir. & D.C. Bankr. 260, 98 CJ C.A.R. 937, 11 Fla. L. Weekly Fed. S 367, 15 Colo. Bankr. Ct. Rep. 115, 2 Cal. Bankr. Ct. Rep. 26

Briefs and Other Related Documents (Back to top)

- 1998 WL 28318 (Oral Argument) Oral Argument (Jan. 21, 1998)
- 1997 WL 799985 (Appellate Brief) PETITIONER' REPLY BRIEF (Dec. 31, 1997)
- 1997 WL 769459 (Appellate Brief) BRIEF FOR RESPONDENT (Dec. 15, 1997)
- 1997 WL 769454 (Appellate Brief) BRIEF OF THE NATIONAL ASSOCIATION OF CONSUMER BANKRUPTCY ATTORNEYS AS AMICUS CURIAE IN SUPPORT OF RESPONDENT. (Dec. 12, 1997)
- 1997 WL 695469 (Appellate Brief) PETITIONERS' BRIEF ON THE MERITS (Nov. 07, 1997)
- 1997 WL 33485617 (Appellate Petition, Motion and Filing) Respondent's Brief in Opposition (Aug. 18, 1997) Original Image of this Document (PDF)
- 1997 WL 33485678 (Appellate Petition, Motion and Filing) Petition for Writ of Certiorari (Jul. 15, 1997) Original Image of this Document with Appendix (PDF)

END OF DOCUMENT

West Reporter Image (PDF)

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Tools

Copyright © 2008, Thomson/West. | Privacy | Customer Service: 1-800-REF-ATTY (1-800-733-2889) | Help 

REPORTER IMAGE    QUICK PRINT    PRINT    EMAIL    DOWNLOAD    OTHER

**Grogan v. Garner**
498 U.S. 279, 111 S.Ct. 654
U.S.Mo.,1991.
January 15, 1991 (Approx. 10 pages)

Westlaw.

111 S.Ct. 654                                                                Page 1
498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755, 70 A.F.T.R.2d 92-5639, 59 USLW 4072, 24 Collier Bankr.Cas.2d 1,
21 Bankr.Ct.Dec. 342, Bankr. L. Rep. P 73746A
**(Cite as: 498 U.S. 279, 111 S.Ct. 654)**

▷
Grogan v. Garner
U.S.Mo.,1991.

Supreme Court of the United States
Coy R. GROGAN, et al., Petitioners
v.
Frank J. GARNER, Jr.
**No. 89-1149.**

Argued Oct. 29, 1990.
Decided Jan. 15, 1991.

Creditors brought adversary proceeding against Chapter 11 debtor, seeking determination that debt was nondischargeable for fraud. The United States Bankruptcy Court for the Western District of Missouri, Frank W. Koger, J., 73 B.R. 26, entered judgment for creditors, and the District Court, Dean Whipple, J., affirmed. Debtor appealed. The Court of Appeals for the Eighth Circuit, 881 F.2d 579, reversed, and certiorari was granted. The Supreme Court, Justice Stevens, held that preponderance of the evidence standard, rather than clear and convincing evidence standard, applies to all exceptions from dischargeability of debts contained in Bankruptcy Code § 523(a), including nondischargeability for fraud provision.

Judgment of Court of Appeals reversed.

West Headnotes

**[1] Bankruptcy 51 ⇌2826**

51 Bankruptcy
    51VII Claims
        51VII(A) In General
            51k2826 k. Effect of State Law, in General. Most Cited Cases
Validity of creditor's claim is determined by rules of "state law," defined expansively to refer to all nonbankruptcy law that creates substantive claims, including substantive federal law such as federal securities law or federal antifraud law.

**[2] Judgment 228 ⇌636**

228 Judgment
    228XIV Conclusiveness of Adjudication
        228XIV(A) Judgments Conclusive in General
            228k635 Courts or Other Tribunals Rendering Judgment
                228k636 k. In General. Most Cited Cases
Collateral estoppel principles apply in nondischargeability proceedings under the Bankruptcy Code. Bankr.Code, 11 U.S.C.A. § 523(a).

**[3] Bankruptcy 51 ⇌3405(13)**

51 Bankruptcy
    51X Discharge
        51X(D) Determination of Dischargeability
            51k3401 Evidence
                51k3405 Weight and Sufficiency
                    51k3405(12) Degree of Proof Required
                        51k3405(13) k. In General. Most Cited Cases
    (Formerly 51k3422(10.1), 51k3422(10))

**Bankruptcy 51 ⇌3405(14)**

51 Bankruptcy
    51X Discharge
        51X(D) Determination of Dischargeability
            51k3401 Evidence
                51k3405 Weight and Sufficiency
                    51k3405(12) Degree of Proof Required
                        51k3405(14) k. Particular Cases. Most Cited Cases
    (Formerly 51k3422(11))
Preponderance of the evidence standard, rather than clear and convincing evidence standard, applies to all exceptions from dischargeability of debts contained in Bankruptcy Code § 523(a), including nondischargeability for fraud provision.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

111 S.Ct. 654                                                                                 Page 2
498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755, 70 A.F.T.R.2d 92-5639, 59 USLW 4072, 24 Collier Bankr.Cas.2d 1,
21 Bankr.Ct.Dec. 342, Bankr. L. Rep. P 73746A
**(Cite as: 498 U.S. 279, 111 S.Ct. 654)**

Bankr.Code, 11 U.S.C.A. §§ 523(a), (a)(2)(A).

**[4] Evidence 157 &larrhk;596(1)**

157 Evidence
 157XIV Weight and Sufficiency
  157k596 Degree of Proof in General
   157k596(1) k. In General. Most Cited Cases
Because the "preponderance-of-the-evidence"
standard results in roughly equal allocation of risk
of error between litigants, Supreme Court presumes
that such standard is applicable in civil actions
between private litigants unless particularly import-
ant individual interests or rights are at stake.

**[5] Bankruptcy 51 &larrhk;2363.1**

51 Bankruptcy
 51IV Effect of Bankruptcy Relief; Injunction
and Stay
  51IV(A) In General
   51k2363 Protection Against Discrimina-
tion or Collection Efforts in General; "Fresh Start."
    51k2363.1 k. In General. Most Cited
Cases
 (Formerly 51k2363)

**Bankruptcy 51 &larrhk;3271**

51 Bankruptcy
 51X Discharge
  51X(B) Dischargeable Debtors
   51X(B)1 In General
    51k3271 k. In General. Most Cited Cases
Although a central purpose of Bankruptcy Code is
to provide procedure by which certain insolvent
debtors can reorder their affairs, make peace with
their creditors, and enjoy new opportunity in life
with clear field for future effort, unhampered by
pressure and discouragement of preexisting debt,
Code limits opportunity for completely unen-
cumbered new beginning to honest but unfortunate
debtor. Bankr.Code, 11 U.S.C.A. § 101 et seq.

**[6] Judgment 228 &larrhk;636**

228 Judgment
 228XIV Conclusiveness of Adjudication
  228XIV(A) Judgments Conclusive in Gener- al
   228k635 Courts or Other Tribunals Ren-
dering Judgment
    228k636 k. In General. Most Cited Cases
In light of application of preponderance of evidence
standard of proof to nondischargeability for fraud
claims, all fraud claims which creditors have suc-
cessfully reduced to judgment will be nondis-
chargeable in bankruptcy, under collateral estoppel,
whether judgment was based on preponderance of
evidence or clear and convincing evidence standard
of proof. Bankr.Code, 11 U.S.C.A. § 523(a)(2)(A).

   **\*\*655** *Syllabus* [FN\*]

  FN\* The syllabus constitutes no part of the
  opinion of the Court but has been prepared
  by the Reporter of Decisions for the con-
  venience of the reader. See *United States v.*
  *Detroit Lumber Co.,* 200 U.S. 321, 337, 26
  S.Ct. 282, 287, 50 L.Ed. 499.

 Respondent Garner filed a petition for relief
under Chapter 11 of the Bankruptcy Code, listing a
fraud judgment in petitioners' favor as a dis-
chargeable debt. Petitioners then filed a complaint
in the proceeding requesting a determination that
their claim should be exempted from discharge pur-
suant to § 523(a), which provides that a debtor may
not be discharged from, *inter alia,* obligations for
money obtained by "actual fraud." Presented with
portions of the fraud case record, the Bankruptcy
Court found that the elements of actual fraud under
§ 523 were proved and that the doctrine of collater-
al estoppel required a holding that the debt was not
dischargeable. It and the District Court rejected
Garner's argument that collateral estoppel does not
apply because the fraud trial's jury instructions re-
quired that fraud be proved by a preponderance of
the evidence, whereas § 523 requires proof by clear
and convincing evidence. The Court of Appeals re-
versed, concluding that the clear-and-convincing

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

111 S.Ct. 654                                                                                                    Page 3

498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755, 70 A.F.T.R.2d 92-5639, 59 USLW 4072, 24 Collier Bankr.Cas.2d 1,
21 Bankr.Ct.Dec. 342, Bankr. L. Rep. P 73746A
**(Cite as: 498 U.S. 279, 111 S.Ct. 654)**

evidence standard applies in fraud cases, since Congress would not have silently changed pre-§ 523(a) law, which generally applied the higher standard in common-law fraud litigation and in resolving dischargeability issues, and since the Code's general "fresh start" policy militated in favor of a broad construction favorable to the debtor.

*Held:* Preponderance of the evidence is the standard of proof for § 523(a)' s dischargeability exceptions. Neither § 523 and its legislative history nor the legislative history of § 523's predecessor prescribes a standard of proof, a silence that is inconsistent with the view that Congress intended to require a clear-and-convincing evidence standard. The preponderance standard is presumed to be applicable in civil actions between private parties unless particularly important individual interests or rights are at stake, and, in the context of the discharge exemption provisions, a debtor's interest in discharge is insufficient to require a heightened standard. Such a standard is not required to effectuate the Code's "fresh start" policy. Since the Code limits the opportunity for a completely unencumbered new beginning to the honest but unfortunate debtor by exempting certain debts from discharge, it is unlikely that Congress would have fashioned a proof standard that favored an interest in giving the perpetrators of fraud a fresh start over an interest in protecting the victims of fraud. It is also fair to infer from § 523(a)'s structure that *280 Congress intended the preponderance standard to apply to all of the discharge exceptions. That they are grouped together in the same subsection with no suggestion that any particular exception is subject to a special standard implies that the same standard should govern all of them, and it seems clear that a preponderance standard is sufficient to establish nondischargeability of some claims. The fact that many States required proof of fraud by clear and convincing evidence at the time the current Code was enacted does not mean that Congress silently endorsed such a rule for the fraud discharge exception. Unlike many States, **656 Congress has chosen a preponderance standard when it has cre-

ated substantive causes of action for fraud. In addition, it amended the Bankruptcy Act in 1970 to make nondischargeability a question of federal law independent of the issue of the underlying claim's validity, which is determined by state law. Moreover, both before and after 1970, courts were split over the appropriate proof standard for the fraud discharge exception. Application of the preponderance standard will also permit exception from discharge of all fraud claims creditors have reduced to judgment, a result that accords with the historical development of the discharge exceptions, which have been altered to broaden the coverage of the fraud exceptions. Pp. 657-661.

881 F.2d 579 (CA8 1989), reversed.

STEVENS, J., delivered the opinion for a unanimous Court.

*Michael J. Gallagher* argued the cause for petitioners. With him on the briefs was *J. Michael Dryton.*
*Deputy Solicitor GeneralRoberts* argued the cause for the United States et al. as *amici curiae* urging reversal. With him on the brief were *Solicitor General Starr, James R. Doty, Paul Gonson, Jacob H. Stillman, Richard A. Kirby,* and *Alfred J. T. Byrne.*
*Timothy K. McNamara* argued the cause for respondent. With him on the brief were *Jonathan R. Haden* and *Larry E. Sells.*
Justice STEVENS delivered the opinion of the Court.
Section 523(a) of the Bankruptcy Code provides that a discharge in bankruptcy shall not discharge an individual debtor from certain kinds of obligations, including those for money *281 obtained by "actual fraud." FN1 The question in this case is whether the statute requires a defrauded creditor to prove his claim by clear and convincing evidence in order to preserve it from discharge.

FN1. Title 11 U.S.C. § 523(a) provides, in pertinent part:
"Exceptions to discharge.
"(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

111 S.Ct. 654                                                                                     Page 4
498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755, 70 A.F.T.R.2d 92-5639, 59 USLW 4072, 24 Collier Bankr.Cas.2d 1,
21 Bankr.Ct.Dec. 342, Bankr. L. Rep. P 73746A
(Cite as: 498 U.S. 279, 111 S.Ct. 654)

discharge an individual debtor from any debt-
. . . . .

"(2) for money, property, services, or an exten-
sion, renewal, or refinancing of credit, to the extent
obtained by-

"(A) false pretenses, a false representation, or
actual fraud, other than a statement respecting the
debtor's or an insider's financial condition;...."

Petitioners brought an action against respond-
ent alleging that he had defrauded them in connec-
tion with the sale of certain corporate securities.
App. 16-25. Following the trial court's instructions
that authorized a recovery based on the preponder-
ance of the evidence, a jury returned a verdict in fa-
vor of petitioners and awarded them actual and
punitive damages. *Id.,* at 28-29. Respondent ap-
pealed from the judgment on the verdict, and, while
his appeal was pending, he filed a petition for relief
under Chapter 11 of the Bankruptcy Code, listing
the fraud judgment as a dischargeable debt.

The Court of Appeals for the Eighth Circuit re-
duced the damages award but affirmed the fraud
judgment as modified. *Grogan v. Garner,* 806 F.2d
829 (1986). Petitioners then filed a complaint in the
bankruptcy proceeding requesting a determination
that their claim based on the fraud judgment should
be exempted from discharge pursuant to § 523.
App. 3-4. In support of their complaint, they intro-
duced portions of the record in the fraud case. The
Bankruptcy Court found that all of the elements re-
quired to establish actual fraud under § 523 had
been proved and that the doctrine of collateral es-
toppel required a holding that the debt was there-
fore not dischargeable. *In re Garner,* 73 B.R. 26
(WD Mo.1987).

**\*282** Respondent does not challenge the con-
clusion that the elements of the fraud claim proved
in the first trial are sufficient to establish "fraud"
within the meaning of **\*\*657** § 523.[FN2] Instead, he
has consistently argued that collateral estoppel does
not apply because the jury instructions in the first
trial merely required that fraud be proved by a pre-
ponderance of the evidence, whereas § 523 requires

proof by clear and convincing evidence. Both the
Bankruptcy Court [FN3] and the District Court [FN4]
rejected this argument.

> FN2. We therefore do not consider the
> question whether § 523(a)(2)(A) excepts
> from discharge that part of a judgment in
> excess of the actual value of money or
> property received by a debtor by virtue of
> fraud. See *In re Rubin,* 875 F.2d 755, 758,
> n. 1 (CA9 1989). Arguably, fraud judg-
> ments in cases in which the defendant did
> not obtain money, property, or services
> from the plaintiffs and those judgments
> that include punitive damages awards are
> more appropriately governed by §
> 523(a)(6). See 11 U.S.C. § 523(a)(6)
> (excepting from discharge debts "for will-
> ful and malicious injury by the debtor to
> another entity or to the property of another
> entity"); *In re Rubin,* 875 F.2d, at 758, n. 1.

> FN3. The Bankruptcy Court concluded that
> "there is no real distinction between
> 'preponderance of the evidence' and 'clear
> and convincing' as regards Section 523 lit-
> igation." *In re Garner,* 73 B.R. 26, 29
> (WD Mo.1987).

> FN4. The District Court explained:
> "A re-litigation of this case in Bankruptcy
> Court on the identical fact issues would be to per-
> mit the party who loses at a jury trial to have a
> second day in court on the same issue he and his
> opponent were fully heard previously. If permitted,
> all like cases would result in duplicitous litigation
> resulting in an unreasonable burden on the bank-
> ruptcy court." App. to Pet. for Cert. 28a.

The Court of Appeals, however, reversed. *In re
Garner,* 881 F.2d 579 (CA8 1989). It recognized
that the "Bankruptcy Code is silent as to the burden
of proof necessary to establish an exception to dis-
charge under section 523(a), including the excep-
tion for fraud,"*id.,* at 581, but concluded that two

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

111 S.Ct. 654                                                                                  Page 5
498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755, 70 A.F.T.R.2d 92-5639, 59 USLW 4072, 24 Collier Bankr.Cas.2d 1,
21 Bankr.Ct.Dec. 342, Bankr. L. Rep. P 73746A
**(Cite as: 498 U.S. 279, 111 S.Ct. 654)**

factors supported the imposition of a "clear and convincing" standard, at least in fraud cases. First, the court stated that the higher standard had generally been applied in both common-law fraud litigation and in resolving dischargeability *283 issues before § 523(a) was enacted, and reasoned that it was unlikely that Congress had intended silently to change settled law.[FN5] Second, the court opined that the general "fresh start" policy that undergirds the Bankruptcy Code militated in favor of a broad construction favorable to the debtor.[FN6]

> FN5. "While the legislative history is scant on this issue, we feel that it is fair to presume that Congress was aware that the prevailing view at the time of adoption was that fraud, for both section 523 and state common law purposes, had to be proved by clear and convincing evidence." *In re Garner,* 881 F.2d, at 582.

> FN6. "This Circuit concluded that the stricter standard was appropriate since the general policy of bankruptcy is to provide the debtor with the opportunity for a fresh start and the courts should, thereby, construe provisions of the Bankruptcy Code favoring the debtor broadly. *Matter of Van Horne,* 823 F.2d [1285, 1287 (CA8 1987).]" *Ibid.*

The Eighth Circuit holding is consistent with rulings in most other Circuits,[FN7] but conflicts with recent decisions by the Third and Fourth Circuits.[FN8] The conflict, together with the importance of the issue, prompted us to grant certiorari, 495 U.S. 918, 110 S.Ct. 1945, 109 L.Ed.2d 308. We now reverse.

> FN7. See *In re Phillips,* 804 F.2d 930, 932 (CA6 1986); *In re Kimzey,* 761 F.2d 421, 423-424 (CA7 1985); *In re Black,* 787 F.2d 503, 505 (CA10 1986); *Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257, 1262 (CA11 1988); *In re Hunter,* 780 F.2d 1577, 1579 (CA11 1986); *In re Dougherty,* 84

B.R. 653 (CA9 BAP 1988).

> FN8. *In re Braen,* 900 F.2d 621 (CA3 1990); *Combs v. Richardson,* 838 F.2d 112 (CA4 1988).

## I

[1] At the outset, we distinguish between the standard of proof that a creditor must satisfy in order to establish a valid claim against a bankrupt estate and the standard that a creditor who has established a valid claim must still satisfy in order to avoid dischargeability. The validity of a creditor's claim is determined by rules of state law. See *284*Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156, 161, 67 S.Ct. 237, 239, 91 L.Ed. 162 1946).[FN9] Since 1970, however,**658 the issue of nondischargeability has been a matter of federal law governed by the terms of the Bankruptcy Code. See *Brown v. Felsen,* 442 U.S. 127, 129-130, 136, 99 S.Ct. 2205, 2208-2209, 2211, 60 L.Ed.2d 767 (1979).[FN10]

> FN9. We use the term "state law" expansively herein to refer to all nonbankruptcy law that creates substantive claims. We thus mean to include in this term claims that have their source in substantive federal law, such as federal securities law or other federal antifraud laws. As the *amici* point out, many federal antifraud laws that may give rise to nondischargeable claims require plaintiffs to prove their right to recover only by a preponderance of the evidence. See Brief for United States et al. as *Amici Curiae* 1-3, and n. 2.

> FN10. Before 1970, the bankruptcy courts had concurrent jurisdiction with the state courts to decide whether debts were excepted from discharge. In practice, however, bankruptcy courts generally refrained from deciding whether particular debts were excepted and instead allowed those questions to be litigated in the state courts. See

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

111 S.Ct. 654                                                                    Page 6
498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755, 70 A.F.T.R.2d 92-5639, 59 USLW 4072, 24 Collier Bankr.Cas.2d 1,
21 Bankr.Ct.Dec. 342, Bankr. L. Rep. P 73746A
**(Cite as: 498 U.S. 279, 111 S.Ct. 654)**

*Brown v. Felsen,* 442 U.S., at 129, 99 S.Ct., at 2208; 1A Collier on Bankruptcy ¶ 17.28, pp. 1726-1727 (14th ed. 1978). The state courts therefore determined the applicable burden of proof, often applying the same standard of proof that governed the underlying claim. The 1970 amendments took jurisdiction over certain dischargeability exceptions, including the exceptions for fraud, away from the state courts and vested jurisdiction exclusively in the bankruptcy courts. See *Brown v. Felsen,* 442 U.S., at 135-136, 99 S.Ct., at 2211-2212; S.Rep. No. 91-1173, pp. 2-3 (1970); H.R.Rep. No. 91-1502, p. 1 (1970), U.S.Code Cong. & Admin.News 1970, p. 4156.

[2] This distinction is the wellspring from which cases of this kind flow. In this case, a creditor who reduced his fraud claim to a valid and final judgment in a jurisdiction that requires proof of fraud by a preponderance of the evidence seeks to minimize additional litigation by invoking collateral estoppel. If the preponderance standard also governs the question of nondischargeability, a bankruptcy court could properly give collateral estoppel effect to those elements of the claim that are identical to the elements required for discharge and which were actually litigated and determined in the prior action. See Restatement (Second) of Judgments § 27 (1982).[FN11] If, however, the clear-and-convincing standard applies*285 to nondischargeability, the prior judgment could not be given collateral estoppel effect. § 28(4). A creditor who successfully obtained a fraud judgment in a jurisdiction that requires proof of fraud by clear and convincing evidence would, however, be indifferent to the burden of proof regarding nondischargeability, because he could invoke collateral estoppel in any event.[FN12]

FN11. Our prior cases have suggested, but have not formally held, that the principles of collateral estoppel apply in bankruptcy

proceedings under the current Bankruptcy Code. See, *e.g., Kelly v. Robinson,* 479 U.S. 36, 48, n. 8, 107 S.Ct. 353, 360, n. 8, 93 L.Ed.2d 216 (1986); *Brown v. Felsen,* 442 U.S., at 139, n. 10, 99 S.Ct., at 2213, n. 10. Cf. *Heiser v. Woodruff,* 327 U.S. 726, 736, 66 S.Ct. 853, 857, 90 L.Ed. 970 (1946) (applying collateral estoppel under an earlier version of the bankruptcy laws). Virtually every court of appeals has concluded that collateral estoppel is applicable in discharge exception proceedings. See *In re Braen,* 900 F.2d 621, 630 (CA3 1990); *Combs v. Richardson,* 838 F.2d 112, 115 (CA4 1988); *Klingman v. Levinson,* 831 F.2d 1292, 1295 (CA7 1987); *In re Shuler,* 722 F.2d 1253, 1256 (CA5), cert. denied *sub nom.Harold V. Simpson & Co. v. Shuler,* 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984); *Goss v. Goss,* 722 F.2d 599, 604 (CA10 1983); *Lovell v. Mixon,* 719 F.2d 1373, 1376 (CA8 1983); *Spilman v. Harley,* 656 F.2d 224, 228 (CA6 1981). Cf. *In re Rahm,* 641 F.2d 755, 757 (CA9) (prior judgment establishes only a prima facie case of nondischargeability), cert. denied *sub nom.Gregg v. Rahm,* 454 U.S. 860, 102 S.Ct. 313, 70 L.Ed.2d 157 (1981). We now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a).

FN12. This indifference would not be shared, however, by a creditor who either did not try, or tried *unsuccessfully,* to prove fraud in a jurisdiction requiring clear and convincing evidence but who nonetheless established a valid claim by proving, for example, a breach of contract involving the same transaction. See, *e.g., In re Black,* 787 F.2d 503 (CA10 1986); *In re Rubin,* 875 F.2d, at 758, n. 1.

In sum, if nondischargeability must be proved only by a preponderance of the evidence, all credit-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755, 70 A.F.T.R.2d 92-5639, 59 USLW 4072, 24 Collier Bankr.Cas.2d 1,
21 Bankr.Ct.Dec. 342, Bankr. L. Rep. P 73746A
**(Cite as: 498 U.S. 279, 111 S.Ct. 654)**

ors who have secured fraud judgments, the elements of which are the same as those of the fraud discharge exception, will be exempt from discharge under **659 collateral estoppel principles. If, however, nondischargeability must be proved by clear and convincing evidence, creditors who secured fraud judgments based only on the preponderance standard would not be assured of qualifying for the fraud discharge exception.

### *286 II

[3] With these considerations in mind, we begin our inquiry into the appropriate burden of proof under § 523 by examining the language of the statute and its legislative history. The language of § 523 does not prescribe the standard of proof for the discharge exceptions. The legislative history of § 523 and its predecessor, 11 U.S.C. § 35 (1976 ed.), is also silent. This silence is inconsistent with the view that Congress intended to require a special, heightened standard of proof.

[4] Because the preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants, we presume that this standard is applicable in civil actions between private litigants unless "particularly important individual interests or rights are at stake." *Herman & MacLean v. Huddleston,* 459 U.S. 375, 389-390, 103 S.Ct. 683, 691, 74 L.Ed.2d 548 (1983); see also *Addington v. Texas,* 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979). We have previously held that a debtor has no constitutional or "fundamental" right to a discharge in bankruptcy. See *United States v. Kras,* 409 U.S. 434, 445-446, 93 S.Ct. 631, 637-638, 34 L.Ed.2d 626 (1973). We also do not believe that, in the context of provisions designed to exempt certain claims from discharge, a debtor has an interest in discharge sufficient to require a heightened standard of proof.

[5] We are unpersuaded by the argument that the clear-and-convincing standard is required to effectuate the "fresh start" policy of the Bankruptcy Code. This Court has certainly acknowledged that a central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy "a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). But in the same breath that we have invoked this "fresh start" policy, we have been careful to explain that the Act *287 limits the opportunity for a completely unencumbered new beginning to the "honest but unfortunate debtor." *Ibid.*

The statutory provisions governing nondischargeability reflect a congressional decision to exclude from the general policy of discharge certain categories of debts-such as child support, alimony, and certain unpaid educational loans and taxes, as well as liabilities for fraud. Congress evidently concluded that the creditors' interest in recovering full payment of debts in these categories outweighed the debtors' interest in a complete fresh start. We think it unlikely that Congress, in fashioning the standard of proof that governs the applicability of these provisions, would have favored the interest in giving perpetrators of fraud a fresh start over the interest in protecting victims of fraud. Requiring the creditor to establish by a preponderance of the evidence that his claim is not dischargeable reflects a fair balance between these conflicting interests.

### III

Our conviction that Congress intended the preponderance standard to apply to the discharge exceptions is reinforced by the structure of § 523(a), FN13 which groups together in **660 the same subsection a variety of exceptions without any indication that any particular exception is subject to a special standard of proof. The omission of any suggestion that different exemptions have different burdens of proof implies that the legislators intended the same standard to govern the nondis-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

111 S.Ct. 654                                                                                    Page 8
498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755, 70 A.F.T.R.2d 92-5639, 59 USLW 4072, 24 Collier Bankr.Cas.2d 1,
21 Bankr.Ct.Dec. 342, Bankr. L. Rep. P 73746A
**(Cite as: 498 U.S. 279, 111 S.Ct. 654)**

chargeability under § 523(a)(2) of fraud claims and, for example, the nondischargeability under § 523(a)(5) of claims for child support and alimony. Because it seems clear that a preponderance of *288 the evidence is sufficient to establish the nondischargeability of some of the types of claims covered by § 523(a), [FN14] it is fair to infer that Congress intended the ordinary preponderance standard to govern the applicability of all the discharge exceptions.

> FN13. See *Crandon v. United States,* 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990) ("In determining the meaning of the statute, we look not only to the particular statutory language but to the design of the statute as a whole and to its object and policy"); *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 1818, 100 L.Ed.2d 313 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole").

> FN14. For example, § 523(a) provides for the nondischargeability of debts not only for child support and alimony, but also for certain fines and penalties, educational loans, and tax obligations. See 11 U.S.C. § 523(a)(1); § 523(a)(5); § 523(a)(7); § 523(a)(8).

We are therefore not inclined to accept respondent's contention that application of the ordinary preponderance standard to the fraud exception is inappropriate because, at the time Congress enacted the current Bankruptcy Code, the majority of states required proof of fraud by clear and convincing evidence.[FN15] Even if we believed that Congress had contemplated the application of different burdens of proof for different exceptions, the fact that most States required fraud claims to be proved by clear and convincing evidence would not support the conclusion that *Congress* intended to adopt

the clear-and-convincing standard for the fraud *discharge* exception.

> FN15. Respondent claims that the vast majority of States applied the heightened standard. See Brief for Respondent 8-14. Petitioners and the *amici* acknowledge that the clear-and-convincing standard applied in many jurisdictions but contend that respondent overstates the number of States that required the heightened standard. See Brief for Petitioners 17-20, and n. 1; Brief for United States et al. as *Amici Curiae* 21-25. Resolution of this dispute is not necessary for our decision.

Unlike a large number, and perhaps the majority, of the States, Congress has chosen the preponderance standard when it has created substantive causes of action for fraud. See, *e.g.,*31 U.S.C. § 3731(c) (False Claims Act); 12 U.S.C.A. § 1833a(e) (civil penalties for fraud involving financial institutions); 42 CFR § 1003.114(a) (1989) (Medicare and Medicaid fraud under 42 U.S.C. § 1320a-7a); *Herman & MacLean v. Huddleston,* 459 U.S., at 388-390, 103 S.Ct., at 690-692 (civil enforcement of the antifraud provisions of *289 the securities laws); *Steadman v. SEC,* 450 U.S. 91, 96, 101 S.Ct. 999, 1005, 67 L.Ed.2d 69 (1981) (administrative proceedings concerning violation of antifraud provisions of the securities laws); *SEC v. C.M. Joiner Leasing Corp.,* 320 U.S. 344, 355, 64 S.Ct. 120, 125, 88 L.Ed. 88 (1943) (§ 17(a) of the Securities Act of 1933); *First National Monetary Corp. v. Weinberger,* 819 F.2d 1334, 1341-1342 (CA6 1987) (civil fraud provisions of the Commodity Exchange Act). Cf. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 491, 105 S.Ct. 3275, 3282, 87 L.Ed.2d 346 (1985) (suggesting that the preponderance standard applies to civil actions under the Racketeer Influenced and Corrupt Organizations Act). Most notably, Congress chose the preponderance standard to govern determinations under 11 U.S.C. § 727(a)(4), which denies a debtor the right to discharge altogether if the debtor has committed

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755, 70 A.F.T.R.2d 92-5639, 59 USLW 4072, 24 Collier Bankr.Cas.2d 1, 21 Bankr.Ct.Dec. 342, Bankr. L. Rep. P 73746A

**(Cite as: 498 U.S. 279, 111 S.Ct. 654)**

a fraud on the bankruptcy court. See H.R.Rep. No. 95-595, p. 384 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6340 ("The fourth ground for denial of discharge is the commission of a bankruptcy crime, though the standard of proof is preponderance of the evidence"); S.Rep. No. 95-989, p. 98 (1978), U.S.Code Cong. & Admin.News 1978, p. 5884**661 (same).[FN16]

> FN16. Prior to the enactment of the 1978 Bankruptcy Code, the Courts of Appeals had held that the preponderance standard applied in this situation. See, *e.g., In re Robinson,* 506 F.2d 1184, 1187 (CA2 1974); *Union Bank v. Blum,* 460 F.2d 197, 200-201 (CA9 1972).

Moreover, as we explained in Part I, *supra,* Congress amended the Bankruptcy Act in 1970 to make nondischargeability a question of federal law independent of the issue of the validity of the underlying claim. Even before 1970, many courts imposed the preponderance burden on creditors invoking the fraud discharge exception. See, *e.g., Sweet v. Ritter Finance Co.,* 263 F.Supp. 540, 543 (WD Va.1967); *Nickel Plate Cloverleaf Federal Credit Union v. White,* 120 Ill.App.2d 91, 93-94, 256 N.E.2d 119, 120-121 (1970); *Gonzales v. Aetna Finance Co.,* 86 Nev. 271, 275, 468 P.2d 15, 18 (1970); *Beneficial Finance Co. of Manchester v. Machie,* 6 Conn.Cir. 37, 41, 263 A.2d 707, 710 (1969); ***290***Budget Finance Plan v. Haner,* 92 Idaho 56, 59, 436 P.2d 722, 725 1968); *Atlas Credit Corp. v. Miller,* 216 So.2d 100, 101 (La.Ct.App.1968); *Household Finance Corp. v. Altenberg,* 5 Ohio St.2d 190, 193, 214 N.E.2d 667, 669 (1966); *MAC Finance Plan of Nashua, Inc. v. Stone,* 106 N.H. 517, 521-522, 214 A.2d 878, 882 (1965). And, following the 1970 amendments, but prior to the enactment of § 523 in 1978, the courts continued to be nearly evenly split over the appropriate standard of proof. Compare, *e.g., Fierman v. Lazarus,* 361 F.Supp. 477, 480 (ED Pa.1973); *In re Scott,* 1 BCD 581, 583 (Bkrtcy.Ct. WD Mich.1975) with *Brown v. Buchanan,* 419 F.Supp. 199, 203

(ED Va.1975); *In re Arden,* 75 B.R. 707, 710 (Bkrtcy.Ct.R.I.1975). Thus, it would not be reasonable to conclude that in enacting § 523 Congress silently endorsed a background rule that clear-and-convincing evidence is required to establish exemption from discharge.

IV

[6] A final consideration supporting our conclusion that the preponderance standard is the proper one is that, as we explained in Part I, *supra,* application of that standard will permit exception from discharge of all fraud claims creditors have successfully reduced to judgment. This result accords with the historical development of the discharge exceptions. As we explained in *Brown v. Felsen,* the 1898 Bankruptcy Act provided that "judgments" sounding in fraud were exempt from discharge. 30 Stat. 550. In the 1903 revisions, Congress substituted the term "liabilities" for "judgments." 32 Stat. 798. This alteration was intended to broaden the coverage of the fraud exceptions. See *Brown v. Felsen,* 442 U.S., at 138, 99 S.Ct., at 2212. Absent a clear indication from Congress of a change in policy, it would be inconsistent with this earlier expression of congressional intent to construe the exceptions to allow some debtors facing fraud judgments to have those judgments discharged.

***291** For these reasons, we hold that the standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard.

The judgment of the Court of Appeals is reversed.

*It is so ordered.*

U.S.Mo.,1991.
Grogan v. Garner
498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755, 70 A.F.T.R.2d 92-5639, 59 USLW 4072, 24 Collier Bankr.Cas.2d 1, 21 Bankr.Ct.Dec. 342, Bankr. L.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

111 S.Ct. 654                                                                                          Page 10
498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755, 70 A.F.T.R.2d 92-5639, 59 USLW 4072, 24 Collier Bankr.Cas.2d 1,
21 Bankr.Ct.Dec. 342, Bankr. L. Rep. P 73746A
**(Cite as: 498 U.S. 279, 111 S.Ct. 654)**

Rep. P 73746A

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

REPORTER IMAGE · QUICK PRINT · PRINT · EMAIL · DOWNLOAD · OTHER

**In re Hyman**
502 F.3d 61
C.A.2 (N.Y.),2007.
September 06, 2007 (Approx. 9 pages)

West Reporter Image (PDF)

502 F.3d 61, 2007 WL 2492789 (C.A.2 (N.Y.)), 48 Bankr.Ct.Dec. 211, Bankr. L. Rep. P 81,019

Briefs and Other Related Documents

United States Court of Appeals,
Second Circuit.
In re Andrew A. HYMAN, Debtor,
G. Hallett Denton, As Executor of the Estate of George W. Denton, Appellant,
v.
Andrew A. Hyman, Debtor-Appellee.
Docket No. 05-7026-bk.
Argued: Sept. 18, 2006.
Decided: Sept. 6, 2007.

**Background:** Executor for probate estate of former co-owner of insurance agency brought adversary proceeding against Chapter 7 debtor-agency owner, seeking to except from discharge state-court judgment that he had obtained against debtor for his breach of fiduciary duty in appropriating agency's assets following co-owner's death. The Bankruptcy Court, Adlai S. Hardin, Jr., J., 320 B.R. 493, entered judgment for debtor. Executor appealed. The United States District Court for the Southern District of New York, William C. Conner, J., 335 B.R. 32, affirmed. Executor appealed.

**Holdings:** The Court of Appeals, B.D. Parker, Jr., Circuit Judge, held that:
(1) as a matter of first impression, under discharge exception for defalcation while acting in fiduciary capacity, defalcation requires showing of conscious misbehavior or extreme recklessness, akin to showing required for scienter in securities law context, and
(2) collateral estoppel did not bar litigation of issue of whether debtor committed defalcation within meaning of discharge exception for defalcation while acting in fiduciary capacity.

Affirmed.

West Headnotes

[1] KeyCite Notes

⇐51 Bankruptcy
    ⇐51XIX Review
        ⇐51XIX(B) Review of Bankruptcy Court
            ⇐51k3782 k. Conclusions of Law; De Novo Review. Most Cited Cases

Review by Court of Appeals of a district court's order in its capacity as an appellate bankruptcy court is plenary, and the factual determinations and legal conclusions of the bankruptcy court are therefore reviewed independently by Court of Appeals.

[2] KeyCite Notes

⇐51 Bankruptcy
    ⇐51XIX Review
        ⇐51XIX(B) Review of Bankruptcy Court
            ⇐51k3782 k. Conclusions of Law; De Novo Review. Most Cited Cases



⇐51 Bankruptcy KeyCite Notes
  ⇐51XIX Review
    ⇐51XIX(B) Review of Bankruptcy Court
      ⇐51k3785 Findings of Fact
        ⇐51k3786 k. Clear Error. Most Cited Cases

Bankruptcy court's legal conclusions are reviewed de novo and its factual conclusions are reviewed for clear error.



[3] KeyCite Notes

⇐228 Judgment
  ⇐228XIV Conclusiveness of Adjudication
    ⇐228XIV(C) Matters Concluded
      ⇐228k713 Scope and Extent of Estoppel in General
        ⇐228k713(1) k. In General. Most Cited Cases



⇐228 Judgment KeyCite Notes
  ⇐228XIV Conclusiveness of Adjudication
    ⇐228XIV(C) Matters Concluded
      ⇐228k715 Identity of Issues, in General
        ⇐228k715(1) k. In General. Most Cited Cases



⇐228 Judgment KeyCite Notes
  ⇐228XIV Conclusiveness of Adjudication
    ⇐228XIV(C) Matters Concluded
      ⇐228k723 Essentials of Adjudication
        ⇐228k724 k. In General. Most Cited Cases

Under New York law, "collateral estoppel" bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action.



[4] KeyCite Notes

⇐228 Judgment
  ⇐228XIV Conclusiveness of Adjudication
    ⇐228XIV(A) Judgments Conclusive in General
      ⇐228k634 k. Nature and Requisites of Former Adjudication as Ground of Estoppel in General. Most Cited Cases

Under New York law, collateral estoppel is a flexible doctrine and the question of whether to apply it in a particular case depends upon general notions of fairness involving a practical inquiry into the realities of the litigation.



[5] KeyCite Notes

☞51 Bankruptcy
   ☜51X Discharge
      ☞51X(C) Debts and Liabilities Discharged
         ☞51X(C)1 In General
            ☞51k3341 k. In General. Most Cited Cases



☞51 Bankruptcy KeyCite Notes
   ☜51X Discharge
      ☞51X(D) Determination of Dischargeability
         ☞51k3401 Evidence
            ☞51k3403 Presumptions and Burden of Proof
               ☞51k3403(1) k. In General. Most Cited Cases

Exceptions to discharge are to be narrowly construed, and genuine doubts should be resolved in favor of debtor.

[6] KeyCite Notes 

☞51 Bankruptcy
   ☜51X Discharge
      ☞51X(C) Debts and Liabilities Discharged
         ☞51X(C)5 Torts and Crimes
            ☞51k3376 Fraud or Defalcation in Fiduciary Capacity
               ☞51k3376(5) k. Defalcation. Most Cited Cases

Under discharge exception for defalcation while acting in fiduciary capacity, "defalcation" requires a showing of conscious misbehavior or extreme recklessness, akin to the showing required for scienter in the securities law context. 11 U.S.C.A. § 523(a)(4).

[7] KeyCite Notes 

☞228 Judgment
   ☞228XVII Foreign Judgments
      ☞228k828 Effect of Judgments of State Courts in United States Courts
         ☞228k828.21 Particular Federal Proceedings
            ☞228k828.21(2) k. Bankruptcy. Most Cited Cases

Collateral estoppel did not apply, under New York law, to bar litigation of issue of whether Chapter 7 debtor committed defalcation, within meaning of discharge exception for defalcation while acting in fiduciary capacity, when he took actions underlying state-court judgment that was obtained by executor for probate estate of co-owner of insurance agency and based upon debtor's breach of fiduciary duty in appropriating agency's assets following co-owner's death, given that state court, which had no incentive to do so, made no findings regarding debtor's state of mind, and there was evidence of debtor's good faith which could militate against required showing of recklessness or conscious misbehavior. 11 U.S.C.A. § 523(a)(4).

**\*62** Kenneth L. Stein (Norman A. Senior & Jeffery H. Sheetz, of counsel), Greenfield Stein & Senior, LLP, New York, NY, for Appellant G. Hallett Denton.

Anthony L. Tersigni, Meyers Tersigni Feldman & Gray, LLP, New York, N.Y. (Richard N. Gray, Meyers Tersigni Feldman & Gray, New York, NY; M. Stuart Goldberg, White Plains, NY, on the brief), for Appellee Andrew A. Hyman.

Before: CALABRESI and *63 B.D. PARKER, Circuit Judges, and LYNCH [FN*], District Judge.

> FN* The Honorable Gerard E. Lynch, United States District Court for the Southern District of New York, sitting by designation.

B.D. PARKER, JR., Circuit Judge:

**1 Appellant G. Hallett Denton ("Denton"), the executor of the estate of George W. Denton, appeals from a judgment of the United States District Court for the Southern District of New York (Conner, *J.*). The district court affirmed an order of the Bankruptcy Court (Hardin, *J.*) that collateral estoppel did not relieve Denton from proving that a debt owed the estate by Appellee Andrew Hyman ("Hyman") was not dischargeable under § 523(a)(4) of the Bankruptcy Code. That section of the Code precludes discharge of a debt resulting from a debtor's "defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). During prior litigation, the Westchester County, New York Surrogate's Court ruled that Hyman, in dealings with the Denton estate, breached his fiduciary duties and misappropriated assets. Both the Bankruptcy Court and the District Court ruled that collateral estoppel did not attach to this finding because the issue of whether Hyman committed a "defalcation" within the meaning of the Bankruptcy Code had not actually been decided by the Surrogate. We agree and we affirm, although on somewhat different grounds.

## I. BACKGROUND

In 1984 Hyman and George W. Denton ("G.W.Denton") began working for an insurance agency in Westchester County, New York owned by Henry Deppe. The agency represented the Guardian Life Insurance Company of America and, among other activities, marketed Guardian life insurance products through pension plans. These plans were designed and administered through a separate company, National Pension Services, Inc., also owned by Deppe, which channeled business to his insurance agency.

In 1987, G.W. Denton and Hyman took over the business from Deppe and formed their own insurance agency, the Denton-Hyman Agency ("Denton-Hyman"), as well as their own pension administration company, also called National Pension Service, Inc. ("NPS"), and a third company, National Pension Actuaries ("NPA"), which generated business for the agency but was not profitable. Each owned fifty percent, and served as director and executive officer, of the three companies. Guardian designated G.W. Denton and Hyman to succeed Deppe as Guardian's agent for Westchester County under an agreement which provided that, if either left the business, their agency relationship with Guardian would terminate. In starting these businesses, G.W. Denton and Hyman incurred substantial debts-exceeding $1.6 million-which they guaranteed jointly and severally. As was the case with Deppe's agency, NPS generated business for Denton-Hyman, but operated at a loss.

In 1989, thirteen months after starting these businesses, G.W. Denton died unexpectedly and Hyman succeeded him as president and sole director of the three corporations. At that point, the agency relationship between Guardian and Denton-Hyman automatically terminated and, in accordance with Guardian's regulations, both the Denton estate and Denton-Hyman were ineligible to become shareholders in the new general agency. Denton-Hyman, however, still owed $1.6 million in start-up debt for which Denton's estate *64 and Hyman were personally liable. To service this obligation Hyman looked, among other sources, to commission income earned by the Denton-Hyman agency during the thirteen-month period prior to G.W. Denton's death but received afterwards. After G.W. Denton's death, Guardian accepted Hyman as its agent and, to service the Guardian business, he formed the Andrew A. Hyman Agency ("Hyman Agency"). Hyman continued to operate NPS, and to fund its deficits so that it would continue to generate business for the Hyman Agency. By 1994, when Hyman's relationship with Guardian terminated, Hyman had liquidated the $1.6 million debt with the estate's consent, using jointly owned assets-the residual commissions earned by Denton-Hyman-and the earnings of the Hyman Agency.

**\*\*2** In addition to running the agency and paying down the debt, Hyman also engaged in lengthy negotiations with G. Hallett Denton, the executor of G.W. Denton's estate, for the purchase of the estate's fifty percent interest in Denton-Hyman, NPS and NPA. These negotiations were protracted and difficult, and seem to have foundered over the issue of how much of the income Hyman generated belonged to him and how much needed to be shared with the estate. At the end of the day, no agreement was reached.

At this point, Denton sued Hyman in Surrogate's Court. Denton asserted a derivative claim on behalf of Denton-Hyman, seeking to recover "profits earned by Hyman and the Hyman Agency in exploiting assets of [the jointly-owned] corporations" and "damages suffered as a result of the diversion of corporate assets." Hyman asserted a number of affirmative defenses including ratification and estoppel. After a nine-day trial, the Surrogate's Court entered judgment in favor of the estate and against Hyman and the Hyman Agency for $2,734,832, "representing the net profits obtained by [them] as a result of Hyman's breach of fiduciary duty, as an officer, director and 50% shareholder of Denton-Hyman, NPS, and NPA and their misappropriation of the assets and goodwill of said Corporations." In so ruling, the Surrogate's Court found that Hyman had breached his fiduciary duty by "co-opting the Denton-Hyman, NPS and NPA enterprise for the benefit of the Hyman Agency and for his own personal enrichment," using furniture and fixtures of the corporations without compensation, and using "Denton-Hyman overrides to subsidize NPS and NPA and to satisfy the Hyman Agency debt to the Guardian."

Although the Surrogate's conclusions were undoubtedly damaging to Hyman, they were not accompanied by in-depth analysis of a number of issues relevant to this appeal. The Surrogate, for example, made no findings concerning Hyman's state of mind: In using jointly owned assets and income generated by his own efforts both to liquidate debt of the estate and to operate the business that was generating the income, was Hyman breaching a fiduciary obligation by being sloppy or venal or was he stealing? In addition, the Surrogate's decision gave little prominence to the substantial monetary benefits Hyman conferred on the estate. Nor did it specifically address Hyman's argument that the estate's representatives acquiesced in, and consented to, Hyman's conduct over a lengthy period.

In February 2003, Hyman filed for protection under the bankruptcy laws. Denton, as executor of G.W. Denton's estate, then filed a claim based on the Surrogate's Court's judgment, to declare that judgment non-dischargeable under § 523(a)(4) of the Bankruptcy Code as a debt arising from "defalcation while acting in a fiduciary capacity." Denton contended that the **\*65** Surrogate's findings were conclusive and that Hyman was collaterally estopped from contesting them.

The Bankruptcy Court found the Surrogate's Court's judgment valid and enforceable and allowed Denton's claim based on the judgment. However, the court rejected Denton's contention that collateral estoppel precluded further litigation over the dischargeability of the debt. The Bankruptcy Court ruled that under § 523(a)(4) "defalcation" was narrower than the concept of "misappropriation" under state law, with defalcation requiring "some portion of misconduct." The court then concluded that the Surrogate's Court's findings failed to satisfy the more restrictive definition. In reaching this conclusion, the court emphasized Denton's failure to identify any specific conduct of Hyman's that amounted to a defalcation or that could be characterized as wrongful, illegal or morally reprehensible, "other than the fact that the parties did not reach agreement on a buy out."

**\*\*3** Because Denton had voluntarily dismissed alternative claims for relief, and had agreed to abide by the Bankruptcy Court's resolution of the collateral estoppel issue rather than retry the claim, the Bankruptcy Court issued a final judgment in favor of Hyman, and Denton appealed to the district court. The district court affirmed. Judge Conner ruled that defalcation requires some element of wrongful intent, so as to be more than a "mere negligent" or innocent act, and held that because the Surrogate's Court made no finding as to Hyman's intent, it necessarily failed to decide the issue of defalcation. The district court found that Hyman's immediate offer to buy out the estate's interest, the three-year-long negotiation over the purchase price, and the pay down of the $1.6 million in debt did not demonstrate the level of misconduct necessary to trigger the application of § 523(a)(4). Specifically, Judge Conner concluded that "Debtor's conduct throughout was fully consistent with a

good faith effort to preserve the business for the mutual benefit of AHA and the Estate." This appeal followed.

## II. DISCUSSION

### A. Standard of Review

[1]  [2]    Our review of a district court's order in its capacity as an appellate bankruptcy court is plenary. *In re DeTrano,* 326 F.3d 319, 321 (2d Cir.2003). The factual determinations and legal conclusions of the Bankruptcy Court are, therefore, reviewed independently by this Court. *Id.* The Bankruptcy Court's legal conclusions are reviewed *de novo* and its factual conclusions are reviewed for clear error. *Id.*

### B. New York's Law of Collateral Estoppel

[3]  [4]    To determine whether collateral estoppel applies to the Surrogate's Court's judgment, we look to New York law. *See Marrese v. Am. Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *Colon v. Coughlin,* 58 F.3d 865, 869 n. 2 (2d Cir.1995). Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action. *Kaufman v. Eli Lilly & Co.,* 65 N.Y.2d 449, 455-56, 492 N.Y.S.2d 584, 482 N.E.2d 63 (1985); *see Jeffreys v. Griffin,* 1 N.Y.3d 34, 39, 769 N.Y.S.2d 184, 801 N.E.2d 404 (2003); *Buechel v. Bain,* 97 N.Y.2d 295, 303-04, 740 N.Y.S.2d 252, 766 N.E.2d 914 (2001); *see also Khandhar v. Elfenbein,* 943 F.2d 244, 247 (2d Cir.1991). Under New York law, collateral estoppel is *66 a flexible doctrine and whether to apply it a particular case depends on "general notions of fairness involving a practical inquiry into the realities of the litigation." *Jeffreys,* 1 N.Y.3d at 41, 769 N.Y.S.2d 184, 801 N.E.2d 404.

[5]    On this appeal, these principles must be analyzed jointly with others that have special significance in the bankruptcy context. The basic policy animating the Bankruptcy Code is to afford the "honest but unfortunate" debtor a fresh start. *Marrama v. Citizens Bank of Mass.,* --- U.S. ----, 127 S.Ct. 1105, 1107, 166 L.Ed.2d 956 (2007); *Grogan v. Garner,* 498 U.S. 279, 286-87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *DeTrano,* 326 F.3d at 322. The consequences to a debtor whose obligations are not discharged are considerable; in many instances, failure to achieve discharge can amount to a financial death sentence. In view of these harsh consequences, exceptions to discharge are to be narrowly construed and genuine doubts should be resolved in favor of the debtor. *In re Renshaw,* 222 F.3d 82, 86 (2d Cir.2000); *In re Hayes,* 183 F.3d 162, 167 (2d Cir.1999).

**4 The first critical question is whether a "defalcation while acting in a fiduciary capacity" under § 523(a)(4) of the Bankruptcy Code is identical to the factual and legal determinations necessarily decided in the prior Surrogate's Court action. Denton argues that the issue of whether a defalcation occurred was necessarily decided by the Surrogate's Court's findings that Hyman breached his fiduciary duty and misappropriated assets. Hyman contends that in view of the pervasive confusion in the federal courts over what constitutes "defalcation" under § 523(a)(4), and also in view of the harsh consequences that attach and the requirement that doubts in a close case such as this should be resolved in his favor, he should not be denied the opportunity to prove at a trial in Bankruptcy Court that he did not violate § 523(a)(4).

### C. Whether "Defalcation" Was Necessarily Decided

While the Code generally allows for the discharge of debts, significant exceptions exist. *DeTrano,* 326 F.3d at 322. Among them is § 523(a)(4) excepting from discharge any debt "for fraud or defalcation

while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). As previously noted, this exception, like most, must be narrowly construed. *Kawaauhau v. Geiger,* 523 U.S. 57, 62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (observing that exceptions to discharge " 'should be confined to those plainly expressed' ") (quoting *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 59 L.Ed. 717 (1915)); *Renshaw,* 222 F.3d at 86.

There has been much debate among the Circuits over whether a "defalcation" under § 523(a)(4) includes all misappropriations or failures to account or only those that evince some wrongful conduct.[FN1] *See Zohlman v. Zoldan,* 226 B.R. 767, 775 (S.D.N.Y.1998) (discussing the circuit split). This Circuit, although previously having suggested that "some portion of misconduct" may be required to establish a "defalcation" under § 523(a)(4), has yet to squarely address this issue. *Cent. Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510, 512 (2d Cir.1937); *see Hayes,* 183 F.3d at 172 (assuming that defalcation demands "some portion of misconduct," in *\*67* finding that the debtor committed a defalcation).

> FN1. Defalcation is defined in Black's Law Dictionary (8th ed.2004), as "loosely, the failure to meet an obligation" and "a non-fraudulent debt." *Id.* at 427; *see* Oxford English Dictionary 389 (2d ed.1989) ("a monetary deficiency through breach of trust by one who has the management or charge of funds").

In *Herbst,* 93 F.2d at 511-12, Judge Learned Hand wrestled with this problem without resolving it. He wrote:

Colloquially perhaps the word, "defalcation," ordinarily implies some moral dereliction, but in this context [the first reference to defalcation in the Bankruptcy Code] it may have included innocent defaults, so as to include all fiduciaries who for any reason were short in their accounts. It must be remembered that the "fiduciary capacity" was limited to "special" or "technical" fiduciaries.

....

Whatever was the original meaning of "defalcation," it must here [in the Bankruptcy Act of 1867] have covered other defaults than deliberate malversations, else it added nothing to the words, "fraud or embezzlement." [FN2]

> FN2. The Act found non-dischargeable debts resulting from "defalcation as a public officer, or while acting in any fiduciary character," fraud or embezzlement. *Herbst,* 93 F.2d at 511.

**\*\*5** ....

We must give the words different meanings so far as we can, especially when a contrary interpretation would wrest "defalcation," if not from its original meaning, at least from that which it must have had in the Act of 1867.

....

We do not hold that no possible deficiency in a fiduciary's accounts is dischargeable; in *[In] Re Bernard,* 87 F.2d 705, 707 [ (2d Cir.1937) ], we said that "the misappropriation must be due to a known breach of the duty, and not to mere negligence or mistake." Although that word probably carries a larger implication of misconduct than "defalcation," "defalcation" may demand some portion of misconduct; we will assume arguendo that it does.

Denton relies on *In re Hammond,* 98 F.2d 703, 704 (2d Cir.1938), for the proposition that no actual intent is necessary to establish a defalcation. *Hammond* involved our determination of whether the unlawful appropriation of a corporate contract constituted a "misappropriation" under the previous version of § 523(a)(4), absent any finding by the lower court of a "conscious wrongdoing" or "purpose to defraud." *Id.* at 704, 705. *Hammond* does not stand for the proposition that a "misappropriation"

under this provision can be found absent a wrongful intent. In *Hammond,* we held that a wrongful or evil intent, if required by the provision, *could* be inferred based on the debtor's intentional unlawful act and by finding the debtor chargeable with the knowledge that his actions violated the law. *Id.* at 705.

The Fourth, Eighth, and Ninth Circuits hold that an innocent mistake can constitute a defalcation. *In re Uwimana,* 274 F.3d 806, 811 (4th Cir.2001) ( "[N]egligence or even an innocent mistake which results in misappropriation or failure to account is sufficient."); *In re Hemmeter,* 242 F.3d 1186, 1190 (9th Cir.2001) ("Even innocent acts of failure to fully account for money received in trust will be held as non-dischargeable defalcations."); *In re Cochrane,* 124 F.3d 978, 984 (8th Cir.1997) ("Defalcation includes the innocent default of a fiduciary who fails to account fully for money received."). [FN3]

> FN3. The Ninth Circuit does, however, more strictly limit the application of defalcation to fiduciary of trusts and relationships that exhibit characteristics of the traditional trust relationship. *Hemmeter,* 242 F.3d at 1189-90.

The majority of the Circuits addressing this issue, however, require some level of ***68** wrongful conduct in order to find a defalcation under § 523(a)(4). The Fifth, Sixth, and Seventh Circuits require a level of fault greater than mere negligence. *In re Schwager,* 121 F.3d 177, 185 (5th Cir.1997) ("While defalcation may not require actual intent, it does require some level of mental culpability. It is clear in the Fifth Circuit that a 'willful neglect' of fiduciary duty constitutes a defalcation-essentially a recklessness standard."); *Meyer v. Rigdon,* 36 F.3d 1375, 1384-85 (7th Cir.1994) ("[A] mere negligent breach of a fiduciary duty is *not* a 'defalcation' under section 523(a)(11)."); *In re Johnson,* 691 F.2d 249, 257 (6th Cir.1982) (ruling that while "subjective intent to violate a known fiduciary duty or bad faith is irrelevant," the misuse of monies as the result of negligence or a mistake of fact does not constitute defalcation). The Tenth Circuit's standard is not entirely clear but at least requires "some portion of misconduct." *Compare In re Storie,* 216 B.R. 283, 288 (B.A.P. 10th Cir.1997) (announcing a standard requiring that includes "intentional, wilful, reckless or negligent" breaches of fiduciary duty), *with In re Millikan,* 188 Fed.Appx. 699, 702 (10th Cir.2006) (unpublished) (declining to identify a specific standard but requiring "some portion of misconduct" to prove defalcation). The First Circuit set the highest bar, requiring a showing of extreme recklessness, "akin to the level of recklessness required for scienter [in securities law]." *In re Baylis,* 313 F.3d 9, 20 (1st Cir.2002). In so ruling, the First Circuit interpreted "defalcation" as requiring a degree of fault, "closer to fraud, without the necessity of meeting a strict specific intent requirement." [FN4] *Id.* at 18-19.

> FN4. The Eleventh Circuit also has yet to adopt a clear standard. *See In re Fernandez-Rocha,* 451 F.3d 813, 817 (11th Cir.2006) (discussing the different possible interpretations of defalcation); *Quaif v. Johnson,* 4 F.3d 950, 955 (11th Cir.1993) (finding a defalcation where the improper transfer of funds by a fiduciary "was far more than an innocent mistake or even negligence").

****6** [6]    In light of this persistent confusion, we now align ourselves with the First Circuit, *see Baylis,* 313 F.3d at 20, in holding that defalcation under § 523(a)(4) requires a showing of conscious misbehavior or extreme recklessness-a showing akin to the showing required for scienter in the securities law context. *See Ganino v. Citizens Utils. Co.,* 228 F.3d 154, 168 (2d Cir.2000); *Novak v. Kasaks,* 216 F.3d 300, 308 (2d Cir.2000); *Press v. Chemical Inv. Servs. Corp.,* 166 F.3d 529, 538 (2d Cir.1999). We believe that these concepts-well understood and commonly applied in the securities law context-strike the proper balance under § 523(a)(4). This standard ensures that the term "defalcation" complements but does not dilute the other terms of the provision-"fraud," "embezzlement," and "larceny"-all of which require a showing of actual wrongful intent. *See In re Stern,* 231 B.R. 25, 26 (S.D.N.Y.1999) (noting that larceny under § 523(a)(4) requires a showing of fraudulent intent to convert another's property to debtor's own use); *In re Caulfield,* 192 B.R. 808, 818 (Bankr.E.D.N.Y.1996) (requiring a showing of fraudulent intent for larceny and embezzlement); *see also In re Zois,* 269 B.R. 89, 101 (Bankr.S.D.N.Y.1999) (requiring a showing of intentional deceit to establish "fraud" under this section); 4 Collier on Bankruptcy § 523.10(1)(a) (15th ed. rev.2007) ("

'Fraud' for purposes of this exception has generally been interpreted as involving intentional deceit, rather than implied or constructive fraud.").

By requiring the courts to make appropriate findings of conscious misbehavior or recklessness in the course of dischargeability litigation, the standard we adopt today insures that the harsh sanction of non-*69 dischargeability is reserved for those who exhibit "some portion of misconduct." *Herbst,* 93 F.2d at 512. The standard does not reach fiduciaries who may have failed to account for funds or property for which they were responsible only as a consequence of negligence, inadvertence or similar conduct not shown to be sufficiently culpable. This standard, we believe, also has the virtue of ease of application since the courts and litigants have reference to a robust body of securities law examining what these terms mean.

[7]   In finding that Hyman breached his fiduciary duty by "misappropriating and co-opting assets of the jointly-owned companies for his personal benefit," the Surrogate's Court made no express findings with regard to Hyman's state of mind. We assume that the Surrogate concluded that under New York law such findings were not necessary, since misappropriation and breach of fiduciary duties apparently do not, under New York law, consistently require proof of a culpable mental state. *See Strough v. Bd. of Supervisors,* 3 N.Y.S. 110, 112 (N.Y. Gen. Term 1888), *modified on other grounds and aff'd,* 119 N.Y. 212, 23 N.E. 552 (1890) (holding defendant liable for "illegal, though innocent in intent, misappropriation"); *Matter of Happy Time Fashions,* 7 B.R. 665, 670 (Bankr.S.D.N.Y.1980) (noting that good faith or innocent motives are no defense to a corporate officer's breach of fiduciary duties).[FN5]

> FN5. The New York Jurisprudence states:
>
> Corporate directors and officers will be held accountable for the wrongful use, diversion, or misappropriation of corporate funds or property in an action appropriate for the enforcement of such liability. Good intentions do not justify the misapplication or misuse of corporate assets where the directors know that the use they are making of the assets is not for the benefit of the company, but for the use and benefit of other enterprises in which they are interested.
>
> N.Y. Jur.2d, 14A Business Relationships § 695 (2006).

**7** Having clarified the standard under § 523(a)(4) and given the unique circumstances of this case, we decline to mechanically apply collateral estoppel. *See Jeffreys,* 1 N.Y.3d at 41, 769 N.Y.S.2d 184, 801 N.E.2d 404; *People v. Roselle,* 84 N.Y.2d 350, 357, 618 N.Y.S.2d 753, 643 N.E.2d 72 (1994) ("[C]ollateral estoppel, a flexible doctrine, should not be mechanically applied just because some of its formal prerequisites, like identity of the parties, identity of issues, a final and valid prior judgment and a full and fair opportunity to litigate the prior determination, may be present."); *Halyalkar v. Bd. of Regents,* 72 N.Y.2d 261, 269, 532 N.Y.S.2d 85, 527 N.E.2d 1222 (1988) (declining to give an administrative consent order preclusive effect and noting that the doctrine of collateral estoppel "should never be rigidly or mechanically applied"). The Surrogate had neither the ability nor the incentive to apply the standard we announce. Moreover, the record contains evidence of Hyman's good faith in using the proceeds of the new Agency to pay off the debts for which both he and the Denton estate were liable, and in attempting for years to negotiate a buy-out with the Denton estate [FN6]-all of which could militate against the required showing of recklessness or conscious*70 misbehavior. As noted above, the Surrogate's Court was not required to take such considerations into account when reaching its conclusions concerning misappropriation and breach of fiduciary duty. In view of these complexities, we are loath to conclude that an identical issue was necessarily decided or that Hyman had a full and fair opportunity to contest his state of mind. In addition to the murkiness of the law, the harsh consequences that follow a finding of nondischargeability and the requirement that exceptions be narrowly construed both counsel against precluding a plenary trial in Bankruptcy Court, had the estate not voluntarily agreed to forego one here. Accordingly, we conclude that collateral estoppel does not attach.

FN6. Denton argues that the Surrogate's Court effectively did find an absence of good faith in rejecting Hyman's affirmative defenses of ratification and consent. Even if the Surrogate did clearly reject Hyman's argument that Denton consented to these acts-which is entirely unclear-a lack of good faith was not necessarily decided by the Surrogate's rejection of Hyman's affirmative defenses. Even absent Denton's consent or ratification of Hyman's acts, good faith could still be found based on evidence in the record. As indicated by the Bankruptcy Court and the district court, there is other evidence, namely the extensive buy-out negotiations and the payment of Denton-Hyman debt that stands as evidence of good faith on Hyman's part; therefore a lack of ratification and consent would not necessarily decide the existence of good faith.

### III. CONCLUSION

The district court's judgment is AFFIRMED.

C.A.2 (N.Y.),2007.
In re Hyman
502 F.3d 61, 2007 WL 2492789 (C.A.2 (N.Y.)), 48 Bankr.Ct.Dec. 211, Bankr. L. Rep. P 81,019

Briefs and Other Related Documents (Back to top)

• 2006 WL 5249919 (Appellate Brief) Brief for Appellant (Feb. 27, 2006)
END OF DOCUMENT

West Reporter Image (PDF)

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.



H

**In re Hyman**
502 F.3d 61
C.A.2 (N.Y.),2007.
September 06, 2007 (Approx. 9 pages)

⬛ West Reporter Image (PDF)

502 F.3d 61, 2007 WL 2492789 (C.A.2 (N.Y.)), 48 Bankr.Ct.Dec. 211, Bankr. L. Rep. P 81,019

Briefs and Other Related Documents

United States Court of Appeals,
Second Circuit.
In re Andrew A. HYMAN, Debtor,
G. Hallett Denton, As Executor of the Estate of George W. Denton, Appellant,
v.
Andrew A. Hyman, Debtor-Appellee.
Docket No. 05-7026-bk.
Argued: Sept. 18, 2006.
Decided: Sept. 6, 2007.

**Background:** Executor for probate estate of former co-owner of insurance agency brought adversary proceeding against Chapter 7 debtor-agency owner, seeking to except from discharge state-court judgment that he had obtained against debtor for his breach of fiduciary duty in appropriating agency's assets following co-owner's death. The Bankruptcy Court, Adlai S. Hardin, Jr., J., 320 B.R. 493, entered judgment for debtor. Executor appealed. The United States District Court for the Southern District of New York, William C. Conner, J., 335 B.R. 32, affirmed. Executor appealed.

**Holdings:** The Court of Appeals, B.D. Parker, Jr., Circuit Judge, held that:
(1) as a matter of first impression, under discharge exception for defalcation while acting in fiduciary capacity, defalcation requires showing of conscious misbehavior or extreme recklessness, akin to showing required for scienter in securities law context, and
(2) collateral estoppel did not bar litigation of issue of whether debtor committed defalcation within meaning of discharge exception for defalcation while acting in fiduciary capacity.

Affirmed.

West Headnotes

[1] KeyCite Notes ⬛

⬅51 Bankruptcy
   ⬅51XIX Review
      ⬅51XIX(B) Review of Bankruptcy Court
         ⬅51k3782 k. Conclusions of Law; De Novo Review. Most Cited Cases

Review by Court of Appeals of a district court's order in its capacity as an appellate bankruptcy court is plenary, and the factual determinations and legal conclusions of the bankruptcy court are therefore reviewed independently by Court of Appeals.

[2] KeyCite Notes ⬛

⬅51 Bankruptcy
   ⬅51XIX Review
      ⬅51XIX(B) Review of Bankruptcy Court
         ⬅51k3782 k. Conclusions of Law; De Novo Review. Most Cited Cases



51 Bankruptcy KeyCite Notes
  51XIX Review
    51XIX(B) Review of Bankruptcy Court
      51k3785 Findings of Fact
        51k3786 k. Clear Error. Most Cited Cases

Bankruptcy court's legal conclusions are reviewed de novo and its factual conclusions are reviewed for clear error.



[3] KeyCite Notes

228 Judgment
  228XIV Conclusiveness of Adjudication
    228XIV(C) Matters Concluded
      228k713 Scope and Extent of Estoppel in General
        228k713(1) k. In General. Most Cited Cases

228 Judgment KeyCite Notes
  228XIV Conclusiveness of Adjudication
    228XIV(C) Matters Concluded
      228k715 Identity of Issues, in General
        228k715(1) k. In General. Most Cited Cases

228 Judgment KeyCite Notes
  228XIV Conclusiveness of Adjudication
    228XIV(C) Matters Concluded
      228k723 Essentials of Adjudication
        228k724 k. In General. Most Cited Cases

Under New York law, "collateral estoppel" bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action.



[4] KeyCite Notes

228 Judgment
  228XIV Conclusiveness of Adjudication
    228XIV(A) Judgments Conclusive in General
      228k634 k. Nature and Requisites of Former Adjudication as Ground of Estoppel in General. Most Cited Cases

Under New York law, collateral estoppel is a flexible doctrine and the question of whether to apply it in a particular case depends upon general notions of fairness involving a practical inquiry into the realities of the litigation.



[5] KeyCite Notes

⇐51 Bankruptcy
  ⇐51X Discharge
    ⇐51X(C) Debts and Liabilities Discharged
      ⇐51X(C)1 In General
        ⇐51k3341 k. In General. Most Cited Cases



⇐51 Bankruptcy KeyCite Notes
  ⇐51X Discharge
    ⇐51X(D) Determination of Dischargeability
      ⇐51k3401 Evidence
        ⇐51k3403 Presumptions and Burden of Proof
          ⇐51k3403(1) k. In General. Most Cited Cases

Exceptions to discharge are to be narrowly construed, and genuine doubts should be resolved in favor of debtor.

[6] KeyCite Notes 

⇐51 Bankruptcy
  ⇐51X Discharge
    ⇐51X(C) Debts and Liabilities Discharged
      ⇐51X(C)5 Torts and Crimes
        ⇐51k3376 Fraud or Defalcation in Fiduciary Capacity
          ⇐51k3376(5) k. Defalcation. Most Cited Cases

Under discharge exception for defalcation while acting in fiduciary capacity, "defalcation" requires a showing of conscious misbehavior or extreme recklessness, akin to the showing required for scienter in the securities law context. 11 U.S.C.A. § 523(a)(4).

[7] KeyCite Notes 

⇐228 Judgment
  ⇐228XVII Foreign Judgments
    ⇐228k828 Effect of Judgments of State Courts in United States Courts
      ⇐228k828.21 Particular Federal Proceedings
        ⇐228k828.21(2) k. Bankruptcy. Most Cited Cases

Collateral estoppel did not apply, under New York law, to bar litigation of issue of whether Chapter 7 debtor committed defalcation, within meaning of discharge exception for defalcation while acting in fiduciary capacity, when he took actions underlying state-court judgment that was obtained by executor for probate estate of co-owner of insurance agency and based upon debtor's breach of fiduciary duty in appropriating agency's assets following co-owner's death, given that state court, which had no incentive to do so, made no findings regarding debtor's state of mind, and there was evidence of debtor's good faith which could militate against required showing of recklessness or conscious misbehavior. 11 U.S.C.A. § 523(a)(4).

*62 Kenneth L. Stein (Norman A. Senior & Jeffery H. Sheetz, of counsel), Greenfield Stein & Senior, LLP, New York, NY, for Appellant G. Hallett Denton.

Anthony L. Tersigni, Meyers Tersigni Feldman & Gray, LLP, New York, N.Y. (Richard N. Gray, Meyers Tersigni Feldman & Gray, New York, NY; M. Stuart Goldberg, White Plains, NY, on the brief), for Appellee Andrew A. Hyman.

Before: CALABRESI and *63 B.D. PARKER, Circuit Judges, and LYNCH [FN*], District Judge.

> FN* The Honorable Gerard E. Lynch, United States District Court for the Southern District of New York, sitting by designation.

B.D. PARKER, JR., Circuit Judge:

**1 Appellant G. Hallett Denton ("Denton"), the executor of the estate of George W. Denton, appeals from a judgment of the United States District Court for the Southern District of New York (Conner, *J.*). The district court affirmed an order of the Bankruptcy Court (Hardin, *J.*) that collateral estoppel did not relieve Denton from proving that a debt owed the estate by Appellee Andrew Hyman ("Hyman") was not dischargeable under § 523(a)(4) of the Bankruptcy Code. That section of the Code precludes discharge of a debt resulting from a debtor's "defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). During prior litigation, the Westchester County, New York Surrogate's Court ruled that Hyman, in dealings with the Denton estate, breached his fiduciary duties and misappropriated assets. Both the Bankruptcy Court and the District Court ruled that collateral estoppel did not attach to this finding because the issue of whether Hyman committed a "defalcation" within the meaning of the Bankruptcy Code had not actually been decided by the Surrogate. We agree and we affirm, although on somewhat different grounds.

## I. BACKGROUND

In 1984 Hyman and George W. Denton ("G.W.Denton") began working for an insurance agency in Westchester County, New York owned by Henry Deppe. The agency represented the Guardian Life Insurance Company of America and, among other activities, marketed Guardian life insurance products through pension plans. These plans were designed and administered through a separate company, National Pension Services, Inc., also owned by Deppe, which channeled business to his insurance agency.

In 1987, G.W. Denton and Hyman took over the business from Deppe and formed their own insurance agency, the Denton-Hyman Agency ("Denton-Hyman"), as well as their own pension administration company, also called National Pension Service, Inc. ("NPS"), and a third company, National Pension Actuaries ("NPA"), which generated business for the agency but was not profitable. Each owned fifty percent, and served as director and executive officer, of the three companies. Guardian designated G.W. Denton and Hyman to succeed Deppe as Guardian's agent for Westchester County under an agreement which provided that, if either left the business, their agency relationship with Guardian would terminate. In starting these businesses, G.W. Denton and Hyman incurred substantial debts-exceeding $1.6 million-which they guaranteed jointly and severally. As was the case with Deppe's agency, NPS generated business for Denton-Hyman, but operated at a loss.

In 1989, thirteen months after starting these businesses, G.W. Denton died unexpectedly and Hyman succeeded him as president and sole director of the three corporations. At that point, the agency relationship between Guardian and Denton-Hyman automatically terminated and, in accordance with Guardian's regulations, both the Denton estate and Denton-Hyman were ineligible to become shareholders in the new general agency. Denton-Hyman, however, still owed $1.6 million in start-up debt for which Denton's estate *64 and Hyman were personally liable. To service this obligation Hyman looked, among other sources, to commission income earned by the Denton-Hyman agency during the thirteen-month period prior to G.W. Denton's death but received afterwards. After G.W. Denton's death, Guardian accepted Hyman as its agent, and, to service the Guardian business, he formed the Andrew A. Hyman Agency ("Hyman Agency"). Hyman continued to operate NPS, and to fund its deficits so that it would continue to generate business for the Hyman Agency. By 1994, when Hyman's relationship with Guardian terminated, Hyman had liquidated the $1.6 million debt with the estate's consent, using jointly owned assets-the residual commissions earned by Denton-Hyman-and the earnings of the Hyman Agency.

**\*\*2** In addition to running the agency and paying down the debt, Hyman also engaged in lengthy negotiations with G. Hallett Denton, the executor of G.W. Denton's estate, for the purchase of the estate's fifty percent interest in Denton-Hyman, NPS and NPA. These negotiations were protracted and difficult, and seem to have foundered over the issue of how much of the income Hyman generated belonged to him and how much needed to be shared with the estate. At the end of the day, no agreement was reached.

At this point, Denton sued Hyman in Surrogate's Court. Denton asserted a derivative claim on behalf of Denton-Hyman, seeking to recover "profits earned by Hyman and the Hyman Agency in exploiting assets of [the jointly-owned] corporations" and "damages suffered as a result of the diversion of corporate assets." Hyman asserted a number of affirmative defenses including ratification and estoppel. After a nine-day trial, the Surrogate's Court entered judgment in favor of the estate and against Hyman and the Hyman Agency for $2,734,832, "representing the net profits obtained by [them] as a result of Hyman's breach of fiduciary duty, as an officer, director and 50% shareholder of Denton-Hyman, NPS, and NPA and their misappropriation of the assets and goodwill of said Corporations." In so ruling, the Surrogate's Court found that Hyman had breached his fiduciary duty by "co-opting the Denton-Hyman, NPS and NPA enterprise for the benefit of the Hyman Agency and for his own personal enrichment," using furniture and fixtures of the corporations without compensation, and using "Denton-Hyman overrides to subsidize NPS and NPA and to satisfy the Hyman Agency debt to the Guardian."

Although the Surrogate's conclusions were undoubtedly damaging to Hyman, they were not accompanied by in-depth analysis of a number of issues relevant to this appeal. The Surrogate, for example, made no findings concerning Hyman's state of mind: In using jointly owned assets and income generated by his own efforts both to liquidate debt of the estate and to operate the business that was generating the income, was Hyman breaching a fiduciary obligation by being sloppy or venal or was he stealing? In addition, the Surrogate's decision gave little prominence to the substantial monetary benefits Hyman conferred on the estate. Nor did it specifically address Hyman's argument that the estate's representatives acquiesced in, and consented to, Hyman's conduct over a lengthy period.

In February 2003, Hyman filed for protection under the bankruptcy laws. Denton, as executor of G.W. Denton's estate, then filed a claim based on the Surrogate's Court's judgment, to declare that judgment non-dischargeable under § 523(a)(4) of the Bankruptcy Code as a debt arising from "defalcation while acting in a fiduciary capacity." Denton contended that the **\*65** Surrogate's findings were conclusive and that Hyman was collaterally estopped from contesting them.

The Bankruptcy Court found the Surrogate's Court's judgment valid and enforceable and allowed Denton's claim based on the judgment. However, the court rejected Denton's contention that collateral estoppel precluded further litigation over the dischargeability of the debt. The Bankruptcy Court ruled that under § 523(a)(4) "defalcation" was narrower than the concept of "misappropriation" under state law, with defalcation requiring "some portion of misconduct." The court then concluded that the Surrogate's Court's findings failed to satisfy the more restrictive definition. In reaching this conclusion, the court emphasized Denton's failure to identify any specific conduct of Hyman's that amounted to a defalcation or that could be characterized as wrongful, illegal or morally reprehensible, "other than the fact that the parties did not reach agreement on a buy out."

**\*\*3** Because Denton had voluntarily dismissed alternative claims for relief, and had agreed to abide by the Bankruptcy Court's resolution of the collateral estoppel issue rather than retry the claim, the Bankruptcy Court issued a final judgment in favor of Hyman, and Denton appealed to the district court. The district court affirmed. Judge Conner ruled that defalcation requires some element of wrongful intent, so as to be more than a "mere negligent" or innocent act, and held that because the Surrogate's Court made no finding as to Hyman's intent, it necessarily failed to decide the issue of defalcation. The district court found that Hyman's immediate offer to buy out the estate's interest, the three-year-long negotiation over the purchase price, and the pay down of the $1.6 million in debt did not demonstrate the level of misconduct necessary to trigger the application of § 523(a)(4). Specifically, Judge Conner concluded that "Debtor's conduct throughout was fully consistent with a

good faith effort to preserve the business for the mutual benefit of AHA and the Estate." This appeal followed.

## II. DISCUSSION

### A. Standard of Review

[1]    [2]    Our review of a district court's order in its capacity as an appellate bankruptcy court is plenary. *In re DeTrano,* 326 F.3d 319, 321 (2d Cir.2003). The factual determinations and legal conclusions of the Bankruptcy Court are, therefore, reviewed independently by this Court. *Id.* The Bankruptcy Court's legal conclusions are reviewed *de novo* and its factual conclusions are reviewed for clear error. *Id.*

### B. New York's Law of Collateral Estoppel

[3]    [4]    To determine whether collateral estoppel applies to the Surrogate's Court's judgment, we look to New York law. *See Marrese v. Am. Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *Colon v. Coughlin,* 58 F.3d 865, 869 n. 2 (2d Cir.1995). Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action. *Kaufman v. Eli Lilly & Co.,* 65 N.Y.2d 449, 455-56, 492 N.Y.S.2d 584, 482 N.E.2d 63 (1985); *see Jeffreys v. Griffin,* 1 N.Y.3d 34, 39, 769 N.Y.S.2d 184, 801 N.E.2d 404 (2003); *Buechel v. Bain,* 97 N.Y.2d 295, 303-04, 740 N.Y.S.2d 252, 766 N.E.2d 914 (2001); *see also Khandhar v. Elfenbein,* 943 F.2d 244, 247 (2d Cir.1991). Under New York law, collateral estoppel is **\*66** a flexible doctrine and whether to apply it a particular case depends on "general notions of fairness involving a practical inquiry into the realities of the litigation." *Jeffreys,* 1 N.Y.3d at 41, 769 N.Y.S.2d 184, 801 N.E.2d 404.

[5]    On this appeal, these principles must be analyzed jointly with others that have special significance in the bankruptcy context. The basic policy animating the Bankruptcy Code is to afford the "honest but unfortunate" debtor a fresh start. *Marrama v. Citizens Bank of Mass.,* --- U.S. ----, 127 S.Ct. 1105, 1107, 166 L.Ed.2d 956 (2007); *Grogan v. Garner,* 498 U.S. 279, 286-87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *DeTrano,* 326 F.3d at 322. The consequences to a debtor whose obligations are not discharged are considerable; in many instances, failure to achieve discharge can amount to a financial death sentence. In view of these harsh consequences, exceptions to discharge are to be narrowly construed and genuine doubts should be resolved in favor of the debtor. *In re Renshaw,* 222 F.3d 82, 86 (2d Cir.2000); *In re Hayes,* 183 F.3d 162, 167 (2d Cir.1999).

**\*\*4** The first critical question is whether a "defalcation while acting in a fiduciary capacity" under § 523(a)(4) of the Bankruptcy Code is identical to the factual and legal determinations necessarily decided in the prior Surrogate's Court action. Denton argues that the issue of whether a defalcation occurred was necessarily decided by the Surrogate's Court's findings that Hyman breached his fiduciary duty and misappropriated assets. Hyman contends that in view of the pervasive confusion in the federal courts over what constitutes "defalcation" under § 523(a)(4), and also in view of the harsh consequences that attach and the requirement that doubts in a close case such as this should be resolved in his favor, he should not be denied the opportunity to prove at a trial in Bankruptcy Court that he did not violate § 523(a)(4).

### C. Whether "Defalcation" Was Necessarily Decided

While the Code generally allows for the discharge of debts, significant exceptions exist. *DeTrano,* 326 F.3d at 322. Among them is § 523(a)(4) excepting from discharge any debt "for fraud or defalcation

while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). As previously noted, this exception, like most, must be narrowly construed. *Kawaauhau v. Geiger,* 523 U.S. 57, 62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (observing that exceptions to discharge " 'should be confined to those plainly expressed' ") (quoting *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 59 L.Ed. 717 (1915)); *Renshaw,* 222 F.3d at 86.

There has been much debate among the Circuits over whether a "defalcation" under § 523(a)(4) includes all misappropriations or failures to account or only those that evince some wrongful conduct.[FN1] *See Zohlman v. Zoldan,* 226 B.R. 767, 775 (S.D.N.Y.1998) (discussing the circuit split). This Circuit, although previously having suggested that "some portion of misconduct" may be required to establish a "defalcation" under § 523(a)(4), has yet to squarely address this issue. *Cent. Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510, 512 (2d Cir.1937); *see Hayes,* 183 F.3d at 172 (assuming that defalcation demands "some portion of misconduct," in *\*67* finding that the debtor committed a defalcation).

> FN1. Defalcation is defined in Black's Law Dictionary (8th ed.2004), as "loosely, the failure to meet an obligation" and "a non-fraudulent debt." *Id.* at 427; *see* Oxford English Dictionary 389 (2d ed.1989) ("a monetary deficiency through breach of trust by one who has the management or charge of funds").

In *Herbst,* 93 F.2d at 511-12, Judge Learned Hand wrestled with this problem without resolving it. He wrote:

Colloquially perhaps the word, "defalcation," ordinarily implies some moral dereliction, but in this context [the first reference to defalcation in the Bankruptcy Code] it may have included innocent defaults, so as to include all fiduciaries who for any reason were short in their accounts. It must be remembered that the "fiduciary capacity" was limited to "special" or "technical" fiduciaries.

....

Whatever was the original meaning of "defalcation," it must here [in the Bankruptcy Act of 1867] have covered other defaults than deliberate malversations, else it added nothing to the words, "fraud or embezzlement." [FN2]

> FN2. The Act found non-dischargeable debts resulting from "defalcation as a public officer, or while acting in any fiduciary character," fraud or embezzlement. *Herbst,* 93 F.2d at 511.

**\*\*5** ....

We must give the words different meanings so far as we can, especially when a contrary interpretation would wrest "defalcation," if not from its original meaning, at least from that which it must have had in the Act of 1867.

....

We do not hold that no possible deficiency in a fiduciary's accounts is dischargeable; in *[In] Re Bernard,* 87 F.2d 705, 707 [ (2d Cir.1937) ], we said that "the misappropriation must be due to a known breach of the duty, and not to mere negligence or mistake." Although that word probably carries a larger implication of misconduct than "defalcation," "defalcation" may demand some portion of misconduct, we will assume arguendo that it does.

Denton relies on *In re Hammond,* 98 F.2d 703, 704 (2d Cir.1938), for the proposition that no actual intent is necessary to establish a defalcation. *Hammond* involved our determination of whether the unlawful appropriation of a corporate contract constituted a "misappropriation" under the previous version of § 523(a)(4), absent finding by the lower court of a "conscious wrongdoing" or "purpose to defraud." *Id.* at 704, 705. *Hammond* does not stand for the proposition that a "misappropriation"

under this provision can be found absent a wrongful intent. In *Hammond,* we held that a wrongful or evil intent, if required by the provision, *could* be inferred based on the debtor's intentional unlawful act and by finding the debtor chargeable with the knowledge that his actions violated the law. *Id.* at 705.

The Fourth, Eighth, and Ninth Circuits hold that an innocent mistake can constitute a defalcation. *In re Uwimana,* 274 F.3d 806, 811 (4th Cir.2001) ( "[N]egligence or even an innocent mistake which results in misappropriation or failure to account is sufficient."); *In re Hemmeter,* 242 F.3d 1186, 1190 (9th Cir.2001) ("Even innocent acts of failure to fully account for money received in trust will be held as non-dischargeable defalcations."); *In re Cochrane,* 124 F.3d 978, 984 (8th Cir.1997) ("Defalcation includes the innocent default of a fiduciary who fails to account fully for money received."). [FN3]

> FN3. The Ninth Circuit does, however, more strictly limit the application of defalcation to fiduciary of trusts and relationships that exhibit characteristics of the traditional trust relationship. *Hemmeter,* 242 F.3d at 1189-90.

The majority of the Circuits addressing this issue, however, require some level of *68 wrongful conduct in order to find a defalcation under § 523(a)(4). The Fifth, Sixth, and Seventh Circuits require a level of fault greater than mere negligence. *In re Schwager,* 121 F.3d 177, 185 (5th Cir.1997) ("While defalcation may not require actual intent, it does require some level of mental culpability. It is clear in the Fifth Circuit that a 'willful neglect' of fiduciary duty constitutes a defalcation-essentially a recklessness standard."); *Meyer v. Rigdon,* 36 F.3d 1375, 1384-85 (7th Cir.1994) ("[A] mere negligent breach of a fiduciary duty is *not* a 'defalcation' under section 523(a)(11)."); *In re Johnson,* 691 F.2d 249, 257 (6th Cir.1982) (ruling that while "subjective intent to violate a known fiduciary duty or bad faith is irrelevant," the misuse of monies as the result of negligence or a mistake of fact does not constitute defalcation). The Tenth Circuit's standard is not entirely clear but at least requires "some portion of misconduct." *Compare In re Storie,* 216 B.R. 283, 288 (B.A.P. 10th Cir.1997) (announcing a standard requiring that includes "intentional, wilful, reckless or negligent" breaches of fiduciary duty), *with In re Millikan,* 188 Fed.Appx. 699, 702 (10th Cir.2006) (unpublished) (declining to identify a specific standard but requiring "some portion of misconduct" to prove defalcation). The First Circuit set the highest bar, requiring a showing of extreme recklessness, "akin to the level of recklessness required for scienter [in securities law]." *In re Baylis,* 313 F.3d 9, 20 (1st Cir.2002). In so ruling, the First Circuit interpreted "defalcation" as requiring a degree of fault, "closer to fraud, without the necessity of meeting a strict specific intent requirement." [FN4] *Id.* at 18-19.

> FN4. The Eleventh Circuit also has yet to adopt a clear standard. *See In re Fernandez-Rocha,* 451 F.3d 813, 817 (11th Cir.2006) (discussing the different possible interpretations of defalcation); *Quaif v. Johnson,* 4 F.3d 950, 955 (11th Cir.1993) (finding a defalcation where the improper transfer of funds by a fiduciary "was far more than an innocent mistake or even negligence").

**6 [6]    In light of this persistent confusion, we now align ourselves with the First Circuit, *see Baylis,* 313 F.3d at 20, in holding that defalcation under § 523(a)(4) requires a showing of conscious misbehavior or extreme recklessness-a showing akin to the showing required for scienter in the securities law context. *See Ganino v. Citizens Utils. Co.,* 228 F.3d 154, 168 (2d Cir.2000); *Novak v. Kasaks,* 216 F.3d 300, 308 (2d Cir.2000); *Press v. Chemical Inv. Servs. Corp.,* 166 F.3d 529, 538 (2d Cir.1999). We believe that these concepts-well understood and commonly applied in the securities law context-strike the proper balance under § 523(a)(4). This standard ensures that the term "defalcation" complements but does not dilute the other terms of the provision-"fraud," "embezzlement," and "larceny"-all of which require a showing of actual wrongful intent. *See In re Stern,* 231 B.R. 25, 26 (S.D.N.Y.1999) (noting that larceny under § 523(a)(4) requires a showing of fraudulent intent to convert another's property to debtor's own use); *In re Caulfield,* 192 B.R. 808, 818 (Bankr.E.D.N.Y.1996) (requiring a showing of fraudulent intent for larceny and embezzlement); *see also In re Zois,* 269 B.R. 89, 101 (Bankr.S.D.N.Y.1999) (requiring a showing of intentional deceit to establish "fraud" under this section); 4 Collier on Bankruptcy § 523.10(1)(a) (15th ed. rev.2007) ("

'Fraud' for purposes of this exception has generally been interpreted as involving intentional deceit, rather than implied or constructive fraud.").

By requiring the courts to make appropriate findings of conscious misbehavior or recklessness in the course of dischargeability litigation, the standard we adopt today insures that the harsh sanction of non-*69 dischargeability is reserved for those who exhibit "some portion of misconduct." *Herbst,* 93 F.3d at 512. The standard does not reach fiduciaries who may have failed to account for funds or property for which they were responsible only as a consequence of negligence, inadvertence or similar conduct not shown to be sufficiently culpable. This standard, we believe, also has the virtue of ease of application since the courts and litigants have reference to a robust body of securities law examining what these terms mean.

[7]   In finding that Hyman breached his fiduciary duty by "misappropriating and co-opting assets of the jointly-owned companies for his personal benefit," the Surrogate's Court made no express findings with regard to Hyman's state of mind. We assume that the Surrogate concluded that under New York law such findings were not necessary, since misappropriation and breach of fiduciary duties apparently do not, under New York law, consistently require proof of a culpable mental state. *See Strough v. Bd. of Supervisors,* 3 N.Y.S. 110, 112 (N.Y. Gen. Term 1888), *modified on other grounds and aff'd,* 119 N.Y. 212, 23 N.E. 552 (1890) (holding defendant liable for "illegal, though innocent in intent, misappropriation"); *Matter of Happy Time Fashions,* 7 B.R. 665, 670 (Bankr.S.D.N.Y.1980) (noting that good faith or innocent motives are no defense to a corporate officer's breach of fiduciary duties).[FN5]

FN5. The New York Jurisprudence states:

Corporate directors and officers will be held accountable for the wrongful use, diversion, or misappropriation of corporate funds or property in an action appropriate for the enforcement of such liability. Good intentions do not justify the misapplication or misuse of corporate assets where the directors know that the use they are making of the assets is not for the benefit of the company, but for the use and benefit of other enterprises in which they are interested.

N.Y. Jur.2d, 14A Business Relationships § 695 (2006).

**7 Having clarified the standard under § 523(a)(4) and given the unique circumstances of this case, we decline to mechanically apply collateral estoppel. *See Jeffreys,* 1 N.Y.3d at 41, 769 N.Y.S.2d 184, 801 N.E.2d 404; *People v. Roselle,* 84 N.Y.2d 350, 357, 618 N.Y.S.2d 753, 643 N.E.2d 72 (1994) ("[C]ollateral estoppel, a flexible doctrine, should not be mechanically applied just because some of its formal prerequisites, like identity of the parties, identity of issues, a final and valid prior judgment and a full and fair opportunity to litigate the prior determination, may be present."); *Halyalkar v. Bd. of Regents,* 72 N.Y.2d 261, 269, 532 N.Y.S.2d 85, 527 N.E.2d 1222 (1988) (declining to give an administrative consent order preclusive effect and noting that the doctrine of collateral estoppel "should never be rigidly or mechanically applied"). The Surrogate had neither the ability nor the incentive to apply the standard we announce. Moreover, the record contains evidence of Hyman's good faith in using the proceeds of the new Agency to pay off the debts for which both he and the Denton estate were liable, and in attempting for years to negotiate a buy-out with the Denton estate [FN6]-all of which could militate against the required showing of recklessness or conscious*70 misbehavior. As noted above, the Surrogate's Court was not required to take such considerations into account when reaching its conclusions concerning misappropriation and breach of fiduciary duty. In view of these complexities, we are loath to conclude that an identical issue was necessarily decided or that Hyman had a full and fair opportunity to contest his state of mind. In addition to the murkiness of the law, the harsh consequences that follow a finding of nondischargeability and the requirement that exceptions be narrowly construed both counsel against precluding a plenary trial in Bankruptcy Court, had the estate not voluntarily agreed to forego one here. Accordingly, we conclude that collateral estoppel does not attach.

FN6. Denton argues that the Surrogate's Court effectively did find an absence of good faith in rejecting Hyman's affirmative defenses of ratification and consent. Even if the Surrogate did clearly reject Hyman's argument that Denton consented to these acts-which is entirely unclear-a lack of good faith was not necessarily decided by the Surrogate's rejection of Hyman's affirmative defenses. Even absent Denton's consent or ratification of Hyman's acts, good faith could still be found based on evidence in the record. As indicated by the Bankruptcy Court and the district court, there is other evidence, namely the extensive buy-out negotiations and the payment of Denton-Hyman debt that stands as evidence of good faith on Hyman's part; therefore a lack of ratification and consent would not necessarily decide the existence of good faith.

### III. CONCLUSION

The district court's judgment is AFFIRMED.

C.A.2 (N.Y.),2007.
In re Hyman
502 F.3d 61, 2007 WL 2492789 (C.A.2 (N.Y.)), 48 Bankr.Ct.Dec. 211, Bankr. L. Rep. P 81,019


Briefs and Other Related Documents (Back to top)

• 2006 WL 5249919 (Appellate Brief) Brief for Appellant (Feb. 27, 2006)
END OF DOCUMENT

West Reporter Image (PDF)

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Westlaw.

365 B.R. 807                                                                                          Page 1
365 B.R. 807
**(Cite as: 365 B.R. 807)**

**C**
In re Ker
Bkrtcy.S.D.Ohio,2007.
    In re Erik D. KER, Debtor.
    Tanya M. Ker, Plaintiff,
          v.
    Erik D. Ker, Defendant.
    **Bankruptcy No. 05-59978.**
    **Adversary No. 05-2437.**

March 30, 2007.

**Background:** In Chapter 7 case, debtor's wife commenced adversary proceeding seeking judgment that debtor's debts to her arising under state court divorce decree were nondischargeable.

**Holdings:** The Bankruptcy Court, John E. Hoffman, Jr., J., held that:

(1) attorney fees that state court ordered debtor to pay to his former wife were in nature of support, and

(2) debtor's actions in dissipating marital assets and violating court orders during divorce proceedings warranted finding of willful and malicious injury.

Judgment for wife.

West Headnotes

**[1] Bankruptcy 51 ⟶3341**

51 Bankruptcy
    51X Discharge
        51X(C) Debts and Liabilities Discharged
            51X(C)1 In General
                51k3341 k. In General. Most Cited Cases
In order to afford honest but unfortunate debtor fresh start, court narrowly construes exceptions to discharge. 11 U.S.C.A. § 523.

**[2] Bankruptcy 51 ⟶3365(1)**

51 Bankruptcy
    51X Discharge
        51X(C) Debts and Liabilities Discharged
            51X(C)2 Debts Arising from Divorce or Separation
                51k3365 Property Distribution and Alimony, Maintenance, or Support
                    51k3365(1) k. In General. Most Cited Cases

**Bankruptcy 51 ⟶3366**

51 Bankruptcy
    51X Discharge
        51X(C) Debts and Liabilities Discharged
            51X(C)2 Debts Arising from Divorce or Separation
                 51k3366 k. Effect of State Law. Most Cited Cases
Test for determining whether obligation not denominated as support is actually in nature of support and thus excepted from debtor's discharge is as follows: (1) obligation constitutes support only if state court or parties intended to create support obligation; (2) obligation must have actual effect of providing necessary support; (3) if first two conditions are satisfied, court must determine if obligation is so excessive as to be unreasonable under traditional concepts of support; and (4) if amount is unreasonable, obligation is dischargeable to extent necessary to serve purposes of federal bankruptcy law. 11 U.S.C.A. § 523(a)(5).

**[3] Bankruptcy 51 ⟶3403(2)**

51 Bankruptcy
    51X Discharge
        51X(D) Determination of Dischargeability
            51k3401 Evidence
                51k3403 Presumptions and Burden of Proof
                  51k3403(2) k. Alimony; Support or

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

365 B.R. 807
365 B.R. 807
**(Cite as: 365 B.R. 807)**

Maintenance. Most Cited Cases
In determining whether obligation not denominated as support is actually in nature of support and thus excepted from debtor's discharge, nondebtor bears burden of establishing that obligation is in nature of support. 11 U.S.C.A. § 523(a)(5).

**[4] Bankruptcy 51 ⟶3365(9)**

51 Bankruptcy
   51X Discharge
     51X(C) Debts and Liabilities Discharged
       51X(C)2 Debts Arising from Divorce or Separation
        51k3365 Property Distribution and Alimony, Maintenance, or Support
         51k3365(2) Property Distribution or Spousal Support, Particular Applications
          51k3365(9) k. Legal Expenses. Most Cited Cases
Attorney fees that state court ordered Chapter 7 debtor to pay to his former wife in connection with her efforts to obtain contempt ruling against him were in nature of support, and thus were nondischargeable, despite debtor's contention that fees related to property division, where fees were incurred before court divided marital property, court ordered debtor to pay spousal support and child support, only by filing and prosecuting contempt motion was wife able to obtain ruling against debtor regarding his improper use of funds that should have gone for spousal and child support, and fees were not excessive. 11 U.S.C.A. § 523(a)(5).

**[5] Bankruptcy 51 ⟶3374(1)**

51 Bankruptcy
   51X Discharge
     51X(C) Debts and Liabilities Discharged
       51X(C)5 Torts and Crimes
        51k3374 Willful or Malicious Injury
         51k3374(1) k. In General. Most Cited Cases
For discharge purposes, determination of whether debt is for willful and malicious injury is matter of federal law. 11 U.S.C.A. § 523(a)(6).

**[6] Bankruptcy 51 ⟶3374(2)**

51 Bankruptcy
   51X Discharge
     51X(C) Debts and Liabilities Discharged
       51X(C)5 Torts and Crimes
        51k3374 Willful or Malicious Injury
         51k3374(2) k. Willful, Deliberate, or Intentional Injury. Most Cited Cases

**Bankruptcy 51 ⟶3374(7)**

51 Bankruptcy
   51X Discharge
     51X(C) Debts and Liabilities Discharged
       51X(C)5 Torts and Crimes
        51k3374 Willful or Malicious Injury
         51k3374(7) k. Just Cause or Excuse. Most Cited Cases
For there to be finding of "willful and malicious injury" necessary to establish discharge exception, lack of excuse or justification for debtor's actions is not sufficient, nor is showing that debtor should have known his actions would cause injury; instead, debtor must will or desire harm, or believe injury is substantially certain to occur as result of his behavior. 11 U.S.C.A. § 523(a)(6).

**[7] Bankruptcy 51 ⟶3403(12)**

51 Bankruptcy
   51X Discharge
     51X(D) Determination of Dischargeability
       51k3401 Evidence
        51k3403 Presumptions and Burden of Proof
         51k3403(12) k. Willful or Malicious Injury. Most Cited Cases
In making determination that injury is willful, for purposes of discharge exception, in addition to what debtor may admit to knowing, bankruptcy court may consider circumstantial evidence that tends to establish what debtor must have actually known when taking injury-producing action. 11 U.S.C.A. § 523(a)(6).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**[8] Bankruptcy 51 ⇌3374(9)**

51 Bankruptcy
    51X Discharge
        51X(C) Debts and Liabilities Discharged
            51X(C)5 Torts and Crimes
                51k3374 Willful or Malicious Injury
                    51k3374(8) Particular Injuries
                        51k3374(9) k. In General;
Fraud. Most Cited Cases
Debtor's actions in dissipating marital assets and violating court orders during divorce proceedings warranted finding of willful and malicious injury and nondischargeability, where debtor withdrew his retirement funds to pay other creditors, permitted marital residence to go into foreclosure by refusing to make court-ordered mortgage payments, and became voluntarily unemployed. 11 U.S.C.A. § 523(a)(6).

***809** Kenneth M. Richards, William B. Logan, Jr., Columbus, OH, for Plaintiff.
Michael T. Gunner, Hilliard, OH, for Defendant.
Frederick L. Ransier, Columbus, OH, Chapter 7 Trustee.

### *MEMORANDUM OPINION ON AMENDED COMPLAINT TO DETERMINE DIS-CHARGEABILITY OF DEBTS*

JOHN E. HOFFMAN, JR., United States Bankruptcy Judge.
    Section 523(a) of the Bankruptcy Code provides that a discharge in bankruptcy does not discharge an individual debtor from certain specified debts, including debts for support, 11 U.S.C. § 523(a)(5), and debts for willful and malicious injury by the debtor, 11 U.S.C. § 523(a)(6). On June 9, 2005, Erik Ker ("Erik") filed his Chapter 7 petition.[FN1] On September 13, 2005, Tanya Ker ("Tanya"), Erik's former spouse, commenced this adversary proceeding, by which she seeks a judgment that Erik's debts to her arising under a state court divorce decree are nondischargeable. Tanya asserts that attorney fees awarded to her by the domestic relations court constitute support. Tanya also asserts that Erik's violation of temporary orders requiring him to make mortgage payments on the parties' former marital residence and prohibiting him from withdrawing funds from certain retirement accounts gave rise to debts for willful and malicious injury.

    FN1. Because Erik filed his bankruptcy case before the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), generally effective October 17, 2005, all references to the Bankruptcy Code in this opinion are to the pre-BAPCPA version. (11 U.S.C. §§ 101-1330 (2000)). *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8, § 1501(b)(1), 119 Stat. 23, 216 (stating that, unless otherwise provided, the amendments do not apply to cases commenced under title 11 before the effective date of BAPCPA).

    As explained below, the debts that are the subject of this adversary proceeding are all nondischargeable. The attorney fees awarded by the state court are in the nature of support and, therefore, are nondischargeable under § 523(a)(5). In addition, Erik's failure to pay the mortgage, and the resulting loss of equity in the marital residence, as well as his withdrawal of funds held in the retirement accounts, constitute willful and malicious injuries resulting in debts that are nondischargeable under § 523(a)(6).

    This memorandum opinion constitutes the Court's findings of fact and conclusions of law. *See* Fed.R.Civ.P. 52 (made applicable here by Fed. R. Bankr.P. 7052).

### I. Jurisdiction

    The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and the general order of reference entered in this district.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

365 B.R. 807
365 B.R. 807
(Cite as: 365 B.R. 807)

This is a core proceeding. 28 U.S.C. § 157(b)(2).

## II. Factual and Procedural Background

### A. The State Court Proceedings

In 1986 Erik and Tanya were married. Between 1991 and 1995, they had three children. As a result of the divorce proceedings described below, Tanya was awarded custody of the children.

In early 2001 Tanya and Erik filed competing complaints for divorce and legal separation in different counties in Ohio. At that time, the equity in their marital residence and certain retirement funds and **810** accounts (collectively, "Retirement Accounts") were their primary marital assets. The court in which Tanya filed her complaint and the court in which Eric filed his complaint issued temporary orders ("Orders") (i) requiring Erik to make temporary child support payments and mortgage payments on the parties' marital residence and (ii) prohibiting Erik from withdrawing funds from the Retirement Accounts. The court in which Erik filed his complaint, the Franklin County Court of Common Pleas, Division of Domestic Relations ("State Court"), ultimately presided over Tanya's and Erik's consolidated divorce proceedings.

Erik violated the Orders. In May 2002 he stopped making the required mortgage payments on the marital residence. As a result, the lender foreclosed, and the residence was sold at sheriff's sale with a resulting deficiency. Erik also withdrew funds from the Retirement Accounts, deposited the funds into an account in the name of his parents and, instead of using the funds to make child support or mortgage payments, used the funds to pay debts owed to his parents and his other personal creditors. Tanya filed various contempt motions against Erik on account of his violations of the Orders. The State Court held Erik in contempt both for his failure to make mortgage payments and his withdrawal of funds from the Retirement Accounts. The State Court also awarded Tanya $7,415.84 and

certain other attorney fees in connection with her efforts to obtain the contempt ruling against Erik ("Attorney Fees").

In 2004 the State Court held a trial on the consolidated divorce proceedings. During this trial, Erik testified that his ability to make the mortgage payments (which he stopped making in May 2002) was negatively affected when he voluntarily terminated his employment as a registered nurse in January 2003. He testified that he terminated his employment due to the burden of responding to discovery in the State Court proceeding and the burden of traveling from Columbus to Oxford, Ohio (where Tanya was then living) to visit his children. The State Court rejected these explanations as implausible. During the State Court trial, Erik also attempted to explain his withdrawal of funds from the Retirement Accounts and failure to use those funds to make payments to Tanya or payments on the mortgage by saying that he gave the funds to his parents (who previously had made loans to him) because they were better at handling money than he was. The State Court also rejected this explanation as implausible.

On July 23, 2004, the State Court entered a Judgment Entry/Decree of Divorce ("Decree") granting Tanya and Erik a divorce. The Decree, in addition to directing Erik to pay Tanya child support and spousal support, the State Court ordered Erik to pay her $71,982.20 reflecting her portion of the equity in the marital residence and her interest in the Retirement Accounts. The State Court ruled that the parties were to pay their own attorney fees, except as otherwise directed in previous orders.

### B. Testimony in the Adversary Proceeding

On October 6, 2006, this Court conducted a trial during which it heard testimony from both Tanya and Erik. That testimony fully supports the facts set forth above, none of which Erik denied. In particular, testimony by both Tanya and Erik showed that Erik did not make the required mortgage payments

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and that, as a result, the marital residence sold at a foreclosure sale for a deficiency, resulting in the loss of Tanya's interest in the equity. Trial Transcript ("Tr.") at 16-18; 44-45. Tanya also testified in detail regarding a conversation *811 she had with Erik in November 2001 in which Erik allegedly stated that he would harm her financially. Tr. at 17-18; 23-24. During the trial, Erik denied making this statement. Tr. at 40.

Erik testified that he terminated his employment in January 2003 as a result of job performance issues for which his employer had placed him on administrative leave and for which the employer was going to suspend and ultimately terminate him. Erik conceded that this explanation was contrary to the explanation he provided to the State Court, which was that he had terminated his employment due to the burdens imposed by the State Court litigation and his efforts to visit his children. Further, again contrary to the explanation he provided to the State Court, Erik sought to justify his withdrawal of funds from the Retirement Accounts by stating that the personal debts he paid with the withdrawn funds were incurred by him to permit him to make health insurance and child support payments to Tanya. Erik testified that this was not the explanation given to the State Court. Tr. at 44-48.

Erik conceded various inconsistencies in the version of events he provided to the State Court and his testimony in this adversary proceeding. He attempted to explain these inconsistencies by testifying that he chose to focus on custody issues, not financial issues, during the State Court proceedings. Tr. at 47.

### III. Arguments of the Parties

Tanya asserts that the Attorney Fees are in the nature of support and are nondischargeable under § 523(a)(5). In response, Erik argues that because the Attorney Fees were awarded in connection with his contempt of the Orders, they are in the nature of a property division, rather than support.[FN2]

> FN2. Erik, does not contest the dischargeability of debts expressly designated by the State Court as alimony, maintenance, or support.

Tanya further alleges that Erik's failure to make the mortgage payments, resulting in a dissipation of the equity in the marital residence, and his withdrawal of funds from the Retirement Accounts constitute willful and malicious injuries within the meaning of § 523(a)(6). In response, Erik argues that, for purposes of § 523(a)(6), although he intentionally failed to make the mortgage payments and intentionally depleted the Retirement Accounts, he did not intend to injure Tanya or her property interests.[FN3]

> FN3. Tanya also argued that Erik should be precluded by the doctrine of collateral estoppel (or issue preclusion) from relitigating any of the issues decided by the State Court. At trial, Erik argued that he should not be precluded from relitigating these issues. The Court finds that it need not make a ruling as to the preclusive effect to be accorded to the State Court's findings. As discussed above, Erik conceded most of the State Court's findings, including the finding that he failed to make payments on the mortgage and that he withdrew funds from the Retirement Accounts. Erik disputes the State Court's finding that he threatened and intended to injure Tanya financially. Tanya and Erik, however, both offered testimony on this issue and others relating to the dischargeability of the debts. This Court, therefore, may make its own independent determinations regarding the relevant issues. Finally, none of the Court's independently-derived findings are contrary to the findings of the State Court. Accordingly, the Court need not reach the collateral estoppel issue. *See Shteysel v. Shteysel (In re Shteysel),* 221 B.R. 486, 490 (Bankr.E.D.Wis.1998) ("This court

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

365 B.R. 807
365 B.R. 807
**(Cite as: 365 B.R. 807)**

Page 6

concludes, based upon the evidence presented and without the need to resort to collateral estoppel, that both willfulness and maliciousness were established."); *McDaniel v. Border (In re McDaniel),* 181 B.R. 883, 887 (Bankr.S.D.Tex.1994) ("This Court does not reach the issues of collateral estoppel or res judicata as it has independently determined the nature ... of the debt for dischargeability purposes based upon the evidence presented before it.").

**\*812 IV. Legal Analysis**

**A. Sections 523(a)(5)-Nondischargeability of Debts for Alimony, Maintenance or Support**

[1] Section 523(a)(5) of the Bankruptcy Code provides in part that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--

....

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record ..., but not to the extent that--

....

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support....

11 U.S.C. § 523(a)(5). In order to afford the honest but unfortunate debtor a fresh start, the Court narrowly construes exceptions to discharge. *See Brumbaugh v. United States (In re Brumbaugh),* 267 B.R. 800, 806 (Bankr.S.D.Ohio 2001).

[2][3] The United States Court of Appeals for the Sixth Circuit has set forth the following four-part test for determining whether an obligation not denominated as support is actually in the nature of support and thus excepted from a debtor's discharge:

First, the obligation constitutes support only if the state court or parties intended to create a support obligation. Second, the obligation must have the actual effect of providing necessary support. Third, if the first two conditions are satisfied, the court must determine if the obligation is so excessive as to be unreasonable under traditional concepts of support. Fourth, if the amount is unreasonable, the obligation is dischargeable to the extent necessary to serve the purposes of federal bankruptcy law.

*Fitzgerald v. Fitzgerald (In re Fitzgerald),* 9 F.3d 517, 520 (6th Cir.1993) (citing *Long v. Calhoun (In re Calhoun),* 715 F.2d 1103, 1109-10 (6th Cir.1983)). The nondebtor bears the burden of establishing that an obligation is in the nature of support. *Calhoun,* 715 F.2d at 1111.

[4] Applying the *Calhoun* factors to the facts of this case, the Court finds first, that the State Court intended to create and did create a support obligation for Tanya and her children. By the Decree, the State Court ordered Erik to pay Tanya spousal support and child support. *See Sorah v. Sorah (In re Sorah),* 163 F.3d 397, 401 (6th Cir.1998) (holding that obligation labeled as support that has the indicia of support should be conclusively presumed to be a support obligation).

Second, the State Court award of Attorney Fees has the actual effect of providing necessary support. Tanya incurred the Attorney Fees in connection with her efforts to find Erik in contempt for violating the Orders. By withdrawing the Retirement Funds to pay other creditors, and by permitting the marital residence to go into foreclosure, Erik used money that should have gone to Tanya for the support of her and their children. Only by filing and prosecuting the contempt motion was Tanya able to obtain the State Court ruling against Erik regarding his improper use of the Retirement Funds and his wasting of the equity in the real estate. The Attor-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

365 B.R. 807
365 B.R. 807
(Cite as: 365 B.R. 807)

Page 7

ney Fees were a necessary component of obtaining the State Court contempt judgment and thus are in the nature of support.

Third, the Attorney Fees are not so excessive in amount as to be unreasonable under traditional concepts of support. *813 The fourth and final *Calhoun* factor would come into play only if this Court were to determine that the amount of the debt is unreasonable, which it does not. Erik's debt for the Attorney Fees accordingly satisfies the *Calhoun* test.

Erik has cited no authority in support of his argument that the Attorney Fees do not fall within the ambit of § 523(a)(5)'s exception to discharge. To the contrary, courts within the Sixth Circuit have held that attorney fee awards constitute support under the *Calhoun* test. *See Goans v. Goans (In re Goans),* 271 B.R. 528, 534 (Bankr.E.D.Mich.2001) ("The award of attorney fees in a divorce judgment is usually found to be in the nature of support and thus nondischargeable."); *In re Smither,* 194 B.R. 102, 105 (Bankr.W.D.Ky.1996) ( "Here, from reviewing the facts of this case, it is clear under either the *Fitzgerald* or *Calhoun* doctrines that the Debtor's obligation for the Creditor's state court attorney fees meets the four part test of 11 U.S.C. § 523(a)(5) and is nondischargeable.").

Erik's argument that the Attorney Fees are not support because they relate to a property division is without merit. Erik's contemptuous acts occurred, and the State Court awarded Tanya the Attorney Fees, before there ever was a division of property.

In sum, Tanya has carried her burden of establishing under § 523(a)(5) that the Attorney Fees are in the nature of support and therefore not subject to discharge.

**B.    Section    523(a)(6)-Nondischargeability    of Debts for Willful and Malicious Injury**

Section 523(a)(6) of the Bankruptcy Code provides that:
(a)  A discharge under section 727, 1141,

1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
....
(6) for willful and malicious injury by the debtor to another entity or to the property of another entity....

11 U.S.C. § 523(a)(6).

[5][6][7] The determination of whether a debt is for willful and malicious injury is a matter of federal law. *South Atlanta Neurology & Pain Clinic, P.C. v. Lupo (In re Lupo),* 353 B.R. 534, 550 (Bankr.N.D.Ohio 2006). In *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), the United States Supreme Court held that § 523(a)(6) does not exempt from discharge debts arising from negligently or recklessly inflicted injury because "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Geiger,* 523 U.S. at 61, 118 S.Ct. 974. Applying *Geiger,* the Sixth Circuit has held that, for there to be a finding of willful and malicious injury, lack of excuse or justification for the debtor's actions is not sufficient, nor is a showing that the debtor should have known his actions would cause injury. Instead, the debtor "must will or desire harm, or believe injury is substantially certain to occur as a result of his behavior." *Markowitz v. Campbell (In re Markowitz),* 190 F.3d 455, 465 n. 10 (6th Cir.1999). In making the determination that an injury is willful, " '[i]n addition to what a debtor may admit to knowing, the bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action.' " *CMEA Title Agency, Inc. v. Little (In re Little),* 335 B.R. 376, 383 (Bankr.N.D.Ohio 2005) (quoting *Jett v. Sicroff (In re Sicroff),* 401 F.3d 1101, 1106 (9th Cir.), cert. denied545 U.S. 1139, 125 S.Ct. 2964, 162 L.Ed.2d 888 (2005)).

*814 For purposes of § 523(a)(6), an injury is malicious when the debtor "acts in conscious dis-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

365 B.R. 807
365 B.R. 807
**(Cite as: 365 B.R. 807)**

Page 8

regard of his duties or without just cause or excuse." *Gonzalez v. Moffitt (In re Moffitt),* 252 B.R. 916, 923 (6th Cir. BAP 2000). The willful and malicious requirements are separate, and "both requirements must be met under § 523(a)(6)." *Lupo,* 353 B.R. at 550. Under § 523(a)(6), "injury" includes injury to tangible or intangible property rights. *Id.* at 551. The nondebtor has the burden of proving that the debt is for willful and malicious injury. *Id.* at 550.

[8] Applying *Geiger* and *Markowitz,* courts within the Sixth Circuit and elsewhere have held that the kind of behavior in which Erik admittedly engaged-dissipating marital assets and violating court orders-warrants a finding of willful and malicious injury and nondischargeability under § 523(a)(6). *See Heyne v. Heyne (In re Heyne),* 277 B.R. 364, 368 (Bankr.N.D.Ohio 2002); *Lipira v. Kaczmarski (In re Kaczmarski),* 245 B.R. 555, 562 (Bankr.N.D.Ill.2000); *Shteysel,* 221 B.R. at 491. In *Heyne,* the debtor disposed of the spouse's assets in violation of an order of the domestic relations court. The court held that the debt was nondischargeable under § 523(a)(6). *Heyne,* 277 B.R. at 368-69. Likewise, in *Kaczmarski,* the debtor withdrew funds from a retirement account and borrowed funds on a line of credit in violation of an order of the domestic relations court. The bankruptcy court held that the debtor was aware that his actions were substantially certain to lead to injury to his wife or her property interests and his actions were, therefore, willful. *Kaczmarski,* 245 B.R. at 561-62. The *Kaczmarski* court also held that, because the debtor withdrew the funds from the retirement account despite a court order prohibiting him from doing so and thereafter used those funds for his personal benefit, the injury to the nondebtor was willful and malicious. *Id.* at 562. Similarly, in *Shteysel,* after being served with a divorce complaint, the debtor liquidated his retirement account, savings account and investment account and transferred the proceeds to a family member. The court held that this action and the debtor's violation of a subsequent court order to make a payment to his spouse gave

rise to a debt for willful and malicious injury. *Shteysel,* 221 B.R. at 490-91.

Based on the authorities discussed above, the Court holds that Erik's withdrawal of the funds from the Retirement Accounts and misuse of those funds gave rise to a willful and malicious injury to Tanya and her property interests. Likewise, the Court holds that Erik's dissipation of the equity in the marital residence by failing to comply with orders to make the mortgage payments constitutes a willful and malicious injury to Tanya and her property interests. Contrary to Erik's arguments at trial, his actions were not at all akin to the professional malpractice engaged in by the debtor in *Geiger.* Here, Erik's infliction of injury was intentional, not merely negligent or reckless. Nor is this case like *Little,* in which the court found the evidence insufficient to establish that the debtor engaged in fraud or caused the nondebtors' injury. By contrast, there is no question in this case that Erik's actions injured Tanya and her property interests. In addition to *Geiger* and *Little,* Erik relies on *Sicroff, supra,* and *Superior Metal Products v. Martin (In re Martin),* 321 B.R. 437 (Bankr.N.D.Ohio 2004). In those cases, which are wholly inapposite, the courts made a finding of willful and malicious injury (in *Sicroff,* based on defamatory conduct by the debtor, and in *Martin,* based on the debtor's misconduct in cashing a check erroneously mailed to him) and held that the related debt was nondischargeable under section 523(a)(6).

**\*815** The result is the same here. The testimony showed that Erik was living in the marital residence up until it was sold at foreclosure sale. He had an obligation under the Orders to make the mortgage payments, but did not. By refusing to make the payments, he knew that the equity in the property would be lost. Presumably he could have petitioned the State Court to modify the Orders to permit him to use his portion of the retirement funds to keep the mortgage current. Or he could have negotiated with Tanya to permit a sale of the property while there was still equity remaining.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

365 B.R. 807
365 B.R. 807
(Cite as: 365 B.R. 807)

Page 9

Yet, he used the Retirement Funds in violation of the Orders to pay other creditors and intentionally wasted the equity in the marital residence. Further, he became voluntarily unemployed. Courts have found, when determining under § 523(a)(15) whether a debtor has the ability to pay a marital debt, that voluntary unemployment is a factor weighing against the debtor. *See In re Molino,* 225 B.R. 904, 908 (6th Cir. BAP 1998) (conduct of debtor who quit job to help new wife in a dog grooming business, thereby artificially diminishing his ability to pay marital debt, was a factor properly considered by court in § 523(a)(15) dischargeability action); *In re Burton,* 242 B.R. 674, 681-84 (Bankr.W.D.Mo.) (court imputed income to debtor who willfully chose not to seek gainful employment). While the present case does not involve a question of inability to pay under § 523(a)(15), the court may draw the same inference. By voluntarily terminating his employment, Erik acted with the intent to injure his spouse.

The Court reaches its § 523(a)(6) determination after reviewing the totality of the circumstances and considering the credibility of the witnesses. *See Shteysel,* 221 B.R. at 490. At trial, Erik asserted that he stopped making the mortgage payments in part as a result of the termination of his employment in December 2002 or January 2003. Erik, however, gave inconsistent explanations for the termination to this Court and the State Court. In addition, Erik stopped making the mortgage payments in May 2002, several months before the termination of his employment. Like the debtor in *Shteysel,* Erik was not a credible witness. Moreover, as in *Shteysel,* the "sequence of events" here warrants a finding that the injury Erik inflicted was willful and malicious. This sequence-stopping the mortgage payments months before terminating his employment, becoming voluntarily unemployed and withdrawing and misusing funds from the Retirement Accounts despite the Orders to the contrary-establishes a finding that the injury was willful and malicious, regardless of whether or not Erik actually told Tanya that he would ruin her financially.

"[W]hen inconsistencies arise as between a person's testimony, and their prior actions, the maxim, 'actions speak louder than words' will most often lead to the correct result." *In re Pawlowicz,* 337 B.R. 640, 646 (Bankr.N.D.Ohio 2005). The testimony at trial in this adversary proceeding supports no other conclusion but that Erik knew that harm was substantially certain to occur as a result of his actions and that he acted in conscious disregard of his duty under the court Orders.

### V. Conclusion

For the foregoing reasons, the Court holds that the Attorney Fees awarded to Tanya, are in the nature of support and are nondischargeable pursuant to 11 U.S.C. § 523(a)(5) and that the debts owed by Erik to Tanya on account of Erik's failure to make payments on the mortgage and the resulting loss of equity in the marital residence, as well as Erik's withdrawal of funds from the Retirement Accounts, are nondischargeable pursuant to 11 U.S.C. § 523(a)(6). A judgment in accordance*816 with this Memorandum Opinion will be entered separately.

**IT IS SO ORDERED.**

Bkrtcy.S.D.Ohio,2007.
In re Ker
365 B.R. 807

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.