s:\appeal\lindsayi.brief

GENOVA & MALIN
Attorneys for Appellant
Hampton Business Center
1136 Route 9
Wappingers Falls NY 12590
(845) 298-1600
Thomas Genova (TG4706)
Andrea B. Malin (AM4424)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
In Re:

      SHELTON LINDSAY,

                         Debtor.
-----------------------------------------------------x
SHELTON LINDSAY,

                    Appellant,

     - against -

LEE S. KALISH,

                    Appellee.
-----------------------------------------------------x

Bankruptcy Court
Case No. 06-36352 (CGM)
(Chapter 7)


**HON. GEORGE A. YANTHIS**

District Court
Civil Docket
Case No. 7:08-cv-01326

**ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------------------------------------------------

**BRIEF FOR DEBTOR-APPELLANT**

--------------------------------------------------------------------------------------------------------------

GENOVA & MALIN
Attorneys for Debtor-Appellant

By:    /s/ Thomas Genova
        THOMAS GENOVA, ESQ. (TG4424)
        Hampton Business Center
        1136 Route 9
        Wappingers Falls NY 12590
        (845) 298-1600

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... I

TABLE OF STATUTES ...................................................................... ii

PRELIMINARY STATEMENT ............................................................ 1

JURISDICTION STATEMENT ............................................................ 1

ISSUE PRESENTED ........................................................................ 1,2

STANDARD OF REVIEW .................................................................. 2

STATEMENT OF THE CASE ............................................................ 2,3

STATEMENT OF FACTS .................................................................. 3-8

SUMMARY .................................................................................... 8

ARGUMENT:

      THE BANKRUPTCY COURT ERRED IN ITS LEGAL INTERPRETATION
THAT THE ELEMENTS REQUIRED FOR A FINDING THAT A DEBTOR
VIOLATED 11 U.S.C. §523(a)(6) ARE IDENTICAL TO THE ELEMENTS
UNDER NEW YORK JUDICIARY LAW FOR A FINDING OF
CONTEMPT........................................................................... 9-16

CONCLUSION ............................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

<u>In re Akhtar</u>, 368 B.R. 120 (B.Ct.E.D.N.Y. 2007)....................................  14

<u>In re Blankfort</u>, 217 B.R. 138 (B.Ct.S.D.N.Y. 1998)...............................  14

<u>In re Bulter</u>, 297 B.R. 741 (B.Ct.Ill. 2003)................................................  9, 10, 14

<u>In re Carlson</u>, 224 B.R. 659 (B.Ct.N.d.Ill 1998)

    <u>aff'd</u>, 2001 WL 1313652 (7th Cir. 2001).......................................  9

<u>In re Cox</u>, 243 B.R. 713 (B.Ct.N.D.Ill 2000)............................................  9

<u>In re Geiger</u>,  118 S.Ct. 974 (1998)..............................................................  9, 10

<u>Grogan v. Garner</u>, 498 U.S. 279 (1991)....................................................  9, 10

<u>In re Hyman</u>, 2007 WL 2492789 (2d Cir.).................................................  9, 11-15

<u>In re Ker</u>, 365 B.R. 807 (B.Ct. S.D.Ohio 2007).......................................  14

<u>In re Kidd</u>, 219 B.R. 278 (B.Ct.Montana 1998).........................................  9, 10

<u>In re Markowitz</u>, 190 F.3d 455 (6th Cir. 1999)........................................  9

<u>Meyer v. Rigdom</u>, 36 F.3d 1375 (7th Cir. 1994)....................................  11

<u>In re Miller</u>, 156 F.3d 598 (5th Cir. 1998)................................................  9,10

<u>In re Slosberg</u>, 225 B.R. 9 (B.Ct.D.Me. 1998).........................................  9, 10

<u>In re Strauss</u>, 2006 WL 2583645 (B.Ct.S.D.N.Y.)...................................  14

<u>In re Thirtyacre</u>, 36 F.3d 697 (7th Cir. 1994)...........................................   10

## <u>TABLE OF STATUTES</u>

28 U.S.C. §§158(a) and 157 ...................................................................  1

11 U.S.C. §523(a)(6)............................................................. 1, 6-11, 13-15

NY Judiciary Law §753(A)(3)................................................... 2, 7, 13

GENOVA & MALIN
Attorneys for Appellant
Hampton Business Center
1136 Route 9
Wappingers Falls NY 12590
(845) 298-1600
Thomas Genova (TG4706)
Andrea B. Malin (AM4424)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
IN RE:                                                              **CHAPTER 7**
                                                                    **CASE NO.: 06-36352(CGM)**
SHELTON C. LINDSAY,

                              Debtor.
-----------------------------------------------------x
SHELTON C. LINDSAY,
                                                                    **HON. GEORGE A. YANTHIS**
                              Appellant,
                                                                    District Court
                                                                    Civil Docket
               - against -                                          Case No. 7:08-cv-01326

LEE S. KALISH,

                              Appellee.
-----------------------------------------------------x

## APPELLANT'S BRIEF

## PRELIMINARY STATEMENT

This brief is submitted on behalf of the Debtor-Appellant, SHELTON C. LINDSAY,

in appeal from the holding of the United States Bankruptcy Court, Southern District of New York,

Poughkeepsie, New York, entered on January 2, 2008 and the Court's Decision entered on January

7, 2008, granting to the Appellee, LEE S. KALISH summary judgment on the issue of the non-

dischargeability of a debt under 11 U.S.C. §523(a)(6).

## JURISDICTION STATEMENT

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §§ 158(a) and 157.

## ISSUE PRESENTED

Did the United States Bankruptcy Court err in its holding that the elements necessary

to find that a debt is non-dischargeable under 11 U.S.C. §523(a)(6) are identical to the elements

necessary to find a party in contempt under New York Judiciary Law §753(A)(3)?

## STANDARD OF REVIEW

In reviewing ruling of the United States Bankruptcy Court, Southern District of New York, Poughkeepsie Division's ruling the standard for this Court is de novo review.

## STATEMENT OF THE CASE

The Appellant, SHELTON C. LINDSAY (the "debtor"), is appealing from the Decision and Order of the United States Bankruptcy Court of the Southern District of New York (the "Bankruptcy Court"), rendered by the United States Bankruptcy Court on January 7, 2008, holding that a state court judgment for contempt collaterally estopped the debtor from litigating whether the debt due and owing to the appellee was non-dischargeable under 11 U.S.C. §523(a)(6).

Prior to the filing of the debtor's petition under Chapter 7 of the United States Bankruptcy Code, the Dutchess County Supreme Court entered an Order finding debtor in contempt under New York Judiciary Law §753(A)(3) of a previously entered order and awarding to the appellee damages.

On December 8, 2006, the debtor filed a petition under Chapter 7 of the United States Bankruptcy Code. On May 7, 2007, the appellee filed a complaint against the debtor alleging, among other things, that the debt represented by the Contempt Judgment was non-dischargeable under 11 U.S.C. §523(a)(6) and that the debtor was collaterally estopped by the Supreme Court's finding of contempt from litigating same.

On June 22, 2007, the debtor filed an answer to the complaint.

On August 17, 2007, the appellee filed a Motion for Summary Judgment, regarding the issues of non-dischargeability arising under 11 U.S.C. §523(a)(6).

On October 2, 2007, the debtor filed opposition thereto.

On January 2, 2008, the United States Bankruptcy Court entered an Order Granting to the appellee Summary Judgment finding that the debtor was collaterally estopped from litigating the elements of 11 U.S.C. §523(a)(6), as same had already been fully litigated by the parties in the

2

Dutchess County Supreme Court action, as the elements set forth in New York Judiciary Law §753(A)(3) regarding contempt are identical to the elements under 11 U.S.C. §523(a)(6).    The Bankruptcy Court filed its Decision supporting the Order of January 2, 2008 on January 7, 2008.

On January 7, 2008, the debtor filed his Notice of Appeal.  On January 16, 2008, the Designation of Content and Issues on Appeal was filed.  On January 24, 2008, the appellee filed his Counter-Designation of Content and Issues on Appeal.

## STATEMENT OF FACTS

Prior to said filing Lindsay had operated, as a fifty (50%) shareholder, a company known as Rock City Sound, Inc.(RCS).  The remaining partner of the RCS stock was owned by the appellee herein Lee Kalish ("Kalish").

## KALISH'S RESIGNATION

Kalish submitted his withdrawal notice of his officership and directorship of Rock City Sound, Inc. ("RCS") on February 20, 2004 leaving Shelton Lindsay ("Lindsay") thereafter to operate the company.    Pursuant to the Corporate Governance Agreements of the Company, Kalish sought a buy out shares of his stock.  The purchase price of the stock tendered by RCS, according to its calculations based upon the corporate by-laws and shareholder agreement, was $897,275.00. Kalish claims the correct value of his shares was $1,145,580.00.[1]  This dispute led directly to the impasse between the shareholders, the resulting state court litigation between them and ultimately the bankruptcy filing.

Subsequent to the withdrawal from RCS by Kalish, Lindsay was its sole officer and director.  Kalish sought certain restrictions on the business operations of the company in state court litigation and was unsuccessful in obtaining same.  The Shareholder Agreement and by-laws of the

---

[1]    The parties were in dispute with regard to which three (3) year fiscal period should be employed to calculate the buy-out amount.  The dispute arose as the appellee's resignation was tendered in February, 2003, but not effective until August, 2003, which was the ending fiscal year for the corporation.  RCS determined its figure ($897,275.00) using the three (3) fiscal years prior to the tender of the appellee's resignation.  Appellee calculated his figure ($1,145,000.00) using the three (3) fiscal years prior to his retirement date.   The by-laws are silent on this issue.

3

company granted to the remaining shareholder the authority to conduct business and same was confirmed by the Court in said state court litigation. Furthermore, special meetings of the shareholders could be and were called by the Board after the withdrawal from the company by Kalish. After Kalish's departure, the company continued to exist and operate, maintained employees and conducted its business.

STOCK VALUATION ISSUES

The value established by RCS for the Kalish shares was fixed based upon the calculations of Robert Cranston, CPA and long time accountant to the corporation, in accordance with the corporate agreements. Robert Cranston, as controller and accountant to the company, issued a letter on August 13, 2004, in a manner in accordance with the Shareholder Agreement, which set forth the value of the Kalish shares using the three (3) year averaging method as set forth in the Shareholder Agreement. It was and is the position of Lindsay that this is in accordance with the Shareholder Agreement was the correct methodology for calculation of value. Lindsay appeared at the closing tendered the down payment, an amount in excess of $224,000.00, plus an additional promissory note in the amount of $672,956.25 and related documents, all in accordance with the Shareholder Agreement. Kalish, who paid no consideration or investment for his shares, refused to attend and accept said funds or close the transaction. Specifically, the Shareholder Agreement, at paragraph 12, sets forth as follows:

> **12. Failure to Comply With Six-Month Notice Requirement.** In the event a Shareholder shall desire to withdraw from his active participation in the Corporation and such Shareholder shall either (I) fail to give the six (6) months' advance written notice required by Section 2(a) of this Agreement, or (ii) withdraw from his participation in the Corporation's business prior to the Withdrawal Date, then upon the occurrence of either of such events (A) the Withdrawing Shareholder shall automatically be deemed to have (x) tendered his resignation from his positions as an officer and a director of the Corporation, and (y) given a proxy to the Remaining Shareholder authorizing the Remaining Shareholder to vote all of the Withdrawing Shareholder's Shares in such manner as the Remaining Shareholder shall in his sole and absolute discretion deem advisable with respect to all matters as to which the Corporation's shareholders are entitled or required to act, and (B) neither the Corporation nor the Remaining Shareholder shall be under any obligation to purchase the Withdrawing Shareholder's Shares as provided in Section 2 hereof (it being understood, however, that the Corporation and the Remaining Shareholder shall retain the right to elect to purchase such shares in accordance with the terms

4

and procedures set forth in Section 2 hereof). In addition, upon the occurrence of either of the foregoing events, the Withdrawing Shareholder shall not be permitted to dispose of any of his Shares prior to the Withdrawal date, nor may the Withdrawing Shareholder sell his Shares to any third parties subsequent to the Withdrawal date unless he shall first give the Corporation and the Remaining Shareholders an opportunity to purchase such Shares in compliance with the terms and procedures set forth in Section 5 hereof. Anything to the foregoing notwithstanding, the parties agree that the Withdrawing Shareholder shall have the right to request that the six (6) month notice period be waived or shortened. Should the Remaining Shareholder agree to waive or shorten such notice period, he shall deliver a written consent (the "Consent") to his waiver or shortening of the six (6) month notice period to the Withdrawing Shareholder, which Consent shall recite the date (the "Early Withdrawal Date") on which the Remaining Shareholder agrees to permit the Withdrawing Shareholder to withdraw from the Corporation without triggering the provisions of this Section 12. In the event the Remaining Shareholder agrees to so waive or shorten the six (6) month notice period, the provisions of Section 2 hereof shall remain in full force and effect, except that all references therein to the "Withdrawal Date" shall be deemed to be references to the Early Withdrawal Date as set forth in the Remaining Shareholder's Consent."

## POST RESIGNATION ACTIONS

The State Court order in no way enjoined the company from the acquisition or sale of inventory, machinery, or equipment. Additionally, as Kalish had resigned effective August 20, 2004, Lindsay was left as the sole remaining shareholder. In or about July of 2005, RCS sold, to a used equipment broker of impeccable reputation, certain of its sound equipment, office equipment and other goods. Said purchaser, H.T.I.C.S., was introduced to the company by Kalish himself. The sales price was carefully considered by RCS taking into consideration the age, condition and functionality of the equipment sold. The company contacted other potential purchasers and was satisfied that the transaction with H.T.I.C.S. was the best available. Subsequent to the asset sale to H.T.I.C.S., the company retained assets valued in excess of $1,600,000.00.

The actions of Lindsay during the wind down of the RCS corporate affairs was undertaken in a fiduciary capacity by Lindsay. All actions of Lindsay were undertaken to protect the company its remaining employees and its creditors. It must be noted that the proceeds of the H.T.I.C.S. equipment sale were used to satisfy corporate obligations of RCS where Kalish maintained a personal guarantee and the use of the proceeds to satisfy these obligations discharged

Kalish's guarantee thereon.  In addition, the issue of the remaining unsold equipment, valued in excess of $1,600,000, must not be disregarded in a litigation where Kalish is alleging a breach of a fiduciary duty by Lindsay.  In more than twenty-five (25) separate contacts, both telephonic and by correspondence, to Kalish and counsel, RCS unsuccessfully sought to sell the remaining inventory for the benefit of the company and its shareholders, as it was Kalish who had withdrawn from the company and Kalish who refused to attend the closing and be paid a sum in excess of $897,000 for shares of stock for which he neither paid consideration nor made an investment.  RCS determined that Kalish was in violation of the Shareholder Agreement, specifically at Paragraph 12 thereof,  for his failure to close in compliance with the six month notice requirement set forth therein.  Given the appellant's medical condition of active Hep C, a liver transplant, a liver rejection and his desire not to abandon this business he had founded some thirty (30) years earlier, appellant was put in a difficult position of a winding down a previously profitable business.

The proceeds from the sales of the assets which were liquidated were used to satisfy corporate liabilities including the satisfaction in full of a substantial corporate liability to Rhinebeck Savings Bank upon which both plaintiff and defendant  were personally liable.  It is clear from this single act that plaintiff's burden  pursuant to 11 U.S.C. §523(a)(6), can not be met.

<u>STATE COURT ACTION</u>

Prior to the filing of the debtor's petition in bankruptcy, the appellee herein commenced a cause of action against the debtor in the Dutchess County Supreme Court entitled: *LEE S. KALISH v. SHELTON C. LINDSAY and ROCK CITY SOUND, INC., Index No. 4088/04.*  The basis of the action was that plaintiff sought an Order for Specific Performance of the parties' shareholder agreement.

On or about December 10, 2004, the Dutchess County Supreme Court entered an Order granting certain Injunctive Relief with regard to the exercise of dominion and control over the corporate assets at issue.  Thereafter , a dispute with regard to the interpretation of the court's restraining order arose between the parties which resulted in the plaintiff, therein, filing a Motion

6

for Contempt against the debtor.

On August 11, 2006, the Dutchess County Supreme Court entered an Order finding that the debtor was in Contempt of the Court's December 10, 2004 Order pursuant to New York Judiciary Law §753(A)(3) awarded to the appellee damages.

## FILING UNDER CHAPTER 7 OF THE UNITED STATES BANKRUPTCY CODE

On December 8, 2006, the debtor filed a voluntary petition for Bankruptcy under Chapter 7 of the Bankruptcy Code. The debtor listed the debt owed to the appellee on Schedule F filed with his petition.

On May 7, 2007, the appellee commenced an adversary proceeding against the debtor, alleging, amongst other things, that the debt owed to the appellee arising from the damages awarded by the DUtchess County Supreme Court in its Contempt Order entered against the debtor on August 11, 2006 was non-dischargeable pursuant to 11 U.S.C. § 523(a)(6). On June 22, 2007, the debtor filed an answer to the complaint.

On August 17, 2007 , the appellee filed a Motion for Summary Judgment seeking to have the debtor collaterally estopped form litigating the claim under 11 U.S.C. §523(a)(60 as same had already been decided by the Dutchess County Supreme Court and embodied in its Contempt Order. On October 2, 2007, the debtor filed opposiotn thereto.

On January 2, 2008, the United States Bankruptcy Court entered an Order granting Summary Judgment in favor of appellee. On January 7, 2008, the United States Bankruptcy Court entered its decision in favor of the appellee finding that the debtor was estopped from litigating the issues under 11 U.S.C. §523(a)(6) as the elements required to demonstrate contempt under New York Judiciary Law §753 were identical to the elements that are required for a finding under 11 U.S.C. §523(a)(6).

On January 7, 2008, the debtor filed a Notice of Appeal. On January 16, 2008, the debtor filed a Designation fo Contents and Issues on Appeal. On January 24, 2008, the appellee filed a Counter Designation of Contents and Issues on Appeal.

On February 11, 2008, the appeal was docketed with this Court and the debtor's Appeal Brief is to be filed and served on or before February 29, 2008. The appellee's Appeal Brief must be filed and served within fifteen (15) days thereof.

## SUMMARY

The Appellant is appealing from the Order of the United States Bankruptcy Court of the Southern District of New York, entered after a decision on the appellee's Motion for Summary Judgment rendered by the United States Bankruptcy Court on January 2, 2008, finding that the debtor was collaterally estopped from litigating the issues under 11 U.S.C. §523(a)(6). The crux of the debtor's argument is that the Bankruptcy Court erred in finding that the elements necessary to find that a party is in contempt under New York Judiciary Law §523(A)(3) were identical to the elements that must be necessarily proven to find that a debt is non-dischargeable under 11 U.S.C. §523(a)(6).

The debtor will set forth its argument for reversal of the decision of the United States Bankruptcy Court, Southern District of New York, Poughkeepsie Division, as set forth herein under Argument portion of the debtor/Appellant's Brief:

**The debtor is not collaterally estopped by the State Court's Contempt finding entered against the debtor by the Supreme Court, State of New York, Dutchess County entitled LEE S. KALISH v. SHELTON LINDSAY and ROCK CITY SOUND, INC., bearing Index No. 4088/2004 (the "state court litigation") entitling the appellee to summary judgment on the issue of the dischargeability of the debt under 11 U.S.C. §523(a)(6), as the elements required for findings under the two (2) statutes are not identical and thus were not fully litigated in the State Court Action. Therefore, same should not be given collateral estoppel effect.**

8

## ARGUMENT

### THE BANKRUPTCY COURT ERRED IN ITS DETERMINATION THAT THE DEBTOR WAS COLLATERALLY ESTOPPED FROM LITIGATING THE ISSUES UNDER 11 U.S.C. §523(a)(6)

It is clear from the facts as set forth herein that the Contempt Order entered in the state court litigation does not collaterally estopp the debtor on the issue of nondischargability pursuant to 11 U.S.C. §523(a)(6).  11 U.S.C. §523(a)(6).  In re Geiger,  118 S.Ct. 974 (1998); In In re Carlson, 224 B.R. 659 (B.Ct.N.d.Ill 1998), aff'd, 2001 WL 1313652 (7th Cir. 2001);  In re Hyman, 2007 WL 2492789 (2d Cir.); In re Bulter, 297 B.R. 741 (B.Ct.Ill. 2003);  In re Markowitz, 190 F.3d 455 (6th Cir. 1999);  In re Cox, 243 B.R. 713 (B.Ct.N.D.Ill 2000);  In re Kidd, 219 B.R. 278 (B.Ct.Montana 1998); In re Slosberg, 225 B.R. 9 (B.Ct.D.Me. 1998); In re Thirtyacre, 36 F.3d 697 (7th Cir. 1994);  In re Miller, 156 F.3d 598 (5th Cir. 1998); and Grogan v. Garner, 498 U.S. 279 (1991).

Section 11 U.S.C. §523(a) enumerates a list of debts from which the debtor will not receive a discharge pursuant to 11 U.S.C. §727.  11 U.S.C. §523(a)(6) states:

> (a)    A discharge under Section 727 ... of this title does not discharge an individual debtor from any debt –
>
> (6)    for willful and malicious injury by the debtor to another entity or to the property of another entity.

In order for the plaintiff to be entitled to a determination of nondischargability under 11 U.S.C. §523(a)(6), the plaintiff must demonstrate to this court by a preponderance of the evidence, the following elements:  "(1)    That the defendant caused an injury; (2)    That the defendant's actions were willful, and (3) that the defendant's actions were malicious." In re Butler, supra. at 746.  (See also, In re Carlson, 224 B.R. 659 (B.Ct.N.d.Ill 1998), aff'd, 2001 WL 1313652 (7th Cir. 2001)).   The standard to be employed when making a determination as to the dischargeability of a debt under 11 U.S.C. §523(a)(6) is set forth in the case of In re Geiger, supra. In Geiger, the Supreme Court of the United States addressed the issue as to what acts fall within the

purview of 11 U.S.C. 523(a)(6). In considering this pivotal issue, the Supreme Court found that in order for an act to be exempted from discharge as "willful" under 11 U.S.C. §523(a)(6) the actor must have acted with the actual intent to cause harm, not merely engage in an intentional act that leads to an injury. Id. Thus, in order for the plaintiff to satisfy the element of "willful," plaintiff must show that the debtor **actually intended to harm the plaintiff by his actions which were classified as contempt by the state court; and not merely that the defendant acted intentionally resulting in harm to the plaintiff. [emphasis added].** Id.

However, the Supreme Court did not wholly define the scope of the term "intent" which it employed to describe willful conduct. In re Butler, supra. "Subsequent decisions, however, have required either showing of subjective intent to injure the creditor or a showing of a debtor's subjective knowledge that injury is substantially certain to result from his acts to establish the intent required in Geiger, supra." Id. at 747. (See also: In re Markowitz, 190 F.3d 455 (6th Cir. 1999); In re Cox, 243 B.R. 713 (B.Ct.N.D.Ill 2000); In re Kidd, 219 B.R. 278 (B.Ct.Montana 1998)).

Secondly, in order to establish the element of "malice," "a creditor must show that the debtor's willful, injurious conduct was undertaken without just cause or excuse.' Id. at 747 (See also: In re Slosberg, 225 B.R. 9 (B.Ct.D.Me. 1998); In re Thirtyacre, 36 F.3d 697 (7th Cir. 1994)).

The standard as set forth in In re Geiger, supra., has been further considered in the case of In re Miller, 156 F.3d 598 (5th Cir. 1998). In the case of In re Miller, supra., the Court considered the issue of whether under the guidelines set by the Supreme Court in Geiger malice could be implied under 11 U.S.C. §523(a)(6). The Court answered this question in the affirmative holding that under 11 U.S.C. §523(a)(6) an injury is "'willful and malicious' where there is either an objective substantial certainty of harm or a subjective motive to cause harm." Id. at 9.

It is clear that the doctrine of collateral estoppel (issue preclusion) applies to adversary proceedings brought before the Bankruptcy Court under 11 U.S.C. §523(a). Grogan v. Garner, 498 U.S. 279 (1991). Pursuant to this doctrine, a party may not re-litigate issues in the bankruptcy court

10

that have bee determined in a prior state court proceeding.  Id..  However, **the bankruptcy court has exclusive jurisdiction to determine the dischargeability of the debts under 11 U.S.C. §523(a)(6). [emphasis added].**  In re Butler, supra.  In order for the plaintiff to collaterally estopp the debtor from litigating the claim under 11 U.S.C. §523(a)(6), plaintiff must demonstrate the following elements:

> 1.  The issue sought to be precluded must be the same as that involved in the prior litigation;
>
> 2.  The issue must have been actually litigated;
>
> 3.   The determination of the issue must have been essential to the final judgment; and
>
> 4.   The party against whom estoppel is invoked must be fully represented in the prior action.

Meyer v. Rigdom, 36 F.3d 1375, 1379 (7th Cir. 1994).

The Second Circuit has been clear in its mandate that the doctrine of collateral estoppel is not to be mechanically applied by bankruptcy courts in cases involving determinations to be made as to whether a state court judgment should be given preclusive effect in actions under 11 U.S.C. §523(a) that are withing the sole jurisdiction of the bankruptcy court. In re Hyman, 2007 WL 2492789 (2d Cir.).  In so finding, that Court held :  "'Collateral estoppel, is a flexible doctrine, should not be mechanically applied just because some of its formal prerequisites, like identity of the parties, identity of issues, a final and valid prior judgment and a full and fair opportunity to litigate the prior determination, may be present." Id. at 7.

The state court order at issue in this case is the "Order of Civil Contempt" entered against the debtor by the Dutchess County Supreme Court in state court litigation between the parties. Said Order found the debtor liable for civil contempt and awarded damages to the plaintiff.  A judgment was thereupon entered which the plaintiff now seeks to have this Court find that the Civil Contempt Order upon which said judgment was based collaterally estopps the debtor from litigating the issues under 11 U.S.C. §523(a)(6).

The underlying state court litigation was instituted by the plaintiff who sought to

11

obtain specific performance from the debtor of a shareholder's agreement for the disposition of the plaintiff's shares of ROCK CITY SOUND, INC., based upon plaintiff's withdrawal as a shareholder. State Court Order is Annexed as Exhibit "A" to the Motion for Summary Judgment).    During the pendency of the litigation the plaintiff moved for the entry of an Order granting to him, amongst other things, partial summary judgment awarding to the plaintiff a security interest in his stock and possession of same by the plaintiff's agent until such time as the state court could determine the amount of the purchase price of the stock and the sale of same was completed.  (State Court Decision, p. 2).  On April 20, 2005, the state court granted plaintiff's motion and an Order to that effect was entered by the state court on May 25, 2005. Id. at pp. 2-3.

> The May 25, 2005 Order of the state court specifically provided, in pertinent part:
>
> > Applying these principals to the submission of the parties herein, this Court first notes defendants agree that an injunction restraining the disposition of the corporate shares owned by plaintiff is proper. Therefore, based upon this consent, plaintiff is granted preliminary injunction enjoining defendant, their principals, agent and assigns, and any person acting in concert with them from exercising any dominion or control over, committing any act upon and or effectuating any dominion or control over, committing any act upon and/or effectuating any conveyance transfer, assignment or encumbrance, sale or disposing of plaintiff's sixty shares in ROCK CITY SOUND, INC. Pending the resolution of this action.

As is the norm, prior to the commencement of the state court litigation, the corporation had incurred and continued to incur debt for which both the plaintiff and the debtor were personally responsible . The fact that plaintiff desired to have the corporation purchase his share interest did not effect a stay on daily corporate realities.  Instead, the debtor was left with the task of continuing to operate the corporation and pay its debts.  Given the defendant's severe medical condition, to wit: his diagnoses of active Hep C, liver rejection, diabetic episodes, dangerously low white blood cell counts, and the fact that he was required to undergo Pegylated Interferon and Ribavirin treatment due to the fibrosis in his liver and requires a liver transplant, his desire not to abandon the business he had founded some thirty (30) years earlier put defendant  in this difficult position of winding down a previously profitable business enterprise.  Thus, after the entry of the Order on May 25, 2005, the

12

debtor continued operating same.  As the plaintiff failed or refused to participate in the daily operation of the business, the debtor, upon the advice of counsel, held a regular business meeting and decided at that meeting to vote the plaintiff's shares to enable the corporation to liquidate certain assets to satisfy certain corporate liabilities.  The proceeds from the sales of the assets which were liquidated were used to satisfy corporate liabilities including the satisfaction in full of a corporate liability to Rhinebeck Savings Bank upon which both plaintiff and defendant were personally liable. It is clear from this single act that plaintiff's burden pursuant to 11 U.S.C. §523(a)(6), can not be met.

Thereafter, the plaintiff filed with the state court a Motion to hold the debtor and his attorneys in contempt of the preliminary restraining order.

Pursuant to New York Judiciary Law §753(A)(3),

a court is authorized to punish a person for civil contempt when it finds that person to be in disobedience of a lawful mandate of the Court as the result of the following four requirements having been met.

1.  A clear and unequivocal order must exist;

2.  The party to be held in contempt must have knowledge of the order;

3.  With reasonable certainty, it must appear that the order was violated; and

4.  The violation must have defeated, impaired, impeded or prejudiced a right or remedy of a party to the action.

(See also pp.4-5 of the State Court Order).  Considering these factors, the state court found each of the factors to exist and entered a contempt order with damages against the debtor, but refused to find same against debtor's counsel based upon the advice same had given to the debtor.  As is clear from even a preliminary review of the factors set forth in the Judiciary Law, a finding of civil contempt does not require the state court to consider or make a finding as to the debtor's intent with regard to the conduct found to have violated the order.  The court need only find that the debtor knew the order existed and that the action in which the debtor engaged, violated the order.

Several courts have addressed the issue of when to apply the doctrine of collateral

13

estoppel with regard to issues decided by a state court and set forth in an order in adversary proceedings commenced under 11 U.S.C. §523(a).  In re Hyman, supra. (State court order that plaintiff sought to employ to preclude the debtor on the elements under 11 U.S.C. §523(a)(4) akin to the intentional and malicious requirements of 523(a)(6) was insufficient to base a motion for summary judgment as the lower court did not "specifically" address the issue of "intent" and "bad conduct."); In re Butler, supra. (state court order which found that the debtor's continued violation of a "not to compete clause," after repeated warning, supported a finding of "intentional" and "malicious" under 11 U.S.C. §523(a)(6)) ; In re Strauss, 2006 WL 2583645 (B.Ct.S.D.N.Y.) (court precluded husband who continually violated state court's orders restraining the disposition of marital property in the parties' divorce action supported the application of issue preclusion as to debtor's "intent."); In re Akhtar, 368 B.R. 120 (B.Ct.E.D.N.Y. 2007) (court found applied issue preclusion on the issue of intent due to the debtor's repeated violations of the restraining order entered by the district court as the Order entered by the district court made it clear that the district court gave "careful consideration to whether the Debtor's conduct was 'wrongful' and 'without just cause or excuse." Id. at 132); In re Ker, 365 B.R. 807 (B.Ct. S.D.Ohio 2007) (the court applied the doctrine of collateral estoppel of the matrimonial court's findings that specifically considered the bad conduct of the debtor); In re Blankfort, 217 B.R. 138 (B.Ct.S.D.N.Y. 1998) (the court found that the debtor was precluded on the issues regarding 11 U.S.C. §523(a) arising from the debtor's continued trade mark violation despite specific warnings to discontinue said conduct.)

A review of the cases of In re Strauss, In re Ker, and In re Blankfort, quickly demonstrates that the findings in these case are clearly inapposite to the case at bar.  In each one of the cases, the lower courts addressed the issue of the debtor's intentional and malicious conduct based upon their continued violations of the orders set forth therein.

Of the cases cited, the findings that are most on point, are the cases of In re Hyman, supra. and In re Akhtar, supra.  In the case of In re Hyman, supra., the Second Circuit Court of Appeals addressed the issue of whether a Surrogate Court's finding that the debtor had breached his

14

fiduciary duty was sufficient to preclude the debtor from litigating the issue of defalcation in the bankruptcy court under 11 U.S.C. §523(a)(4).  In considering the issue, the Court refused to give the Surrogate Court's finding preclusive effect by mechanically applying the doctrine of collateral estoppel, as the Surrogate Court's Order did not specifically address all of the elements necessary for the Court to base a finding against the debtor that he violated 11 U.S.C. §523(a)(4).  Id.  Most importantly, the Surrogate Court **"made no express findings with regard to Hyman's state of mind.  We assume that the Surrogate concluded that under New York Law such findings were not necessary, since misappropriation and breach of fiduciary duties apparently do not, under New York law, consistently require proof of a culpable mental state." [emphasis added]**.  Id. at 6.  **By requiring the courts to make appropriate findings of conscious misbehavior or recklessness in the course of dischargeability litigation, the stand we adopt today insures that the harsh sanction of non-dischargeability is reserved for those who exhibit 'some portion of misconduct." [emphasis added]**.  Id. at 6-7.    The case of Akhtar, supra., although decided prior to Hyman, supra., obviously adheres to the same principle as it allowed the application of the doctrine of collateral estoppel only because the district court's order was clear that it had specifically addressed all of the elements necessary to find that the debt to be non-dischargeable under 11 U.S.C. §523(a)(6).            Furthermore, the Court in Hyman encourages, if not requires, the bankruptcy courts  to review the underlying state court record to determine if the state court appropriately considered the debtor's "state of mind." Id. at 7

            In applying these principles to the present case, it is easy to conclude that the elements necessary for a finding of contempt under state law do not include the necessity to make specific findings as to the party's "bad conduct" or "intentional conduct" as does a finding under 11 U.S.C. §523(a)(6).  The New York Judiciary law merely requires the state court to make a finding that the debtor "knew" the order existed, not that he intentionally engaged in conduct for the specific purpose of violation the order and injuring the debtor.    As in Hyman, the mere fact that the debtor's conduct may have been determined to be "self serving" by the state court, this is insufficient to base a finding

15

that the requisite intent was present to find the debt non-dischargeable under 11 U.S.C. §523(a).  Id.

Lastly, the state court contempt order does not address of injury caused by the debtors' "intentional and malicious " conduct.  The Order simply concludes, without any justification or evidence, that the debtor acted :"knowingly," the debtor's acts "violated" the order and thus the plaintiff was injured in the amount that one of the parties asserted was the entire value of the stock.

Accordingly, as the state court contempt order does not specifically address the debtor's "state of mind" or the issue of "injury," the plaintiff should not be granted summary judgment based upon the doctrine of collateral estoppel.  Id.

## CONCLUSION

For all of the foregoing reasons, this Court should reverse the Decision entered on by the United States Bankruptcy Court, Southern District of New York, Poughkeepsie Division; and grant to the debtor such other and further relief as this Court deems proper.

Dated:  Wappingers Falls, New York
        February 29, 2008

GENOVA & MALIN
Attorneys for the Debtor/Appellant

By:    /s/ Thomas Genova
       THOMAS GENOVA (TG4706)
       Hampton Business Center
       1136 Route 9
       Wappingers Falls, New York 12590
       (845) 298-1600

16

Westlaw.

36 F.3d 697                                                                                          Page 1
36 F.3d 697, Bankr. L. Rep. P 76,124
**(Cite as: 36 F.3d 697)**

▷
Matter of Thirtyacre
C.A.7 (Ill.),1994.

United States Court of Appeals,Seventh Circuit.
In the Matter of Marvin C. THIRTYACRE, Debtor-
Appellant.
**No. 93-3967.**

Argued June 3, 1994.
Decided Sept. 28, 1994.

Judgment creditor filed adversary proceeding, al-
leging that default judgment in state court action for
assault and battery was nondischargeable in judg-
ment debtor's Chapter 7 case. The United States
Bankruptcy Court for the Central District of
Illinois, 154 B.R. 497,William V. Altenberger,
Chief Judge, determined that debt was nondis-
chargeable, and debtor appealed. The District
Court, Michael M. Mihm, Chief Judge, affirmed,
and debtor appealed. The Court of Appeals,
Manion, Circuit Judge, held that: (1) judgment debt
came within discharge exception for willful and
malicious injury, even though debtor argued that he
was drunk and under treatment for depression at
time of assault, and (2) district court did not abuse
its discretion in declining to allow oral argument in
appeal from bankruptcy court.

Affirmed.

West Headnotes

**[1] Bankruptcy 51 ⟲3405(13)**

51 Bankruptcy
    51X Discharge
        51X(D) Determination of Dischargeability
            51k3401 Evidence
                51k3405 Weight and Sufficiency
                    51k3405(12) Degree of Proof Re-
quired
                        51k3405(13) k. In General. Most
Cited Cases

(Formerly 51k3422(10.1))
Creditor had burden to prove by preponderance of
evidence that her debt met one of the statutory ex-
ceptions to discharge.

**[2] Bankruptcy 51 ⟲3782**

51 Bankruptcy
    51XIX Review
        51XIX(B) Review of Bankruptcy Court
            51k3782 k. Conclusions of Law; De Novo
Review. Most Cited Cases

**Bankruptcy 51 ⟲3786**

51 Bankruptcy
    51XIX Review
        51XIX(B) Review of Bankruptcy Court
            51k3785 Findings of Fact
                51k3786 k. Clear Error. Most Cited
Cases
Court of Appeals reviews de novo the legal conclu-
sions of bankruptcy court and district court, and ap-
plies deferential "clearly erroneous" standard to
factual findings.

**[3] Statutes 361 ⟲188**

361 Statutes
    361VI Construction and Operation
        361VI(A) General Rules of Construction
            361k187 Meaning of Language
                361k188 k. In General. Most Cited Cases
Court of Appeals gives effect to words of statute by
viewing their plain meaning.

**[4] Bankruptcy 51 ⟲3780**

51 Bankruptcy
    51XIX Review
        51XIX(B) Review of Bankruptcy Court
            51k3780 k. Questions of Law or Fact.
Most Cited Cases
Whether actor behaved willfully and maliciously

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

36 F.3d 697
36 F.3d 697, Bankr. L. Rep. P 76,124
**(Cite as: 36 F.3d 697)**

for nondischargeability purposes is ultimately question of fact reserved for trier of fact. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

**[5] Bankruptcy 51 ☞3374(2)**

51 Bankruptcy
    51X Discharge
        51X(C) Debts and Liabilities Discharged
            51X(C)5 Torts and Crimes
                51k3374 Willful or Malicious Injury
                    51k3374(2) k. Willful, Deliberate, or Intentional Injury. Most Cited Cases
    (Formerly 51k3355(1.10))
Chapter 7 debtor acted intentionally and without just cause in striking victim, for purpose of determining whether judgment debt to victim came within discharge exception for willful and malicious injury, where debtor had plenty of time to deliberate before finally confronting victim's boyfriend, and debtor hit victim when she got in his way. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

**[6] Bankruptcy 51 ☞3374(2)**

51 Bankruptcy
    51X Discharge
        51X(C) Debts and Liabilities Discharged
            51X(C)5 Torts and Crimes
                51k3374 Willful or Malicious Injury
                    51k3374(2) k. Willful, Deliberate, or Intentional Injury. Most Cited Cases
    (Formerly 51k3355(1.10))
Even if something like voluntary intoxication defense were available with respect to discharge exception for willful and malicious injury, bankruptcy court could have reasonably concluded that Chapter 7 debtor was not entitled to that defense, even though debtor argued that he was drunk and under treatment for depression at time of attack on victim, where debtor had been sober enough to operate car, to plan confrontation, to track and eventually find victim's boyfriend, and to argue with boyfriend. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

**[7] Federal Civil Procedure 170A ☞2011**

170A Federal Civil Procedure
    170AXV Trial
        170AXV(C) Reception of Evidence
            170Ak2011 k. In General. Most Cited Cases
Party is only permitted to present theory of defense if it is supported by evidence.

**[8] Bankruptcy 51 ☞3404**

51 Bankruptcy
    51X Discharge
        51X(D) Determination of Dischargeability
            51k3401 Evidence
                51k3404 k. Admissibility. Most Cited Cases
    (Formerly 51k3421)
In determining whether judgment debt arising out of state court action for assault and battery came within discharge exception for willful and malicious injury in Chapter 7 case, bankruptcy court could have reasonably concluded that evidence regarding effects of intoxication and depression on human behavior was irrelevant, where indisputable facts showed that debtor had sufficient capacity to willfully and maliciously harm judgment creditor. Bankr.Code, 11 U.S.C.A. § 523(a)(6).

**[9] Bankruptcy 51 ☞3761**

51 Bankruptcy
    51XIX Review
        51XIX(B) Review of Bankruptcy Court
            51k3761 k. In General. Most Cited Cases
District court has discretion over whether to allow oral argument in appeal from bankruptcy court. Fed.Rules Bankr.Proc.Rule 8012, 11 U.S.C.A.

**[10] Bankruptcy 51 ☞3761**

51 Bankruptcy
    51XIX Review
        51XIX(B) Review of Bankruptcy Court
            51k3761 k. In General. Most Cited Cases
District court did not abuse its discretion in declining to hold oral argument on Chapter 7 debtor's ap-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

36 F.3d 697                                                                                                                Page 3
36 F.3d 697, Bankr. L. Rep. P 76,124
**(Cite as: 36 F.3d 697)**

peal from bankruptcy court's determination that de-
fault judgment in state court action for assault and
battery was nondischargeable on grounds that judg-
ment debt came within discharge exception for
willful and malicious injury; district court chose not
to duplicate any part of extensive hearing already
held in bankruptcy court. Bankr.Code, 11 U.S.C.A.
§ 523(a)(6); Fed.Rules Bankr.Proc.Rule 8012, 11
U.S.C.A.

**\*698** Stephen T. Fieweger,Katz, McAndrews,
Balch, Lefstein & Fieweger, Rock Island, IL
(argued), for appellee.
Gregory J. McHugh, Mark A. Appleton (argued),
Appleton & McHugh, Aledo, IL, for debtor-ap-
pellant.

**\*699** Before CUDAHY and MANION, Circuit
Judges, and GORDON, District Judge.[FN*]

       FN* Hon. Myron L. Gordon, of the East-
       ern District of Wisconsin, sitting by desig-
       nation.

MANION, Circuit Judge.
    Jody Thorp obtained a $25,000 default judg-
ment against Marvin Thirtyacre when he did not
show up in court to defend against an alleged as-
sault and battery. Thirtyacre filed bankruptcy and
Thorp challenged the dischargeability of the debt.
The bankruptcy court held an evidentiary hearing
and determined the debt was nondischargeable un-
der 11 U.S.C. § 523(a)(6) because it resulted from a
willful and malicious injury. 154 B.R. 497. Thirty-
acre appealed, the district court affirmed, and he
appeals to this court. We affirm.

### I. Background

    Marvin Thirtyacre was the Sheriff of rural Mer-
cer County, Illinois. He suspected that his wife was
having an affair with Jim Brokaw, the Chief of Po-
lice for the City of Aledo. Thirtyacre, a veteran of
the Vietnam war, became depressed and began vis-
iting the local veterans' hospital for treatment. The

doctors at the hospital prescribed Pamelor, a power-
ful antidepressant drug, and warned him not to take
it with alcoholic beverages.

    Thirtyacre's suspicions festered. Even with the
drug, he continued to experience depression. One
day he consumed a large quantity of alcohol and
decided to confront Brokaw about the suspected af-
fair. He went to the residence of Judy Thorp-whom
Brokaw was officially dating at the time-and kicked
in the back door. Nobody was there. Thirtyacre
then went to the Aledo police station, hoping to
find Brokaw.

    In the meantime, Brokaw and Thorp returned to
her residence and discovered that the back door had
been damaged. Brokaw called the Aledo police sta-
tion, where Thirtyacre had just arrived. When
Thirtyacre heard that Brokaw was on the phone, he
grabbed it and-as he describes the conversation in
his brief-"argued with Mr. Brokaw on the phone
and told him that he was going to return to the
Thorp residence to kick Jim Brokaw's posterior re-
gion."

    Upon hearing this threat, Brokaw went outside
to his truck to fetch a gun. Thorp went to her front
yard to walk her dog. Thirtyacre arrived and ap-
proached the house. Thorp demanded that Thirty-
acre leave her property. He responded he was the
Sheriff and could do as he pleased. Thorp ap-
proached Thirtyacre, and he hit her in the neck,
knocking her down. Brokaw and some other police
officers who had arrived on the scene then subdued
Thirtyacre.

    Thorp sued Thirtyacre in state court for assault
and battery. He did not respond to the suit and the
state court granted Thorp a $25,000 default judg-
ment. Thirtyacre then filed a voluntary petition for
a Chapter 7 bankruptcy, seeking to have all of his
debts discharged. Thorp filed an adversary com-
plaint in that proceeding, claiming that the $25,000
judgment was nondischargeable because it resulted
from a willful and malicious injury. Section
523(a)(6) of the Bankruptcy Code, 11 U.S.C. §

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

36 F.3d 697
36 F.3d 697, Bankr. L. Rep. P 76,124
**(Cite as: 36 F.3d 697)**

523(a)(6), provides that "(a) A discharge ... does not discharge an individual debtor from any debt ... (6) for willful and malicious injury by the debtor to another entity or the property of another entity...."

The bankruptcy court held an evidentiary hearing to determine whether Thirtyacre's violence was willful and malicious. Thirtyacre argued that because he was drunk and under treatment for depression, he could not form the requisite intent under section 523(a)(6). Thorp countered that on the night of the assault, Thirtyacre appeared in control of his faculties. The court agreed with Thorp, concluding that Thirtyacre "showed a pattern associated with a person who knew what he was doing." Thirtyacre appealed to the district court, which affirmed without hearing oral argument. In its order resolving the appeal, the district court noted:

As the Bankruptcy Court found, it is difficult to accept Thirtyacre's argument that he was "completely out of control" at the time of the assault and battery of Thorp, yet was able to drive from a tavern, to his home, to Thorp's home, to the police station, and then back to Thorp's home. Thirtyacre was understandably upset and **\*700** angry over his suspicion that his wife and Brokaw were having an affair, but this does not excuse his deliberate and intentional conduct. Thirtyacre clearly wanted to find and confront Brokaw on the night of December 21, 1988. However, when Thorp got in Thirtyacre's way, he intended to strike Thorp.

Thirtyacre has appealed the district court's judgment. He raises two issues. First, he argues that the bankruptcy court erred in finding that he acted willfully and maliciously. Second, he contends that the district court erred in not allowing oral argument so that he could make this point.

## II. Analysis

*A. Dischargeability*

[1][2] At the bankruptcy hearing, Thorp, as creditor, had the burden to prove by a preponder-

ance of the evidence that her debt met one of the statutory exceptions to discharge. *In re Scarlata,* 979 F.2d 521, 525 (7th Cir.1992). Thorp met this burden, basically, by recounting Thirtyacre's actions. The court found that Thirtyacre acted willfully and maliciously in striking Thorp, and therefore refused to discharge the debt. We review *de novo* the bankruptcy court's and the district court's legal conclusions, and we apply the deferential "clearly erroneous" standard to the factual findings. *In re Kimzey,* 761 F.2d 421, 423 (7th Cir.1985). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

[3][4][5] We give effect to the words of the statute by viewing their plain meaning. *Matter of Witkowski,* 16 F.3d 739, 745 (7th Cir.1994). "Under § 523(a)(6), of the Bankruptcy Code, willful means deliberate or intentional ... [and] [m]alicious means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *Wheeler v. Laudani,* 783 F.2d 610, 615 (6th Cir.1986) (internal quotations omitted). Whether an actor behaved wilfully and maliciously is ultimately a question of fact reserved for the trier of fact. *Id.; see also In re Pasek,* 983 F.2d 1524, 1528 (10th Cir.1993). After a full-blown evidentiary hearing, the bankruptcy court found that Thirtyacre acted intentionally and without just cause in striking Thorp. We are not left with the definite and firm conviction that a mistake has been committed. To the contrary, the circumstances of the attack showed that Thirtyacre had plenty of time to deliberate before finally confronting Brokaw. When Thorp got in his way he hit her; nobody disputes that. By all appearances this battery was intentional and unjustified.

Thirtyacre tries to escape the "willful and malicious" label by arguing that he was drunk and under treatment for depression during the attack. He pos-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

36 F.3d 697

36 F.3d 697, Bankr. L. Rep. P 76,124

**(Cite as: 36 F.3d 697)**

Page 5

its that his drunkenness and depression necessarily negated the willful and malicious elements of section 523(a)(6); essentially, he sought to advance something akin to a voluntary intoxication defense. *Cf. Wagner v. State,* 474 N.E.2d 476, 488 (Ind.1985). It is unclear whether such a theory of defense would be available under section 523(a)(6). The Ninth Circuit in *In re Adams,* 761 F.2d 1422, 1426 (1985), examined the conflicting bankruptcy court decisions on the related question whether driving while intoxicated could be considered willful and malicious conduct. Ultimately, the court did not need to answer the question; the court simply applied recently amended section 523(a)(9), which provides that debts arising from liabilities incurred due to drunk driving are nondischargeable.

State courts sitting in criminal cases sometimes hold that voluntary intoxication can negate a specific intent to commit a crime, but not a general intent. *See* Wayne R. La Fave and Austin W. Scott, Jr., *Substantive Criminal Law* § 4.10 at 552-53 (1986) ("It is sometimes stated that intoxication can negative a 'specific intent' which the crime in question may require (meaning some intent in addition to the intent to do the physical harm which the crime requires), but it cannot negative a crime's 'general intent' (meaning an intent to do the physical act-or, perhaps, recklessly doing the physical act-which the **\*701** crime requires)."). *Cf. Robinson v. Ponte,* 933 F.2d 101, 102 (1st Cir.1991), *cert. denied,* 503 U.S. 922, 112 S.Ct. 1301, 117 L.Ed.2d 522 (1992). If we were to borrow that principle here, Thirtyacre would not have been entitled to present a voluntary intoxication defense because section 523(a)(6) does not require specific intent. *Wheeler,* 783 F.2d at 615.

[6][7][8] But we need not decide which principles of state criminal law, if any, should be transported to this analysis under section 523(a)(6). Even if something like a voluntary intoxication defense was available in this case, the bankruptcy court could have reasonably concluded that Thirtyacre was not entitled to it. A party is only permitted

to present a theory of defense if it is supported by the evidence. *United States v. Douglas,* 818 F.2d 1317, 1320-21 (7th Cir.1987). Thirtyacre was prepared at the bankruptcy court to present a parade of witnesses to prove the effects of intoxication and depression on human behavior. But the bankruptcy judge would hear none of it. Thirtyacre was sober enough to operate a car, sober enough to plan a confrontation, sober enough to track and eventually find Brokaw, sober enough to argue with Brokaw. There was no reason for the bankruptcy court to hear any more about the effects of intoxication. The court could have reasonably concluded that such evidence was irrelevant. The indisputable facts showed Thirtyacre had sufficient capacity to wilfully and maliciously harm Thorp. The bankruptcy court found that Thirtyacre tapped that capacity to strike Thorp willfully and maliciously; that finding is not clearly erroneous.

*B. Oral Argument*

[9][10] The district court has discretion over whether to allow oral argument in an appeal from the bankruptcy court. Rule 8012, Bankruptcy Rules. In this case the district court did not allow oral argument, ruling instead based on the briefs and record from the bankruptcy court. The district court is in the best position to decide how to inform itself about the merits of a bankruptcy appeal. Here, the court chose not to duplicate any part of the extensive hearing already held in the bankruptcy court. That is not an abuse of discretion, and we see no reason to second-guess the district court's decision not to hold oral argument.

### III. Conclusion

For the foregoing reasons, we

AFFIRM.

C.A.7 (Ill.),1994.

Matter of Thirtyacre

36 F.3d 697, Bankr. L. Rep. P 76,124

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

36 F.3d 697                                                                     Page 6
36 F.3d 697, Bankr. L. Rep. P 76,124
**(Cite as: 36 F.3d 697)**


END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

SOUTHERN DISTRICT OF NEW YORK
POUGHKEEPSIE DIVISION
-------------------------------------------------------X
In re:

| | |
|---|---|
| | **CHAPTER 7** |
| SHELTON C. LINDSAY, | **CASE NO. 06-36352(CGM)** |
| **Debtor.** | |

-------------------------------------------------------x
LEE S. KALISH,

|  |  |
|---|---|
|              Plaintiff, | **ADVERSARY PROCEEDING** |
|       -against- | **NO. 07-9025 (CGM)** |

SHELTON C. LINDSAY,

                    Defendant.
-------------------------------------------------------x

STATE OF NEW YORK        )
                        )ss.:
COUNTY OF DUTCHESS    )

     I, Leah Madera, being sworn, say:

     I am not a party to this action, am over 21 years of age and reside in Hyde Park, New York.

     On February 29, 2008,  I served a copy of <u>Brief for Debtor-Appellant and Addendum</u> by mailing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service in New York State, addressed to each of the following persons at their last known address as set forth after each name:

LILLIAN WEIGERT, ESQ.          SHELTON C. LINDSAY
GELLERT & KLEIN, P.C.           50 Oak Street
Attorneys for LEE S. KALISH      Rhinebeck, New York 12572
75 Washington Avenue
Poughkeepsie, New York 12601

                       /s/ Leah Madera_____
                       LEAH MADERA

Sworn to before me this
29th day of February, 2008.

/s/ Elke Terwilliger_____
Elke Terwilliger
Notary Public, State of New York
Qualified in Ulster County
Comm. Expires May 31, 2010