Lillian S. Weigert (LW 2869)
GELLERT & KLEIN, P.C.
75 Washington Street
Poughkeepsie, New York 12601
(845) 454-3250 – Telephone
(845) 454-4652 – Facsimile
lweigert@gklaw.us

*Attorneys for Lee S. Kalish*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**POUGHKEEPSIE DIVISION**
_____X

In re:                                                                   **Bankruptcy Court**
                                                                              **Case No. 06-36352 (CGM)**
    **SHELTON C. LINDSAY**                        **(Chapter 7)**

               **Debtor.**
_____X        **Adv Pro No. 07-9025**

    **LEE S. KALISH**

          **Plaintiff-Appellee,**       **HON. GEORGE A. YANTHIS**
    -against-                                                  **United States District Court**
                                                                              **Southern District of New York**
                                                                              **Civil Docket**
    **SHELTON C. LINDSAY**                        **Case No. 7:08-cv-01326**

          **Defendant-Appellant.**
_____X

---

## ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

### BRIEF FOR PLAINTIFF-APPELLEE

---

## TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Counter-Statement of Issue Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     A.     Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     B.     The Undisputed Facts Overwhelmingly Demonstrate the Debtor Acted
             "Willfully and Maliciously" to Injure Mr. Kalish's Property Rights . . . . . . . . . . . 5

I       The Standards for Summary Judgment Were Fully Met on this Record
       as there are No Genuine Issues of Material Fact as a Matter of Law
       for this Court to Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II      "Willful" and "Malicious" Injury Were Appropriately
      Determined Below on this Undisputed Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     A.     The Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
     B.     Debtor's Undisputed Conduct Demonstrates His Willful and Malicious
             Injury to Mr. Kalish's Property Rights in his Shares of RCS . . . . . . . . . . . . . . . 15
     C.     Judge Morris Correctly Applied the Governing Case Law
             to the Undisputed Record Facts as to the "Willful and Malicious"
             Injury to Debtor's Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

III    Debtor Does Not Submit Evidence or Law Disputing the Preclusive
      Collateral Estoppel Effect of the Contempt Judgment as to the Fact of
      Actual Injury and the Dollar Amount of Actual Injury Caused by Debtor
      to Mr. Kalish's Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

i

## TABLE OF AUTHORITIES

Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Cablevision Sys. Corp. v. Cohen (In re Cohen)*, 121 B.R. 267, 271 (Bankr. E.D.N.Y. 1990) . . 12

*Calka v. Kucker Kraus & Bruh, LLP et al*, 2000 U.S. Dist. Lexis 6081 . . . . . . . . . . . . . . . . . . . 21

*Celotez Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 265 (1986) (quoting FED. R. CIV. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Coinmach Corp., etc., v. Alley Pond Owners Corp.*, 2006 Slip Op. 469, (2nd Dept. 2006) . . . . 18

*Conte v. Guatam,* 33 F.3d 303 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*First Nat'l Bank of Md. v. Stanley (In re Stanley)*, 66 F.3d 664, 668 (4th Cir. 1995) . . . . . . . . . 11

*Grogan v. Garner*, 498 U.S. 279 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Hassett v. Altai, Inc. (In re CIS Corp.)*, 214 B.R. 108, 118 (Bankr. S.D.N.Y. 1997) . . . . . . . . . 9

*In Re Akhtar*, 368 B.R. 120 (B.Ct.E.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 20

*In re Blankfort*, 217 B.R. at 146 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15, 19, 20

*In Re Butler* 297 B.R. 713 (B.Ct.Ill. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*In Re Cox* 243 B.R. 713 (B.Ct.N.D.Ill 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In Re Hyman* 2007 WL 2492789 (2d Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Kawaauhau v. Greiger*, 523 U.S. 57, 61, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998) . . . . . . . . . . 11

*Lord, et al. v. Equitable Life Assurance Society of the United States*, 194 NY 212, 229 (1909) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) ................................. 10

*Meyer v. Rigdom*, 36 F. 3d 1375, 1379 (7th Cir. 1994) ................................. 20

*Moy v. Umeki*, 10 AD 3rd 604 (2nd Dept. 2004) ....................................... 18

*Navistar Fin Corp. V. Stelluti (In re Stelluti)*, 94 F.3d 84, 87-88 (2d Cir. 1996) ............ 11

*Root v. Conkling*, 108 Misc. 234, 238 (Sup. Ct. Otsego Co., 1919) ................... 18, 19

*Stephen v. Rocky Mountain Chocolate Factory, Inc.*, 136 F. 3d 1134 (7th Cir. 1998) ......... 21

*Strauss v. Strauss*, 2006 Bankr. Lexis 2219 (S.D.N.Y. July 21, 2006) ................. 11, 17

*William Randall & Sons, Inc., et al. v. Lucke, et al.*, 123 Misc. 5, 6 (Sup. Ct., Kings Special Term 1924) ................................................................ 18

*Yash Raj Films (USA) v. Ahmed* 359 B.R. 34 at 41 (Bankr. S.D.N.Y. 2005) ............... 11

Statutes

11 U.S.C. §523(a)(6) ....................................... 2, 4, 10-12, 14, 15, 17, 21

§523(a)(4) ............................................................. 14

28 U.S.C. §158 ........................................................... 2

67A NY Jur 2nd Injunctions §195 ............................................ 18

Bankruptcy Rule 7056 ...................................................... 9

F.R. Civ. 56. ............................................................ 22

Fed. R. Bankr. P. 7056 ..................................................... 2

Federal Rule of Civil Procedure 56(c) ........................................... 9

New York Judiciary Law §753(a)(3) ........................................... 2, 8

Lillian S. Weigert (LW 2869)
GELLERT & KLEIN, P.C.
75 Washington Street
Poughkeepsie, New York 12601
(845) 454-3250 – Telephone
(845) 454-4652 – Facsimile
lweigert@gklaw.us

*Attorneys for Lee S. Kalish*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**POUGHKEEPSIE DIVISION**
_____X

In re:                                                                    **Bankruptcy Court**
                                                                               **Case No. 06-36352 (CGM)**
        **SHELTON C. LINDSAY**                              **(Chapter 7)**

                        Debtor.
_____X        **Adv Pro No. 07-9025**

        **LEE S. KALISH**

                        **Plaintiff-Appellee,**        **HON. GEORGE A. YANTHIS**
        -against-                                                      **United States District Court**
                                                                               **Southern District of New York**
                                                                               **Civil Docket**
        **SHELTON C. LINDSAY**                              **Case No. 7:08-cv-01326**

                        **Defendant-Appellant.**
_____X

**ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

**BRIEF FOR PLAINTIFF-APPELLEE**

        Plaintiff-Appellee Lee S. Kalish submits this brief in opposition to the appeal of

debtor/appellant Shelton C. Lindsay from the January 2, 2008 order of the United States

Bankruptcy Court Southern District of New York and the January 7, 2008 decision which

granted Mr. Kalish's motion for summary judgment that a New York state civil contempt

1

judgment against debtor and in favor of Mr. Kalish in the sum of $1,145,580 constitutes a debt that is non-dischargable pursuant to 11 U.S.C. §523(a)(6) as a "willful and malicious injury". Judge Morris specifically noted that debtor admitted 60 of the 79 separately numbered facts of Mr. Kalish's Rule 7056-1(b) Statement. Judge Morris' detailed analysis applied the undisputed and admitted facts to the "willful and malicious injury" standard of U.S.C. §523(a)(6) as required by that statute, Fed. R. Bank. P. 7056 and controlling case authorities.

To be clear, contrary to the erroneous contention of appellant, Judge Morris certainly did not hold that the "elements necessary to find that a debt is non-dischargeable under 11 U.S.C. §523(a)(6) are identical to the elements necessary to find a party in contempt under New York Judiciary Law §753(a)(3)". (Appellant's Brief at 1-2). To the extent certain facts were previously litigated and determined by the New York State contempt proceeding, Judge Morris correctly applied the doctrine of collateral estoppel to those points as required by governing case law - - case law which appellant acknowledges is correct and applicable.

## STANDARD OF REVIEW

A district court is required to accept bankruptcy court findings of fact unless they are clearly erroneous. Contrary to the contention of appellant, only conclusions of law are reviewed *de novo* on this appeal. 28 U.S.C. §158.

## COUNTER-STATEMENT OF ISSUE PRESENTED

Upon this undisputed fact record and principles of collateral estoppel, did the United States Bankruptcy Court appropriately grant summary judgment pursuant to Fed. R. Bankr. P. 7056 finding this debt non-dischargable under 11 U.S.C. §523(a)(6)? Appellee answers "yes".

2

## STATEMENT OF THE CASE

### A.   Summary of Argument

For almost four years, Mr. Kalish has sought to be paid for his shares of a corporation, Rock City Sound, Inc. ("RCS") pursuant to the parties' Shareholder's Agreement ("Agreement"). As set forth in detail in the accompanying Rule 7056-1(b) Statement, and as summarized below, rather than honoring the obligations of the Agreement, debtor chose to destroy RCS, a profitable corporation, reduce Mr. Kalish's RCS share value to essentially nothing, violate both the spirit and letter of two state court orders and remove and transfer the operating assets of the corporation in violation of state law and RCS By-Laws. Debtor's conduct lead to a finding of contempt against him for violation of a New York preliminary injunction (Exhibit A)[1].

There is and can be no dispute on this record that debtor acted purposefully and with the intendment to prohibit the purchase of Mr. Kalish's shares by RCS. Debtor announced this specific purpose in the RCS corporate resolution of June 6, 2005 (Exhibit N), which debtor signed and kept secret from Mr. Kalish and from the state court for nine months. The resolution declaring that RCS had no obligation to purchase Mr. Kalish's shares, along with the other resolutions made that day by debtor, were obviously, by their plain English meaning, intended to, and did, injure Mr. Kalish's property rights. The resolutions were part of Debtor's scheme to devalue Mr. Kalish's shares through debtor's "blatant" and "egregious" violations of a court order, which order prohibited him from voting Mr. Kalish's proxy in support of such resolutions. Debtor's purposeful and deliberate injury to Mr. Kalish's property and property rights in these

---

[1]Fact and document references are to Mr. Kalish's Rule 7056-1(b) Statement, unless otherwise indicated.

3

circumstances was thus "willful" as defined under §523(a)(6) (see citations at plaintiff's main memo at 4-6).

There can also be no dispute on this record that "implied malice" as defined under §523(a)(6), at a minimum, is required to be imputed to debtor, given his acknowledged conduct (see citations at plaintiff's main memo below at 4-6). Certainly, debtor knew or should have known with substantial certainty that his actions in using Mr. Kalish's shares to secretly vote Mr. Kalish's proxy in violation of the preliminary injunction, to issue the four secret resolutions (Exhibit N), and to act in furtherance of the resolutions to dismantle RCS, would harm Mr. Kalish's property rights in his shares. This is so obvious given the terms of the fourth resolution improperly barring RCS from purchasing Mr. Kalish's shares in the context of the state lawsuit, that actual malice is also established. As a consequence, Debtor acted with "malice" under §523(a)(6). Debtor does not address this in his brief.

That actual injury occurred to Mr. Kalish's property, his shares in RCS, and the dollar amount of that injury due to debtor's conduct, has also been conclusively established by the state lawsuit (Exhibit A). The deposition testimony of RCS's accountant underlies the Contempt Judgment of the amount of actual damages (Exhibit G). Debtor has never (either in the state lawsuit or below) controverted the accountant's testimony as to how debtor directed the accountant to write a letter using a method of valuation contrived by debtor which differed from the method required by the Agreement ( Exhibit A).

At pages 3 through 7 of the decision, Judge Morris lists with careful detail undisputed facts from the summary judgment record. The decision specifically examined the overwhelming admissions of debtor. Judge Morris also specifically confirmed from the undisputed record that

4

the underlying state court contempt judgment was fully litigated, debtor was represented by

counsel and no appeal was perfected from the state court judgment.

## B.    The Undisputed Facts Overwhelmingly Demonstrate that Debtor
Acted "Willfully and Maliciously" to Injure Mr. Kalish's Property Rights

Mr. Kalish is the owner of 50% of the shares of Rock City Sound, Inc.  Until 2004, RCS

was a profitable company which provided sophisticated audio services for corporate events.

Debtor was the owner of the other 50% of the shares of RCS, except that as of the date of his

bankruptcy filing (December 8, 2006) debtor's shares are now property of his bankruptcy estate.

Debtor was also a director of RCS and its president from at least January 9, 1998 through August

5, 2005.

On January 9, 1998, Mr. Kalish, Debtor and RCS entered into a written shareholders'

agreement.  On the same day, Mr. Kalish and Debtor certified the adoption of the By-laws of

RCS.  The By-laws Article IV, Section 5(b) states in part:

> (3) Any sale of fixed assets of the Corporation shall be
> approved with the unanimous consent of the shareholders.

Under Article IV section (5)(b)(1-8) of the By-laws as well as Article II section 4 thereof,

unanimous consent of all shareholders, is required for any sale of RCS assets.  Also, notice to

shareholders is required of such actions under provisions of the By-laws.

Mr. Kalish sought to withdraw from RCS by letter dated February 19, 2004 and gave six

months notice of withdrawal as required by the Agreement ¶2(a).  The letter, pursuant to the

Agreement ¶2(b), set August 20, 2004 as the Withdrawal Date.  Debtor admitted that payment

was due to Mr. Kalish for his shares of RCS, but has contended that the purchase price was

$897,275.00.  On August 13, 2004, the then attorney for debtor and RCS wrote a letter claiming

5

that the RCS accountant had determined that the purchase price for Mr. Kalish's shares was only $897,275.00.

The valuation reported in the August 13, 2004 letter was incorrect because it was not performed using the procedures and calculations set forth at Agreement ¶8. RCS's accountant later revealed that the valuation and method of calculation set forth in the August 13, 2004 letter had been contrived by debtor with the participation of his attorney. On August 17, 2004, the RCS accountant prepared his own valuation letter for fiscal year ending May 2004, as he had previously done for each fiscal year since 1998. Pursuant to the Agreement ¶8, the accountant calculated the Established Value of the RCS shares using the same method each time. According to the accountant's August 17, 2004 letter, the Established Value of each RCS share was $19,093.00. Since Mr. Kalish holds sixty shares in RCS (which is 50% of all shares issued), the total value of Mr Kalish's shares calculated by this longstanding method pursuant to the Agreement is $1,145,580.00. The August 13, 2004 letter had demanded that Kalish surrender his shares on the Withdrawal Date for nearly a quarter of a million dollars less than their actual value and with no security interest for Mr. Kalish. The Agreement ¶7 provided for such a security interest.

The closing for the purchase of Mr. Kalish's shares did not take place. Mr. Kalish withdrew as an officer and director of RCS on August 23, 2004. Mr. Kalish remained a 50% shareholder of RCS.

On August 31, 2004, Mr. Kalish commenced a lawsuit in New York State Supreme Court, Dutchess County, *Kalish v. Lindsay & Rock City Sound, Inc.*, Index No. 4088/04 seeking full payment for his shares under the Shareholder Agreement. At the start of the state lawsuit,

6

Mr. Kalish sought a preliminary injunction. The New York court issued a decision and order for

preliminary injunction dated December 10, 2004 on consent of Debtor, which provided:

> ...this Court first notes defendants agree that an injunction
> restraining the disposition of the corporate shares owned by
> plaintiff is proper. Therefore, based upon this consent, plaintiff is
> granted a preliminary injunction enjoining defendant, their
> principals, agents and assigns, and any person acting in concert
> with them from exercising any dominion or control over,
> committing any act upon, and/or effectuating any conveyance
> transfer, assignment or encumbrance, sale or disposition of
> plaintiff's sixty shares in ROCK CITY SOUND, INC. pending the
> resolution of this action. (Emphasis added.)

No appeal was taken from the December 10, 2004 preliminary injunction. Mr. Kalish moved for

partial summary judgment to declare his security interest in his RCS shares. The motion was

granted by decision and order of April 20, 2005. No appeal was taken from this partial summary

judgment order.

By letter dated August 10, 2005, Mr. Kalish was advised that as of August 5, 2005 RCS

"will cease operations and will no longer be conducting business."

On March 22, 2006 Mr. Kalish obtained a copy of minutes of a purported "Special

Meeting of the Board of Directors of RCS" held on June 6, 2005. The minutes of this "special

meeting" state among other things:

> Lee Kalish is deemed to have given a proxy to the Remaining
> Shareholder, being Shelton C. Lindsay, authorizing the Remaining
> Shareholder, Shelton C. Lindsay, to vote all of the Withdrawing
> Shareholder's Shares as Shelton C. Lindsay sees fit... (Emphasis
> added.)

In the same special meeting, Debtor unilaterally resolved:

7

> The Corporation shall have no obligation to purchase the
> Withdrawing Shareholder's Shares under Lee Kalish's Notice of
> Withdrawal, dated February 19, 2004. (Emphasis added.)

During the meeting on June 6, 2005, Lindsay voted Mr. Kalish's shares. The state lawsuit was pending at this time.

While debtor was the sole officer and director of RCS, by invoice dated July 5, 2005, RCS sold a large inventory of RCS operating equipment, office fixtures, and other assets to H.T.I.C.S., an equipment broker, for $745,834.24. The inventory consists of 245 pages, representing equipment with a replacement value of hundreds of thousands of dollars more than what was received. Thus, while the state court case proceeded, and despite the preliminary injunction, debtor used Mr. Kalish's voting rights in his share of RCS to effectively destroy RCS as an operating corporation. Debtor did not notify or consult Mr. Kalish concerning the voting of Mr. Kalish's shares in RCS. Mr. Kalish did not consent or instruct debtor to vote his shares of stock in RCS. Debtor voted Kalish's shares of RCS stock with no authority from Kalish. Debtor's Schedule A lists the current value of Lindsay's 50% of stock in RCS as $1.00[2].

Mr. Kalish sought an order pursuant to NYS Judiciary Law §753 to hold debtor in contempt of court for violation of the December 10, 2004 preliminary injunction including an assessment of actual damages. Justice Dolan determined in the Contempt Judgment of August 11, 2006 that debtor was in contempt and RCS was to purchase Mr. Kalish's shares of stock pursuant to the Agreement on the Withdrawal Date for a purchase price of $1,145,580.00. Debtor filed a notice of appeal to the New York State Appellate Division Second

---

[2]Debtor's references to selected aspects of his conduct following the violation of the preliminary injunction are irrelevant to this determination.

Department from the Contempt Judgment. Debtor withdrew this appeal, and the date by which to perfect any appeal from the Contempt Judgment has passed.

Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on December 8, 2006. Mr. Kalish filed a proof of claim in this case in the amount of $1,145,580.00 plus interest. This is the amount awarded to Mr. Kalish in th Contempt Judgment for actual damages suffered by Mr. Kalish based on debtor's civil contempt. No portion of the Contempt Judgment has been paid.

I

## THE STANDARDS FOR SUMMARY JUDGMENT WERE FULLY MET ON THIS RECORD AS THERE ARE NO GENUINE ISSUES OF MATERIAL FACT AS A MATTER OF LAW FOR THIS COURT TO REVIEW

Federal Rule of Civil Procedure 56(c), made applicable to this adversary proceeding by Bankruptcy Rule 7056, authorizes summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotez Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 265 (1986) (quoting FED. R. CIV. P. 56(c) (emphasis added.)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1980). A "fact is material only if it affects the result of the proceeding and a fact is in dispute only when the opposing party submits evidence such that a trial would be required to resolve the difference." *Hassett v. Altai, Inc. (In re CIS Corp.)*, 214 B.R. 108, 118 (Bankr. S.D.N.Y. 1997).

9

To defeat a summary judgment motion, the nonmoving party, that is debtor here must present "significant probative evidence that a genuine issue of fact exists. *Anderson*, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of fact for trial and summary judgment is appropriate. *Matsushita*, 475 U.S. at 587; *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006).

In the decision below at pages 2 - 3, Judge Morris correctly set forth the summary judgment standard. The standard is not disputed by appellant. The material facts  requiring the non-dischargeability of the contempt judgment debt pursuant to §532(a)(6) were established by debtor's own admissions in his answer to this complaint, in his Rule 7056-1 Statement, and other court filings as detailed at pages 3 - 7 of the decision below. Nothing set forth by debtor shows that the fact findings are "clearly erroneous" or erroneous in any manner. The main thrust of appellant's brief is to relitigate admitted facts, or facts already determined by two courts. This court is not authorized to make a *de novo* review of these facts especially given the fully documented record of debtor's admissions and proceedings in state court.

## II

### "WILLFUL" AND "MALICIOUS" INJURY WERE APPROPRIATELY DETERMINED BELOW ON THIS UNDISPUTED RECORD

#### A.    The Standards

In the decision at pages 8 -9 Judge Morris correctly set forth the standard under 11 U.S.C. §523(a)(6), which requires a finding of non-dischargeability of a debt incurred for "...willful and malicious injury by the debtor to another entity or to the property of another entity...". Appellant does not dispute these standards.

Judge Adlai Hardin provided a review of the legal standard and recent case law

explicating this provision in *Strauss v. Strauss*, 2006 Bankr. Lexis 2219 (S.D.N.Y. July 21,

2006)(granting summary judgment denying discharge under §523(a)(6) based on a state court

contempt judgment). Judge Hardin summarized the standard as follows:

> According to the United States Supreme Court's ruling in
> *Kawaauhau v. Geiger*, "[t]he word 'willful' in (a)(6) modifies the
> word 'injury,' indicating that non-dischargeability takes a
> deliberate or intentional injury, not merely a deliberate or
> intentional act that leads to injury." *Kawaauhau v. Greiger*, 523
> U.S. 57, 61, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998)[*7] (emphasis
> in original).

The element of "willfulness" is satisfied if the debtor had actual knowledge that he or she was

violating the law and the intent to do injury. *Yash Raj Films (USA) v. Ahmed* 359 B.R. 34 at 41

(Bankr. S.D.N.Y. 2005).

With respect to the second prong of the statute, "malicious," Judge Hardin, explained:

> The Second Circuit held in *Navistar Fin Corp. V. Stelluti* that
> "malicious" for the purpose of Section 523(a)(6) includes actual
> and constructive malice. *Navistar Fin Corp. V. Stelluti (In re
> Stelluti)*, 94 F.3d 84, 87-88 (2d Cir. 1996) (" The term 'malicious'
> means wrongful and without just cause or excuse even in the
> absence of personal hatred, spite, or ill-will."). Courts look to the
> totality of the circumstances to determine malice. *Id*. at 88
> (quoting *First Nat'l Bank of Md. v. Stanley (In re Stanley)*, 66 F.3d
> 664, 668 (4th Cir. 1995)) ("Implied malice may be demonstrated
> 'by the acts and conduct of the debtor in the context of [the]
> surrounding circumstances.'") (Emphasis added.)

Judge Hardin further explained the element of "malice":

> [T]his court previously found in *Blankfort* that "[u]nder the law in
> this Circuit, the element of malice may be found either upon a
> finding of actual malevolence or ill will, or upon a finding of
> aggravated, socially reprehensible conduct sufficient to justify an
> imputation of malice to the debtor." *In re Blankfort*, 217 B.R. at

11

> 146; *see also Cablevision Sys. Corp. v. Cohen (In re Cohen)*, 121
> B.R. 267, 271 (Bankr. E.D.N.Y. 1990)

Judge Hardin also emphasized:

> Further, the injury incurred by the plaintiff need not be the primary
> intention or motivation behind the debtor's action in order for the
> Court to find that the debtor acted with malice. Substantial
> certainty on the part of the debtor that his actions will result in an
> injury to the plaintiff's property is enough for the Court to find that
> the debtor acted maliciously within the context of Section
> 523(a)(6)... ("[T]o establish a ground for nondischargebility of a
> debt under §523(a)(6) of the Bankruptcy Code it must be proven
> that the debtor engaged in deliberate acts which he knew were
> certain or substantially certain to result in injury to property. If this
> is established the debt will remain nondischargeble even though
> the resulting harm was not the primary purpose of the intentional
> acts.") (Emphasis in the original.)

In *In Re Butler* 297 B.R. 713 (B.Ct.Ill. 2003) the court found that where a prior state court

action had found an opthamologist had violated a covenant not to compete, this was a sufficient

predicate for application of collateral estoppel to denial of discharge under this section.

Noticeably there, Dr. Butler attempted to explain his rational for why his actions were neither

willful not malicious by claiming that he intended to provide "quality healthcare to his patients"

and that he "had to provide for the welfare of two families". In *Butler*, the court closely

examined these rationales and dismissed them:

> Debtor may dispute that he subjectively intended to injure plaintiff
> by intentionally violating the covenant not to compete, thereby
> breaching the employment contract. However, Debtor does not
> (and could not) seriously dispute the fact that he had subjective
> knowledge that injury to plaintiff was substantially certain to result
> from his intentional acts. He clearly knew that violating the
> covenant not to compete would cause financial harm to plaintiff,
> yet he knowingly violated the covenant anyway. As indicated
> above and established by precedent, that is all that is required to

12

meet the standard of nondischargability set forth in Geiger[3] and cases cited therein.

The *Butler* court continued:

> Debtor evidently (and mistakenly) deems his professed altruism towards his patients and toward his families as a satisfactory legal defense. Irrespective of his motivation for intentionally and repeatedly breaching the employment contract, debtor was fully cognizant of and intended the harm he caused plaintiff, and he had no just cause or excuse - despite his protestation to the contrary - for causing injury to plaintiff. Accordingly it is clear from the record and from the debtor's admissions that the subject debt arose from a wilful and malicious injury and the debt is therefore nondischargable under 11 USC 523(a)(6).

Further, in *In Re Cox* 243 B.R. 713 (B.Ct.N.D.Ill 2000) Judge Schmetterer carefully

reviewed the meaning of the terms "willful and malicious" in the context of objection to

discharge under §523(a)(6):

> ...under the common law the word intent...denotes that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." *Conte v. Guatam,* 33 F.3d 303 (3d Cir. 1994).
> * * * *
> The Restatement thus equates substantial certainty that a result will occur with intent to produce the result.
> * * * *
> In addition to being found willful, Cox's actions must also be found malicious for a determination of nondischargability under §523(a)(6). "Malicious" under that provision means in conscious disregard of one's duties or without just cause or excuse.

As can be seen, debtor's conduct at bar falls squarely within the analysis of *In Re Cox* for a

finding of both willful and malicious injury, as debtor unabashedly sought to prevent the

---

[3]*In Re Geiger* 118 S.Ct. 974 (1998), held that a medical malpractice judgment attributable to negligent or reckless conduct does not fall within the §523(a)(6) exception, in that the doctor did not act with the purpose of harming the patient. Hence the documented record of the corporate resolutions clearly evidences the intentional nature of debtor's conduct in the face of an injunction.

13

corporation from purchasing and paying for Mr. Kalish's shares in disregard of court order, fiduciary duty and governing statute.

Much like the debtor at bar, in *In Re Akhtar*, 368 B.R. 120 (B.Ct.E.D.N.Y. 2007) the debtor responded by claiming that the district court (who had found the copyright violation) had not found that the debtor "actually meant any deliberate or intentional harm to the plaintiff." In assessing the application of the prior contempt decision there, the bankruptcy court found that three essential elements were necessary for the district courts finding of civil contempt for violation of the preliminary injunction. These were that the order the debtor violated was "clear and unambiguous"; that the proof of debtor's noncompliance was "clear and convincing" and the debtor was not reasonably diligent and energetic in attempting to accomplish what was ordered. Likewise, Justice Dolan found that the preliminary injunction was clear and unambiguous, that the standard of proof was met and that the debtor knew of the order and did not follow it. Indeed, he went further and found that debtor's violation was "blatant" and "egregious".

*In Re Akhtar* reminds that "malice does not require a manifestation of personal animus or intent to do harm." As at bar, Justice Dolan gave careful consideration that the Debtor's conduct was "blatant and egregious", that his excuses and justifications (including the status of his helath) were unavailing and that Mr. Kalish was actually harmed.

Debtor's reliance on *In Re Hyman* 2007 WL 2492789 (2d Cir.) to attempt to block the collateral estoppel effect of the state lawsuit on this point is misplaced. In *In Re Hyman*, the court did not address collateral estoppel under §523(a)(6) regarding "willful and malicious injury". Rather, the court's analysis in that case was directed to the discharge exception of §523(a)(4). The discharge exception portion of the statute requires a showing that the underlying

14

act was "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny".

These requirements are markedly different than those of §523(a)(6) and do not utilize the same

definitions as "willful and malicious".

Both independently on this documented record and based on the preclusive effect of

collateral estoppel of the Contempt Judgment, the debtor's conduct towards Mr. Kalish's

property have been shown by debtor's own admissions to be deliberately and purposefully

harmful -- hence "willful" as defined under 11USC §523(a)(6). Indeed, in *In Re Blankfort*, the

court especially noted:

> During this time frame the defendants were constrained not only by Federal
> statutory and common law prohibitions against copyright and trademark
> infringement, in addition to the contractual restraints of the Franchise Agreement,
> but by an explicit and unambiguous order of the District Court. The defendants
> had full knowledge of the Franchise Agreement, the Federal copyright and
> trademark laws and, most particularly, in Injunction Order to which they has
> appended their written consent. The existence of the Injunction Order and the
> defendant's defiance of it removes the Contempt Judgment from the category of
> ordinary judgments for violation of common law or statutory duties.[4] (Emphasis
> added)

## B. Debtor's Undisputed Conduct Demonstrates His Willful and Malicious Injury to Mr. Kalish's Property Rights in His Shares of RCS

The Court is requested to read the minutes of a special meeting of the directors and

officers of Rock City Sound, Inc. dated June 6, 2005, attended by the then only officer and

---

[4]In assessing "malice", it should also be remembered that Debtor had many options. Debtor was
not compelled to keep working as an officer and director of RCS. He made and informed choice to do so
and did not want Mr. Kalish participating or knowing about the affairs of RCS. Under the Shareholder's
Agreement (paragraph 2f) Debtor had the option to elect simultaneous withdrawal from RCS which
would have automatically triggered a dissolution causing equal disbursement of the value of the company
to each shareholder. Debtor might have appealed the preliminary injunction but instead he consented to
it. Debtor might have moved to vacate or modify the order or apply to the court for the method a manner
of disbursing the companies assets. At a minimum, Debtor could have notified Mr. Kalish prior to
dismantling the company or providing Mr. Kalish with an opportunity to apply to the court for direction.

director, debtor (Exhibit N). The Court's attention is directed to the "resolved" paragraph which

begins at the end of page two and goes over to page three. There, debtor made four resolutions,

the fourth one being:

> The corporation shall have no obligation to purchase the
> withdrawing shareholder's shares under Lee Kalish's notice of
> withdrawal dated February 19, 2004. (Emphasis added.)

The third resolution of June 6, 2005, located on page two of Exhibit N, provides:

> Lee Kalish is deemed to have given a proxy to the remaining
> shareholder being Shelton C. Lindsay, authorizing the remaining
> shareholder Shelton C. Lindsay to vote all of the withdrawing
> shareholder's shares as Shelton C. Lindsay sees fit.

At no time during the course of this appeal has Debtor addressed his making and signing

of the four resolutions of June 6, 2005 or the plain meaning of these resolutions.

On its face, this formal four part corporate resolution signed by debtor constitutes an

admission which unequivocally demonstrates the purpose of debtor's actions -- to cause injury to

Mr. Kalish's property rights by declaring that RCS had "no obligation" to purchase his RCS

shares. The resolution was issued and signed by debtor during the pendency of the state court

action wherein Mr. Kalish sought precisely such payment. The resolution was issued in the face

of two prior court orders protecting Mr. Kalish's property -- his RCS shares -- until payment --

one, by granting Mr. Kalish a security interest in his shares until paid for in full (Exhibit K) and

the other by enjoining debtor from "exercising any dominion or control over" Mr. Kalish's shares

in RCS (Exhibit J).

This undisputed and documented record standing alone, irrespective of the collateral

estoppel effect of the Contempt Judgment, fully meets the meaning of the word "willful" under

16

§523(a)(6). *Strauss v. Strauss*, 2006 Bankr. Lexis 2219 (SDNY July 21, 2006) ("willful... takes a deliberate or intentional injury"). It also, as discussed below, satisfies the element of "malice" under §523(a)(6).

Justice Dolan particularly found in the Contempt Judgment that debtor well knew of the two prior court orders (Exhibit J and K), that debtor's violation of the preliminary injunction was "blatant and egregious"[5] when Debtor issued the RCS resolution of June 5, 2005, and that debtor's conduct was a "clear violation" of court order. Violating a court order in a "blatant and egregious" manner, to formally declare that "RCS shall have no obligation" to purchase Mr. Kalish's RCS shares under the Agreement, which had the undisputed effect of having "defeated, impaired, impeded and prejudiced plaintiff's rights and remedies" constitute a deliberate hence "willful" injury.

Justice Dolan also specifically made reference to paragraph 4 of the June 5, 2005 resolution and found that the language and purpose of the preliminary injunction was clear and unequivocal: "Plaintiff's shares of stock were to be protected and not tampered with while this litigation was pending." Justice Dolan found that debtor's "self help" -- the same conduct at issue here -- was in clear violation of both the "spirit" and "letter" of the preliminary injunction of December 10, 2005.

Justice Dolan further found that debtor in the state court action had failed, in his papers in opposition, to "address the clear prohibition from exercising dominion and control of plaintiff's shares of stock which was blatantly and egregiously ignored by Lindsay on June 6, 2005. This

---

[5]Webster's II New College Dictionary defines "blatant" as "conspicuous, often to an offensive degree" and "egregious" as "outstandingly bad". (Emphasis added.)

was when he declared that the corporation, among other things, had no obligation to purchase plaintiff's shares of stock." The plain import of the text of the resolution is that debtor actually intended the harmful consequences of his acts -- that the corporation would not and could not purchase Mr. Kalish's shares for their contractual price. This is not disputed by debtor. Justice Dolan found that debtor's dismemberment of the corporation, Mr. Kalish's shares were rendered valueless.

In assessing debtor's excuses for his undisputed wrongful and harmful conduct, it bears repeating that the state court's preliminary injunction order unequivocally restrained debtor from exercising dominion and control over Mr. Kalish's shares of stock in RCS.

As a matter of law, with respect to shares of stock, exercise of voting rights – however obtained – constitutes dominion and control over the shares of stock. *William Randall & Sons, Inc., et al. v. Lucke, et al.*, 123 Misc. 5, 6 (Sup. Ct., Kings Special Term 1924); *Lord, et al. v. Equitable Life Assurance Society of the United States*, 194 NY 212, 229 (1909) holding that the right to vote stock is an essential attribute of the ownership of stock.

It is also well settled that, "The purpose of a preliminary injunction is to maintain the status quo and prevent the dissipation of property that could render a judgment ineffectual." *Moy v. Umeki*, 10 AD 3rd 604 (2nd Dept. 2004); *Coinmach Corp., etc., v. Alley Pond Owners Corp.*, 2006 Slip Op. 469, (2nd Dept. 2006); *Root v. Conkling*, 108 Misc. 234, 238 (Sup. Ct. Otsego Co., 1919). For that reason, "...[I]t is the duty of all persons bound by an injunction decree or order not only to obey its command personally but to prevent a violation thereof by anyone acting in their behalf or subject to their orders." 67A NY Jur 2nd Injunctions §195. Further,

18

> The granting of an injunction is justly regarded as one of the highest prerogatives of courts of equity. The most exact and explicit obedience is required from those against whom the mandate of the court is directed. *Root,, supra* at 238. Emphasis added.

Not only was Debtor bound by the state court injunction, his violation of the injunction was directed towards a shareholder of a corporation as to whom debtor has admitted on numerous occasions that he owed fiduciary duties.

The plain English meaning and objective of the four part June 5, 2005 resolution is clear: it serves to injure to Mr. Kalish's property rights in his RCS shares. The Contempt Judgment found that the debtor's making of the resolution, and his conduct which followed as a consequence of the resolution, were a "blatant and egregious" defiance of a court order. Irrespective of, or in addition to, the collateral estoppel effect of the Contempt Judgment with respect to "malice" or "implied malice", this honorable Court could also well-find Debtor's undisputed conduct in violation of the RCS bylaws, the New York Business Corporation Law, and debtor's fiduciary duties toward Mr. Kalish.

The same undisputed conduct which gave rise to the Contempt Judgment also constitutes "aggravated, socially reprehensible conduct", as explained in *Blankfort*. As implied malice may be demonstrated by the acts and conduct of the Debtor in the context of the surrounding circumstances, and as the acts of Debtor are undisputed and undenied on this record, this point is also ripe for summary judgment.

## C.     Judge Morris Correctly Applied the Governing Case Law to the Undisputed Record Facts as to the "Willful and Malicious" Injury to Debtor's Property

As Judge Morris correctly determined:

19

"This case is similar to *Blankfort* and *Akhtar, supra*, because the Defendant's violation of a court order was "blatant and willful." The Defendant here deliberately violated a state court injunction with knowledge that it would result in injury to the Plaintiff. This act, and the resulting order of contempt, is a sufficient "aggravating circumstance" to support denial of dischargeability as to the debt. The Court has no trouble finding, based upon the undisputed facts, that the Defendant's actions constituted a willful and malicious injury. In holding the Defendant in contempt, Justice Dolan found that the Defendant violated a "clear prohibition from exercising dominion and control over plaintiff's shares of stock," which the Defendant had knowledge of but "blatantly and egregiously ignored." The Contempt Decision included findings that the Defendant's actions were a "clear violation of this Court's directive" and the precursor to "effectively putting the corporation out of business, rendering plaintiff's shares of stock worthless."

## III

### DEBTOR DOES NOT SUBMIT EVIDENCE OR LAW DISPUTING THE PRECLUSIVE COLLATERAL ESTOPPEL EFFECT OF THE CONTEMPT JUDGMENT AS TO THE FACT OF ACTUAL INJURY AND THE DOLLAR AMOUNT OF ACTUAL INJURY CAUSED BY DEBTOR TO MR. KALISH'S PROPERTY

With respect to the fact of actual damage and dollar amount of such damage to Mr.

Kalish's property rights caused by debtor's conduct, each element for the application of the

doctrine of collateral estoppel was established (see plaintiff's main memo below at 6-9, 14).

Debtor has acknowledged that collateral estoppel attaches once plaintiff demonstrates the

following elements:

1. The issue sought to be precluded must be the same as that involved in the prior litigation;
2. The issue must have been actually litigated;
3. The determination of the issue must have been essential to the final judgment; and
4. The party against whom estoppel is involved must be fully represented in the prior action. *Meyer v. Rigdom*, 36 F. 3d 1375, 1379 (7th Cir. 1994)

One point requires emphasis with respect to the application of collateral estoppel:

20

> "what is important is not the legal theories upon which successive
> claims are based, but rather the facts upon which they are based."
> *Calka v. Kucker Kraus & Bruh, LLP et al*, 2000 U.S. Dist. Lexis
> 6081.

Indeed, Debtor acknowledged at page 4 of his memorandum below and on appeal (p. 9):

> It is clear that the doctrine of collateral estoppel (issue preclusion)
> applies to adversary proceedings brought before the Bankruptcy
> Court under 11 U.S.C §523(a). *Grogan v. Garner*, 498 U.S. 279
> (1991) Pursuant to this doctrine, a party may not re-litigate issues
> in the bankruptcy court that have bee [sic] determined in a prior
> state court proceeding. *Stephen v. Rocky Mountain Chocolate
> Factory, Inc.*, 136 F. 3d 1134 (7th Cir. 1998)

On appeal, debtor attempts to blur this point.

The undisputed documentary record (Exhibits A, $A_2$, $P_1$, $P_2$, $P_3$, $P_4$, $P_5$, plaintiff's main

memo at 8-10) demonstrates that the fact issue of whether debtor's contemptuous conduct

actually damaged and "prejudiced" Mr. Kalish's property rights, that is, his RCS shares, was a

fact issue before Justice Dolan. As the text of Exhibit A demonstrates, Justice Dolan addressed

this point with detail and specificity as it was actually and extensively litigated, the determination

was essential to the final assessment of the actual damages found to have been incurred by Mr.

Kalish in the Contempt Judgment of $1,145,580 and debtor was fully represented by counsel in

the prior action, collateral estoppel attached to the Contempt Judgment. Put another way, Justice

Dolan had no difficulty in finding that debtor's contemptuous conduct "defeated, impaired,

impeded or prejudiced" Mr. Kalish's rights in his RCS shares in the amount of $1,145,580, a

requirement for such a monetary Contempt Judgment in New York state.

Debtor's conclusory contention that the Contempt Judgment does not address the injury

to Mr. Kalish's property, is belied by the plain text of the Contempt Judgment (Exhibit A) and

21

the litigation papers supporting such Judgment. As a result, the discussion of the value of Mr.

Kalish's RCS shares, which takes up a substantial portion of debtor's appeal brief is no longer

relevant as this fact issue was already conclusively determined by the Contempt Judgment.

Therefore, debtor's views and opinions on this subject, as a matter of law, cannot establish a

disputed issue of fact under F.R. Civ. 56. By way of further support, the facts which supported

Justice Dolan's determination of actual damages in the sum of $1,145,580 are also in this record

(Exhibits $A_2$, $P1$-$P_5$). Further, there is independent support for this finding from the accountant's

undisputed testimony. Such fact review is not before this Court on appeal given Judge Morris'

finding.

## CONCLUSION

For the reasons stated, the order should be affirmed.

Respectfully submitted,

GELLERT & KLEIN, P.C.
BY:

___/s/ Lillian S. Weigert_____
LILLIAN S. WEIGERT (LW 2869)
Attorneys for Appellee-Plaintiff
Lee S. Kalish
75 Washington Street
Poughkeepsie, NY 12601

22

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**POUGHKEEPSIE DIVISION**

_____X

In re:                                                    **Bankruptcy Court**
                                                          **Case No. 06-36352 (CGM)**
　　　**SHELTON C. LINDSAY**                              **(Chapter 7)**

　　　　　　　　Debtor.

_____X            **Adv Pro No. 07-9025**

　　　**LEE S. KALISH**

　　　　　　　Plaintiff-Appellee,            **HON. GEORGE A. YANTHIS**
　　-against-                                      **United States District Court**
                                                  **Southern District of New York**
                                                  **Civil Docket**
　　　**SHELTON C. LINDSAY**                      **Case No. 7:08-cv-01326**

　　　　　　Defendant-Appellant.
_____X

### AFFIDAVIT OF SERVICE

STATE OF NEW YORK　　　　）
　　　　　　　　　　　　　） ss.:
COUNTY OF DUTCHESS　　）

　　　　Ashley Swenson, being duly sworn, deposes and says:

　　　　1.　　　I am not a party to this action, am over 18 years of age and reside in Kingston, New York.

　　　　2.　　　On March 14, 2008, I served the within **Brief for Plaintiff-Appellee** by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the United States Postal Service within New York State, addressed to each of the persons named below at the last known address set forth after each name:

　　　　Thomas Genova, Esq.
　　　　Genova & Malin
　　　　Hampton Business Center
　　　　1136 Route 9
　　　　Wappingers Falls, NY 12590

                                                          Ashley Swenson

Sworn to before me on
March 14, 2008

Notary Public

DIANA FONTANELLA
Notary Public, State of New York
No. 1268880
Qualified in Dutchess County
Commission Expires September 30, 20__